```
FILED
CLERK, U.S. DISTRICT COURT

05/31/16

CENTRAL DISTRICT OF CALIFORNIA
BY:   D. Roberts   DEPUTY
```

1   Benjamin J. Theisman, *pro hac vice*
    btheisman@ftc.gov
2   Gregory J. Madden, *pro hac vice*
    gmadden@ftc.gov
3   FEDERAL TRADE COMMISSION
    600 Pennsylvania Ave. NW, CC-9528
4   Washington, DC 20580
    Tel:  (202) 326-2223, -2426; Fax:  (202) 326-3197
5
    Thomas Syta, Cal. Bar No. 116286
6   tsyta@ftc.gov
    FEDERAL TRADE COMMISSION
7   10877 Wilshire Blvd., Suite 700
    Los Angeles, CA 90024
8   Tel: (310) 824-4343; Fax:  (310) 824-4380
9   Attorneys for Plaintiff
    FEDERAL TRADE COMMISSION
10
11              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
12
13   FEDERAL TRADE COMMISSION,            SACV16-00999 BRO (AFMx)

14                          Plaintiff,    Case No. _____

15              v.                        FEDERAL TRADE
                                          COMMISSION'S RECEIVER
16   DAMIAN KUTZNER, individually and     RECOMMENDATION
     as an officer of BROOKSTONE LAW
17   P.C. (California), BROOKSTONE        [Lodged Under Seal]
     LAW P.C. (Nevada), ADVANTIS LAW
18   P.C., and ADVANTIS LAW GROUP
     P.C.;VITO TORCHIA, JR., individually
19   and as an officer of BROOKSTONE
     LAW P.C. (California) and
20   BROOKSTONE LAW P.C. (Nevada);
     JONATHAN TARKOWSKI,
21   individually and as an officer of
     BROOKSTONE LAW P.C. (California)
22   and BROOKSTONE LAW P.C.
     (Nevada); R. GEOFFREY
23   BRODERICK, individually and as an
     officer of ADVANTIS LAW P.C. and
24   ADVANTIS LAW GROUP P.C.;
     CHARLES T. MARSHALL,
25   individually and as an officer of
     ADVANTIS LAW P.C. and
26   ADVANTIS LAW GROUP P.C.;
     BROOKSTONE LAW P.C., d/b/a
27   BROOKSTONE LAW GROUP, a
     California professional corporation;
28   BROOKSTONE LAW P.C., d/b/a

                              1

1  BROOKSTONE LAW GROUP, a
   Nevada professional corporation;
2  ADVANTIS LAW P.C., a California
   professional corporation; and
3  ADVANTIS LAW GROUP P.C., a
   California professional corporation,
4
                              Defendants.
5

6       The Federal Trade Commission ("FTC" or "Commission") proposes that the

7  Court appoint Thomas W. McNamara of San Diego, California as a temporary

8  receiver in this case. The grounds for the appointment of a temporary receiver are

9  described in the Plaintiff's Memorandum in Support of *Ex Parte* Application for

10 Temporary Restraining Order with Asset Freeze, Appointment of Temporary

11 Receiver, Limited Expedited Discovery, and Other Equitable Relief, and Order to

12 Show Cause Why Preliminary Injunction Should Not Issue filed concurrently with

13 this Recommendation.

14      Mr. McNamara, a partner at McNamara Benjamin, LLP ("McNamara

15 firm"), has expressed a willingness to serve as temporary receiver and has the

16 necessary experience and qualifications to hold the position.  Mr. McNamara has

17 extensive experience serving as a court-appointed fiduciary, including significant

18 experience as a federal equity receiver in matters brought by the FTC and the

19 Securities and Exchange Commission ("SEC").

20      Mr. McNamara's extensive experience makes him eminently qualified  to

21 manage the receivership proposed in this action.  In particular, Mr. McNamara has

22 substantial experience acting as a receiver in cases involving law firms engaged in

23 activities similar to those in the instant matter and with issues similar to those that

24 may arise in this case.  Mr. McNamara has substantial experience in identifying

25 and efficiently administering potential sources of recovery  that may be available

26 to redress injured consumers.  Mr. McNamara is offering steeply discounted rates

27 for staff work ranging from  $60 to $375, including a more than 30% reduction in

28

his normal hourly rate.  Mr. McNamara will use, as legal counsel, McNamara firm attorneys with substantial experience working with receiverships and the legal issues that arise with receiverships.  The McNamara firm attorneys have substantial experience in pursuing legal claims on behalf of receiverships, including tracing and repatriating substantial sums for consumers.

