FILED
CLERK, U.S. DISTRICT COURT

05/31/16

CENTRAL DISTRICT OF CALIFORNIA
BY:   D. Roberts   DEPUTY

1  Benjamin J. Theisman, *pro hac vice*
   btheisman@ftc.gov
2  Gregory J. Madden, *pro hac vice*
   gmadden@ftc.gov
3  FEDERAL TRADE COMMISSION
   600 Pennsylvania Ave. NW, CC-9528
4  Washington, DC 20580
   Tel:  (202) 326-2223, -2426; Fax:  (202) 326-3197
5
   Thomas Syta, Cal. Bar No. 116286
6  tsyta@ftc.gov
   FEDERAL TRADE COMMISSION
7  10877 Wilshire Blvd., Suite 700
   Los Angeles, CA 90024
8  Tel: (310) 824-4343; Fax:  (310) 824-4380
9
   Attorneys for Plaintiff
10 FEDERAL TRADE COMMISSION

11            UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  FEDERAL TRADE COMMISSION, | Case No. _____ |
|     |  SACV16-00999 BRO (AFMx) |
| 14            Plaintiff, | **PLAINTIFF'S MEMORANDUM  IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF TEMPORARY RECEIVER, LIMITED EXPEDITED DISCOVERY, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| 15        v. | |
| 16  DAMIAN KUTZNER, individually and as an officer of BROOKSTONE LAW P.C. (California), BROOKSTONE LAW P.C. (Nevada), ADVANTIS LAW P.C., and ADVANTIS LAW GROUP P.C.;VITO TORCHIA, JR., individually and as an officer of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada); JONATHAN TARKOWSKI, individually and as an officer of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada); R. GEOFFREY BRODERICK, individually and as an officer of ADVANTIS LAW P.C. and ADVANTIS LAW GROUP P.C.; CHARLES T. MARSHALL, individually and as an officer of ADVANTIS LAW P.C. and ADVANTIS LAW GROUP P.C.; BROOKSTONE LAW P.C., d/b/a BROOKSTONE LAW GROUP, a California professional corporation; BROOKSTONE LAW P.C., d/b/a BROOKSTONE LAW GROUP, a | **[Lodged Under Seal]** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nevada professional corporation;
ADVANTIS LAW P.C., a California
professional corporation; and
ADVANTIS LAW GROUP P.C., a
California professional corporation,

                    Defendants.

1

**Table of Contents**

Introduction ........................................................................................1

Statement of Facts ..............................................................................2

  I.     Brookstone and Advantis are the Continuation of Kutzner's Previous Scam, United Law Group. ..................................................................2

  II.    Defendants Market Their Deceptive Mortgage Services Through Mass Mailers.................................................................................................6

  III.  Defendants Then Convince Consumers to Pay Large Upfront Fees for Their Worthless Services. .....................................................................7

  IV.  Defendants Do Not Keep the Advance Fees in Accordance with California Law. .........................................................................................9

  V.    Consumers Receive No Benefit From Defendants' Services. ....................10

    A.   Many Consumers Receive No Services from the Defendants.................10

    B.   Five Years Later, Defendants Have Never Won A Mass Joinder And Nearly All of Their Cases Have Been Dismissed............................................10

    C.   The Mass Joinders Do Not Seek to Void Consumers' Notes. .................12

  VI.  Kutzner and His Cohorts Each Have Control over the Scheme and Knowledge of the Fraudulent Conduct. .................................................12

    A.   Kutzner Founded the Scheme After ULG Failed. ...........................12

    B.   Torchia Is a Founder and Principal. ..........................................14

    C.   Tarkowski is Now Brookstone's Only Attorney. ...................................15

    D.   Marshall and Broderick are the New Owners of Advantis.....................16

Argument...........................................................................................17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

I.    The FTC is Likely to Succeed on the Merits Against all of the Defendants ..
      ............................................................................................................17

      A.    Defendants Violated Section 5 of the FTC Act By Lying to Consumers to
      Convince Them to Sign Up for Their Mortgage Relief Services. ...................18

      B.    Defendants' Disclaimers Are Not Effective. ...........................................20

      C.    The Corporate Defendants are Liable as a Common Enterprise. ............22

      D.    Each of the Individual Defendants Are Liable Because They Have
      Control, Participate in the Acts, and Have Knowledge. ..................................22

      E.    Although Unnecessary For the Court's Ruling, the FTC is also Likely to
      Prevail on the MARS Rule Counts, Including the Advance Fee Ban. ............24

II.    An *Ex Parte* TRO, With Asset Freeze, Expedited Discovery, and
Appointment of a Temporary Receiver is Necessary to Prevent Defendants from
Dissipating Assets and Destroying Evidence. ....................................................29

      A.    An *Ex Parte* TRO is Necessary to Ensure This Court Will be Able to
      Grant Effective Relief. ....................................................................................29

      B.    A Complete Asset Freeze is Necessary....................................................31

      C.    The TRO's Expedited Discovery Provisions Are Necessary to Preserve
      Assets and Evidence. ......................................................................................34

      D.    A Temporary Receiver is Necessary to Preserve the Status Quo............34

Conclusion ...........................................................................................................36

ii

# Table of Authorities

**Cases**

*ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005) ...........................................................27

*Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, (D.C. Cir. 2012) ....................................................................................27

*CFPB v. Frederick J. Hanna & Assocs. P.C.*, 2015 U.S. Dist. LEXIS 91357, (N.D. Ga. July 14, 2015) .........................................................................27

*CFPB v. The Mortgage Law Group LLP*, 14-cv-513 (W.D. Wisc., April 21, 2016) ...........................................................................................27

*CFPB v. The Mortgage Law Group LLP*, 2016 U.S. Dist. LEXIS 4663 (W.D. Wisc. Jan. 14, 2016)....................................................................26

*Cliffdale Associates Inc.*, 103 F.T.C. 110, (1984) ....................................................18

*Decker v. NW Environmental Defense Ctr.*, 133 S. Ct. 1326,(2013) .......................24

*Delaware Watch v. FTC*, 332 F.2d 745, (2d Cir. 1964) ...........................................21

*Earth Island Institute v. Ruthenbeck*, 490 F.3d 687, (9th Cir. 2006) .....................28

*First Mariner Bank v. The Resolution Law Group*, No. MJG-12-1133 (D. Md., Filed Oct. 24, 2013) .........................................................................30

*Florida v. Berger Law Group PA*, 14-cv-1825 (M.D. Fla., Feb. 27, 2015) ............16

*FSLIC v. Sahni*, 868 F.2d 1096, (9th Cir. 1989).......................................................31

*FTC v. A to Z Marketing, Inc.*, 13-cv-919 (C.D. Cal. Sept. 17, 2014) ............. 20, 26

*FTC v. A to Z Mktg., Inc. et al.*, No. SACV13-919 DOC (RNBx) (C.D. Cal., June 19, 2013) .....................................................................................30, 34

*FTC v. Affordable Media*, 179 F.3d 1228, (9th Cir. 1999)........................ 17, 22, 31

*FTC v. Am. Mortgage Consulting Group, LLC et al.*, No. SACV12-01561 DOC (JPRx) (C.D. Cal., Sept. 18, 2012)......................................................30

*FTC v. Bam Financial LLC et al.*, No. SACV 15-01672 JVS (DFMx) (C.D. Cal., October 21, 2015). ...........................................................................31

iii

*FTC v. Cyberspace.com LLC*, 453 F.3d 1196, (9th Cir. 2006) ...............................21

*FTC v. Gill*, 265 F.3d 944, (9th Cir. 2001) ...................................................... 17, 26

*FTC v. Gill*, 71 F. Supp. 2d 1030,(C.D. Cal. 1999)...................................................20

*FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.) .....................................1

*FTC v. Good EBusiness LLC et al.*, No. CV16-1048 ODW (JPRx) (C.D. Cal., Feb. 16, 2016) .............................................................................................31

*FTC v. Grant Connect, LLC*, 763 F.3d 1094, (9th Cir. 2014) ................................22

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107,(9th Cir. 1990) ................................ 31, 34

*FTC v. Ideal Financial Solutions Inc. et al.*, No. 13-00143 MMD-GWF (D. Nev., January 30, 2013).............................................................................................35

*FTC v. Ideal Financial Solutions Inc.*, 2016 WL 756527 (D. Nev. Feb. 23, 2016)35

*FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176,(C.D. Cal. 2000) ...................21

*FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, (C.D. Cal. 2002) ..............................18

*FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, (N.D. Cal. 2009) ...............................21

*FTC v. Network Svcs. Depot Inc.*, 617 F.3d 1127,(9th Cir. 2010) .................. 18, 21

*FTC v. Pantron I Corp.*, 33 F.3d 1088, (9th Cir. 1994) ................................... 18, 33

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, (9th Cir. 1997) ....... 22, 23

*FTC v. Stefanchik*, 559 F.3d 924, (9th Cir. 2009) ........................................... 17, 22

*FTC v. Sup. Ct. Trial Lawyers Assoc.*, 493 U.S. 411 .............................................26

*FTC v. Telestar Consulting, Inc. et al.*, No. CV-16-00555 SJO (SSx) (C.D. Cal., Feb. 1, 2016) ....................................................................................................31

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, (11th Cir. 1984) ............................34

*FTC v. Warner Communications, Inc.*, 742 F.2d 1156, (9th Cir. 1984)..................17

*FTC v. Wolf*, 1996 WL 812940 (S.D. Fla. 1996)....................................................18

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, (9th Cir. 1989) ...........................17

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, (1974)....28

*In re Kutzner*, No. 08-bk-12656 (Bankr. C.D. Cal., July 14, 2008) ........................32

iv

*In re United Law Group*, No. 10-bk-18945-RK (Bankr. C.D. Cal., Sept. 13, 2010) .................................................................................... 13, 29

*In re Vuitton et Fils S.A.*, 606 F.2d 1, (2nd Cir. 1979) ..................................... 29, 30

*In the Matter of Vito Torchia, Jr., Esq.*, No. 12-O-11847-RAP (Cal. Bar Ct.).....3, 9

*In the Matter of Wilson Chemical Co.*, 64 F.T.C. 168 (1964) ...............................26

*Johnson v. Couturier*, 572 F.3d 1067,  (9th Cir. 2009) .........................................31

*Legaspi v. Spivak*, 2013 WL 3947691 (Cal. Ct. App. July 30, 2013) ....................12

*Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644,(9th Cir. 2011)..........28

*Milavetz, Gallp & Milavetz, P.A. v. U.S.*, 559 U.S. 229 (2010) .............................27

*Petersen v. Bank of America,* 232 Cal. App. 4th 238, 254 (2014) .................... 5, 19

*Potter v. JP Morgan Chase Bank N.A.*, No. 11-10255 (C.D. Cal.) ........................12

*Randall v. Citigroup, Inc.*, LA CV14-00097 JAK (AGRx) (C.D. Cal. Filed Feb. 23, 2015) ...................................................................................................................29

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ......28

*Resort Car Rental v. FTC*, 518 F.2d 962 (9th Cir. 1975) ......................................20

*S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, (2d Cir. 1972) ................31

*SEC v. First Fin. Group*, 645 F.2d 429, (5th Cir. 1981)........................................34

*Smith v. Brookstone Law, P.C., Corporation*, No. 18-92557/529/530 (Calif. Labor Commissioner, Entered April 17, 2015) ...................................................... 4, 14

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009)......................................28

*U.S. v. Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.)...............1

*United States v. Mendoza*, 464 U.S. 154,(1984)....................................................28

*US v. Odessa Union Warehouse Co-op*, 833 F.2d 172 (9th Cir. 1987)) .................17

*Wright v. Bank of America*, No. 30-2011-00449059-CU-MT-CXC (Super. Ct. Orange Cty., filed on March 11, 2016).................................... 4, 5, 15, 16, 22, 23

**Statutes**

124 Stat 1376, § 1061(b)(5)(B)(i) ........................................................................26

v

15 U.S.C. § 45(a). ........................................................................................17

CA. Civ. Code 2944.7 ....................................................................................2

**Rules**

12 C.F.R. § 1015.2 .......................................................................................23

12 C.F.R. § 1015.3(b) ..................................................................................24

12 C.F.R. § 1015.4 .......................................................................................24

12 C.F.R. § 1015.5 .......................................................................................23

12 C.F.R. § 1015.7(b) ..................................................................................25

12 C.F.R. §1015.7(a) ...................................................................................24

75 F.R. 75128 ..............................................................................................24

75 FR 75128-32 ...........................................................................................27

75 FR 75133 ................................................................................................25

Fed. R. Civ. P. 26(d) ...................................................................................33

Fed. R. Civ. P. 33(b) ...................................................................................33

Fed. R. Civ. P. 34(b) ...................................................................................33

Fed. R. Civ. P. 36(a) ...................................................................................33

Fed. R. Civ. P. 65(b)(1)(a) ..........................................................................28

# INTRODUCTION

Damian Kutzner, a recidivist scofflaw,[1] has teamed with unethical lawyers to market dubious "mass joinder" lawsuits against mortgage lenders. These activities defrauded consumers out of thousands of dollars in upfront and recurring monthly fees in violation of the Federal Trade Commission ("FTC") Act. The attorneys include: (1) Vito Torchia, whose bar license is indefinitely suspended because of his involvement in this scheme; (2) Geoffrey Broderick, a current owner of the enterprise who last year settled allegations of running a nearly identical fraud in Florida; (3) Charles Marshall, a co-owner who the California Bar has repeatedly sanctioned for taking upfront fees for mortgage relief and then providing no services; and (4) Jonathan Tarkowski, who is a 2014 bar admittee and the current attorney of record in defendants' dubious lawsuits, purporting to solely represent hundreds of plaintiffs. Defendants have operated this scheme through

---

[1]     Kutzner is already subject to two injunctive orders signed by this Court for FTC violations. *FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction as to Defendants GM Funding, Inc., Robert D. Kutzner, Global Mortgage Funding, Inc., and Damian R. Kutzner (May 5, 2003) (the "2003 Order"); *U.S. v. Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction (July 17, 2009) (the "2009 Order") (Department of Justice brought on the FTC's behalf ). The FTC will be filing a contempt motion against Kutzner for violating the 2003 Order. Attached as Exhibit 1 is the memorandum supporting the motion to show cause why Kutzner should be held in contempt that the FTC intends to file. The FTC intends to file that motion once the FTC has served Kutzner with the pleadings in this matter. The FTC is not filing a contempt motion under the 2009 Order because only the United States, through the Department of Justice, can seek contempt under that order. Nonetheless, as described below, Kutzner was plainly violating the 2009 Order's telemarketing ban.

purported law firms, Brookstone Law P.C.[2] and Advantis Law P.C.[3]   Defendants convince consumers that if added to a "mass joinder" case against their lender, they can expect a significant recovery, typically at least $75,000.  In reality, defendants have never won a mass joinder case, do not have the experience or resources to litigate them, and never sue on behalf of many paying consumers.

The fraud at the heart of this scheme and the defendants' histories make an *ex parte* temporary restraining order ("TRO") and preliminary injunction, imposing a receivership and asset freeze to preserve assets and evidence necessary. Absent a TRO, they will continue to harm consumers, abscond with assets, and destroy evidence.  Defendants Kutzner, Torchia, Broderick, and Marshall are recidivists who have shown they are likely to abscond with assets and destroy evidence.

## STATEMENT OF FACTS

### I.   BROOKSTONE AND ADVANTIS ARE THE CONTINUATION OF KUTZNER'S PREVIOUS SCAM, UNITED LAW GROUP.

From 2009 to 2010, Kutzner operated United Law Group ("ULG"), a "law firm" offering advance fee loan modifications.[4]  In October 2009, California outlawed advance-fee loan modifications, with no attorney exemptions.  CA. Civ. Code 2944.7.  Simultaneously, ULG faced numerous allegations that its two

---

[2]      "Brookstone" includes both the California and identically named Nevada company.

[3]      "Advantis" includes both Advantis Law PC and Advantis Law Group PC, unless otherwise noted.

