DAVID C. SHONKA, Acting General Counsel
BENJAMIN J. THEISMAN, *pro hac vice*
btheisman@ftc.gov
GREGORY J. MADDEN, *pro hac vice*
gmadden@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
Tel:  (202) 326-2223, -2426; Fax:  (202) 326-3197

THOMAS SYTA, Cal. Bar No. 116286
tsyta@ftc.gov
FEDERAL TRADE COMMISSION
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax:  (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> DAMIAN KUTZNER, individually and as an officer of BROOKSTONE LAW P.C. (California), BROOKSTONE LAW P.C. (Nevada), ADVANTIS LAW P.C., and ADVANTIS LAW GROUP P.C.; VITO TORCHIA, JR., individually and as an officer of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada); JONATHAN TARKOWSKI, individually and as an officer of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada); R. GEOFFREY BRODERICK, individually and as an officer of ADVANTIS LAW P.C. and ADVANTIS LAW GROUP P.C.; CHARLES T. MARSHALL, individually and as an officer of ADVANTIS LAW P.C. and ADVANTIS LAW GROUP P.C.; BROOKSTONE LAW P.C., d/b/a BROOKSTONE LAW GROUP, a California professional corporation; BROOKSTONE LAW P.C., d/b/a BROOKSTONE LAW GROUP, a Nevada | **Case No. SACV-00999-BRO (AFMx)** <br><br> **FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

1  professional corporation; ADVANTIS
   LAW P.C., a California professional
2  corporation; ADVANTIS LAW GROUP
   P.C., a California professional corporation,
3  and JEREMY FOTI, individually and as an
   officer of BROOKSTONE LAW P.C.
4  (California), BROOKSTONE LAW P.C.
   (Nevada), ADVANTIS LAW P.C., and
5  ADVANTIS LAW GROUP P.C.

6                    Defendants.

7

8        Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint, alleges:

9        1.    The FTC brings this action under Section 13(b) of the Federal Trade

10  Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the 2009 Omnibus

11  Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11,

12  2009) ("Omnibus Act"), as clarified by the Credit Card Accountability

13  Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123

14  Stat. 1734, 1763-64 (Mar. 22, 2009) ("Credit Card Act"), and amended by the

15  Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-

16  203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"),

17  12 U.S.C. § 5538, to obtain temporary, preliminary, and permanent injunctive

18  relief, rescission or reformation of contracts, restitution, the refund of monies paid,

19  disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts

20  or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the

21  Mortgage Assistance Relief Services Rule ("MARS Rule"), 16 C.F.R. Part 322,

22  recodified as Mortgage Assistance Relief Services, 12 C.F.R. Part 1015

23  ("Regulation O").

24                    **JURISDICTION AND VENUE**

25       2.    This Court has subject matter jurisdiction over this matter under 28

26  U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b); and Section 626 of

27  the Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended

28  by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  Pursuant to the Omnibus Act § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763-64, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322.  The MARS Rule generally defines mortgage assistance relief services as express or implied assistance in, among other things, stopping or delaying foreclosures, negotiating or obtaining any modification of any term of a mortgage loan, and obtaining forbearance on mortgage payments.  The MARS Rule prohibits certain conduct by providers of mortgage assistance relief services, including the collection of advance fees, the making of certain representations, and the failure to make certain disclosures.  The Dodd-Frank Act, § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, transferred rulemaking authority over the MARS Rule to the Consumer Financial Protection Bureau, which recodified the MARS Rule as 12 C.F.R. Part 1015 effective December 30, 2011, and designated it Regulation O.  Pursuant to the Dodd-Frank Act, § 1097, 12 U.S.C. § 5538, the FTC retains its authority to enforce the MARS Rule and Regulation O.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act; the Omnibus Act as clarified by the Credit Card Act and amended by the Dodd-Frank Act; the MARS Rule; and Regulation O, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B); § 626, 123 Stat. at 678, as clarified by § 511, 123 Stat. at 1763-64

1   and amended by § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538; and 16 C.F.R.