A copy of Mr. McNamara's receivership experience, with a cover letter detailing his proposal for handling the receivership in this matter, is attached.  At this time, the FTC is  unaware of any conflicts of interest for Mr. McNamara or the McNamara firm should he be appointed as temporary receiver in this case.


BENJAMIN J. THEISMAN
GREGORY J. MADDEN

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Executed on May 19, 2016.

REGULATORYRESOLUTIONS

THOMAS W. MCNAMARA
DIRECT       619-269-0499
OFFICE       619-269-0400
FAX          619-269-0401
tmcnamara@mcnamarallp.com
HTTP://REGULATORYRESOLUTIONS.COM

May 4, 2016

*Via Email (btheisman@ftc.gov)*

Benjamin J. Theisman
Federal Trade Commission
Bureau of Consumer Protection, Division of Enforcement
600 Pennsylvania Ave. NW
Washington, DC 20580

Re:     Potential Receivership – Central District of California

Dear Mr. Theisman:

In anticipation of our call tomorrow, I am submitting this general note of interest and
qualification for your consideration. You indicated the Federal Trade Commission ("FTC") is
seeking a receiver in an action it plans to file in June in the Central District of California. The
potential defendants are alleged to be involved in a deceptive mass joinder lawsuit scheme.

Our team has substantial experience and a successful track record in receivership appointments,
including receiverships involving large-scale mass joinder and loan modification operations. I
have been appointed receiver in matters brought by the FTC, the Securities and Exchange
Commission, the Commodity Futures Trading Commission, the Consumer Financial Protection
Bureau and several state regulatory agencies. I have attached a list of receivership matters.

## A.     **Background**

I have a diverse background in civil and criminal law. After law school and a one-year judicial
clerkship, I was an associate in the Washington, D.C. office of Finley Kumble for four years,
principally involved in corporate securities business matters and securities litigation.

In 1991, I began an eleven year career as a federal prosecutor when I joined the U.S. Attorney's
office in San Diego. My primary focus was major economic crimes and public corruption. For a
thirteen-month period, 1997-1998, I was detailed to Washington, D.C. as a prosecutor with the
Campaign Finance Task Force growing out of the 1996 Presidential election.

I left the government and returned to private practice in 2002. I have since focused on civil
litigation, white collar matters, internal investigations, and receiverships in matters brought by
regulatory enforcement agencies. Not only have receiverships been an important part of my
practice, they have also been the most meaningful. I am proud of the work that our team has
done on behalf of defrauded investors and consumers.

Benjamin J. Theisman
May 4, 2016
Page 2

Andrew W. Robertson is a key member of the receivership team and has been involved in each of our receiverships over the last 13 years. He has a background in business and law which has made him a versatile asset. After graduating from Brown University and UCLA Law School, he clerked for federal judge William P. Gray in Los Angeles. He was then a business litigator for 16 years as an associate and partner with Lillick McHose and Pillsbury Madison in Los Angeles with a practice involving intellectual property, banking, securities and general business matters. In 1990, he moved to San Diego as principal in a start-up sporting goods venture – products manufactured in China and distributed throughout the world - where he was responsible for operations, finance and legal. After ten years of operational and finance experience in that and other businesses, he joined our firm in October 2002 and has since specialized in receiverships as both a lawyer and an experienced finance and operations executive.

We employ attorneys from my law firm, McNamara Benjamin LLP, to assist as counsel. Attorneys Daniel Benjamin and Ed Chang have worked on numerous receiverships and are facile with the unusual issues which can arise in receiverships. They have vigorously pursued legal claims on behalf of receivership estates, including the tracing and repatriating millions of dollars in assets for the benefit of consumers. To the extent we need specialized legal counsel, often tax counsel, we have a network of firms with whom we have worked in the past.

We will use Alliance Turnaround Management, Inc. based in La Jolla, California to assist in the forensic accounting needs of the receivership. We have worked with CPA Thad Meyer at Alliance Turnaround successfully in other receiverships and found his work product to be first rate. He has the ability to scale up for the first few crucial days of a receivership and then scale down once the financial records and assets are under control. Joe Cipollini and Hadron Computer Forensics will be providing computer forensic services. Mr. Cipollini has an expansive computer forensic background and has worked on receiverships with us in the past.