[4]      Declaration of Leslie Lewis ("Lewis Decl."), Atts. 1 & 2 (Kutzner's compliance reports listing ULG as his employer and including an employment agreement stating he "shall oversee, direct and manage all 'Non-Legal' operations of" ULG).

primary lawyers committed mortgage modification fraud.[5]  Both were then

disbarred,[6] and ULG was raided by both the FBI and the United States Postal

Inspectors.[7]

As ULG began to unravel, Kutzner hired Torchia[8] and formed Brookstone[9]

with the advice and support of Phil Kramer and Mitch Stein, attorneys who are

now disbarred.[10]  Stein is in prison.[11]  Kramer and Stein helped Brookstone begin

marketing "mass joinder" lawsuits.[12]  In a so-called mass joinder, tens or hundreds

of plaintiffs are added to a single case against a common group of defendants.  The

facts and circumstances of each plaintiff are different and must be proved

separately, unlike a class action.  To market the mass joinders, Brookstone filed

---

[5]      Declaration of Joseph Kennedy ("Kennedy Decl."), Atts. 6 & 7 (Sean
Rutledge and Robert Buscho attorney profiles, including disciplinary filings related
to their ULG activities).

[6]      Kennedy Decl., Atts. 6A & 7A (copies of orders showing Buscho disbarred
and Rutledge voluntarily resigned following findings that he likely committed
multiple, serious ethical violations).

[7]      Ex. 2, Transcript of Proceedings Before the Honorable Richard A. Platel,
May 6, 2014, to May 8, 2014, *In the Matter of Vito Torchia, Jr., Esq.*, No. 12-O-
11847-RAP (Cal. Bar Ct.) ("Torchia Trial Transcript") at II-70.

[8]      Torchia Trial Transcript at II-62 to 64.

[9]      Torchia Trial Transcript at II-75 (he started Brookstone with Kutzner and
Kutzner is chief operating officer).

[10]     Torchia Trial Transcript at II-124 to 128, II-135 to 139 (in 2010 he was
approached, through Kutzner, by attorneys operating a mass joinder scheme,
including Kramer and Stein); Declaration of Gregory Madden ("Madden Decl."),
Atts. 33-34 (case summary and complaint against Kramer and Stein for their mass
joinder scheme); Kennedy Decl., Atts. 4 & 5 (attorney profiles of Kramer and
Stein, including Bar decisions preventing them from practicing law).

[11]     Kennedy Decl., Atts. 4 & 5 (attorney profiles of Kramer and Stein, including
Bar decisions preventing them from practicing law).

[12]     Torchia Trial Transcript at II-145 to 149 (Brookstone began marketing their
own mass joinder action, copied from Kramer and Stein's previous mass joinder
action).

several complaints against lenders, including Bank of America, JPMorgan Chase, Wells Fargo, Ally, Indymac, and CitiBank, which they then touted in mailers to potential clients.[13]  In time, all but the *Wright v. Bank of America* case were dismissed for lack of prosecution, misjoinder, or failure to state a claim.[14] Defendants' have not taken any steps to pursue any of the litigation beyond responding to demurrer motions and, in *Wright*, pursuing an appeal following dismissal for misjoinder.

After *Wright*'s dismissal, and during its appeal, defendants morphed again from Brookstone to Advantis in 2014.  Apparently expecting to lose the appeal, they abandoned their clients in the fall of 2014.  As numerous clients attest, Brookstone went from being consistently unresponsive to impossible to even locate.  Brookstone stopped answering phone calls, moved without informing clients, and lied to clients about where they were located.[15]  After the unexpected,

---

[13]      Madden Decl., Atts. 1-32 (case summaries/dockets for Brookstone's mass joinder actions); Declaration of Anthony Gales ("Gales Decl."), Att. 17 at 22 (Brookstone website's listing of all of its "multi-plaintiff" cases).

[14]      Madden Decl., Atts. 1-27, 29-30 (case summaries/dockets showing dismissal of all cases filed prior to 2016, except *Wright v. Bank of America*).

[15]      Declaration of Teresa Irannejad ("Irannejad Decl."), ¶¶ 18-20 (continued to pay through November 2014 because she was told to expect a settlement from Bank of America but then when she visited Brookstone's office found that they had moved and that she could not reach Brookstone via phone); Declaration of Michael Nava ("Nava Decl."), ¶ 11 (Brookstone changed phone numbers and email addresses without any notice to the client or forwarding information); Declaration of Corina Durrett ("C. Durrett Decl."), ¶¶ 10-13 (Brookstone stopped taking payment in October 2014 and consumer could reach them afterwards, determined they had moved, and then could not find Brookstone at the alleged "new" address.  Consumer went to claimed Brookstone address, could not find Brookstone there, and when she called Brookstone to find out why she could not find them and where they were, Brookstone hung up on her.).  *See also* Madden Decl., Att. 47 (Order, Decision, or Award of the Labor Commissioner, *Smith v.*

limited, success of their appeal in *Wright*,[16] holding that mass joinders are technically possible, defendants have regrouped and now exist as both Brookstone and Advantis.[17]  Tarkowski is the current lead attorney.[18]  Marshall, through Advantis, represented the lead plaintiff in *Wright* until his bar license suspension in November 2015.[19]  Following a notice from Bank of America that defendants were not prosecuting *Wright* on remand[20] and more than a year after the Court of Appeals decision, on January 5, 2016, Tarkowski filed a new amended complaint

---

*Brookstone Law P.C.*, No. 18-92557/529/530 (Calif. Labor Commissioner, entered April 17, 2015) (employee assisted Brookstone in moving offices on November 7, 2014, having arrived without knowing the office was moving)).

[16]     The court held that a mass joinder, in theory, could proceed, but criticized defendants' "desultory and scattered allegations," and required that on remand they replead the Complaint into an intelligible pleading.  *Petersen v. Bank of America,* 232 Cal. App. 4th 238, 254 (2014), *review denied* (Mar. 25, 2015).

[17]     They both shared an original address on Von Karman Ave.  *See* Gales Decl., Atts. 4 & 5 (Advantis Law PC and Advantis Law Group PC incorporation papers); Madden Decl., Att. 43 (*Bradford* Complaint identifies Brookstone at same address); Ex. 3 (Torchia bar records showing same address as his Brookstone address from October 31, 2013 to December 22, 2014).  Now, both operate from 6 Hutton Centre in Santa Ana, CA.   Madden Decl., Att. 46 (Tarkowski and Brookstone Notice of Change of Address, *Wright v. Bank of America*, No. 30-2011-00449059-CU-MT-CXC (Super. Ct. Orange Cty., filed on March 11, 2016)); Declaration of Diane Samar Ayoub ("Ayoub Decl."), ¶ 6.  They both also tout *Wright* as their own case, using identical language.  Gales Decl., Att. 17 at 7 (Brookstone website); Gales Decl., Att. 18 (Advantis website).

[18]     Madden Decl., Atts. 36-38 & 48 (pleadings with Tarkowski claiming to be the attorney of record and a filing by Bank of America detailing Tarkowski's claim to be the sole Brookstone attorney)

[19]     Madden Decl., Atts. 38 & 49 (pleadings listing Marshall as counsel in *Wright v. Bank of America*); Kennedy Decl., Att. 3 (Marshall's attorney bio and disciplinary proceedings).

[20]     Madden Decl., Atts. 36-37 (July 2015 Bank of America pleadings).

in *Wright*,[21] and sought leave to further amend it in March 2016.[22]  Bank of America filed a demurrer seeking dismissal of the case in its entirety and moved to strike the complaint.[23]  Most recently, Tarkowski filed three new complaints in March and April 2016, one of which appears to be a previously dismissed case that, in blatant violation of defendants' ethical duties, includes as plaintiffs "clients" who have already fired defendants for defrauding them.[24]

## II.  DEFENDANTS MARKET THEIR DECEPTIVE MORTGAGE SERVICES THROUGH MASS MAILERS.

Defendants seek victims through mass mailers stating:  "[Y]ou may be a potential plaintiff against your lender;" Mass joinder litigation is a way to "void your note(s), and/or award you relief and monetary damages;" "[O]ur team of experienced lawyers offers you a superior alternative for recovery;" and "It may be necessary to litigate your claims against your lender to get the help you need and our lawyers know how to do so."[25]  The mailers identify Vito Torchia as the responsible attorney and typically refer to the mass joinder cases that Brookstone has filed.  *Id.*  Some versions reference the Department of Justice's multibillion dollar settlements with the banks, suggesting that Brookstone's cases are somehow connected.  *Id.*  They emphasize "You should act now!" and that failing to act quickly could "bar your claims in the future."  *Id.*

---

[21]     Madden Decl., Atts. 28 & 53.

[22]     Madden Decl., Att. 41.

[23]     Madden Decl., Att. 28, DEs 649-54.

[24]     Madden Decl., Atts. 13 & 31-32; Declaration of Ronald Kolodziej ("Kolodziej Decl."), ¶¶ 23-24 (firing defendants in July 2015).

[25]     *See, e.g.,* Declaration of Mario Rios ("Rios Decl."), Att. 1; Declaration of Raymond Navarro ("Navarro Decl."), Atts. 4 & 5; Declaration of Jesse Chapman ("Chapman Decl."), Att. 1; C. Durrett Decl., Att. A.

### III. DEFENDANTS THEN CONVINCE CONSUMERS TO PAY LARGE UPFRONT FEES FOR THEIR WORTHLESS SERVICES.

Based on the mailers, consumers call defendants. During these calls, defendants convince consumers to come into the office for an evaluation.[26] Consumers then bring their mortgage papers and sign an initial retainer agreement, agreeing to pay between $895 and $1,300 for a forensic mortgage analysis.[27] Before and after defendants "review" the files, they tell consumers that they are great candidates for existing mass joinders, or one yet to be filed, including statements that a consumer has "a very strong case;" that prevailing in the litigation is "basically a done deal;" and "it was not a question of whether I would win my cases, but how much money I would get."[28] Most consumers receive a "Legal

---

[26] Chapman Decl., ¶ 3; Rios Decl., ¶ 5; Navarro Decl., ¶ 4; Declaration of Richard Leonido ("Leonido Decl."), ¶ 4; C. Durrett Decl., ¶ 8.

[27] Chapman Decl., ¶ 6 & Att. 2; Rios Decl., ¶ 9 & Att. 2; Navarro Decl., ¶¶ 6-7 & Att. 1; C. Durrett Decl., ¶ 8. Some people completed this step over the phone. Leonido Decl., ¶¶ 4-5; Nava Decl., ¶ 4.

[28] Nava Decl., ¶ 7 (told "that I definitely had a very strong case, it was basically a done deal"); Kolodziej Decl., ¶ 8 ("it was not a question of whether I would win my cases, but how much money I would get."); Irannejad Decl., ¶ 12 (told "I had a good case" and that "the minimum I would get would be $75,000"); Chapman Decl., ¶ 5 (told he and his wife "were very good candidates and were entitled to a refund as a result of litigation between the Department of Justice and Bank of America"); Rios Decl., ¶ 7 ("The Brookstone Law representatives told me that Brookstone Law had a great chance of succeeding in the lawsuit. They said that although it may take some time, Brookstone Law would succeed eventually"); Navarro Decl., ¶ 7 (told case was strong enough to expect to recover $300k); Leonido Decl. ¶¶ 7 & 9 (told he had a case against his lender and that the mass joinder "would, at the very least, put me in a better position on my mortgage"); C. Durrett Decl., ¶¶ 10-11 (explaining that they had multiple valid causes of action and that based on defendants' years of experience their claim was "pretty good" and could get them $1 million).

Analysis" that purports to document numerous law violations.[29]  Sales peoples' claims vary, seemingly based on what it takes to convince a particular consumer, but most are told they should expect to receive damages or that their loan be entirely forgiven.[30]  These claims are corroborated by an undercover call placed by FTC investigator Anthony Gales, where defendants stated, after hearing only his name and lender, that they can stop the foreclosure on his house and add him to a mass joinder case that will get him a mortgage modification.[31]

To proceed with the mass joinder, defendants require another retainer agreement with at least $1,500 upfront and a monthly fee, typically $250.[32] Contrary to their sales pitch, these 10-page, legalese-ridden retainer agreements contain disclaimers, including that the mass joinder case cannot and will not seek

---

[29]     *See e.g.,* Rios Decl., Att. 3; Leonido Decl., Att. 3; Declaration of Timothy Durrett ("T. Durrett Decl."), Att. A.  Some consumers, although having paid for the analysis and having been assured they had a strong case, were never provided a copy of the analysis despite asking for it.  Nava Decl., ¶5.

[30]     Chapman Decl., ¶ 5 ("were entitled to a refund"); Rios Decl., ¶ 6 ("at least $75,000 off the principal of my house, and that it might remove the entire mortgage from my house"); Navarro Decl., ¶ 6 (should expect $75,000 for him and his girlfriend for both the original loan and refinance, for a total of $300,000); Nava Decl., ¶¶ 6-7 ($75,000 and an additional $750,000 in punitives); T. Durrett Decl., ¶ 7 (had a good case and could get up to $1.5 million); Leonido Decl., ¶ 9 ( "would, at the very least, put me in a better position on my mortgage").  *See also* Rios Decl., ¶¶ 17-18 (an email from defendants in October 2015 sating defendants are "very confident we will prevail").

[31]     Gales Decl., ¶ 12 & Att. 2.

[32]     The fees vary.  Chapman Decl., ¶ 7 ($3,000 advance fee with $250 monthly fee); Rios Decl., ¶ 12 ($1,500 advance fee with $250 monthly fee); Navarro Decl., ¶ 7 ($3,000 advance fee with $250 monthly fee); Nava Decl., ¶¶ 8-9 ($3,000 advance fee with $250 monthly fee); C. Durrett Decl., ¶ 12 ($3,000 advance fee with $250 monthly fee for first 12 months and then a $59.99 monthly fee); Leonido Decl., ¶ 8 ($1,500 advance fee with $250 monthly fee for first 12 months and then a $59.99 monthly fee).

more than $75,000 in relief[33] and that litigation is inherently risky,[34] but consumers did not understand them and they directly contradict defendants' express representations of certain relief.  One consumer noticed the disclaimer and asked what it meant, only to be told "it was just legal words in the retainer . . . but there was no risk of losing."[35]

## IV.   DEFENDANTS DO NOT KEEP THE ADVANCE FEES IN ACCORDANCE WITH CALIFORNIA LAW.

Defendants take upfront fees, but fail to keep them in client trust accounts in accordance with California law.  Through 2014, Defendants received more than $15 million but did not even maintain client trust accounts let alone deposit funds in them.[36]  In fact, they spent the money as they received it.[37]  Also contrary to ethics rules, numerous consumers report being unable to obtain refunds or an

---

[33]    This is to avoid federal diversity jurisdiction.

[34]    *See, e.g.,* Chapman Decl., Att. 3 at 2 & 8; Rios Decl., Att. 4 at 4; Navarro Decl., Att. 2 at 2 & 8.

[35]    *See* Irannejad Decl., ¶ 14 ("He said I shouldn't pay attention to the disclaimer because the case against Countrywide had already been proven. Anthony Stout said trust me, I can assure you that you will get $75,000 and the money you paid to Brookstone back."); Chapman Decl., ¶ 8.

[36]    Declaration of Emil George ("George Decl."), ¶¶ 8 & 9 (defendants' accounts show $24.4 million in raw credits, offset by $7.4 million in intercompany transfers, and there are approximately $1 million in check deposits that have not been analyzed to determine if they are intercompany transfers); George Decl., Att. A (listing defendants' accounts, none of which are trust accounts).