2   Part 322, recodified as 12 C.F.R. Part 1015.

3                           **DEFENDANTS**

4       6.    Defendant Brookstone Law P.C. (California), doing business as

5   Brookstone Law Group ("Brookstone California"), is a California professional

6   corporation. Defendant Brookstone Law P.C. (Nevada), doing business as

7   Brookstone Law Group ("Brookstone Nevada") (collectively with Brookstone

8   California, "Brookstone"), is a Nevada professional corporation with a business

9   address at 3050 Sirius Ave., Suite 104, Las Vegas, Nevada 89102. Brookstone's

10  principal places of business are, or were, at 6 Hutton Centre Drive, Santa Ana,

11  California; 1503 South Coast Drive, Costa Mesa, California; 18400 Von Karman

12  Avenue, Suite 1000, Irvine, California; and 18331 Von Karman Avenue, Irvine,

13  California. Brookstone transacts or has transacted business in this district. At

14  times material to this Complaint, acting alone or in concert with others, Brookstone

15  has advertised, marketed, distributed, or sold mortgage assistance relief services to

16  consumers in this district. Brookstone is a "law firm" offering mortgage assistance

17  relief services to consumers by representing them in litigation against their lenders.

18     7.    Defendants Advantis Law P.C. and Advantis Law Group P.C.

19  (collectively, "Advantis") are California professional corporations. Advantis'

20  principal places of business are, or were, at 6 Hutton Centre Drive, Santa Ana,

21  California; 18400 Von Karman Avenue, Suite 1000, Irvine, California; and 18331

22  Von Karman Avenue, Irvine, California. Advantis transacts or has transacted

23  business in this district. At times material to this Complaint, acting alone or in

24  concert with others, Advantis has advertised, marketed, distributed, or sold

25  mortgage assistance relief services to consumers in this district. Advantis is a "law

26  firm" offering mortgage assistance relief services to consumers by representing

27  them in litigation against their lenders.

28

8.     Defendant Damian Kutzner ("Kutzner") is a founder and the Chief Operating Officer of Brookstone and a principal or controlling person of Advantis. Kutzner and Vito Torchia, Jr. founded Brookstone after their prior business, United Law Group, a mortgage assistance "law firm," was dissolved following an investigation and raid by multiple federal and local agencies. Although not an attorney, Kutzner controls the marketing and sales at both Brookstone and Advantis. At all times material to this Complaint, acting alone or in concert with others, he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Kutzner, in connection with the matters alleged herein, transacts or has transacted business in this district.

9.     Defendant Jeremy Foti ("Foti") is an owner and controlling person of Brookstone and a principal or controlling person of Advantis. Foti was one of the co-founders of Brookstone in 2011. Although not an attorney, Foti controls the marketing and sales at both Brookstone and Advantis. At all times material to this Complaint, acting alone or in concert with others, he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Foti, in connection with the matters alleged herein, transacts or has transacted business in this district.

10.     Defendant Vito Torchia, Jr. ("Torchia") was the managing attorney of Brookstone. Torchia co-founded both Brookstone and Advantis. Torchia was the counsel of record for all of Brookstone's mass joinder cases. In August 2014, the California Bar found Torchia violated his ethical duties to his clients with respect to the provision of mortgage-related services, and declared him indefinitely ineligible to practice law in California. At all times material to this Complaint, acting alone or in concert with others, he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this

1   Complaint.  Defendant Torchia, in connection with the matters alleged herein,

2   transacts or has transacted business in this district.

3        11.    Defendant Jonathan Tarkowski ("Tarkowski") was, or is, the

4   managing attorney of Brookstone and is or was an attorney with Advantis.

5   Tarkowski was admitted to practice law in June 2014 in California.  Brookstone

6   hired Tarkowski in July 2015, and Tarkowski was Brookstone's sole attorney at

7   that time.  At times material to this Complaint, acting alone or in concert with

8   others, he formulated, directed, controlled, had the authority to control, or

9   participated in the acts and practices set forth in this Complaint.  Defendant

10  Tarkowski, in connection with the matters alleged herein, transacts or has

11  transacted business in this district.