We also have extensive contacts with investigative professionals, who are generally former or present law enforcement. These professionals usually play an important role in the very initial stages of receiverships by providing investigative information about locations, defendants, and potential assets, as well as in preserving computer evidence once we are on site.

As a result of our combined backgrounds and our network of professionals, we have significant investigative, asset tracing, litigation and receivership experience. We are well qualified to handle even the most complex receivership. We are ready and willing to ably serve the public's interests as receiver in this matter.

## B.   Scope of Receivership

Based upon our brief call, I assume that the receiver's primary mission will be to seize operational control of the business and of all bank accounts and other assets. Generally, the TROs require the receiver to determine initially whether the business can be operated lawfully and profitably. That will be the primary mission of the initial stages of the receivership. If we determine it can be so operated, we will report to the Court. If we determine that the business cannot be so operated, we would terminate operations, investigate the extent of consumer fraud,

Benjamin J. Theisman
May 4, 2016
Page 3

take appropriate corrective action, and report to the Court. We would also vigorously pursue legal claims, and trace and recover receivership assets. These are all tasks we have performed in other receiverships.

We have a long track record of working cooperatively with law enforcement and regulators in receiverships. At the same time, we have also been successful in working cooperatively with receivership defendants. We will strive to maintain open communications with and provide timely responses to receivership defendants. Generally, the cooperative nature of our relationships with receivership defendants has benefitted all involved.

## C.    Conflicts of Interest

I will need you to provide the corporate and individual names of those involved and then run them through McNamara Benjamin's conflict check system. I do not anticipate a problem, but this is something we will need to do in order to proceed further.

## D.    Resources and Billing Rates

We are mindful that, in the end, receivers work for the defrauded consumers and that receivership expenses ultimately reduce any net recovery for those consumers. We, therefore, steeply discount our hourly rates when acting as receiver. For example, my hourly rate is $375 per hour (more than a 30% reduction from my normal hourly) and Andrew Robertson's rate is discounted to $295 per hour. We work hard to staff tasks with the most cost-effective personnel and expect discounted hourly rates for the people working the matter to range from $60 to $375.

As for counsel provided by McNamara Benjamin attorneys, those rates range from $350 to $500. The hourly rate for Mr. Meyer of Alliance Turnaround Management is $250 per hour, while Hadron Computer Forensics has agreed to a discounted rate of $175 per hour.

Thank you for contacting me about this receivership opportunity. I am interested in serving and am confident in our ability to act on behalf of the Court and administer a fair and efficient receivership. I look forward to talking to you again and am happy to answer additional questions and provide further information.

Very truly yours,

Thomas W. McNamara

TWM:jej
Enclosure

REGULATORYRESOLUTIONS

THOMAS W. MCNAMARA
OFFICE      619-269-0400
FAX         619-269-0401
DIRECT      619-269-0499
tmcnamara@mcnamarallp.com
HTTP://REGULATORYRESOLUTIONS.COM

## THOMAS W. MCNAMARA - RECEIVERSHIP EXPERIENCE

*Securities and Exchange Commission v. PLCMGMT LLC, et al.*, LACV16-02594-TJH (FFMx), U.S. District Court, Central District of California

In this securities fraud case, the SEC alleges that Defendants fraudulently solicited investors for a litigation marketing program with promised returns of 100% and more. A stipulated preliminary injunction, which included our appointment as receiver, was entered April 26, 2016. We have suspended operations and are now conducting a review of operations. We have also begun the process to accumulate any available assets and to identify targets for clawback claims against third parties who profited from their investment and/or are in possession of assets acquired with receivership funds.

SEC Contact: Amy Longo, 444 S. Flower Street, Suite 900, Los Angeles, CA; 323-965-3998

*Federal Trade Commission v. Telestar Consulting, Inc., et al.*, LACV16-00555-SJO (SSx), U.S. District Court, Central District of California

This matter began as a receivership, but was converted to a monitorship by a Stipulated Preliminary Injunction. Defendants operated a telemarketing sales business – selling arts and crafts supplies and anti-microbial products to non-profits, small preschools, and school athletic departments. But, the primary sales driver was the shipment, and subsequent billing for, unordered merchandise. The FTC alleged violations of the FTC Act, the Telemarketing Act, and the Unordered Merchandise Statute. After appointment, we suspended all operations from the Southern California headquarters and coordinated with the FTC and Defendants as they worked toward a Stipulated Preliminary Injunction, which was entered in March, 2016. By the terms of the Preliminary Injunction, Defendants were able to resume operations, subject to stringent conditions, and we were appointed Monitor tasked to oversee these new operations, which are to be based on a new sales model that does not include telemarketing. We are currently serving in that capacity.