[37]    George Decl., Att. C (monthly summaries of each of the accounts).

accounting of work performed.[38]  The California Bar found that Torchia repeatedly
violated his ethical duties through such failures.[39]

## V. CONSUMERS RECEIVE NO BENEFIT FROM DEFENDANTS' SERVICES.

### A. Many Consumers Receive No Services from the Defendants.

Many consumers who sign up are not added to a mass joinder.  They have
paid upfront and monthly fees, frequently totaling more than $5,000, and received
nothing in return.[40]

### B. Five Years Later, Defendants Have Never Won A Mass Joinder And Nearly All of Their Cases Have Been Dismissed.

The results are little better for those added to a case.  They pay upfront and
monthly fees for the services of purportedly experienced professionals, but receive

---

[38]      Chapman Decl., ¶ 12; Rios Decl., ¶ 16.  Mr. Navarro in particular made
repeated attempts to get a refund and accounting of work performed.  Defendants
never offered one and Mr. Navarro was forced to go to small claims court twice to
secure his refund.  Navarro Decl., ¶¶ 9-13.

[39]      Kennedy Decl., Att. 1.C (Decision, *In the Matter of Vito Torchia, Jr.*, No.
12-O-11847-RAP (Cal. Bar Ct.) ( "Torchia August 6, 2014 Bar Decision")).

[40]      Navarro Decl., ¶¶ 9-13 (paid nearly $5,000, was never added to a case or
provided with an accounting, and was forced to go to small claims court multiple
times to get his money back from Defendants); Torchia August 6, 2014 Bar
Decision at 13-15 (Keith and Myra Daily never added to cases against IndyMac, as
promised); *id.* at 30-32 (Yvonne Welling never added to case against Chase, as
promised).  Other consumers report demanding information about the status of
their cases and understanding that nothing whatsoever was done for them and that
they were never added to any case.  Rios Decl., ¶¶ 13-16 (paid more than $2,000
but was not added to a case and never got a response to his refund request);
Chapman Decl., ¶ 12 (paid more than $5,000 but, as far as he knew, was never
added to a case and no work was ever done for him); C. Durrett Decl., ¶¶ 14-17
(paid more than $6,000 but, as far as she could tell, was never actually added to the
case); Nava Decl., ¶¶ 8-12 (paid more than $6,000, as far as he knew was not
added to a case, and could not get a response when he called defendants).

nothing.  Contrary to the promised recoveries, all but one mass joinder lawsuit filed before 2016 has been dismissed for lack of prosecution, misjoinder, or failure to state a claim.  Consumers cannot even receive status updates because defendants are unavailable, difficult to reach, or unresponsive.[41]   Contrary to the claimed experience, the California Bar found Torchia "lacked and continues to lack the law-office-management skills and basic knowledge of mortgage lending law and bankruptcy law necessary to adequately and properly represent some 4,000 mortgage loan clients and to adequately supervise a law office staff of 30 to 40 employees," almost all of whom are sales people.  August 6, 2014 Decision.[42] Following Torchia's effective disbarment, Tarkowski, a lawyer admitted to the bar in 2014 with no experience suggesting he can effectively litigate hundreds of

---

[41]     Leonido Decl., ¶ 13 (added to a case but unable to get updates about the case).  The communication was so poor that some consumers were completely unaware they were added to cases.  Chapman Decl., ¶ 12; C. Durrett Decl., ¶¶ 14-17; Nava Decl., ¶¶ 8-12; Declaration of Malu Lujan ("Lujan Decl."), ¶ 15; Kolodziej Decl., ¶¶ 23-24 (added to cases without his knowledge, including after firing defendants); Madden Decl., Atts. 13, 42-44 (including complaints in *Bradford v. Bank of America*, in which Chapman was named as a plaintiff without his knowledge, *Brooksheir v. Bank of America*, in which the Durretts, Nava, and Lujan were named as plaintiffs without their knowledge; and *Lawley v. Bank of America*, in which Kolodziej was named as a plaintiff without his knowledge).
[42]     Torchia admitted at his ethics trial that he is "not a real estate attorney. . . . [or] a banking specialist."  Torchia Trial Transcript at II-164.  He further admitted that he was not competent to run a law firm:  "[T]his firm grew pretty fast, and, unfortunately for me, there was some learning—there was a learning curve that shouldn't have been a learning curve.  I tried to hire more—I did hire senior people, older than me, much more experienced than me, to do the work, but I didn't have someone above me to help me."  *Id.* at IV-127 to 128 (detailing several of the more "experienced" lawyers they tried and failed to convince to be a part of the scheme).  Although he is the attorney of record, in light of his incompetence, he even admits that he was not handling the mass joinder cases.  *Id.* at IV-9 ("Me personally?  I wasn't handling these mass-joinder cases.").

11

simultaneous fraud cases, represents the plaintiffs.[43]  In sum, it appears defendants are merely keeping complaints on file so they can continue to charge monthly fees.[44]

### C. The Mass Joinders Do Not Seek to Void Consumers' Notes.

Despite luring consumers with contrary representations, the mass joinder lawsuits do not even attempt to void consumers' notes.  If they did, the banks could remove the cases to federal court, where they would be promptly dismissed for misjoinder under the Federal Rules of Civil Procedure.  To avoid this result, defendants have explicitly opposed removal by stating that the lawsuits do not seek to void consumers' notes.[45]

### VI.  KUTZNER AND HIS COHORTS EACH HAVE CONTROL OVER THE SCHEME AND KNOWLEDGE OF THE FRAUDULENT CONDUCT.

### A. Kutzner Founded the Scheme After ULG Failed.

As described above, when ULG failed, Kutzner and Torchia marketed mass joinder lawsuits.  Kutzner is the purported COO of Brookstone running all non-legal operations,[46] continues to have an office at Advantis,[47] and controls the

---

[43]    Madden Decl., Atts. 45-46 & 48-49 (recent filings listing Tarkowski as attorney of record).

[44]    Current income is significant, almost certainly based on continuing monthly payments from defrauded consumers.  A very recent bank production showing Brookstone's account activity through November 2015, shows $1,474,108.77 in gross deposits between November 2014and November 2015, averaging more than $100,000 per month.  Kennedy Decl., ¶ 14.

[45]    *See* Madden Decl., Att. 50 (Pltf. Reply in Support of Motion to Remand, at 15-16, (DE 24), *Potter v. JP Morgan Chase Bank N.A.*, No. 11-10255 (C.D. Cal.) ("Plaintiffs do not seek to set aside Defendants' loans, nor rescind them but rather seek loss of equity damages resulting from Defendants' wrongful conduct.")).

[46]    *Legaspi v. Spivak*, 2013 WL 3947691 (Cal. Ct. App. July 30, 2013) ("Kutzner identified himself as Brookstone's chief operating officer."); Torchia

Advantis Law website.[48]  Kutzner was also integral in devising the scheme.  He introduced Kramer and Stein to Torchia and participated in meetings to determine how Brookstone could copy Kramer and Stein's mass joinder scheme.[49]  Kutzner's longtime accountant[50] is the registered agent for Advantis,[51] and is a signatory on

---

Trial Transcript at II-75 (Kutzner was COO); *Id.* at II-81 ("So [Kutzner] pretty much set up the business flow of the office.  He set up the computer systems, got the servers running, the telephone systems, the cubicles, knew how to train people, the business side of it, which I was never—I didn't know, which was new to me.  I knew the law side, or was getting to learn the law side, but I'm trained as a lawyer.").  *See also* Lewis Decl., Att. 5 ("Ex. A" to the compliance report including United Law Group employment agreement under which Kutzner was also the COO and, per the agreement, ran all non-legal portions of the business).

[47]    Ayoub Decl., ¶ 8.  *See also* Gales Decl., ¶ 29 (Kutzner filed complaint with CFPB using his Advantis Law contact information).

[48]    Kutzner, using the alias Damian Reimers, controls the Advantis Law website.  Gales Decl., Att. 19 at GD 000612 to 615 (account held by "Damian Reimers" controls the Advantis websites, among many others, including websites apparently related to Kramer and Stein).  Although an alias, it is obvious that this is actually Kutzner because one of his employees at his other company, Serious Pimp, is the email contact for the account.  *Id.* at GD 000612 (listing jcook@seriouspimp.com as the email contact); Gales Decl., Att. 9 (Serious Pimp incorporation papers identify Kutzner as the owner).  The same account controls Kutzner's personal websites.  Gales Decl., Att. 19 at GD 000613.  For at least one of the websites on the account he apparently slipped up and listed his actual name for the registration.  *Id.* at GD 000754.  Finally, several of the payment receipts list Kutzner as the payor.  *Id.* at GD 001053, GD 001062, GD 001087, GD 001113.

[49]    Torchia Trial Transcript at II-124 to 128, II-135 to 139.

[50]    Josephine Lobo, who dates back at least to ULG.  *See* Madden Decl., Att. 51 (Monthly Operating Statement, *In re United Law Group*, No. 10-bk-18945-RK (Bankr. C.D. Cal., Sept. 13, 2010), at 5-7, 10-11 (listing payments to Jospehine Lobo)).  She is also the signatory on an account of Broad Base Inc., d/b/a Serious Pimp, a company that Damian Kutzner is known to own and control.  *See*  Gales Decl., Att. 21 (Broad Base Inc. signature card); *Id.* (Inventory listing identifying Broad Base Inc. as "Broad Base Inc., DBA Serious PIMP"); *See also* Gales Decl., Att. 19 at GD001093 (Broad Base paying for Kutzner's personal websites).

many Brookstone bank accounts.[52]  Kutzner also apparently controls companies that received approximately a quarter of all payments from the defendants.[53]  Although Kutzner has tried to obfuscate his involvement, he clearly exercises control over the companies and is, almost certainly, a *de facto* owner of the companies and the defendants' ringleader.[54]

### B. Torchia Is a Founder and Principal.

As described above, Torchia was the purported owner of Brookstone and the original incorporator of Advantis.  Torchia was the attorney of record in most if not

---

[51]     Gales Decl., Atts. 4 & 5(Advantis Law PC and Advantis Law Group PC incorporation documents).

[52]     Gales Decl., Att. 21 (Business Account Add Signers Form adding Lobo as signer to Brookstone accounts 8561, 8819, 7928, and 8769);  Gales Decl., Att. 20 (0097 Signature Card, 0081 Signature Card, 8722 Signature Card, and 3466 Signature Card).

[53]     George Decl., Att. B. (showing Federal Management Systems Inc. receiving 22.5% of all disbursements for a total of $3,786,429.35 and Broad Base receiving 2.94% of all disbursements for a total of $440,634.14); Gales Decl., Att. 21 (Federal Management Systems Inc. signature card showing Josephine Lobo as a signer as well as "Wayne Andre");  *Id.* (Broad Base Inc. signature card showing Josephine Lobo as a signer); Kennedy Decl. at Att. 11 (news report identifying Wayne Andre, the purported owner of Federal Management Systems Inc., as a professional incorporator in Nevada that offers himself as a "straw" officer and director for companies).  Broad Base also received $119,420.14 from Brookstone in an account not included in Emil George's declaration because it was produced after George had completed his bank account review.  Kennedy Decl., ¶ 14.

[54]     A former Brookstone employee obtained a default judgment for back wages and testified that Kutzner was Brookstone's "CEO."  *See* Madden Decl., Att. 47 ("Order, Decision, or Award of the Labor Commissioner, *Smith v. Brookstone Law, P.C., Corporation*, No. 18-92557/529/530 (Calif. Labor Commissioner, Entered April 17, 2015)).

all of the scheme's mass joinder lawsuits,[55] is the only attorney listed in Brookstone advertisements,[56] and claims to have helped create the marketing.[57] Torchia is also aware that the advertising is false.[58]  Because he is ineligible to practice law, Torchia is no longer an attorney for either Brookstone or Advantis, but reportedly still works from Advantis' office.[59]

## C. Tarkowski is Now Brookstone's Only Attorney.

Following Torchia's ineligibility, Tarkowski emerged as Brookstone's only attorney of record and *de facto* owner, and then as an Advantis lawyer.[60]  On Brookstone's current bank signature card, Tarkowski is listed as its "managing

---

[55]     Madden Decl., Atts. 42-43 & 52 (selected mass joinder complaint excerpts, with Torchia's signature from 2011-14).

[56]     *See e.g.,* Rios Decl., Att. 1 at page 2; Navarro Decl., Att. 5 at page 2.

[57]     Torchia Trial Transcript at II-165 ("I manage the overall operations.  I make sure that it's being—like, the scripts are done right.  I make sure, you know, that we have meetings in which, well, we have tape reviews, because when clients call in, they're notified that 'This call is being recorded for quality and training purposes.'  I make sure that the managers are managing their staff.").

[58]     In responding to posts on a purported consumer advocacy website, Torchia contradicted the defendants' sales pitch by stating:  "Without question, we might lose some or all of these lawsuits.  Further, without question, some of our clients might win and others might lose.  It is therefore true that the retainer might do nothing more than increase our client's loss."  Kennedy Decl., Att. 10.

[59]     Ayoub Decl., ¶ 14.

[60]     *See, e.g.,* Madden Decl., Att. 36 (Separate Case Management Statement of Defendants at 13-15, *Wright v. Bank of America*, Case No. 30-2011-00449059-CU-MT-CXC (Super. Ct. Orange County, filed July 29, 2015) ("July BofA Filing") ("[Tarkowski] indicated he was [Brookstone's] only attorney. . . .   Mr. Tarkowski said he had spoken frequently with Mr. Torchia, and with Mr. Kutzner. . . ."); Madden Decl., Att. 53 (Fourth Amended Complaint, *Wright v. Bank of America*, Case No. 30-2011-00449059-CU-MT-CXC (Super. Ct. Orange County, filed January 4, 2016)) (Tarkowski is the only lawyer on the pleading).

attorney."[61]  Tarkowski is a junior lawyer, first admitted to the bar in 2014, without litigation experience, let alone experience in the type of complex cases defendants hawk.[62]  Tarkowski also works full time from the Advantis office.[63]  He has knowledge of defendants' wrongdoing, having been served with a copy of Bank of America's July 2015 filing highlighting defendants' dubious actions.[64]

### D. Marshall and Broderick are the New Owners of Advantis.

Following Torchia's ineligibility, Marshall and Broderick became Advantis' apparent owners and officers.  They both appear on the state incorporation papers and, until Marshall ran into issues with the bar in November 2015, both were listed as "Directors" on Advantis' website.[65]  A former Advantis employee confirms that Broderick claimed to own Advantis and worked at its office.[66]  Broderick is well aware of mass joinder fraud, having just recently stipulated to a judgment arising from an alleged mass joinder fraud he ran with Kramer, among others.[67]  Kramer, as noted above, was disbarred because of a mass joinder scheme and is one of the attorneys from whom Kutzner and Torchia learned to market their mass joinder scheme.  Broderick is also listed as a Brookstone attorney on Brookstone's current

---

[61]     Gales Decl., Att. 20 (signature card for account 7366).

[62]     Kennedy Decl., Att. 2 (Tarkowski's State Bar biography).

[63]     Ayoub Decl., ¶ 11.

[64]     *See* July BofA Filing (Proof of service includes Tarkowski).

[65]     Gales Decl., Att. 18 (Advantis website showing both as "Directors"). Following Marshall's suspension in November, he was scrubbed from the website and, at the same time, Broderick was also scrubbed from the website, likely because he is not licensed to practice law in California.  Kennedy Decl., Att. 8 (attorney page no longer identifying any lawyers).

[66]     Ayoub Decl., ¶¶ 4, 10.

[67]     Madden Decl., Att. 54 (Stipulated Final Judgment and Order for Permanent Injunction and Settlement of Claims as to Defendant Geoffrey Broderick, *Florida v. Berger Law Group PA*, 14-cv-1825 (M.D. Fla., Feb. 27, 2015)).

bank signature card.[68]  Marshall does not work from the Advantis office, but appeared in the *Wright v. Bank of America* suit, and is aware of defendants' wrongdoing.[69]

## ARGUMENT

### I.   THE FTC IS LIKELY TO SUCCEED ON THE MERITS AGAINST ALL OF THE DEFENDANTS

Preliminary relief is appropriate because the FTC is likely to succeed and the equities are presumed to favor such relief.[70]  "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *World Wide Factors, Ltd.*, 882 at 347.  Critically, the public interest includes the ability to provide consumers "effective relief." *Id.* Preliminary relief is both appropriate and necessary because defendants engaged in a scheme to defraud consumers in violation of the FTC Act and, absent relief, are likely to continue, abscond with evidence, and dissipate assets.