12       12.    Defendant R. Geoffrey Broderick ("Broderick") is a director and

13  Chief Financial Officer of Advantis.  Although an attorney, Broderick is not

14  licensed to practice law in California.  In 2015, Broderick's company, Resolution

15  Law Group ("RLG"), was closed after the Connecticut and Florida Attorneys

16  General filed a joint action alleging RLG and Broderick were falsely promising

17  consumers mortgage relief through the filing of mass joinder actions.  At times

18  material to this Complaint, acting alone or in concert with others, he formulated,

19  directed, controlled, had the authority to control, or participated in the acts and

20  practices set forth in this Complaint.  Defendant Broderick, in connection with the

21  matters alleged herein, transacts or has transacted business in this district.

22       13.    Defendant Charles T. Marshall ("Marshall") is a director, Chief

23  Executive Officer, and Secretary of Advantis.  Marshall has also appeared as

24  counsel in Brookstone's *Wright v. Bank of America* mass joinder case.  In 2015,

25  Marshall was disciplined by the California Bar for violations related to mortgage

26  assistance relief services, receiving a 90-day suspension from the practice of law in

27  November 2015 for his ethical violations.  At times material to this Complaint,

28  acting alone or in concert with others, he formulated, directed, controlled, had the

1   authority to control, or participated in the acts and practices set forth in this

2   Complaint.  Defendant Marshall, in connection with the matters alleged herein,

3   transacts or has transacted business in this district.

4                          **COMMON ENTERPRISE**

5          14.    Defendants Brookstone and Advantis (collectively, "Corporate

6   Defendants") have operated as a common enterprise while engaging in the

7   unlawful acts and practices alleged below.  Corporate Defendants are under

8   common control, with common employees and a common address while marketing

9   the same product.  Defendants have used the names Brookstone and Advantis

10  interchangeably.  Defendants Kutzner, Foti, Torchia, Tarkowski, Broderick, and

11  Marshall have formulated, directed, controlled, had the authority to control, or

12  participated in the acts and practices of the Corporate Defendants that constitute

13  the common enterprise.

14                                **COMMERCE**

15         15.    At all times material to this Complaint, Defendants maintained a

16  substantial course of trade in or affecting commerce, as "commerce" is defined in

17  Section 4 of the FTC Act, 15 U.S.C. § 44.

18                  **DEFENDANTS' BUSINESS ACTIVITIES**

19         16.    Since at least 2011, Defendants have advertised, marketed, promoted,

20  sold, and/or offered to sell mortgage assistance relief services.  Defendants present

21  themselves as experienced lawyers and law firms that include experienced

22  litigators who would quickly, or without delay, file and actively pursue lawsuits

23  against lenders on consumers' behalf.  Defendants target distressed homeowners,

24  many of whom have fallen behind on their mortgage payments, and convince them

25  to purchase legal services by telling them that they are likely to prevail in lawsuits

26  against their lenders.  Often Defendants tell consumers they will receive at least

27  $75,000 by suing their lender.  They then extract thousands of dollars in upfront

28  fees.  In return, they provide little or nothing.

**Defendants Target Vulnerable Homeowners With Mass Mailers Hawking**
**Their Mortgage Assistance Relief Services**

17.     Defendants prey on distressed homeowners, often identifying people who are at risk of foreclosure to send individualized marketing materials.  These materials advertise mortgage assistance relief services, including mass joinder lawsuits to void mortgage notes and other actions to stop foreclosures.

18.     One letter, sent to consumers around May 2012, says, "You may become a joined named plaintiff in a significant lawsuit that will seek, among other things, to void your note(s)."

19.     Another letter, sent to consumers around August 2015, states, "Brookstone Law is preparing to sue the trustee assigned to foreclose on your property for wrongful foreclosure and demand that they immediately cancel your auction date."