FTC Contact: Maxine R. Stansell, 915 Second Ave., Suite 2896, Seattle, WA 98174; 206-220-4474

*Federal Trade Commission v. Good EBusiness, LLC, et al.*, LACV16-01048-ODW (JPRx), U.S. District Court, Central District of California

Defendants in this FTC case operated a fraudulent student loan repayment and modification business which violated multiple provisions of the FTC Act and the Telemarketing Act. Upon appointment, we took control of the office in Los Angeles, terminated operations as they were unlawful and assembled the limited assets.

501 West Broadway, Suite 2020, San Diego, CA 92101

REGULATORY RESOLUTIONS

Our service in this matter was brief after we determined that a receivership was not economically viable due to the lack of assets and the Defendants' recent withdrawal from the active business. As such, we exercised the provision in the TRO to withdraw as receiver and returned net receivership funds of $19,000 to the FTC.

> FTC Contact:  Eleanor Durham, 915 Second Ave., Suite 2896, Seattle, WA 98174; 206-220-4476

*Federal Trade Commission v. BAM Financial, LLC, et al.*, SACV15-01672-JVS (DFMx), U.S. District Court, Central District of California

Defendants in this FTC action, filed in October, 2015, are alleged to have operated unlawful debt collection businesses that violated the Fair Debt Collection Practices Act. Defendants embraced an old model – buying written-off bank debt cheap (less than $.05 per dollar) and then pursuing collection with harassment and predatory tactics administered by a call room of collectors incentivized with compensation based on results. We assembled the limited available assets and ultimately shut down the two sites in Orange County, California after concluding they could not operate lawfully and profitably going forward, particularly given that the entire debt portfolio had been tainted by improper collection tactics. The Temporary Restraining Order was extended by several months before the case was stayed in March, 2016 pending FTC approval of a settlement.

> FTC Contact:  Connor Shively, 915 Second Ave., Suite 2896, Seattle, WA 98174; 206-220-6350

*Federal Trade Commission v. Lake, et al.*, SACV15-00585-CJC (JPRx), U.S. District Court, Central District of California

Defendants in this FTC action are alleged to have operated loan modification businesses which unlawfully sought and accepted advance fees and deployed fraud and deception to lure in consumers. These operators used direct mail pieces designed to appear as official government mailings which promised consumers mortgage relief and directed them to an 800 number which was answered by telemarketers in Defendants' call room. These Defendants, however, added a component of pure fraud to thinly disguise the advance fee – consumers were essentially guaranteed a loan modification if they sent their next four mortgage payments to a phony trust account controlled by Defendants who simply pocketed the money. We took over the call room and the processing location and thereafter terminated operations and shut down the sites. Preliminary Injunctions were entered in May, 2015 and Stipulated Final Judgments were ultimately entered as to all, but one, of the Defendants. Final Judgment was entered as to the last remaining Defendant after the Court granted the FTC's motion for summary judgment.

> FTC Contact:  Jonathan Cohen, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580; 202-326-2551

REGULATORY RESOLUTIONS

*Consumer Financial Protection Bureau v. Moseley, et al.*, 14-00789-CV-W-DW, U.S. District Court, Western District of Missouri

Defendants, twenty entities and their three individual owners, are alleged to have engaged in an unlawful payday loan scheme with gross loan volume in excess of $100 million. The scheme included the tactic of loan "cramming" by which Defendants obtained unauthorized access to consumers' bank accounts and made unauthorized deposits into those accounts and thereafter sought collection on them as payday loans with high fees and interest. Defendants are also alleged to have deceived consumers as to the true terms of payday loans and to have used consumer financial information purchased from third parties to originate online payday loans without consumers' consent. A Stipulated Preliminary Injunction was entered on October 3, 2014, but the case still remains pending as to all Defendants. We have assembled substantial assets, exceeding $10 million, and are pursuing multiple potential claims against third parties.