---

[68]    Gales Decl., Att. 20 (signature card for account 7366).

[69]    *See* July BofA Filing (Proof of service includes Marshall).

[70]    *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989) ("the district court is required (i) to weigh equities; and (ii) to consider the FTC's likelihood of ultimate success before entering a preliminary injunction"); *Id.* at 347 ("Because irreparable injury must be presumed in a statutory enforcement action, the district court need only to find some chance of probable success on the merits.") (quoting *U.S. v. Odessa Union Warehouse Co-op*, 833 F.2d 172 at 176 (9th Cir. 1987)); *FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999) (same and further stating the FTC Act "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction") (quoting *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984)).

### A. Defendants Violated Section 5 of the FTC Act By Lying to Consumers to Convince Them to Sign Up for Their Mortgage Relief Services.

Defendants violated Section 5 of the FTC Act, prohibiting "unfair or deceptive acts or practices." 15 U.S.C. § 45(a). "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (quoting *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)). Defendants lied: (1) about the likelihood of success in mass joinder litigation; (2) that they will provide certain services, such as seeking to void consumers' notes in the mass joinder lawsuits and adding consumers to mass joinder lawsuits; and (3) that they have the experience and resources necessary to litigate complicated lender fraud cases on behalf of hundreds or thousands of consumers simultaneously. These claims are presumed material and in fact affected consumers' decisions.[71]

Defendants told every consumer there was a high likelihood of success in the mass joinder litigation, assuring each he had a strong case. Defendants promised many, if not most, they would recover at least $75,000. Defendants told consumers it was a "done deal" and "it was not a question of whether I would win my cases, but how much money I would get." Of course, defendants have never obtained a judgment for any of their clients and it is unlikely they ever will,

---

[71]     *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994) ("Express product claims are presumed to be material."). *See also* FTC Policy Statement on Deception, Oct. 14, 1983, reprinted in *Cliffdale Associates Inc.*, 103 F.T.C. 110, at 175 (1984) (stating an "act or practice . . . likely to affect the consumer's conduct or decision with regard to a product or service" is material); *Pantron I Corp.*, 33 F.3d at 1095 (adopting policy statement from *Cliffdale Associates*).

regardless of the merits of the cases, because they do not have the experience or resources necessary to litigate them.  This misrepresentation is material and typical of those that violate the FTC Act.[72]

Defendants also lie to consumers about:  (1) filing a mass joinder case that would seek to void the consumer's note and (2) adding consumers to mass joinder litigation.[73]  Contrary to statements that the cases will seek to void consumers' notes, they argue in court that the cases do not seek to void notes.  As shown above, there are also a number of people who are promised they will be added to a case who then are never added.  In these instances, defendants simply do not deliver the promised services.

Defendants also lie when they claim to be experienced lender law litigators capable of obtaining the promised results.  The lead attorney, Vito Torchia, does not have any relevant experience and the California bar found him incompetent to represent these clients.[74]  The current lead attorney, Tarkowski, lacks the promised experience given that he was admitted to the bar in 2014, after many of the consumers had already signed up.  The California Bar found, and it is

---

[72] *See, e.g., FTC v. Network Svcs. Depot Inc.*, 617 F.3d 1127, 1139-40 (9th Cir. 2010) (finding claims that consumers could expect to earn $1,000 per month from internet kiosks material and unreasonable); *FTC v. Wolf*, 1996 WL 812940 (S.D. Fla. 1996) (express claims of money to be earned and success others have achieved are material because they concern issues at the heart of consumers' purchase decisions), *aff'd* 113 F.3d 1251 (11th Cir. 1997); *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053-4 (C.D. Cal. 2002) (consumers highly unlikely to make potential $20k-$45k per year when 64 people had submitted a total of 2,641 medical claims for earnings of $3 per claim).

[73] As noted above, many are never added to cases.

[74] August 6, 2014 Bar Decision at 4 ("[Torchia] lacked and continues to lack the law-office management skills and basic knowledge of mortgage lending law and bankruptcy law to adequately and properly represent some 4,000 mortgage loan clients and to adequately supervise a law office staff of 30 to 40 employees.").

unquestionably true, that a firm with only one, or a handful of attorneys, cannot prosecute 4,000 separate claims.  The mass joinder lawsuits involve only one shared fact—a claimed conspiracy to artificially raise home values—with each consumer's mortgage case to be proved separately.[75]  Unlike a class action, they are truly separate cases under a shared case number.  Currently, Tarkowski, as to whom there is no evidence he has done a trial of any kind, claims to solely represent more than 800 clients whose claims, if pursued, could result in more than 800 separate trials.  Defendants' claimed experience and ability to obtain the promised results cannot be true.

### B. Defendants' Disclaimers Are Not Effective.

Defendants may argue that "disclaimers" corrected any express promises about the likelihood of success.  But, they are part of a 10-page, legalese contract and contradict defendants' express sales pitch.[76]  When a consumer specifically asked about the disclaimer, she was told "it was just legal words in the retainer and they had to use them in the agreement, but there was no risk of losing."[77]  She was further assured that she "shouldn't pay attention to the disclaimer because the case against Countrywide had already been proven" and "trust me, I can assure you that you will get $75,000."[78]  This Court granted summary judgment in a similar case in

---

[75]    *Petersen v. Bank of America*, 181 Cal. Rptr. 3d 330, 340-41 (Cal. Ct. App. 2014) (shared issues are only whether Countrywide drove up home prices and systematically concealed loan terms, noting that actual damages would "of course vary widely" depending on circumstances).  The dissenting judge noted: "[T]o recover on the cause of action for intentional misrepresentation or the cause of action for negligent misrepresentation, each and every plaintiff—yes, each one of them—will have to submit evidence to prove liability and damages."  *Id.* at 345.

[76]    *See. e.g.*, Navarro Decl., Att. 2 at 2 (disclaimer in paragraph e.).

[77]    Irannejad Decl., ¶ 14.

[78]    *Id.*

the face of nearly identical disclaimers.  *See FTC v. A to Z Marketing, Inc.*, 13-cv-919 (C.D. Cal. Sept. 17, 2014) (granting summary judgment).  In other cases, courts have repeatedly found disclaimers in subsequent documents or that contradict express claims ineffective.[79]

Additionally, the retainer agreements contain other unenforceable provisions and have previously been found unconscionable.  The agreements' statements that fees paid by consumers are fully earned regardless of the amount of work, if any, performed by defendants,[80] contradict the California Bar's rulings on advance and flat fees, as found in the Bar's decision to suspend Torchia.[81]  Furthermore, one consumer challenged these agreements in fee arbitration, and the Orange County Bar Association arbitrators found the retainer agreements unconscionable.[82]

---

[79]    *Resort Car Rental v. FTC*, 518 F.2d 962 (9th Cir. 1975) ("The Federal Trade Act is violated if [the advertising] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999) (disclaimers in contract consumers received after initial sales pitch were not sufficient to defeat summary judgment on Section 5 falsity claim), *aff'd* 265 F.3d 944 (9th Cir. 2001); *FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) ("Defendants' attempts to create a factual dispute in this issue are unavailing. . . . Defendants cannot inoculate themselves from the representations that appear in the body of the text by including these cautionary statements at the foot of the advertisements."); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (holding that fine print disclaimers that contradicted express claims were ineffective).

[80]    *See, e.g.*, Navarro Decl., Att. 2 at 5 (paragraph f.).

[81]    *See, e.g.,* August 6, 2014 Bar Decision at 40 (ruling that Torchia failed to refund unearned fees to mass joinder clients).

[82]    Kolodziej Decl., ¶ 21, Att. E.

21

### C. The Corporate Defendants are Liable as a Common Enterprise.

Brookstone and Advantis form a classic common enterprise, the touchstone of which is operating through a "maze of interrelated companies" with shared control, office space, employees, and services.[83] This standard is easily met here and extends to non-defendants like Broad Base Inc. and FMS, entities Kutzner controls and through which he has funneled significant consumer funds.

### D. Each of the Individual Defendants Are Liable Because They Have Control, Participate in the Acts, and Have Knowledge.

Each Individual Defendant is liable for injunctive relief because each controls the Corporate Defendants or participated in the wrongful conduct.[84] They are subject to monetary liability because they "had knowledge that the [company] or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted.[85] The "knowledge" requirement is met by proof of "actual knowledge of material misrepresentations, . . . reckless[] indifferen[ce] to the truth or falsity of a misrepresentation, or . . . awareness of a high probability of fraud along with an intentional avoidance of the truth."[86] "The

---

[83]     *See Delaware Watch v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964); *FTC v. Network Svcs Depot*, 617 F.3d 1127, (9th Cir. 2010) ("[Q]ualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues."); *accord FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (common enterprise shown where corporate defendants were under common control; shared office space, employees, and officers").

[84]     *See, e.g., FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009); *FTC v. Publishing Clearing House, Inc.*, 1170-71  104 F.3d 1168, (9th Cir. 1997).

[85]     *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014) (quoting *Publishing Clearing House*, 104 F.3d at 1171).

[86]     *Grant Connect*, 763 F.3d at 1101-02.

extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability."[87]  Kutzner and Torchia plainly had this knowledge given that they controlled the marketing materials, changed the name of the operating company when Torchia began having bar difficulties, and absconded when they believed that the California Court of Appeals was going to hold mass joinders *per se* unlawful.  Tarkowski and Marshall have knowledge given that they took over following Torchia's bar suspension and received copies of filings in *Wright v. Bank of America*, detailing the likely fraudulent aspects of defendants' business.[88]  Broderick's knowledge stems from his ownership and operation of the companies following Torchia's bar suspension.  *See, Publishing Clearing House*, 104 F.3d at 1171 (holding officer liable because she filed for business licenses while knowing that the owner was facing criminal charges).  He also is aware of the high probability of fraud and is at least intentionally avoiding the truth because he joined this scheme after the Connecticut and Florida Attorneys General sued him for running a nearly identical scheme with two individuals who taught Kutzner and Torchia how to run this scheme.[89]

---

[87]     *FTC v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999).
[88]     The filing details defendants' general unsavoriness, including defendants' close connections to Kramer and Stein, and related unlawful conduct.  Separate Case Management Statement of Defendants, *Wright v. Bank of America*, No. 30-2011-00449059-CU-MT-CXC (Super. Ct. Orange, filed July 29, 2015).  Additionally, while Tarkowski and Marshall were lawyers of record, Brookstone sent out notices to clients claiming they still expected to prevail in the lawsuit.  *See* Rios Decl., ¶¶ 17-18 & Att. 7.
[89]     Kramer and Gary DiGirolamo.  *See* fn. 10.

### E. Although Unnecessary For the Court's Ruling, the FTC is also Likely to Prevail on the MARS Rule Counts, Including the Advance Fee Ban.

All of the relief included in the proposed TRO is supported by defendants' high likelihood of violating Section 5 of the FTC Act, and the Court need not reach the following issue to grant the requested preliminary relief. Nonetheless, defendants also violated several provisions of the Mortgage Assistance Relief Services ("MARS") Rule. 12 C.F.R. Part 1015 (recodified as Regulation O by the Consumer Financial Protection Bureau). Defendants offered MARS by offering to void consumers' notes or otherwise obtain loan concessions through litigation. 12 C.F.R. § 1015.2 ("negotiating, obtaining, or arranging a modification of any term of a dwelling loan"). As a result, they were prohibited from taking advance fees, 12 C.F.R. § 1015.5, and making any misrepresentations like those detailed above, 12 C.F.R. § 1015.3(b). Furthermore, their advertisements were required to include certain disclosures, but did not do so. *See* 12 C.F.R. § 1015.4. The proposed TRO, therefore, contains optional language for the Court to include if it decides to reach this issue.

Defendants' only possible defenses are that they fit within the narrow exemption for some attorneys or that, because of a recent MARS Rule decision in Wisconsin, the MARS Rule is invalid as applied to attorneys in the practice of law. However, neither argument can prevail. First, the attorney exemption only applies if defendants are (1) providing services as part of the practice of law, (2) licensed in the relevant states, and (3) complying "with state laws and regulations that cover the same type of conduct the rule requires." 12 C.F.R. §1015.7(a). Factor (3) requires compliance with state ethics rules, such as "the competent and diligent provision of legal services, communication with clients, charging and receipt of fees, promotion of services, and not engaging in fraudulent or deceitful conduct."

FTC's MARS Rule Statement of Basis and Purpose, 75 F.R. 75128.[90]  As each of the consumer declarants attest, they did not receive the services they were promised and were unable to obtain timely updates on their legal representation. Defendants absconded with unearned fees and sold their services with misrepresentations.  This is corroborated by the August 6, 2014, California State Bar Court decision that Torchia violated his ethical duties and Torchia's admissions at the bar trial.[91]

Even if they met that exemption, defendants would still be barred from advance fees unless they:  (1) deposited fees in client trust accounts and (2) maintained those accounts in accordance with state regulations.  12 CFR 1015.7(b).  As the California Bar explains, fees withdrawn from client trust accounts must be substantiated by work performed and the withdrawals must be documented.[92]  Here, bank records show that funds were not deposited in client

---

[90]    The FTC's interpretation and explanation of its own rule has nearly the same force as the rule's text.  *See, e.g., Decker v. NW Environmental Defense Ctr.*, 133 S. Ct. 1326, 1337 (2013) ("It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail.  When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.") (internal quotes omitted).

[91]    Torchia Trial Transcript at IV-118 (admitting that he and Brookstone failed to adequately explain to consumers what it meant to be added to a case and when consumers could be added to cases, and further admitted that they had instilled "unreasonable expectations" in clients); Torchia Trial Transcript at IV-112 to IV-114 (admitting that he and Brookstone failed to communicate with clients, even after they would send multiple complaints to him in writing).

[92]    The California Bar's "Handbook on Client Trust Accounting for California Attorneys" explains that fees must be withdrawn after they have been earned and unearned fees must be returned to the client as soon as they request them.  At 20 (withdrawal is appropriate after fees have been earned), *available at* http://ethics.calbar.ca.gov/Publications/ClientTrustAccountingHandbook.aspx

trust accounts and that defendants spent consumers' money as soon as they received it.[93]  Additionally, all consumers report defendants took advance fees and, when refunds were sought, defendants could not substantiate what if any work was done for them.

Second, the only other possible MARS Rule defense would rely on another district's almost certainly incorrect ruling that the MARS Rule is invalid as applied to attorneys in the practice of law.  *CFPB v. The Mortgage Law Group LLP*, 2016 U.S. Dist. LEXIS 4663 (W.D. Wisc. Jan. 14, 2016).  That court's ruling ignores that the FTC was empowered to engage in rulemaking addressing "unfair or deceptive acts or practices involving loan modification and foreclosure rescue services" covering all entities "subject to enforcement of the Federal Trade Commission Act."[94]  Attorneys are, plainly, subject to enforcement of the FTC

---

("Trust Handbook").  Although California law does not strictly require advance fees be kept in a trust account, they are permitted to do so under California law and the MARS Rule is clear that fees must be kept in trust accounts to meet this exemption from the advance fee ban.  Statement of Basis and Purpose, 75 FR 75133.  Furthermore, even if not maintained in a client trust account, the Handbook explains that advance fees must be accounted for in the same way. Trust Handbook at 16 (stating that advance fees can be placed in trust accounts, that they are not earned until work is performed, and that there is an accounting requirement for these fees "regardless of whether such fee payments are designated as 'nonrefundable' in the attorney-client fee agreement").

[93]     George Decl., Att. A (showing accounts, none of which are client trust accounts); *Id.*, Att. C (monthly summaries of activity of accounts, showing money flowing out of the accounts nearly as fast as it is deposited).