20.     During the relevant time period, Defendants sent potential victims additional, similar letters.

21.     Defendants' marketing materials portray Defendants as legal practitioners with the resources and experience to successfully litigate complicated mass joinder cases.  For example, in a May 2012 letter, Brookstone claimed that its "team of lawyers . . . has substantial experience in lender fraud and related claims." It also claimed that "our team of experienced lawyers offers you a superior alternative for recovery."

22.     Defendants further promote their litigation experience by telling consumers "[i]t may be necessary to litigate your claims against your lender to get the help you need and our lawyers know how to do so."

23.     Defendants tell consumers that they can become a plaintiff in a significant litigation seeking "to void your note(s), to give you your home free and clear, and/or to award you relief and monetary damages."

24.     Defendants' marketing materials urge homeowners to act quickly and call Defendants in order to preserve their legal options.

25.     For example, the May 2012 letter reads, "You should act now! Waiting may eliminate or reduce the many options you have available." The letter goes on to say, "We encourage you to take prompt action by contacting us before 05/12/2012."

26.     Similarly, an August 2015 letter identifies a recent California Supreme Court decision and tells consumers, "**URGENT the above decision will NOT stop the sale of your home so you MUST contact us now . . . <u>Your home will be sold at Auction unless you take immediate action.</u>**" Further, below the letter emphasizes "*Scheduled Trustee Auction Date*: **<u>8/26/2015</u>**".

27.     Both the May 2012 and August 2015 letters are individually tailored for specific consumers. For example, the May 2012 letter is addressed to the homeowner by name, and contains at the bottom a table with the homeowner's name, a "Client Case ID#," the homeowner's total loan amount, the homeowner's parcel ID, and the property zip code. The August 2015 letter is also addressed to the homeowner by name, followed by a "Client ID #." The letter includes the name of the homeowner's mortgage lender, followed by the homeowner's name and address.

28.     Nowhere in the May 2012 or August 2015 letters did Defendants include any of the following disclaimers:

A.     "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [amount or method for calculating the amount] for our services";

B.  "[Brookstone or Advantis] is not associated with the government, and our service is not approved by the government or your lender"; or

C.  "Even if you accept this offer and use our service, your lender may not agree to change your loan."

29.  Defendants likewise did not include such disclaimers in the other, similar letters that they sent to homeowners.

30.  In addition to consumer-specific communications, Defendants also solicited business from distressed homeowners through websites advertising Brookstone and Advantis.  www.brookstonelaw.com, www.advantislaw.com.

31.  For example, the Brookstone website trumpets its experience, stating "This is an important announcement for anyone in America who currently is in danger of losing their home due to foreclosure or other related action of their lender.  There is help available for you now.  Brookstone Law has a team of experienced litigation attorneys that can help people victimized by violations where banks, loan servicers, or others have taken advantage of honest homeowners."

32.  Although purportedly separate law firms, both Brookstone and Advantis advertise the same services on their websites, in many instances using identical language.

33.  Both the Brookstone and Advantis websites use identical language in describing their real estate legal services, each claiming:  "Every transaction in the world of real estate is essentially a contract negotiation and a business transaction. At the same time there is often a strong element of emotion involved in real estate ownership and possession. . . . We proceed with decisiveness while exercising caution as necessary to avoid litigation and resolve disputes in the most expeditious, beneficial way for our clients."

34.     Both the Brookstone and Advantis websites tout the mass joinder suit *Wright v. Bank of America* as their own.  Both websites use the same description for the case:  "This lawsuit arises from:  (1) Defendants' deception in inducing Plaintiffs to enter into mortgages from 2003 through 2008 with the Countrywide Defendants; (2) Defendants' breach of Plaintiffs' Constitutionally and statutorily protected rights of privacy; and (3) Defendants' continuing tortious conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts."