> CFPB Contact:  John Thompson, 1700 G Street NW, Washington,
> D.C. 20552; 202-435-7270

*FTC v. MDK Media, Inc., et al.*, 14-CV-05099-JFW (SHx), U.S. District Court, Central District of California

Defendants, six entities and their individual owners are alleged to have operated a premium SMS businesses where consumers were enrolled in phone text subscription programs without their consent through various forms of cramming. While the Defendant entities are separate companies with different owners, they were part of a loose network actually controlled by past and current executives of a large cellular aggregator, Mobile Messenger. Defendants had limited active operations, but had generated aggregate revenues in less than three years of nearly $65 million. The Temporary Restraining Order was entered on July 7, 2014, but this receivership appointment was brief as the Court denied the FTC's subsequent motion for Preliminary Injunction and the case was later settled.

> FTC Contact:  Faye Chen Barnouw, 10877 Wilshire Blvd., Suite
> 700, Los Angeles, CA 90024; 310-824-4343

*FTC v. Tatto, Inc., et al.*, 13-CV-08912-DSF (FFMx), U.S. District Court, Central District of California

Defendants in this case operated a "premium SMS" business providing various text subscription programs to consumers. The FTC alleged that the core business was "cramming" charges for these programs to consumers who did not knowingly authorize the charges or order the service. The business was not actively operating at the time of our appointment, but we were able to accumulate substantial assets traceable to the businesses which will ultimately be disbursed to the FTC for consumer redress purposes. The underlying case was resolved through settlements with consent judgments entered in June and August, 2014. One of those judgments expanded our duties to be the "Liquidator Receiver" to liquidate substantial real estate and personal property assets of the individual Defendants – to date, we have liquidated $5.1 million in real property assets and $770,000 in personal property. As Receiver, we have also recovered

REGULATORYRESOLUTIONS

$366,000 in personal property dispositions and $2.3 in liquid assets which were frozen and later repatriated from an account in Hong Kong. In May, 2016, the Court authorized an interim disbursal of $8 million from the receivership to the FTC to be applied to an FTC redress program.

> FTC Contact:  Jane Ricci, 600 Pennsylvania Ave., N.W.,
> Washington, D.C. 20580; 202-326-2269

*FTC v. Asset & Capital Management Group, et al.*, SACV13-01107-DSF (JCx), U.S. District Court, Central District of California

Defendants in this case operated debt collection businesses in which they acquired legitimate bank debt at deep discounts and then deployed aggressive and deceptive telephone collection techniques which violated the Fair Debt Collection Practices Act. We took possession of the two active sites and suspended operations after concluding they could not be operated lawfully and profitably going forward. One of the Receivership Defendants was also an IT and telecommunications provider to some 20 other non-party debt collection operators – we were able to secure an order from the court directing the Receiver to collect all of this Receivership Defendants' equipment from those sites. Consent Judgments were entered as to all Defendants in May, 2014.

> FTC Contact:  Seena D. Gressin, 600 Pennsylvania Ave., N.W.,
> Washington, D.C. 20580; 202-326-2717

> FTC Contact:  Gregory A. Ashe, 600 Pennsylvania Ave., N.W.,
> Washington, D.C. 20580; 202-326-3719

*FTC v. A to Z Marketing, et al.*, SACV13-00919-DOC (RNBx), U.S. District Court, Central District of California

These Defendants operated loan modification schemes in California and Nevada. One group maintained offices in Orange County, California and Las Vegas, Nevada. The other was based in Orange County. Both deployed the same basic stratagem – drive consumers to a loan modification telemarketing room through sophisticated mailers designed to create the appearance of an official government mailer; attach a law firm name to the telemarketing room and give consumers the impression they are retaining a legal services firm; enter into a nominal relationship with an attorney who supposedly owns and operates the front law firm and create a pseudo network of affiliate attorneys in other states; and charge illegal advance fees. One group added a significant variation – the loan processors provided personalized service were all based in Calcutta, India. In the process of taking possession of the sites identified in the initial TRO, we were able to identify and ultimately take possession of several additional sites operated by affiliates of the named Defendants.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the MARs rule prohibiting advance fees. We concluded that this business could not operate lawfully and profitably in the context of this receivership and suspended operations

REGULATORYRESOLUTIONS

indefinitely. Stipulated Preliminary Injunctions were entered as to Defendants named in the initial Complaint, except one Defendant who left the country. The FTC later filed an Amended Complaint adding the additional affiliates discovered in our investigations. The FTC secured Judgments against all Defendants either by default or settlement with the last judgment entered in December, 2014.