[94]     Section 626 of the Omnibus Appropriations Act of 2009, as modified by the Credit Card Act of 2009.  This was not modified by the Dodd-Frank Act.  Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, 124 Stat 1376, § 1061(b)(5)(B)(i).

Act.[95]  Indeed, this Court applied the FTC Act to attorneys under similar circumstances in *FTC v. A to Z Marketing, Inc.*, 13-cv-919 (C.D. Cal. Sept. 17, 2014) (granting summary judgment).  The *Mortgage Law Group* ruling also fails to take into account the FTC's reasoned explanation of its authority over attorneys in propounding the MARS Rule.[96]  Although that court cites no authority for its ruling, it apparently relied on defendants' mis-cited authority that attorneys are beyond the FTC's jurisdiction.  *ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005).  That authority, however, held only that attorneys are not "financial institutions" subject to regulation under the Gramm-Leach-Bliley Act.[97]  The DC Circuit has even suggested that, if read as a ruling that attorneys are beyond the scope of federal regulation, the ruling is contrary to the Supreme Court's decision in *Milavetz, Gallp & Milavetz, P.A. v. U.S.*, 559 U.S. 229 (2010), in which the Supreme Court held that attorneys are bound by federal regulations.[98]

---

[95]    *See e.g., FTC v. Sup. Ct. Trial Lawyers Assoc.*, 493 U.S. 411 (1990) (affirming a ruling that trial lawyers violated Section 5 by engaging in an illegal boycott); *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) (affirming summary judgment over attorney and law firm offering credit repair services); *In the Matter of Wilson Chemical Co.*, 64 F.T.C. 168 (1964) (holding attorney liable for his role in sending deceptive collections letters as part of deceptive scheme).

[96]    Statement of Basis and Purpose, 75 FR 75128-32 (explaining the frequency with which attorneys participate in MARS fraud schemes, the cases the FTC and State AGs have brought, and the requirement that attorneys abide by state ethics rules to be entitled to an exemption from the MARS Rule).

[97]    *ABA*, 430 F.3d at 381 ("[A]ttorneys and law firms, even viewed as 'institutions,' are not institutions 'the business of which is engaging in financial activities,' as defined in the statute.").  *See also CFPB v. Frederick J. Hanna & Assocs. P.C.*, 2015 U.S. Dist. LEXIS 91357, *27-31 (N.D. Ga. July 14, 2015) (rejecting arguments that the *ABA* decision requires that attorneys not be subject to the FDCPA).

[98]    *Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 459 (D.C. Cir. 2012).

In any event, this misguided ruling is not binding on this Court. Procedurally, that court has not issued its final ruling on the matter, leaving open for trial whether the defendants are even attorneys in the practice of law, the ultimate outcome of which could moot its decision on the scope of the MARS Rule.[99]  Furthermore, even if interpreted as a current invalidation of the MARS Rule as applied to attorneys in the practice of law, it does not bind this Court because nonmutual collateral estoppel does not apply against the government. *United States v. Mendoza*, 464 U.S. 154, 162 (1984).  The Ninth Circuit has similarly held that when a district court invalidates a rule, its ruling should not constitute nationwide injunction against the government because such a result is more than what is necessary to resolve the dispute amongst the parties and would inappropriately stifle litigation where, as here, multiple courts in many jurisdictions are likely to hear similar disputes.  *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664-65 (9th Cir. 2011).[100]

---

[99]     The court set trial to determine if the defendants in that case were even attorneys in the practice of law.  *CFPB v. The Mortgage Law Group LLP*, 14-cv-513 (W.D. Wisc., April 21, 2016).

[100]    Admittedly, the Ninth Circuit has ruled otherwise in a decision later vacated. *Earth Island Institute v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2006) (invalidation of a rule requires a nationwide injunction).  On appeal to the Supreme Court, the Solicitor General argued that *Earth Island* is contrary to *Mendoza*.  2007 U.S. Briefs 463; 2008 U.S. S. Ct. Briefs LEXIS 615; 2008 WL 2817674. Ultimately, the Supreme Court did not reach the issue, instead holding that the plaintiffs lacked standing to challenge the rule at issue and vacating the Ninth Circuit's ruling.  *Summers v. Earth Island Institute*, 555 U.S. 488 (2009).

## II. AN *EX PARTE* TRO, WITH ASSET FREEZE, EXPEDITED DISCOVERY, AND APPOINTMENT OF A TEMPORARY RECEIVER IS NECESSARY TO PREVENT DEFENDANTS FROM DISSIPATING ASSETS AND DESTROYING EVIDENCE.

### A. An *Ex Parte* TRO is Necessary to Ensure This Court Will be Able to Grant Effective Relief.

Because defendants are engaged in fraud and have proven themselves incapable of complying with court orders, *ex parte* relief is necessary and proper.[101]  *Ex parte* relief is particularly appropriate "when it is the sole method of preserving a state of affairs in which the court can provide effective final relief."[102] In circumstances like these, providing defendants notice would defeat the purpose of the TRO by giving them the opportunity to dissipate assets and destroy evidence.

Defendants are unlikely to comply with court orders.  The evolution of ULG to Brookstone to Advantis shows defendants' willingness to change names to perpetuate their fraudulent practices.  Additionally, Kutzner, Torchia, Broderick, and Marshall are all MARS fraud recidivists.  Kutzner in particular is violating a prior order from this Court by perpetrating this fraud; the third time the FTC has been forced to bring his unlawful actions to this Court's attention.[103]  Aside from

---

[101]     Fed. R. Civ. P. 65(b)(1)(a) (providing for *ex parte* relief when "immediate and irreparable injury, loss, or damage will result" upon notice).  As the Supreme Court and Ninth Circuit have explained, *ex parte* relief is appropriate when necessary to preserve the status quo and particularly when defendants are unlikely to comply with court orders.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

[102]     *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2nd Cir. 1979)

[103]     Kutzner is also violating the reporting obligations of his 2009 Order, which require him to provide annual updates explaining his compliance with that order and identifying his residence and business activities.  He has not filed such a report since 2010.  Lewis Decl. ¶ 5.

recidivism, Kutzner, Torchia, and Broderick have a history of violating court orders.  After ULG filed for bankruptcy, Kutzner, with Torchia's help, violated a bankruptcy court order when he absconded with ULG's computers and monitors by "breaking and entering" the bankruptcy estate's premises.[104]  In one of the mass joinder cases, *Randall v. CitiGroup*, the court sanctioned Brookstone and Torchia, ultimately issuing a bench warrant to compel Torchia's appearance after he and Brookstone ignored the Court's orders.[105]  Broderick is also likely violating his own court order from his other recent mass joinder scheme.  Moreover, in a case related to that scheme, the court sanctioned him for failing to comply with his discovery obligations,[106] and he testified that during discovery and prior to a 30(b)(6) deposition he destroyed both the computer and cell phone he used to conduct business.[107]  Finally, as explained in the FTC's Rule 65 certification, FTC defendants in cases like this one routinely attempt to thwart Court orders by absconding with assets and destroying evidence.  Rule 65(b)(1) Certification and Declaration of Benjamin J. Theisman in Support of *Ex Parte* Motion for a Temporary Restraining Order, Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief, and Order to Show

---

[104]    *In re United Law Group Inc.*, No. 10-18945 (Bankr. C.D. Cal.); Transcript of Hearing on June 30, 2011, at 94.

[105]    *See* Order to Show Cause Re Compliance of August 7, 2016 Order (Dkt. 52) and Why Enforcement or Contempt Proceedings Should Not Commence, *Randall v. Citigroup, Inc.*, LA CV14-00097 JAK (AGRx) (C.D. Cal. Filed Feb. 23, 2015).

[106]    Memorandum Opinion, *First Mariner Bank v. The Resolution Law Group*, No. MJG-12-1133 (D. Md., Filed Oct. 24, 2013).

[107]    After he had been sued and a few weeks to a month before a 30(b)(6) deposition, he destroyed the cell phone he used for business.  Ex. 4, Deposition of Robert Geoffrey Broderick, *First Mariner Bank v. The Resolution Law Group*, No. 12-cv-1133 (D. Md., Dec. 18, 2013) ("Broderick Depo"), at 78-80.  He also disposed of the laptop that he used for business after he had been sued.  *Id.* at 62-68.

Cause Why a Preliminary Injunction Should Not Issue.[108]  Furthermore, this Court

has issued multiple orders like the Proposed TRO,[109] as have other judges in this

district.[110]

### B. A Complete Asset Freeze is Necessary.

An asset freeze is necessary to preserve the possibility of restitution for

victimized consumers.  This Court has the power to enter a complete asset

freeze,[111] which is necessary because defendants are likely to dissipate or hide

---

[108]    *Vuitton*, 606 F.2d at 2-5 (granting *ex parte* relief based on certification that in prior actions defendants had taken steps to thwart court orders).

[109]    Temporary Restraining Order Including an Asset Freeze and Limits on Using Assets, Appointment of a Receiver, Immediate Access to Business Premises, Limited Expedited Discovery, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, *FTC v. A to Z Mktg., Inc. et al.*, No. SACV13-919 DOC (RNBx) (C.D. Cal., June 19, 2013); *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Expedited Discovery, and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue, *FTC v. Am. Mortgage Consulting Group, LLC et al.*, No. SACV12-01561 DOC (JPRx) (C.D. Cal., Sept. 18, 2012).

[110]    *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue, *FTC v. Good EBusiness LLC et al.*, No. CV16-1048 ODW (JPRx) (C.D. Cal., Feb. 16, 2016); *Ex Parte* Temporary Restraining Order and Other Equitable Relief, *FTC v. Telestar Consulting, Inc. et al.*, No. CV-16-00555 SJO (SSx) (C.D. Cal., Feb. 1, 2016); *Ex Parte* Temporary Restraining Order with an Asset Freeze and Other Equitable Relief, an Order to Show Cause Why a Preliminary Injunction Should Not Issue, *FTC v. Bam Financial LLC et al.*, No. SACV 15-01672 JVS (DFMx) (C.D. Cal., October 21, 2015).

[111]    The Court has authority to issue an asset freeze. *See, e.g., FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1990) (finding the district court authorized to issue an asset freeze in 13(b) case).

31

assets.[112]  As the Ninth Circuit explained, "[o]bviously, the public interest in preserving the illicit proceeds . . . for restitution to the victims is great." *FTC v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999).  As explained above, defendants' actions are permeated with fraud, which alone makes an asset freeze necessary.[113]  Furthermore, the banking records show likely dissipation.  The largest, by far, share of disbursements from defendants' enterprise go to an entity known as Federal Management Services, Inc. ("FMS"), ostensibly controlled by a convicted fraudster who is a professional incorporator in Nevada specializing in providing corporate secrecy.[114]  In reality, FMS is almost certainly controlled by Kutzner, who is using "straw" officers to hide these assets.  This is consistent with Kutzner's history of using purportedly unrelated entities to hide funds.  During his 2008 bankruptcy, he admitted to keeping significant assets in the name of

---

[112]    *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  Although under *Johnson* a court must find dissipation likely, previous Ninth Circuit law required simply the possibility.  *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989).  It is likely that this latter standard should apply in the context of a government enforcement action.  The *Johnson* court overruled *Sahni* in the context of private litigants where the private litigant was required to show "irreparable harm." *Johnson*, 572 F.3d at 1085, fn. 11.  But, the FTC need not show irreparable harm in a statutory enforcement action like this one.  Whatever the standard, the facts here are sufficient.

[113]    Fraudulent activities "lead to the conclusion that, absent a freeze, [defendants] would either dispose of, or conceal, or send abroad, all of the moneys that they have obtained[.]"  *H.N. Singer*, 668 F.2d at 1113; *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972).

[114]    George Decl., Att. B (showing Federal Management Services Inc. receiving 22.9% of all disbursements from defendants' bank accounts and further showing the next largest recipient of money only received 9.07%.); Gales Decl., Att. 21 (signature card for FMS including Wayne Andre and Josephine Lobo); Kennedy Decl., Att. 11 (news article explaining Wayne Andre's role in helping people set up secret companies and detailing his previous financial misconduct).

companies he purportedly did not control for "asset protection" purposes.[115]
Similarly, as disclosed by FMS' registered agent, Kutzner has in the past
controlled multiple other companies with "straw" officers hiding his
involvement.[116]  In addition, as shown above:  (1) Kutzner uses aliases; (2)
defendants systematically and improperly dissipate consumer' funds, in violation
of client trust accounting procedures; (3) Torchia blatantly ignored court sanctions
until hauled before the court on a bench warrant; (4) Brookstone refused to pay an
employee for work performed; and (5) Brookstone refused to comply with a court
order to refund money to a consumer, forcing that consumer to go to small claims
court twice.[117]  Given the nature of the fraud and defendants' past practices, it is
highly likely that they will hide assets to thwart any possible recovery in this suit.

---

[115]    Ex. 5, Section 341(a) Creditors' Examination of Damian Kutzner, *In re Kutzner*, No. 08-bk-12656 (Bankr. C.D. Cal., July 14, 2008) ("Kutzner Depo") at 13-15.

[116]    These documents include a list of companies that the registered agent provided services for, including entities like Black Gold Leasing Inc. that bank records show Kutzner controlled, and other entities that the document associates him with, but which he is absent from in the public records, including HTM LLC, Liberty Management Group Inc., Scripts Development Inc., UHG Inc., United Holdings and Acquisitions Inc., and ZEC Management Corp.   Gales Decl., Att. 8 (Federal Management Systems, Inc. Incorporation Papers, including list of entities the registered agent was resigning for and identifying the client);  Gales Decl., Att. 21 (showing Kutzner as a signer for Black Gold Leasing Inc.); Gales Decl., Att. 10 (Black Gold Leasing Inc. Incorporation Papers); Gales Decl., Att. 11 (HTM LLC Incorporation Papers); Gales Decl., Att. 12 (Liberty Management Group Inc. Incorporation Papers); Gales Decl., Att. 13 (Scripts Development Inc. Incorporation Papers); Gales Decl., Att. 14 (UHG Inc. Incorporation Papers); Gales Decl., Att. 15 (United Holdings and Acquisitions Inc. Incorporation Papers); Gales Decl., Att. 16 (ZEC Management Corp. Incorporation Papers).

[117]    Navarro Decl., ¶¶ 9-13.

### C. The TRO's Expedited Discovery Provisions Are Necessary to Preserve Assets and Evidence.

The TRO contains expedited discovery provisions to ensure compliance with the TRO's asset freeze and receivership provisions.   Fed. R. Civ. P. 26(d) (permitting expedited discovery on motion of a party); Fed. R. Civ. P. 33(b) (permitting the Court to shorten discovery response periods); Fed. R. Civ. P. 34(b) (same); Fed. R. Civ. P. 36(a) (same); *Pantron I*, 33 F.3d at 1102 ("[T]he authority granted by section 13(b) is not limited to the power to issue an injunction; rather it includes the authority to grant any ancillary relief necessary to accomplish complete justice.") (internal citations and quotations omitted).  This Court has included these provisions in previous TROs[118] and they are necessary given the likelihood that defendants will attempt to thwart this Court's TRO.

### D. A Temporary Receiver is Necessary to Preserve the Status Quo.

Under Section 13(b) of the FTC Act, the Court has wide latitude to fashion temporary relief that furthers the statutory purpose.  *H.N. Singer*, 668 F.2d at 1112-13.  This power includes the appointment of a temporary receiver.  *See, e.g., FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984) (holding that the court has inherent power "to grant ancillary relief, including freezing assets and appointing a Receiver, as an incident to its express statutory authority to issue a permanent injunction under Section 13") (per curiam).  When a corporate defendant, through its management, has defrauded members of the public, "it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste" to the detriment of the fraud's victims.  *SEC v. First Fin. Group*, 645 F.2d 429, 438 (5th Cir. 1981).

---

[118]   *See supra* at fn. 109.