35.     Nowhere on their websites did Defendants include any of the following disclaimers:

        A.     "[Brookstone or Advantis] is not associated with the government, and our service is not approved by the government or your lender"; or

        B.     "Even if you accept this offer and use our service, your lender may not agree to change your loan."

36.     In all of these communications, Defendants encouraged homeowners to contact them through one of their toll-free numbers.

## When Consumers Respond to the Mass Mailers, Defendants Promise Consumers Lawsuits and Favorable Results

37.     Once homeowners call Defendants, sales representatives convince them that they are signing up for lawsuits, and that by so doing they will achieve favorable results.

38.     Defendants' main products are "mass joinder" lawsuits against the homeowners' mortgage lender.  These lawsuits join dozens, or even hundreds, of individual plaintiffs in a single action against a particular lender.  These are not class action lawsuits.  Each individual plaintiff's claim must be separately proven and, in the event of a trial, each individual plaintiff would have a separate trial. For example, Defendants filed *Wright v. Bank of America* on behalf of over 900 plaintiffs asserting unique claims.  As alleged, they share some factual overlap,

such as the alleged fraud on the market to drive up home prices, but do not share any other particulars that would need to be proven for a specific plaintiff to prevail. Defendants filed similar suits against a number of other banks, including CitiGroup, JP Morgan Chase, Wells Fargo, Ally Bank, OneWest Bank, and Ocwen Financial Corporation.

39.     On numerous occasions, Defendants presented these lawsuits as, among other things, ways to delay foreclosures, negotiate loan modifications, or obtain forbearance on mortgage payments.  For example, one consumer was told that because his claim was worth $75,000 the bank would seek to renegotiate the loan amount.

40.     Defendants' offers include unsupported assessments about the likelihood of success.  Such assessments start with a homeowner's very first conversation with one of Defendants' telemarketers—non-lawyers charged with collecting the homeowner's information.

41.     For example, one of Defendants' telemarketers told an undercover FTC investigator, during his initial call, that Brookstone could stop a foreclosure and renegotiate his loan to lower his monthly payments, even though the investigator did not provide any information about his house, the size of his mortgage, or his income.

42.     Once telemarketers convince homeowners to come into Defendants' offices for in-person meetings, Defendants give the homeowners further assessments of their likelihood of success in the mass joinder cases.

43.     During these initial meetings, Defendants tell consumers they need to perform a "legal analysis" to evaluate the viability of a claim against their mortgage holder.  Consumers pay Defendants $895, sometimes more, before Defendants' conduct their "legal analysis."

44.     On numerous occasions, Defendants then provide homeowners a "legal analysis," stating that the fraud in their mortgage paperwork was obvious.

1    Defendants told such homeowners that they were likely, or even certain, to prevail,

2    if they retained the Defendants for a mass joinder suit against their lender.  On

3    numerous occasions, Defendants told homeowners that they would recover "at

4    least $75,000."

5           45.     Additionally, Defendants told consumers they would quickly file a

6    lawsuit and actively litigate on their behalf.

7                          **Defendants Request and Receive Advance Fees**

8           46.     Based on their promises, Defendants request and receive advance

9    fees—payments that come before homeowners receive any benefit from their

10   services—in two steps.

11          47.     First, as described above in paragraph 43, consumers pay an advance

12   fee for the "legal analysis."

13          48.     Second, Defendants' "legal analysis" almost invariably results in

14   Defendants telling consumers they have a really good case against their lender.

15   Defendants then charge homeowners thousands of dollars for the opportunity to

16   sign up for one of their mass joinder lawsuits.

17          49.     Although Defendants' mass joinder litigations are purportedly

18   "contingency fee" actions, Defendants collect both upfront fees and continuing

19   payments from consumers.  Defendants charge homeowners a recurring monthly

20   fee to maintain their status as named plaintiffs.

21          50.     Defendants received at least $15 million through 2014.

22          51.     Defendants do not deposit payments in client trust accounts, as

23   required by law.  Instead, they treat these funds as if they were fully earned, and

24   use them for expenses as they receive them.