> FTC Contact:  Steven W. Balster, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114; 216-263-3401

> FTC Contact:  Jonathan L. Kessler, 1111 Superior Avenue, Suite 200, Cleveland, OH 44114; 216-263-3436

*FTC v. Ideal Financial Solutions, et al.*, 13-CV-00143-MMD-GWF, U.S. District Court, District of Nevada

These Defendants ran a particularly brazen fraud – they ran unauthorized charges (usually $29.95) against the bank account and credit card accounts of consumers who had purchased no product or services from them. Consumer account information was obtained through payday loan brokers and middlemen who were in possession of high volumes of consumer payday loan applications. The apparent premise of the business was that most consumers would not notice the unauthorized charge or not pursue a chargeback. Consumers who did call to complain were told that they had purchased financial counseling services, payday loan matching services, or assistance in completing payday loan applications.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act. The TRO was entered January 30, 2013, after which we concluded that this business could not operate lawfully and profitably in the context of this receivership and terminated operations. A Preliminary Injunction was entered February 15, 2013. In February, 2016, the Court granted summary judgment as to the Receivership Defendants and the Individual Defendants, who had not previously settled, and entered a Final Judgment for $43 million. As Receiver, we continue to pursue a claim against a third party merchant account processor.

> FTC Contact:  Megan Bartley, 600 Pennsylvania Avenue NW, Mailstop M-8102B, Washington, D.C. 20580; 202-326-3424

> FTC Contact:  Michael Waller, 600 Pennsylvania Avenue NW, Mailstop M-8102B, Washington, D.C. 20580; 202-326-2902

*FTC v. Ambrosia Web Design, et al.*, CV-12-2248-PHX-FJM, U.S. District Court, District of Arizona

Defendants operated a credit card interest rate reduction call room in Tempe, Arizona. Consumers were driven to the call room by robocalls orchestrated by third-party vendors. Unwary consumers who pressed "1" in response to the automated message were directed to the Tempe call room which generally identified itself as some variant of "card services." The

REGULATORYRESOLUTIONS

telemarketers then tried to sell a menu of interest rate savings vehicles from transfers to new zero balance accounts to direct negotiations with the current credit card company.

Upon appointment, we took over the call room which had approximately 40 employees ranging from "Qualifiers" who took the initial calls, "Closers" who took those calls from consumers who expressed interest, "Financial Advisors" who communicated with card companies, customer service, and accounting.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the TSR. We found that the core business was unprofitable and predicated, at the threshold, on two illegal practices – robocalls and unauthorized merchant account factoring. As such, we concluded that this business could not operate lawfully and profitably in the context of this receivership, terminated operations, and returned the business premises to the landlord. Consent Judgments as to all Defendants were entered in September, 2013.

FTC Contact:  Thomas B. Carter, 1999 Bryan Street, Suite 2150, Dallas, TX 75201; 214-979-9372

FTC Contact:  Jason C. Moon, 1999 Bryan Street, Suite 2150, Dallas, TX 75201; 214-979-9378

*FTC v. Sameer Lakhany, Precision Law Center, et al.*, SACV 12-0337-CJC, U.S. District Court, Central District of California

Defendants operated a loan modification call room in Santa Ana, California using a thinly disguised illegal advance fee collection process. Defendants claimed their businesses were "non-profits" which offered a "forensic audit" (for a fee) followed by a "free" loan modification. For a period of about eight months, the offerings to consumers evolved into "mass joinder" lawsuits. A number of mass joinder lawsuits were actually filed, but aside from a very brief period of time, there was no licensed attorney involved. All the mass joinder cases were dismissed by the courts for failure to serve the complaint on the defendant banks or for failing to respond to motions filed by the banks. At the time of the FTC's action, defendants were telling consumers that they were actively looking to "merge" the mass joinder business with an actual law firm and were back to actively pursuing loan modification clients using the non-profit forensic audit as a teaser.