34

Because the receiver would be taking over ostensible law firms, the specific provisions in the proposed TRO provide guidance to protect "clients" and ensure that the "clients" of the firm are able to obtain replacement counsel for any pending actions.[119]  The proposed receivership includes Broad Base Inc. and FMS in addition to Brookstone and Advantis.  These entities share ownership and employees, and are involved in the scheme.  Such relief is necessary to ensure that the receiver can fully take control over the enterprise and all of its assets.  This Court has previously included non-defendants in receiverships.[120]  Other courts have also done so, using language nearly identical to that in the proposed TRO,[121] including holding defendants liable for the conduct they committed through non-defendant members of the common enterprise.[122]

---

[119]    In particular, the proposed TRO requires the Temporary Receiver to identify and preserve client files, contact current clients to inform them of the receivership, file notices in ongoing litigation informing those courts of the receivership, and file requests for stays of litigation to allow clients to obtain replacement counsel in light of the receivership.

[120]    *See* Temporary Restraining Order Including an Asset Freeze and Limits on Using Assets, Appointment of a Receiver, Immediate Access to Business Premises, Limited Expedited Discovery, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, *FTC v. A to Z Mktg., Inc. et al.*, No. SACV13-919 DOC (RNBx) (C.D. Cal., June 19, 2013).

[121]    *See* Temporary Restraining Order with Ancillary Equitable Relief, Including Asset Freeze, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, *FTC v. Ideal Financial Solutions Inc. et al.*, No. 13-00143 MMD-GWF (D. Nev., January 30, 2013).

[122]    *See, e.g., FTC v. Ideal Financial Solutions Inc.*, 2016 WL 756527 at *3 (D. Nev. Feb. 23, 2016) (holding defendants liable for $10 million in illegal conduct committed through a non-defendant, Zeal Money Solutions).

## CONCLUSION

Because the FTC is likely to succeed on the merits, having proved that the defendants, who are incorrigible recidivists, are engaged in a fraudulent scheme, the Court should grant the *ex parte* TRO, which, among other things, freezes the defendants' assets and puts a receiver in charge of the fraudulent scheme.

Respectfully submitted,

Dated: May 26, 2016

Benjamin J. Theisman
Gregory J. Madden

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

36

BENJAMIN THEISMAN, *pro hac vice*
btheisman@ftc.gov
GREGORY J. MADDEN, *pro hac vice*
gmadden@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-9528
Washington, DC 20580
(202) 326-2223; -2426; -3197 (facsimile)

THOMAS SYTA, Cal. Bar No. 116286
tsyta@ftc.gov
FEDERAL TRADE COMMISSION
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
(310) 824-4343; (310) 824-4380 (facsimile)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

DAMIAN KUTZNER, individually and as
an officer of BROOKSTONE LAW P.C.
(California), BROOKSTONE LAW P.C.
(Nevada), ADVANTIS LAW P.C., and
ADVANTIS LAW GROUP P.C.;VITO
TORCHIA, JR., individually and as an
officer of BROOKSTONE LAW P.C.
(California) and BROOKSTONE LAW
P.C. (Nevada); JONATHAN
TARKOWSKI, individually and as an
officer of BROOKSTONE LAW P.C.
(California) and BROOKSTONE LAW
P.C. (Nevada); R. GEOFFREY
BRODERICK, individually and as an
officer of ADVANTIS LAW P.C. and
ADVANTIS LAW GROUP P.C.;
CHARLES T. MARSHALL, individually
and as an officer of ADVANTIS LAW
P.C. and ADVANTIS LAW GROUP P.C.;
BROOKSTONE LAW P.C., d/b/a
BROOKSTONE LAW GROUP, a
California professional corporation;
BROOKSTONE LAW P.C., d/b/a
BROOKSTONE LAW GROUP, a Nevada

Case No. _____

**[PROPOSED] EX PARTE
TEMPORARY
RESTRAINING ORDER
WITH ASSET FREEZE,
APPOINTMENT OF
TEMPORARY RECEIVER,
LIMITED EXPEDITED
DISCOVERY, AND OTHER
EQUITABLE RELIEF, AND
ORDER TO SHOW CAUSE
WHY PRELIMINARY
INJUNCTION SHOULD NOT
ISSUE**

**[LODGED UNDER SEAL]**

1

professional corporation; ADVANTIS
LAW P.C., a California professional
corporation; and ADVANTIS LAW
GROUP P.C., a California professional
corporation,

Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (Mar. 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, has filed a complaint to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Mortgage Assistance Relief Services Rule ("MARS Rule"), 16 C.F.R. Part 322, recodified as Mortgage Assistance Relief Services, 12 C.F.R. Part 1015 ("Regulation O"), and has applied for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

This Court, having considered the FTC's Complaint, *ex parte* application, declarations, exhibits, and memoranda filed in support of the FTC's application, and the evidence presented, finds that:

1.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto;

2.      There is good cause to believe that venue lies properly with this Court;

3.      There is good cause to believe that Defendants Damian Kutzner, Advantis Law P.C., Advantis Law Group P.C., Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), Vito Torchia, Jonathan Tarkowski, Geoffrey Broderick, and Charles Marshall have engaged, and are likely to continue to engage, in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), including but not limited to falsely and misleadingly representing, directly or indirectly, expressly or by implication that:

a. Defendants are likely to obtain relief for consumers, including in some instances "at least $75,000" or consumers' homes free and clear;

b. Defendants will seek to void consumers' mortgages;

c. Defendants have a team of experienced lawyers and personnel to litigate mass joinder cases alleging lender fraud and related claims on behalf of hundreds or thousands of clients simultaneously; and

d. Defendants will file lawsuits on particular consumers' behalf.

4.      **[PROPOSED MARS RULE LANGUAGE**: There is good cause to believe that Defendants Damian Kutzner, Advantis Law P.C., Advantis Law Group P.C., Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), Vito Torchia, Jonathan Tarkowski, Geoffrey Broderick, and Charles Marshall have engaged and are likely to continue to engage in acts or practices that violate the MARS Rule, 12 C.F.R. Part 1015, including but not limited to:

a. Misrepresenting, expressly or by implication, material aspects of any mortgage assistance relief services, in violation of the MARS Rule; 12 C.F.R. § 1015.3(b);

3

b.  Failing to make disclosures in all general and consumer-specific commercial communications as required by the MARS Rule;  12 C.F.R. § 1015.4(a)-(c);

c.  Asking for or receiving payment of any fee or other consideration before a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's loan holder or servicer in violation of the MARS Rule; 12 C.F.R. § 1015.5(a);**]**

5.  There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act **[PROPOSED MARS RULE LANGUAGE:**  and MARS Rule**]** unless Defendants are restrained and enjoined by Order of this Court;

6.  There is good cause to believe that the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will suffer immediate and irreparable damage from the Defendants' transfer, dissipation, or concealment of their Assets or business records unless Defendants continue to be restrained and enjoined by Order of this Court and that, in accordance with Fed. R. Civ. P. 65(b), the interest of justice requires that the FTC's application be heard *ex parte* without prior notice to Defendants.  Therefore, there is good cause for relieving the FTC of the duty to provide Defendants with prior notice of the FTC's application;

7.  Good cause exists to permit the FTC to take limited expedited discovery from third parties as to the existence and location of Assets and Documents;

8.  Weighing the equities and considering the FTC's likelihood of ultimate success, a temporary restraining order with an Asset freeze, limited

expedited discovery as to the existence and location of Assets and Documents, and other equitable relief is in the public interest; and

9.      No security is required of any agency of the United States for the issuance of a Temporary Restraining Order.  Fed. R. Civ. P. 65(c).

## **DEFINITIONS**

For the purposes of this Temporary Restraining Order, the following definitions apply:

A.      **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Defendants, or held for the benefit of Defendants, wherever located, whether in the United States or abroad, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), shares of stock, futures, all cash or currency, and trusts, including but not limited to a trust held for the benefit of any Defendant, any of the Individual Defendants' minor children, or any of the Individual Defendants' spouses, and shall include both existing Assets and Assets acquired after the date this order is signed, or any interest therein.

B.      "**Asset Freeze Accounts**" includes accounts that are held by or for the benefit of, or controlled by, directly or indirectly, any Corporate Defendant, Individual Defendant, Broad Base Inc., Federal Management Systems Inc., Black Gold Leasing Inc., Doheny Development Corporation, HTM LLC, Liberty Management Group Inc., Scripts Development Inc., Serious Pimp Inc., UHG Inc., United Holdings and Acquisitions Inc., Vizcayan Corporation, and ZEC Management Corp.  Asset Freeze Accounts also includes the following accounts, identified by the account holder, the Financial Institution, and last four digits of the account number:

1.      Advantis Law, Bank of America, No. unknown;

2.      Advantis Law, California Republic Bank, No. unknown;

3.      Black Gold Leasing Inc., JPMorgan Chase, 7178;

4.      Broad Base Inc., JPMorgan Chase, 3379;

5.      Broad Base Inc., JPMorgan Chase, 3819;

6.      Brookstone Law P.C., JPMorgan Chase, 9552;

7.      Brookstone Law P.C., JPMorgan Chase, 8561;

8.      Brookstone Law P.C., JPMorgan Chase, 7928;

9.      Brookstone Law P.C., JPMorgan Chase, 8769;

10.     Brookstone Law P.C., JPMorgan Chase, 8819;

11.     Brookstone Law P.C., JPMorgan Chase, 6317;

12.     Brookstone Law P.C., JPMorgan Chase, 9052;

13.     Brookstone Law P.C., Bank of America, 0081;

14.     Brookstone Law P.C., Bank of America, 0097;

15.     Brookstone Law P.C., Bank of America, 0098;

16.     Brookstone Law P.C., Bank of America, 0099;

17.     Brookstone Law P.C., Bank of America, 2747;

18.     Brookstone Law P.C., Bank of America, 2748;

19.     Brookstone Law P.C., Bank of America, 2909;

20.     Brookstone Law P.C., Bank of America, 3466;

21.     Brookstone Law P.C., Bank of America, 8722;

22.     Brookstone Law P.C., Bank of America, 8735;

23.     Brookstone Law P.C., Bank of America, 7366;

24.     Brookstone Law P.C., CitiBank, No. unknown;

25.     Charles T. Marshall, JPMorgan Chase, 4691;

26.     Charles T. Marshall, JPMorgan Chase, 4708;

27.     Charles T. Marshall, JPMorgan Chase, 6085;

28.    Charles T. Marshall, JPMorgan Chase, 7957;

29.    Charles T. Marshall, JPMorgan Chase, 8120;

30.    Charles T. Marshall, JPMorgan Chase, 2107;

31.    Charles T. Marshall, Bank of America, 1763;

32.    Damian Kutzner, JPMorgan Chase, 9111;

33.    Doheny Development Corp., JPMorgan Chase, 5983;

34.    Federal Management Systems Inc., JPMorgan Chase, 2850;

35.    Geoffrey Broderick, JPMorgan Chase, 9253;

36.    Geoffrey Broderick, JPMorgan Chase, 3571;

37.    Geoffrey Broderick, JPMorgan Chase, 4891;

38.    Geoffrey Broderick, JPMorgan Chase, 9914;

39.    Geoffrey Broderick, JPMorgan Chase, 6319;

40.    Geoffrey Broderick, JPMorgan Chase, 9209;

41.    Vito Torchia, JPMorgan Chase, 8371;

42.    Vito Torchia, JPMorgan Chase, 3853;

43.    Vito Torchia, JPMorgan Chase, 7060;

44.    Vito Torchia, JPMorgan Chase, 8993;

45.    Vito Torchia, JPMorgan Chase, 5587;

46.    Vito Torchia, JPMorgan Chase, 7490;

47.    Vito Torchia, JPMorgan Chase, 9320; and

48.    Vizcayan Corporation, JPMorgan Chase, 7307.

C.    **"Assisting others"** includes but is not limited to:  (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic

communications; (3) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services; (4) providing names of, or assisting in the generation of, potential customers; (5) performing or providing marketing, billing, or payment services of any kind; (6) acting or serving as an owner, officer, director, manager, or principal of any entity; (7) providing telemarketing services; or (8) consulting with regard to any of the above.

D. **"Corporate Defendants"** means, collectively, Advantis Law P.C., Advantis Law Group P.C., Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

E. **"Defendants"** means all Individual Defendants, Corporate Defendants, and their successors, assigns, affiliates, subsidiaries, or agents, individually, collectively, or in any combination, and each of them by whatever names each might be known.

F. **"Document"** is synonymous in meaning and equal in scope to the terms "Document" and "electronically stored information," as described and used in the Federal Rules of Civil Procedure.  This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on:  cards; magnetic or electronic tapes; disks; computer hard drives; network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.

G. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.  This

includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

H.     **"Financial Institution"** means any bank, savings and loan institution, credit union, payment processor, trust, or any financial depository of any kind, including but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

I.     **"Individual Defendants"** means, collectively, Damian Kutzner, Vito Torchia, Jonathan Tarkowski, Geoffrey Broderick, Charles Marshall, and any other names they might use, have used, be known by or have been known by.

J.     **"Mortgage assistance relief product or service"** or **"MARS"** means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1.     stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.     negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.     obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.     negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

9

5.     obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.     negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, (iii) or any other disposition of a dwelling loan other than a sale to a third party that is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services, or offering to sell a consumer a plan or subscription to a service that provides such assistance.

K.     **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation or other business entity.

L.     **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

M.     **"Receivership Entities"** means Corporate Defendants and any entities that are part of Defendants' common enterprise, including but not limited to Broad Base Inc. and Federal Management Systems Inc.  "Receivership Entities" includes businesses that lack formal legal structure (such as businesses operating under fictitious business names), but that otherwise satisfy the definition of "Receivership Entity."

N.     **"Temporary Receiver"** means the Temporary Receiver appointed in this Order.  The term "Temporary Receiver" also includes any deputy receivers or agents as may be named by the Temporary Receiver.

## I.     PROHIBITED REPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing,

10

promotion, offering for sale, sale, or performance of any service or product, are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

      A.    Defendants are likely to obtain relief for consumers, including "at least $75,000" or consumers' homes free and clear;

      B.    Defendants will seek to void consumers' mortgages;

      C.    Defendants have a team of experienced lawyers and personnel to litigate mass joinder cases alleging lender fraud and related claims; and

      D.    Defendants will file lawsuits on particular consumers' behalf.

## II.  *[PROPOSED MARS RULE LANGUAGE:* **DISCLOSURES REQUIRED BY AND REPRESENTATIONS PROHIBITED BY THE MARS RULE**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief product or service, are hereby temporarily restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

      A.    Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, as required by 12 C.F.R. § 1015.3(b);

      B.    Failing to make the following disclosure in all general and consumer-specific commercial communications:  "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," as required by 12 C.F.R. § 1015.4(a)(1) & 1015.4(b)(2);

      C.    Failing to make the following disclosure in all general and consumer-specific commercial communications:  "Even if you accept this offer and use our service, your lender may not agree to change your loan," as required by 12 C.F.R. § 1015.4(a)(2) & 1015.4(b)(3); and

D.      Failing to make the following disclosure in all consumer-specific commercial communications:  "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," as required by 12 C.F.R. § 1015.4(b)(1).  For the purposes of this subsection, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including but not limited to, all fees and charges.]

## III.    *[PROPOSED MARS RULE LANGUAGE:*  ADVANCE FEE PROHIBITION*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief product or service are hereby temporarily restrained and enjoined from asking for, or receiving payment of, any fee or other consideration until a consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer incorporating the offer of mortgage assistance relief the Defendants obtained on the consumer's behalf.**]**

## IV.    PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any product or service, are

hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents or records that relate to the business practices, or business and personal finances, of Defendants, or an entity directly or indirectly under the control of Defendants.

## V.   DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of the FTC's request for a preliminary injunction, (1) any Electronic Data Host and (2) Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall:

A.   Immediately take all necessary steps to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of services or products relating to consumers' mortgages or containing statements or representations prohibited by Section I of this Order cannot be accessed by the public; and

B.   Prevent the alteration, destruction or erasure of any (1) Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of services or products relating to consumers' mortgages by preserving such websites in the format in which they are maintained currently and (2) any electronically stored information stored on behalf of Corporate Defendants, or entities in active concert or participation with any of them.