25          52.     On numerous occasions, homeowners asked for refunds for amounts

26   paid because they had received no service or benefit.  On many of these occasions,

27   Defendants refused homeowners' requests.

28

**Defendants Do Not Deliver Promised Outcomes or Quickly File Lawsuits**

53.    Defendants' promise to quickly file lawsuits that will provide homeowners substantial monetary awards, lower mortgages, or voided notes have no reasonable relationship with any actual services they provide or outcomes they achieve for homeowners.

54.    Defendants have not won a single mass joinder lawsuit on the merits.

55.    Far from the certainty of winning "at least $75,000," and possibly obtaining their homes free and clear of any mortgage, Defendants did not even seek such relief.  In fact, as early as February 2012, Defendants tried to avoid federal court jurisdiction by arguing on their clients' behalf that they were, in fact, **not** seeking to void their clients' notes or obtain their clients' homes free and clear. *See* Pltf. Reply in Support of Motion to Remand, at 15-16, (DE 24), *Potter v. JP Morgan Chase Bank N.A.*, No. 11-10255 (C.D. Cal.) ("Plaintiffs do not seek to set aside Defendants' loans, nor rescind them but rather seek loss of equity damages resulting from Defendants' wrongful conduct.")

56.     Eleven of the twelve Brookstone mass joinder cases filed before 2016 have been dismissed.  In March and April 2016 defendants filed three more mass joinder cases.

57.    Brookstone's mass joinder cases have been dismissed for varied reasons, including for lack of prosecution, for misjoinder, on demurrer, and on voluntary dismissal.   Of their original cases, the only surviving case is *Wright v. Bank of America,* No. 30-2011-449059 (Sup. Ct. Cal. Orange County).  No court has spoken to the merits of the claims in that lawsuit.  Initially dismissed for misjoinder, the California Court of Appeal allowed it to proceed in spite of its "desultory and scattered allegations," but required Defendants to replead the Complaint into an intelligible pleading.  *Wright v. Bank of America,* 232 Cal. App. 4th 238, 254 (2014), *review denied* (Mar. 25, 2015).  It then took Defendants almost ten months to file their fourth amended complaint in January 2016;

Brookstone has now told the court it will again need to amend its complaint. Brookstone Nevada has filed only one mass joinder lawsuit, which was removed to federal court and dismissed for misjoinder. *Garner v. Bank of America,* No. 12-02076, D.E. 35 (D. Nev. May 29, 2013).

58.   Defendants do not take affirmative steps to prosecute these cases. Instead, they do minimal work, only sometimes responding to demurrers, while filing amended complaints adding additional consumers they have signed up. They have not pursued discovery in their cases, either not seeking discovery or agreeing to stays of discovery. In several instances they voluntarily dismissed the cases without prejudice and have not since refiled the cases to pursue their paying clients' claims.

59.   Defendants do not perform the tasks that they promise their clients they will undertake. For example, on numerous occasions, Defendants told homeowners that they would add them as plaintiffs to mass joinder cases, but never did so. On numerous other occasions, Defendants tell homeowners they will be added to lawsuits shortly, but months pass before they are added.

60.   Defendants do not communicate with clients or respond to client requests about how they are litigating the clients' case. Numerous clients repeatedly asked for updates regarding how their case was proceeding and received no response whatsoever. When Brookstone vacated its offices in late 2014, Defendants refused to tell clients the location of its new office; then, when pressed, lied to its clients about where its offices were located.

61.   Defendants do not tell clients that their lawsuits have been dismissed and continue collecting monthly fees. Often clients determine on their own that their cases have been dismissed.

62.   In August 2014, the California Bar court found Defendant Torchia had violated his ethical duties to his clients with respect to provision of mortgage-related services, including 16 counts of misconduct, such as failure to perform

legal services with competence, failure to maintain records of client funds and render appropriate accounts to the client, failure to return unearned funds, and failure to return client papers/property.