After appointment, we took over the call room with approximately 20 active telemarketers, suspended operations and communicated with the consumer customers. After court approval, we closed the facilities and liquidated the on-site furniture and equipment. We were able to employ the on-site data base and identify approximately 1,100 paying loan modification customers, some 10% of whom actually secured some form of modification, and approximately 700 consumers who made payments to become included in a mass joinder litigation. Orders for Permanent Injunction were entered February 28, 2013.

FTC Contact:  Mark L. Glassman, 601 New Jersey: Ave. N.W., Mail Drop NJ-3158, Washington, DC 20580; 202-326-2826

REGULATORYRESOLUTIONS

*FTC v. Forensic Case Management Services, Inc., et al.*, LACV11-7484-RGK, U.S. District Court, Central District of California

Defendants operated a telephone-driven collection business from Van Nuys, California with approximately 50 telemarketer/collectors soliciting small businesses with unpaid receivables and then pursuing debtors on behalf of those small businesses. The FTC action alleged multiple unfair business practices, fraud, and violations of the Fair Debt Collection Practices Act. In addition to telephone collection, these defendants also operated a "forwarding" business whereby they collected an up-front fee from their small businesses' creditor clients and forwarded collection cases to attorneys around the country, often based on fraudulent representations that specific assets of the debtor had been identified and were ready for seizure.

As court-appointed Receiver, we took over the operation which had a client base of nearly 25,000 small business customers. After determining that fraud was so ingrained in the operation that it could not be operated lawfully, we suspended operations and communicated with the client base, pending a resolution of the underlying case. Consent Judgments were entered in January, 2013.

> FTC Contact: Christopher T. Koegel, Staff Attorney, 601 New Jersey Avenue, N.W., Mail Drop NJ-3158, Washington, DC 20580; 202-326 2761

*People of the State of California v. The Law Offices of Kramer and Kaslow, et al.*, LC094571, Los Angeles County Superior Court, Central Civil West Division

The California Attorney General and the State Bar of California brought actions in August, 2011 against multiple lawyers and law firms and their telemarketing affiliates alleging that they were preying on desperate consumer homeowners facing foreclosure by selling them participation in so-called "mass joinder" lawsuits against mortgage lenders. The Attorney General complaint included claims for unfair business practices, false advertising, and the illegal use of non-attorneys to solicit business for a lawyer or law firm. Simultaneously, the State Bar of California sought and received Possession Orders as to the attorney defendants in separate actions filed by the State Bar.

In the Attorney General action, we were appointed receiver of the Non-Attorney Defendants (the telemarketers who ran call centers at seven different locations) and certain assets of the Attorney Defendants. As Receiver, we took possession of seven separate call room operations in Orange and Los Angeles County and thereafter shut them down. These telemarketers also sold illegal loan modifications services, sometimes disguised as "alternative dispute resolution", but those services were generally a prelude to the "mass joinder" lawsuit offerings. We worked closely with the Attorney General and the State Bar as they proceeded with their highly complex cases involving more than 6,000 consumer victims who purchased seats in the mass joinder litigation. Both the AG and the State Bar cases have been settled, except as to one Defendant in the Attorney General's case who is incarcerated.

REGULATORYRESOLUTIONS

Under Court supervision and the concurrence of the Attorney General and the State Bar, we administered a $700,000 restitution program with notice to the full universe of 9,000 consumers as prospective claimants followed by the processing and review of claims and pro rata payments to approved claimants. After completion of this restitution program, the receivership was terminated in March, 2016.

*FTC v. National Sales Group, et al.*, 11 C 1230, U.S. District Court, Northern District of Illinois, Eastern Division

Defendants operated an internet "jobs site" from a telemarketing boiler room in Santa Barbara, California. National Sales Group described itself as a "recruiting firm," but its real business model was to harvest job-seeker leads from multiple online sources and then drive those leads to the boiler room where 20+ telephone sales personnel offered and sold them various job-seeking services and materials, all under the guise that it somehow represented actual employers. We took over the Santa Barbara call room and, after confirming the deception at the core of the business, shut it down. We coordinated with FTC staff as they completed settlements and Consent Judgments with the defendants, which were entered on January 19, 2012.