## VI.   SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising,

marketing, promotion, offering for sale, sale, or provision of services or products relating to consumers' mortgages or containing statements or representations prohibited by Section I of this Order and provide immediate notice to counsel for the FTC of any other Internet domain names registered by Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

## VII.   **PROHIBITION ON USE OF CUSTOMER INFORMATION**

**IT IS FURTHER ORDERED** that Defendants, and Defendants' officers, agents, directors, servants, employees, salespersons, and attorneys, as well as all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, Social Security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to any customer's account, or other identifying information of any person which any Defendant obtained prior to when this Order is signed in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Defendants; provided that Defendants may disclose such identifying information to the Temporary Receiver, a law enforcement agency, or as required by any law, regulation, or court order.

## VIII.  **ASSET FREEZE**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons or entities directly or indirectly under the control of any of them, and all other persons or entities in

14

active concert or participation with any of them who receive actual notice of this Order are hereby temporarily restrained and enjoined from directly or indirectly:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets, or any interest therein, wherever located, including outside the United States, that are:

    1.    Asset Freeze Accounts;

    2.    owned or controlled, directly or indirectly, by any Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Defendant;

    3.    in the actual or constructive possession of any Defendant;

    4.    owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, including any entity acting under a fictitious name owned by or controlled by any Defendant, and any Assets held by, for, or under the name of any Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, payment processing company, precious metal dealer, or other Financial Institution or depository of any kind;

B.    Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant, or subject to access by any Defendant;

C.    Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant;

D.    Obtaining a personal or secured loan;

E.    Incurring liens or encumbrances on real property, personal property or other Assets in the name, singly or jointly, of any Defendant; and

F.      Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

**IT IS FURTHER ORDERED** that the Assets affected by this Section shall include:  (1) all Assets of Defendants as of the time this Order is signed; and (2) for Assets obtained after the time this Order is signed, those Assets of Defendants that are derived, directly or indirectly, from the Defendants' activities as described in the Commission's Complaint, including the activities of any Receivership Entity. This Section does not prohibit transfers to the Temporary Receiver, as specifically required in the Section titled "Transfer of Funds to the Temporary Receiver by Financial Institutions and Other Third Parties," nor does it prohibit the repatriation of foreign Assets, as specifically required in the Section titled "Repatriation of Foreign Assets" of this Order.

## IX.    RETENTION  OF ASSETS AND DOCUMENTS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any Financial Institution, business entity, Electronic Data Host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or other party subject to the Asset Freeze above, or has held, controlled, or maintained any such account, Document, or Asset, shall:

A.      Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, Document, or Asset held by or under such entity's or person's control, except as directed by further order of the Court;

B.     Provide the Temporary Receiver immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of any Defendants for forensic imaging;

C.     Deny access to any safe deposit boxes that are either titled in the name of, individually or jointly, or subject to access by, any Defendant or other party subject to the Asset Freeze above; and

D.     Provide to counsel for the FTC, within one (1) business day, a sworn statement setting forth:

1.     the identification of each account or Asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to the Asset Freeze above;

2.     the balance of each such account, or a description of the nature and value of such Asset, as of the close of business on the day on which this Order is served, the day before the Order is served, and the average daily balance for the six months before the Order is served;

3.     the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or other party subject to the Asset Freeze above; and

4.     if the account, safe deposit box, or other Asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other Asset was remitted;

E.     Provide counsel for the FTC, within three (3) business days after being served with a request, copies of all Documents pertaining to such account or Asset, including but not limited to:  account statements, account applications, signature cards, underwriting files, checks, deposit tickets, transfers to and from

the accounts, wire transfers, all other debit and credit instruments or slips, 1099 forms, and safe deposit box logs; and

F.     Cooperate with all reasonable requests of the FTC relating to this Order's implementation.

**IT IS FURTHER ORDERED** that this Section shall apply to both existing Documents, records, and Assets and to Documents, records, and Assets acquired after the date this Order is signed.  This Section does not prohibit transfers to the Temporary Receiver, as specifically required in the Section titled "Transfer of Funds to the Temporary Receiver by Financial Institutions and Other Third Parties," nor does it prohibit the repatriation of foreign Assets, as specifically required in the Section titled "Repatriation of Foreign Assets" of this Order.

## X.     FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of service of this Order, shall prepare and deliver to counsel for the FTC:

A.     For Individual Defendants, a completed financial statement, accurate as of the date of service of this Order upon such Defendant, in the form of Attachment A to this Order captioned "Financial Statement of Individual Defendant."

B.     For Corporate Defendants, a completed financial statement, accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel), in the form of Attachment B to this Order captioned "Financial Statement of Corporate Defendant."

## XI.    CREDIT REPORTS

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit

reporting agency from which such reports are requested shall provide them to the FTC.

## XII.   REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, within three (3) days following the service of this Order, each Defendant shall:

A.      Transfer to the territory of the United States and provide the FTC and the Temporary Receiver with a full accounting of all Assets, Documents, and records outside of the territory of the United States that are:

  1.      owned or controlled by;

  2.      subject to access by;

  3.      held in whole or in part for the benefit of;

  4.      belonging to any entity that is directly or indirectly owned, managed, or under the control of; or

  5.      belonging to a person under the control of any Defendant;

B.      Hold all repatriated Assets, Documents, and records as required by the Asset Freeze imposed by this Order; and

C.      Provide the FTC access to all records of accounts or Assets of the Defendants held by any Financial Institution or other person located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as Attachment C and by signing any other Documents required by any person, including any Financial Institution, or other person holding any such Asset.

## XIII.  NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or

through any entity, corporation, subsidiary, division, affiliate or other device, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding "Repatriation of Assets" Section of this Order, including, but not limited to:

A.    Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to the "Repatriation of Assets" Section of this Order; or

B.    Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Assets have been fully repatriated pursuant to "Repatriation of Assets" Section of this Order.

## XIV.  RECORDKEEPING AND BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from:

A.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.    Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship, limited liability company or corporation, without first providing the Commission with a written statement disclosing:  (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names

of the business entity's officers, directors, principals, managers, and employees;
and (4) a detailed description of the business entity's intended activities; and

  C.  Affiliating with, becoming employed by, or performing any work for
any business that is not a named Defendant in this action without first providing
the Commission with a written statement disclosing:  (1) the name of the business;
(2) the address and telephone number of the business; and (3) a detailed description
of the nature of the business or employment and the nature of the Defendant's
duties and responsibilities in connection with that business or employment.

## XV. **APPOINTMENT OF TEMPORARY RECEIVER**

  **IT IS FURTHER ORDERED** that _____ is
appointed Temporary Receiver for the Receivership Entities, with the full power of
an equity Receiver.  The Temporary Receiver shall be the agent of this Court and
solely the agent of this Court in acting as Temporary Receiver under this Order.
The Temporary Receiver shall be accountable directly to this Court.  The
Temporary Receiver shall comply with all local rules and laws governing federal
equity receivers.

## XVI. **COOPERATION WITH THE TEMPORARY RECEIVER**

  **IT IS FURTHER ORDERED** that Defendants shall fully cooperate with
and assist the Temporary Receiver.  Defendants' cooperation and assistance shall
include, but not be limited to, providing any information to the Temporary
Receiver that the Temporary Receiver deems necessary to exercise the authority
and discharge the responsibilities of the Temporary Receiver under this Order;
providing any login, password, or biometric identifier required to access any
computer or electronic files or information in or on any medium; and advising all
persons who owe money to the Receivership Entities that all debts should be paid
directly to the Temporary Receiver.  Defendants are hereby restrained and enjoined
from directly or indirectly:

A.     Transacting any of the business of the Receivership Entities;

B.     Excusing debts owed to the Receivership Entities;

C.     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Receivership Entities;

D.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, or the Temporary Receiver;

E.     Failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of any Assets within the receivership estate that the Receiver or the FTC has identified; or

F.     Doing any act or thing whatsoever to interfere with the Temporary Receiver's taking and keeping custody, control, possession, or managing of the Assets or Documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

**XVII. DUTIES AND AUTHORITY OF TEMPORARY RECEIVER**

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Entities by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity

from control of, management of, or participation in, the affairs of the Receivership Entities;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated.  The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage all Assets and Documents of the Receivership Entities and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Entities;

C.     Take all steps necessary to secure the business premises of the Receivership Entities, which may include, but are not limited to, taking the following steps as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Entities, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording and/or photographing all portions of the location at which any Receivership Entity conducts business or has Assets; (5) changing the locks and disconnecting any computer networks or other means of access to electronically stored information or other Documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receivers with proof of identification, and/or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities.  Such authority shall include, but not be limited to, the

authority to order any owner, director, officer, employee, or agent of the Receivership Entities to leave the business premises;

D.     Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the Assets and preventing the transfer, withdrawal, or misapplication of Assets;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Entities;

G.     Manage and administer the business of the Receivership Entities until further order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.     Continue and conduct the businesses of the Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the Assets of the receivership estate, and lawfully, if at all;

I.     Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of their duties and responsibilities, including but not limited to the law firm in which the Receiver is a partner;

J.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court

for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date this Order is signed, except payments that the Temporary Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

K.     Collect any money due or owing to the Receivership Entities;

L.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Temporary Receiver's mandate under this Order;

M.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Entities or the Temporary Receiver that the Temporary Receiver deems necessary and advisable to preserve the Assets of the Receivership Entities, or to carry out the Temporary Receiver's mandate under this Order;

N.     Take depositions and issue subpoenas to obtain Documents and records pertaining to the receivership and compliance with this Order.  Subpoenas may be served by electronic mail, by agents or attorneys of the Temporary Receiver and by agents of any process server retained by the Temporary Receiver;

O.     Open one or more bank accounts as designated depositories for funds of the Receivership Entities.  The Temporary Receiver shall deposit all funds of the Receivership Entities in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

P.     Maintain accurate records of all receipts and expenditures made by the Temporary Receiver;

Q.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

R.     Permit, within the Temporary Receiver's discretion, copies of client files to be given to a lawyer working for a Receivership Entity if the files relate to a matter other than one within the scope of the allegations in the Complaint;

S.     File, within the Temporary Receiver's discretion, notices in any ongoing litigation being conducted by a lawyer working for or with the Receivership Entity, informing that court and the parties, that the Receivership Entities have been placed in a receivership, that the Receivership Entities are withdrawing from the case, and further seek leave of that court for a stay of all proceedings for at least ninety (90) days to permit any client of the Receivership Entities to obtain replacement counsel, *provided, however*, that the Temporary Receiver will not be required to litigate, or hire attorneys to litigate, any such pending cases; and

T.     Identify all attorney-client files held by a Receivership Entity; take reasonable steps to contact current clients to inform them of the receivership; take reasonable steps to advise current clients that the Temporary Receiver will not be providing any attorney services and that the clients may seek replacement counsel; and return any client files to the clients upon request; *provided, however*, that the Temporary Receiver maintain a copy of all such client files; *and provided further*, the Temporary Receiver is authorized to work with representatives of the California State Bar to perform these actions.

**XVIII.     TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES**

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any Financial Institution shall cooperate with all reasonable requests of counsel for the FTC and the Temporary Receiver relating to implementation of this Order, including transferring funds at the Temporary Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XIX.  TEMPORARY RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court at least one day before the date set for the hearing regarding the Preliminary Injunction, regarding:  (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the Receivership Entities; (3) the sum of all liabilities of the Receivership Entities; (4) the steps the Temporary Receiver intends to take in the future to:  (a) prevent any diminution in the value of Assets of the Receivership Entities; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Entities, if appropriate; and (5) any other matters which the Temporary Receiver believes should be brought to the Court's attention. Provided, however, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership Assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

## XX.  TEMPORARY RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk of this Court a bond in the sum of $_____ with sureties to be approved by the Court, conditioned that the Temporary Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XXI.  COMPENSATION OF THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver, and all persons or entities retained or hired by the Temporary Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Entities.  The Temporary Receiver shall file with the Court and serve on the parties a request for the payment of

reasonable compensation at the time of the filing of any report required by the "Temporary Receiver's Reports" Section of this Order.  The Temporary Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

## XXII. TEMPORARY RECEIVER'S ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.     The Temporary Receiver, and his representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by any Receivership Entity, including but not limited to the offices and facilities at 6 Hutton Centre Drive, Suite 1000, Santa Ana, CA 92707, and any offsite commercial mail boxes or virtual offices used by any Receivership Entity.  The Temporary Receiver is authorized to employ the assistance of law enforcement as he deems necessary to effect service and peacefully implement this Order.  The Temporary Receiver may exclude Receivership Entities and their employees from part or all of the business premises during the immediate access.  The purpose of the immediate access shall be to effect service and to inspect and copy the business and financial records of the Receivership Entities, including forensic imaging of electronically stored information.  Such business records include, but are not limited to, correspondence, contracts, emails, and financial data;

B.     The Temporary Receiver and its representatives, agents, and assistants, shall have the right to remove materials from the above-listed premises for inspection and copying;

C.     Receivership Entities and all employees or agents of Receivership Entities shall provide the Temporary Receiver with any necessary means of access to Documents and records, including, without limitation, the locations of the

28

Receivership Entities' business premises, keys and combinations to locks, computer access codes, and storage area access information;

D.      If any Individual Defendant possesses a smartphone or tablet on receivership premises, they will turn over the device to the Receiver for imaging. Within two business days, the Temporary Receiver will return the device; and

E.      If any Documents, computers, smartphones, tablets, or electronic data storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including but not limited to, the personal residence(s) of the Defendants, then, immediately upon notice of this Order, Defendants shall produce to the Temporary Receiver all such Documents, computers, smartphones, tablets, or electronic data storage devices.  To prevent the destruction of electronic data, upon service of this Order upon any Receivership Entity, any computers, smartphones, tablets, or electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access.  For any smartphone or tablet that contains information related to the business practices or finances of the Receivership Entities that is in the personal possession of an Individual Defendant, the Temporary Receiver shall image that device and return it to the Individual Defendant within two business days.

XXIII.      __PARTIES' ACCESS TO BUSINESS PREMISES AND RECORDS__

**IT IS FURTHER ORDERED** that the Temporary Receiver shall allow the FTC, the Defendants, and their representatives reasonable access to the premises of the Receivership Entities.  The purpose of this access shall be to inspect, inventory, and copy any Documents and other property owned by, or in the possession of, the Receivership Entities, provided that those Documents and property are not

removed from the premises without the permission of the Temporary Receiver. The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.  The Temporary Receiver will segregate all materials subject to an attorney-client privilege held by a Receivership Entity's clients and shall not make these materials available to either the FTC or Defendants without the clients' consent.  The FTC's access to any Documents pursuant to this provision shall not provide grounds for any Defendant to object to any subsequent request for Documents served by the FTC.

**XXIV.**      **LIMITED EXPEDITED DISCOVERY**

**IT IS FURTHER ORDERED** that the Temporary Receiver and the FTC are granted leave to conduct certain expedited discovery and that in lieu of the time periods, notice provisions, and other requirements of the applicable Local Rules for this District and Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, the Temporary Receiver and the FTC are granted leave to:

A.      Depose, on three (3) days' notice, any party or non-party for the purpose of discovering: (1) the nature, location, status, and extent of Assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of Documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order.  Any such depositions shall not be counted toward any deposition limit set forth in the Federal Rules of Civil Procedure or this Court's Local rules and shall not preclude the FTC from subsequently deposing the same person during discovery on the merits in this case.  Depositions may be taken by telephone, video conference, or other remote means.  Any deposition taken pursuant to this Section that has not been reviewed and signed by the deponent may be used by any party for purposes of any preliminary injunction hearing;

B.      Serve upon parties interrogatories or requests for production of Documents or inspection that require a response, production or inspection within

30

four (4) days of service, and may serve subpoenas upon non-parties that direct production or inspection within seven (7) days of service, for the purpose of discovering:  (1) the nature, location, status, and extent of Assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of Documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order; provided, however, that forty-eight (48) hours' notice shall be deemed sufficient for the production of any such Documents that are maintained or stored as electronic data.  Any such interrogatories or requests for production or inspection shall not count toward any limit on discovery set forth in the Federal Rules of Civil Procedure or this Court's Local Rules;

C.     For purposes of this Section, serve deposition notices and other discovery requests upon the parties to this action personally or by facsimile, email, certified or registered mail, or private courier (including a process server) with a receipt from the courier showing delivery; and

D.     Pursuant to Fed. R. Civ. P. 45, subpoena Documents immediately from any Financial Institution, business entity, Electronic Data Host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to the Asset Freeze above, or has held, controlled, or maintained any such account, Document, or Asset.  The recipient shall respond to such subpoena within three (3) business days after service.  The FTC may effect service by electronic mail.