63. During his ethics trial, Torchia testified he did not have the experience to be lead counsel on the mass joinder cases. He further conceded that Brookstone failed to provide the most basic elements of legal representation, including properly communicating with clients, adequately explaining what consumers should expect from the representation, and returning unearned fees.

64. Confirming Torchia's own admissions, the California Bar court found that Defendant Torchia "lacked and continue[d] to lack the law-office-management skills and **basic knowledge of mortgage lending law and bankruptcy law** necessary to adequately and properly represent some 4,000 mortgage loan clients." (Emphasis supplied.)

65. Similarly, Tarkowski does not have any relevant experience, let alone experience litigating complicated fraud cases on behalf of several hundred separate plaintiffs.

66. Contrary to Defendants' claims that they know how to obtain the promised results and have the ability to pursue these claims, they in fact do not have any attorneys on staff with the relevant experience or sufficient resources to simultaneously litigate hundreds or thousands of fraud cases.

67. Defendants operate from an office with only one full-time attorney with support from no more than a handful of paralegals.

## **VIOLATIONS OF THE FTC ACT**

68. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

69. Misrepresentations or deceptive omissions of material fact are prohibited deceptive acts or practices.

## <u>COUNT I</u>

70.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of mortgage assistance relief services, Defendants or their agents have represented, directly or indirectly, expressly or by implication, that:

> A.     Defendants are likely to obtain relief for consumers, including in some instances "at least $75,000" or consumers' homes free and clear;
>
> B.     Defendants will seek to void consumers' mortgages;
>
> C.     Defendants have a team of experienced lawyers and personnel to litigate mass joinder cases alleging lender fraud and related claims on behalf of hundreds or thousands of clients simultaneously; and
>
> D.     Defendants will file lawsuits on particular consumers' behalf.

71.     In truth and in fact:

> A.     Defendants are not likely to obtain relief for consumers, much less $75,000 or consumers' homes free and clear;
>
> B.     Defendants do not seek to void consumers' mortgages;
>
> C.     Defendants do not have a team of experienced lawyers and personnel to litigate mass joinder cases alleging lender fraud and related claims on behalf of hundreds or thousands of clients simultaneously; and
>
> D.     Defendants do not file lawsuits on behalf of particular consumers.

72.     Therefore, Defendants' representations as set forth in Paragraph 70 of this Complaint are false and misleading, and constitute a deceptive practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE MARS RULE

73.     In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans.  Omnibus Act, § 626, 123 Stat. at 678, as clarified by Credit Card Act, § 511, 123 Stat. at 1763-64.  Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one of the provisions of which became effective on December 29, 2010.  The remaining provision, Section 322.5, became effective on January 31, 2011.  The Dodd-Frank Act, § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, transferred rulemaking authority over the MARS Rule to the Consumer Financial Protection Bureau, which recodified the Rule as 12 C.F.R. Part 1015 effective December 30, 2011, and designated it "Regulation O."  The FTC retains authority to enforce the MARS Rule pursuant to Dodd-Frank Act § 1097, 12 U.S.C. § 5538.

74.     The MARS Rule and Regulation O define "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2.

75.     Defendants are "mortgage assistance relief service provider[s]" engaged in the provision of "mortgage assistance relief services" as those terms are defined in the MARS Rule and Regulation O, 16 C.F.R. § 322.2, recodified as 12 C.F.R. § 1015.2.

76.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from misrepresenting, expressly or by implication, the likelihood of negotiating, obtaining, or arranging any represented service or result. 16 C.F.R. § 322.3(b)(1), recodified as 12 C.F.R. § 1015.3(b)(1).

77.     The MARS Rule and Regulation O prohibit any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the

consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer.  16 C.F.R. § 322.5(a), recodified as 12 C.F.R. § 1015.5(a).

78.    The MARS Rule and Regulation O require any mortgage assistance relief service provider to place a statement in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  16 C.F.R. §§ 322.4(a)(1)-(2), recodified as 12 C.F.R. §§ 1015.4(a)(1)-(2).