FTC Contact: Guy G. Ward, Staff Attorney, 55 West Monroe Street, Suite 1825, Chicago, IL 60603; (312) 960-5634

*FTC v. Health Care One, LLC, et al,* CV-10-1161-JVS, U.S. District Court, Central District of California

Defendants operated telemarketing call rooms selling "health care discount programs" to consumers nationwide. We took over call rooms in Tempe, Arizona and Laguna Hills, California. After we confirmed the deceptive nature of the defendants' selling practices, we immediately shut down these facilities. We worked with the FTC in tracing financial transactions, collecting identified assets for inclusion in a future FTC redress program, and unwinding the relationships between the defendants and sub-marketers selling the same products under their own brand names. Consent Judgments were entered on February 5, 2011 and April 18, 2011.

FTC Contact: Faye Chen Barnouw, Staff Attorney, 10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024; 310-824-4343

*FTC/California Department of Justice v. U.S. Foreclosure Relief, et al.*, CV-09-768-JVS, U.S. District Court, Central District of California

Defendants ran a large loan modification business. We took over the business, located and reviewed financial records, traced financial transactions, and interviewed principals and key employees in a very short period of time. We were able to provide timely and detailed reports to the district court which, based largely upon our findings, continued the imposition of injunctive relief. We also cooperated with various investigations being conducted by the State Bar of California and the local District Attorney's office. Our suggested consumer redress plan was accepted by the FTC and the court and was implemented by our office with $612,000 disbursed

REGULATORYRESOLUTIONS

to 1,100 consumers.  (The state of Missouri was also a plaintiff in the action.)  Consent Judgments were entered in 2010.

> FTC Contact:  Sarah Schroeder, Staff Attorney, 901 Market Street, Suite 570, San Francisco, CA 94103; 415-848-5186

> Attorney General Contact:  Dan Olivas, Deputy Attorney General, Los Angeles, CA; 213-897-2705

### *SEC v. Khanna, et al.*, CV-09-1784-BEN and *CFTC and California Department of Corporations v. Khanna, et al.*, CV-09-1783-BEN, both U.S. District Court, Southern District of California

The MAK 1 defendants ran a $35-40 million foreign exchange Ponzi scheme operation. After appointment, we took over the remaining operations of the company, seized assets and traced financial transactions worldwide.  We sought and received contempt orders from the district court when the defendants failed to produce the company's complete books and records. The defendants had no remaining assets, but we identified and pursued "clawback claims" as to all investors who received profits and a small group of commissioned sales personnel, ultimately making five distributions to investors for a 27% recovery of their losses.

### *SEC v. Global Money Management L.P., et al.*, 04-CV-00521-(BTM), U.S. District Court, Southern District of California

Global Money Management was a San Diego based hedge fund which raised nearly $100 million for an options-driven investment program, but ultimately evolved into a classic Ponzi scheme.  Upon appointment as Receiver, we placed GMM in Chapter 11 Bankruptcy.  The assets of its General Partner, LF Global Investments, were assembled through the receivership and transferred to the Bankruptcy Estate.  The GMM Bankruptcy Estate ultimately returned $31.7 million to 200 approved investors representing 45% of their net losses.  At the outset, my former partner Charles La Bella was the Receiver and I was a member of the legal team, but I substituted in as Receiver after Mr. La Bella's return to the government.

### *FTC v. Seasilver, et al.*, CV-S-03-0676-RLH-LRL, U.S. District Court, District of Nevada

We took over operational control of the on-going Seasilver dietary supplement business in Carlsbad, California.  Seasilver employed more than 500 people and was doing nearly $1 million a day in gross credit card sales of an aloe-based supplement, mostly via its website, based on false and inflated advertising claims.  We supervised operation of the company and withdrawal of its improper advertising programs for nearly a year.  Control was ultimately returned to the principals after a Consent Decree was entered.  The principals are now subject to a $100 million judgment in favor of the FTC.

> FTC Contact:  Janice Charter, Staff Attorney, 901 Market Street, Suite 570, San Francisco, CA 94103; 415-848-5115

REGULATORYRESOLUTIONS

_SEC v. Millennium, et al.,_ 02 Civ. 3901 (LAP), U.S. District Court, Southern District of New York

      Millennium operated an international telemarketing scam selling shares in bogus pre-IPO companies. The operation was based in Spain with most of the victims residing in the UK.  We investigated and ultimately recovered more than $2 million for return to investors.  We cooperated with the SEC and the United States Attorney's Office for the Southern District of California in a related criminal case.  We also worked with the United States Attorney's Office in the Southern District of New York to file the first non-terrorism Patriot Act seizure of a correspondent bank account.