## XXV. **BANKRUPTCY PETITIONS**

**IT IS FURTHER ORDERED** that, in light of the appointment of the Temporary Receiver, the Receivership Entities are hereby prohibited from filing

petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XXVI.     PRE-EXISTING ORDERS

**IT IS FURTHER ORDERED** that nothing herein modifies any existing Order in any way, including the Orders governing Damian Kutzner.  *See FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction as to Defendants GM Funding, Inc., Robert D. Kutzner, Global Mortgage Funding, Inc., and Damian R. Kutzner (May 5, 2003); *U.S. v. Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction (July 17, 2009).  The FTC may take discovery and pursue any other measure any existing Order permits.

## XXVII.     STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.     Except by leave of this Court, during the pendency of the Temporary Receivership ordered herein, the Receivership Entities and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Receivership Entity, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

1.     Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.     Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate

any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

        3.     Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

        4.     Doing any act or thing whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, or management of Assets or Documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities.

    B.    This Section does not stay:

        1.     The commencement or continuation of a criminal action or proceeding;

        2.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

        3.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, including but not limited to any actions (including discovery) taken by the FTC in enforcing the Orders in the related matters, *FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.), *U.S. v. Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.); or

        4.     The issuance to the Receivership Entities of a notice of tax deficiency.

## XXVIII.    ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of receipt of this Order, must submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

## XXIX.    CORRESPONDENCE WITH PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent via electronic submission and Federal Express to:

> Benjamin Theisman
> Gregory Madden
> Federal Trade Commission
> 600 Pennsylvania Ave., NW, Mail Drop CC-9528
> Washington, DC 20580
> Telephone: (202) 326-2223, -2426
> btheisman@ftc.gov, gmadden@ftc.gov

## XXX. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile, email, hand-delivery, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any Financial Institution or other entity or person that may have possession, custody, or control of any Documents or Assets of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any Financial Institution shall effect service upon the entire Financial Institution.

### XXXI.    PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED**, pursuant to Fed. R. Civ. P. 65(b), that each of the Defendants shall appear before this Court on the _____ day of _____, 2016, at _____ AM/PM, Pacific Daylight Time, at the United States District Courthouse, Courtroom ____, Santa Ana, California, to show cause, if there is any, why this Court should not enter a preliminary injunction enjoining the violations of law alleged in the FTC's Complaint, continuing the freeze of their Assets, and imposing such additional relief as may be appropriate.

**IT IS FURTHER ORDERED** that the Defendants shall file with the Court and serve on the FTC's counsel any answering pleadings, affidavits, motions, expert reports, declarations, witness lists with detailed summaries of expected witness testimony, and/or legal memoranda, no later than seven days prior to the hearing.  The FTC may file responsive or supplemental pleadings, materials, affidavits, witness lists with detailed summaries of expected witness testimony, and/or memoranda with the Court and serve them on Defendants' counsel no later than one day prior to that hearing.  Such affidavits, pleadings, motions, expert reports, declarations, witness lists with detailed summaries of expected witness testimony, legal memoranda and/or oppositions must be served by electronic mail (or Federal Express, if electronic mail is impractical), and must be received by the other party no later than the deadlines set forth in this Section.

### XXXII.    DURATION OF ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on the _____ day of _____, 2016, at _____ AM/PM, Pacific Daylight Time, unless within such time the Order, for good cause shown, is extended for an additional period not to exceed fourteen (14) calendar days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

## XXXIII.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this __ day of _____, 2016, at _____ AM/PM, Pacific Daylight Time.

Dated: _____          _____
                                 DAVID O. CARTER
                                 UNITED STATES DISTRICT JUDGE

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT**

**Definitions and Instructions:**

1. Complete all items.  Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you.  If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed.  On the financial statement, state next to the Item number that the Item is being continued.  On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1)  "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2)  "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3)  "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1.  Information About You

| Full Name | Social Security No. | |
|---|---|---|

| Current Address of Primary Residence | Driver's License No. | State Issued |
|---|---|---|

| | Phone Numbers<br>Home: (     )<br>Fax:  (     ) | Date of Birth:     /     /<br>(mm/dd/yyyy) |
|---|---|---|
| | | Place of Birth |

| ☐Rent  ☐Own      From (Date):     /     /<br>(mm/dd/yyyy) | E-Mail Address |
|---|---|

| Internet Home Page |
|---|

### Previous Addresses for past five years (if required, use additional pages at end of form)

| Address | From:     /     /          Until:     /     /<br>(mm/dd/yyyy)          (mm/dd/yyyy)<br><br>☐Rent  ☐Own |
|---|---|
| Address | From:     /     /          Until:     /     /<br><br>☐Rent  ☐Own |
| Address | From:     /     /          Until:     /     /<br><br>☐Rent  ☐Own |

| Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used: |
|---|

### Item 2.  Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name | Social Security No. | Date of Birth<br>/     /<br>(mm/dd/yyyy) |
|---|---|---|

| Address (if different from yours) | Phone Number<br>(     ) | Place of Birth |
|---|---|---|
| | ☐Rent  ☐Own      From (Date):     /     /<br>(mm/dd/yyyy) | |

| Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used: |
|---|

| Employer's Name and Address | Job Title | |
|---|---|---|
| | Years in Present Job | Annual Gross Salary/Wages<br>$ |

### Item 3.  Information About Your Previous Spouse

| Name and Address | Social Security No. |
|---|---|
| | Date of Birth<br>/     /<br>(mm/dd/yyyy) |

### Item 4.  Contact Information (name and address of closest living relative other than your spouse)

| Name and Address | Phone Number<br>(     ) |
|---|---|

Initials: _____

**Item 5.  Information About Dependents** (whether or not they reside with you)

| Name and Address | Social Security No.<br>/   / | Date of Birth<br>/   /<br>(mm/dd/yyyy) |
|---|---|---|
| | Relationship | |
| Name and Address | Social Security No.<br>/   / | Date of Birth<br>/   /<br>(mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No.<br>/   / | Date of Birth<br>/   /<br>(mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No.<br>/   / | Date of Birth<br>/   /<br>(mm/dd/yyyy) |
| | Relationship | |

**Item 6.  Employment Information/Employment Income**

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period.  "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (*e.g.*, health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| | From (Month/Year)<br>/ | To (Month/Year)<br>/ | Year<br>20 | Income<br>$<br>$ |
| Ownership Interest?  ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year)<br>/ | To (Month/Year)<br>/ | Year<br>20 | Income<br>$<br>$ |
| Ownership Interest?  ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |
| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
| | From (Month/Year)<br>/ | To (Month/Year)<br>/ | Year<br>20 | Income<br>$<br>$ |
| Ownership Interest?  ☐ Yes ☐ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |
| | /  | /  | | $ |

Initials: _____

Attachment A                    39

### Item 7.  Pending Lawsuits Filed By or Against You or Your Spouse

List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory.  *Note:  At Item 12, list lawsuits that resulted in final judgments or settlements in your favor.  At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

### Item 8.  Safe Deposit Boxes

List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include <u>ALL</u> assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

## ASSETS

### Item 9.  Cash, Bank, and Money Market Accounts

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit.  The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a.  Amount of Cash on Hand  $ | | Form of Cash on Hand | |
|---|---|---|---|
| b.  Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

### Item 10.  Publicly Traded Securities

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds.  Also list any U.S. savings bonds.

| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|---|
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |

Initials: _____

## Item 11.  Non-Public Business and Financial Interests

List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## Item 12.  Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |

## Item 13.  Life Insurance Policies

List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
| | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
| | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14.  Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
| | Date Established /  / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
| | Date Established /  / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15.  Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected  (mm/dd/yyyy) |
|------|-----------------|------------------------------|
|  | $ | /   / |
|  | $ | /   / |
|  | $ | /   / |

## Item 16.  Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make |  | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model |  | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make |  | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model |  | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make |  | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model |  | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make |  | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model |  | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17.  Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property  Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
|  |  |  | $ | $ |
|  |  |  | $ | $ |
|  |  |  | $ | $ |

Initials: _____

**Item 18.  Real Property**
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy)<br>/   / | Purchase Price<br>$ | Current Value<br>$ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract<br>$ |
|---|---|---|
| | | Monthly Payment<br>$ |

| Other Mortgage Loan(s) (describe) | Monthly Payment<br>$ | ☐ Rental Unit |
|---|---|---|
| | Current Balance<br>$ | Monthly Rent Received<br>$ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy)<br>/   / | Purchase Price<br>$ | Current Value<br>$ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract<br>$ |
|---|---|---|
| | | Monthly Payment<br>$ |

| Other Mortgage Loan(s) (describe) | Monthly Payment<br>$ | ☐ Rental Unit |
|---|---|---|
| | Current Balance<br>$ | Monthly Rent Received<br>$ |

## LIABILITIES

**Item 19.  Credit Cards**
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

**Item 20.  Taxes Payable**
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

**Item 21.  Other Amounts Owed by You, Your Spouse, or Your Dependents**
List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred<br>    /    /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred<br>    /    /<br>(mm/dd/yyyy) | Original Amount Owed<br>$ | Current Amount Owed<br>$ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

**Item 22.  Trusts and Escrows**
List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents.  Include any legal retainers being held on your behalf by legal counsel.  Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| |    /    / | | | $ |
| |    /    / | | | $ |
| |    /    / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

**Item 23.  Transfers of Assets**
List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties).  For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ |    /    / | |
| | | $ |    /    / | |
| | | $ |    /    / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

### Item 24.  Document Requests
Provide copies of the following documents with your completed Financial Statement.

| | |
|---|---|
| | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
| | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes.  You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22.  Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

### Item 25.  Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | **Other Liabilities (Itemize)** | |
| Deferred Income Arrangements (Item 14) | $ | | $ |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| **Other Assets (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Assets** | $ | **Total Liabilities** | |

### Item 26.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents
Provide the current monthly income and expenses for you, your spouse, and your dependents.  Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) | | Expenses | |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

| **Item 26.  Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.)** | | | |
|---|---|---|---|
| Distributions from Trusts and Estates<br>Source: | $ | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements<br>Source: | $ | Other Insurance Premiums | $ |
| Social Security Payments | $ | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | **Other Expenses (Itemize)** | |
| Gambling Income | $ | | $ |
| **Other Income (Itemize)** | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| **Total Income** | $ | **Total Expenses** | $ |

## ATTACHMENTS

| **Item 27.  Documents Attached to this Financial Statement** | |
|---|---|
| List all documents that are being submitted with this financial statement.  For any Item 24 documents that are not attached, explain why. | |
| Item No. Document Relates To | Description of Document |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

      I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

## FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1.      Complete all items.  Enter "None" or "N/A" ("Not Applicable") where appropriate.  If you cannot fully answer a question, explain why.

2.      The font size within each field will adjust automatically as you type to accommodate longer responses.

3.      In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.      When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.      Attach continuation pages as needed.  On the financial statement, state next to the Item number that the Item is being continued.  On the continuation page(s), identify the Item number being continued.

6.      Type or print legibly.

7.      An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

**Item 1.**        **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

 E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**        **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status:  Active _____ Inactive _____ Dissolved _____

If Dissolved:  Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**        **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

**Item 4.**          **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

<u>Name & Address</u>                                                                                  <u>% Owned</u>

_____  _____

_____  _____

_____  _____

_____  _____

**Item 5.**          **Board Members**

List all members of the corporation's Board of Directors.

<u>Name & Address</u>                                                      <u>% Owned</u>    <u>Term (From/Until)</u>

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

**Item 6.**          **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

<u>Name & Address</u>                                                                                  <u>% Owned</u>

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

<u>**Item 7.**</u>       **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

<u>Name & Address</u>                                    <u>Business Activities</u>    <u>% Owned</u>

_____    _____  _____

_____    _____  _____

_____    _____  _____

State which of these businesses, if any, has ever transacted business with the corporation _____

_____


<u>**Item 8.**</u>       **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

<u>Individual's Name</u>              <u>Business Name & Address</u>              <u>Business Activities</u>   <u>% Owned</u>

_____  _____   _____  _____

_____  _____   _____  _____

_____  _____   _____  _____

State which of these businesses, if any, have ever transacted business with the corporation _____

_____


<u>**Item 9.**</u>       **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date.  A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

<u>Name and Address</u>                       <u>Relationship</u>        <u>Business Activities</u>

_____  _____  _____

_____  _____  _____

_____  _____  _____

**Item 10.**          **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
| _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | \_\_\_\_\_ |
| _____ | _____ | _____ | \_\_\_\_\_ |

**Item 11.**          **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 12.**          **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

<u>Item 13.</u>          **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____Status_____

**Item 14.**          **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Page  7                                                                          Initials _____
Attachment B                                    54

<u>Item 15.</u>        **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

<u>Item 16.</u>        **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation.  *On a separate page, describe the contents of each box.*

<u>Owner's Name</u>        <u>Name & Address of Depository Institution</u>                                    <u>Box No.</u>

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____ _____

**<u>FINANCIAL INFORMATION</u>**

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

<u>Item 17.</u>        **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years.  *Attach copies of all returns.*

| <u>Federal/<br>State/Both</u> | <u>Tax Year</u> | <u>Tax Due<br>Federal</u> | <u>Tax Paid<br>Federal</u> | <u>Tax Due<br>State</u> | <u>Tax Paid<br>State</u> | <u>Preparer's Name</u> |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

**Item 18.**    **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|---------------------------|----------|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

**Item 19.**    **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|---|---|---|---|---|
| Gross Revenue | $_____ | $_____ | $_____ | $_____ |
| Expenses | $_____ | $_____ | $_____ | $_____ |
| Net Profit After Taxes | $_____ | $_____ | $_____ | $_____ |
| Payables | $_____ | | | |
| Receivables | $_____ | | | |

**Item 20.**    **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation.  The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of  Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|---|---|---|---|
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |

**Item 21.**         **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____


**Item 22.**         **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____


Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

<u>**Item 23.**</u>        **Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

<u>**Item 24.**</u>        **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

**Item 25.**          **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**          **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

**Item 27.**          **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**          **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

|      Name of Credit Card or Store      |      Names of Authorized Users and Positions Held      |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 29.**          **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date.  "Compensation"  includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans.  "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
| --- | --- | --- | --- | --- |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 30.**          **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years.  "Compensation"  includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans.  "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 31.**          **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |

Page  14

Attachment B

Initials _____

**Item 32.**          **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____          _____

(Date)                                                          Signature

                                                                _____

                                                                Corporate Position

## CONSENT TO RELEASE OF FINANCIAL RECORDS

       I,_____, residing at_____, in the United States of America, do hereby direct any bank, trust company, or financial institution, at which I have an account of any kind or at which a corporation or natural person has a bank account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in their possession or control that relate to any such account to any attorney or representative of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of the *Federal Trade Commission v. Damian Kutzner et al.*, before the United States District Court for the Central District of California, and this shall be irrevocable authority for so doing.

       This direction is intended to apply to the laws of countries other than the United States that restrict or prohibit the disclosure of financial information without the consent of the holder of the account, or its officers, and shall be construed as consent with respect thereto, and the same shall apply to any of the accounts for which I may be a relevant principal.


Dated: _____, 2016

Name (print): _____


Signature: _____