79.    The MARS Rule and Regulation O require any mortgage assistance relief service provider to place a statement in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, and (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  16 C.F.R. §§ 322.4(b)(1)-(3), recodified as 12 C.F.R. §§ 1015.4(b)(1)-(3).

80.    Pursuant to the Omnibus Act, § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule or Regulation O constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **COUNT II**

81.    In numerous instances, in connection with the offering or provision of mortgage assistance relief services, Defendants, either acting alone or in concert

with others, ask for, or receive, payment before consumers have executed a written agreement with their loan holder or servicer that incorporates the offer obtained by Defendants, in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.5(a), 12 C.F.R. § 1015.5(a).

### COUNT III

82.     In numerous instances, in connection with the offering or provision of mortgage assistance relief services, Defendants, in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.3(b), 12 C.F.R. § 1015.3(b), either acting alone or in concert with others, misrepresent, expressly or by implication, material aspects of their services, including but not limited to:

      A.    Defendants' likelihood of obtaining relief for consumers, such as consumers' homes free and clear;

      B.    Defendants would seek to void consumers' mortgages.

### COUNT IV

83.     In numerous instances, in connection with the offering or provision of mortgage assistance relief services, Defendants, either acting alone or in concert with others, fail to make the following disclosures:

      A.    In general commercial communications:

            i.    "[Brookstone or Advantis] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.4(a)(1), 12 C.F.R. § 1015.4(a)(1); and

            ii.    "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.4(a)(2), 12 C.F.R. § 1015.4(a)(2).

      B.    In consumer-specific commercial communications:

iii.  "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [amount or method for calculating the amount] for our services," in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.4(b)(1), 12 C.F.R. § 1015.4(b)(1);

iv.  "[Brookstone or Advantis] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.4(b)(2), 12 C.F.R. § 1015.4(b)(2); and

v.  "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule and Regulation O, 16 C.F.R. § 322.4(b)(3), 12 C.F.R. § 1015.4(b)(3).

## CONSUMER INJURY

84.  Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the MARS Rule, including payment of thousands of dollars to Defendants.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

85.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in

the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

86.     Section 626 of the Omnibus Act authorizes the Court to grant such relief as the Court finds necessary to redress consumer injury resulting from Defendants' violations of the MARS Rule, including rescission and reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

87.     Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Omnibus Act, and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to:

i.    A preliminary injunction that prohibits Defendants from soliciting business, requesting payments, or receiving payments;

ii.    An order freezing Defendants' assets; and

iii.    Appointment of a receiver for Brookstone and Advantis.

B.    Enter a permanent injunction to prevent future violations of the FTC Act and the MARS Rule by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the MARS Rule, including but not limited to rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

1           D.      Award Plaintiff the costs of bringing this action, as well as such

2                    other and additional relief as the Court may determine to be just

3                    and proper.

4

5

6                                             Respectfully submitted,

7                                             DAVID C. SHONKA

8                                             Acting General Counsel

9

10  Dated:  _July 5, 2016                    /s/  Benjamin Theisman

11                                           BENJAMIN THEISMAN
                                         DC Bar; btheisman@ftc.gov

12                                           GREGORY J. MADDEN
                                         Maryland Bar; gmadden@ftc.gov

13                                           Federal Trade Commission
                                         600 Washington, DC 20580

14                                           202-326-2223 (Theisman); -2426
                                         (Madden); -3197 (facsimile)

15                                           THOMAS SYTA,
                                         Cal. Bar No. 116286; tsyta@ftc.gov

16                                           FEDERAL TRADE COMMISSION
                                         10877 Wilshire Blvd., Suite 700

17                                           Los Angeles, CA 90024
                                         Tel: (310) 824-4343; Fax:  (310) 824-

18                                           4380

19                                           Attorneys for Plaintiff
                                         FEDERAL TRADE COMMISSION

20

21

22

23

24

25

26

27

28