1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>DAMIAN KUTZNER, *et al*.,<br><br>    Defendants. | **Case No. 8:16-cv-00999-BRO (AFMx)**<br><br><br>**PRELIMINARY INJUNCTION WITH APPOINTMENT OF RECEIVER AS TO DEFENDANT JEREMY FOTI** |

Plaintiff, the Federal Trade Commission ("FTC"), applied *ex parte* for a temporary restraining order to place Defendant Jeremy Foti's assets under receivership. In support of this motion, the FTC alleged that Defendant Foti has been hiding, and is likely to dissipate, assets, in violation of an injunction this Court has previously placed him under. The FTC, therefore, argues that absent a receivership to control Defendant Foti's assets, Defendant Foti will take further steps to hide and dissipate assets, thus thwarting redress to consumers in this case. On October 19, 2016, this Court entered a Temporary Restraining Order creating a receivership to control Defendant Foti's assets. Defendant Foti has filed responsive papers and the Court held a hearing on October 28, 2016.

Having considered the pleadings, papers, and argument, the Court hereby **GRANTS** the Preliminary Injunction against Defendant Jeremy Foti.

## **FINDINGS OF FACT**

This Court, having considered the FTC's *ex parte* application, declarations, exhibits, memoranda filed in support of the FTC's application, the Temporary Receiver's report and associated declarations, and Foti's documents filed in support of his Motion to Vacate or Modify the *Ex Parte* TRO, finds that:

1.    This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto;

2.    There is good cause to believe that venue lies properly with this Court;

3.    On May 31, 2016, the FTC filed its Complaint and Memorandum in Support of Ex Parte Application for a Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue ("TRO Memo") and related pleadings.  DE 1, 11; DE 1-18;

4.    On June 1, 2016, the Court entered its Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief, and Order to Show Cause Why Preliminary Injunction Should Not Issue ("TRO").  DE 23;

5.    On June 2, 2016, the Temporary Receiver seized documents, electronic equipment, and other assets belonging to Defendant Foti from the offices of Brookstone Law;

6.    On June 13, 2016, the Temporary Receiver filed his Preliminary Report of Temporary Receiver, in which he writes: "[Jeremy] Foti is a key, but elusive, player in the Advantis/Brookstone universe.  He operates from a large, and upon our arrival locked, office next to Mr. Kutzner's office.  Although he has

adroitly avoided any formal ownership of the Advantis or Brookstone entities, we saw ample confirmation that he was indeed one of the bosses." DE 41;

7.     On June 24, 2016, the Court entered its Stipulated Preliminary Injunction with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief As To Vito Torchia, Jr., DE 56, and Stipulated Preliminary Injunction with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief As To Damian Kutzner, Charles Marshall, Jonathan Tarkowski, Advantis P.C., and Advantis Law Group P.C.  DE 57;

8.     On June 27, 2016, the Court entered its Preliminary Injunction with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Other Equitable Relief As To Geoffrey Broderick, Brookstone Law P.C. (California) and Brookstone Law P.C. (Nevada).  DE 59;

9.     On July 5, 2016, the FTC filed its First Amended Complaint adding Defendant Foti as a defendant.  DE 61.  On July 12, 2016, the First Amended Complaint was served on Defendant Foti by personal service through his counsel pursuant to Rule 4 of the Federal Rules of Civil Procedure.  Moreover, Defendant Foti's counsel was electronically served with all of the pleadings in this matter on July 13, 2016;

10.    On July 13, 2016, the FTC filed Plaintiff's Notice of Application and Application for Preliminary Injunction With Asset Freeze, Limited Expedited Discovery, and Other Equitable Relief As to Jeremy Foti and accompanying Plaintiff's Memorandum In Support Of Application For Preliminary Injunction With Asset Freeze, Limited Expedited Discovery, And Other Equitable Relief, Against Jeremy Foti.  DE 69;

11.    On August 24, 2016, the Court issued its Preliminary Injunction with Asset Freeze, Appointment of Receiver, Limited Expedited Discovery, and Other

Equitable Relief as to Defendant Jeremy Foti.  DE 110 ("August 24 Foti PI").  On the same day, the Court issued an opinion explaining the legal basis for the August 24 Foti PI, in which it explained that the asset freeze was necessary because "Foti is likely either to dissipate claimed assets or render monetary damages unrecoverable."  DE 109 at 17;

12.    The August 24 Foti PI ordered Defendant Foti to submit a "Financial Statement" to the FTC in accordance with Section VIII of the TRO, swearing to its accuracy under penalty of perjury.  DE 129;

13.    On September 7, 2016, Defendant Foti submitted his Financial Statement.  In the Financial Statement, he stated that he had no home equity, nor personal property, no significant cash reserves, and no interest in businesses other than DND Consulting, Inc., GAMC Services Inc., and Backend Servicing.  DE 129;

14.    The Financial Statement required disclosure of all personal property, including artwork, gemstones, and jewelry.  Defendant Foti identified no such property, though he now concedes that he failed to disclose an heirloom Rolex watch.  DEs 129, 134-2;

15.    However, in January 2016, Defendant Foti signed a mortgage application for a third note on his residence that stated that the owned $950,000 in artwork and $300,000 in jewelry.  If Defendant Foti owned these assets at the time he submitted the mortgage application but had since transferred them, the Financial Statement required him to disclose those transfers.  DE 129;

16.    Defendant Foti claims he did not provide this information to the mortgage broker, he does not know who inserted it on his mortgage application, and that he failed to notice these assertions when he finalized his mortgage application.  DE 134-2;

17.    The existence of significant, but undisclosed, jewelry is corroborated by Defendant Foti's current insurance policies.  For instance, he has a rider on his homeowners' insurance policy insuring (1) a pair of $25,000 ladies' diamond earrings; (2) a $60,000 diamond necklace; (3) a men's Rolex watch insured for $9,500; and (4) two women's Chanel watches insured for $6,500 and $4,500 respectively.  Additionally, he is separately insuring another men's Rolex watch for $48,633.  DE 129;

18.    The January 2016 mortgage application also listed three financial accounts that Foti failed to disclose on his Financial Statement: (1) a Bank of America checking or savings account with a balance of $363,780; (2) a Chase checking or savings account with a balance of $436,890; and (3) a retirement fund with a $560,000 balance.  DE 129.

19.    The Financial Statement required Defendant Foti to report all of his business operations over the past five years.  Defendant Foti's accountant provided information indicating that Defendant Foti has an interest in several businesses that he failed to include on his Financial Statement.  DE 129;

20.    On October 17, 2016, the FTC lodged under seal Plaintiff's Ex Parte Application for a Temporary Restraining Order Imposing Additional Ancillary Relief Against Jeremy Foti and an Order to Show Cause Why a Preliminary Injunction Incorporating that Relief Should Not Issue.  DE 127.  In that application, the FTC requested that the Court impose a receiver over Defendant Foti's personal assets.  DE 127;

21.    On October 19, 2016, the Court entered the Temporary Restraining Order with Appointment of Temporary Receiver as to Defendant Jeremy Foti ("Foti TRO").  DE 130;

22.     On October 21, 2016, the Temporary Receiver entered Defendant Foti's home and seized various jewelry, cash, checks, personal items, a safe, electronic devices, mail, and other documents; DE 137-1;

23.     Specifically, the Temporary Receiver found numerous pieces of jewelry that he estimated were valued at more than $1,000 each, blank, pre-signed drawn on an account owned by Ms. Livvia Wilson, Chantel Foti's mother, $31,062 in cashiers' checks written to the Fotis' children.  The Temporary Receiver also discovered three safes in the Fotis' home, though Mrs. Foti, who was present during the Temporary Receiver's investigation, disclosed the existence of only one safe.  The Temporary Receiver discovered $18,500 in cash in one of the safes. Mrs. Foti's explanation of the source of this money has varied.  She initially claimed it was inheritance money, though she has since submitted a declaration testifying that this money was a gift to her from her mother.  In a different safe, of which Mrs. Foti claimed to have no knowledge, the Temporary Receiver discovered $59,500 in cash, which Mrs. Foti claimed was an inheritance from her grandparents, though she now testifies that this money belongs to her mother.  DEs 134-3, 137;

24.     Defendant Foti claims that he did not disclose the majority of the jewelry that the Temporary Receiver found at Defendant Foti's residence because it belongs to his wife. DE 134-2.  The Temporary Receiver also did not find the insured $9,500 Rolex watch, which Defendant Foti attempts to explain by claiming that he sold it to a stranger on the street for $2,500 in cash while he was visiting San Diego in late 2015.  DE 134-2.  Defendant Foti claims that the reason he failed to include his interests in several businesses over the last five (5) years on his Financial Statement is because they have all been "out of business" and have "not generated any revenue" recently.  DE 134-2.  In addition, Chantel Foti, Defendant Foti's wife, submitted a declaration identifying bank accounts held in the names of

his minor children that Defendant Foti had not reported on his Financial Statement. DE 134-3;

25.    On October 24, 2016, Defendant Foti filed a Notice of Motion and Motion to Dissolve or Modify Ex Parte Temporary Restraining Order and Opposition to Preliminary Injunction and supporting materials, specifically requesting that the Court return many of the items seized by the Receiver, including the cash found at the home, jewelry valued at under $1,000, cashier's checks written to Defendant Foti's sons, and all documents removed from the residence.  DEs 137, 137-1 to 137-8;

26.    On October 27, 2016, the FTC filed Plaintiff's Reply in Support of Its Ex Parte Application for a Temporary Restraining Order Imposing Additional Ancillary Relief Against Jeremy Foti and an Order to Show Cause Why a Preliminary Injunction Incorporating that Relief Should Not Issue.  DE 138;

27.    On October 28, 2016, this Court held its hearing on the parties' motions.  DE 139;

28.    The Court finds that the following facts are evidence that Foti will likely dissipate or conceal his assets if they are not frozen and left in the custody of the Receiver:

a. The inconsistencies between Foti's January 2016 mortgage application and his Financial Statement as Defendant Foti has no explanation for the inconsistencies other than claiming he "was extremely careless" when he initialed and signed the mortgage application without identifying and correcting "the numerous incorrect statements that are included on the application";

b. The inconsistencies between the mortgage application and Foti's Financial Statement indicate that he has already purposefully hidden or dissipated significant assets to avoid their confiscation.  The

mortgage application provides evidence that Foti, who is himself in the mortgage business, has acted dishonestly; either he was dishonest when he submitted the mortgage application in early 2015, or he was dishonest when he submitted his Financial Statement to Plaintiff.  The Court finds that the inconsistencies between Foti's mortgage application and his Financial Statement is evidence that he has a history of dishonestly reporting his financial information and establishes a likelihood that Foti may conceal or dissipate his personal assets;

c.   The Court is troubled by another inconsistency between the mortgage application and his sworn declaration in this matter.  When applying for the mortgage, Foti indicated that he was hoping to obtain the funds to purchase "medical equipment." DE 136-1.  Defendant Foti has now submitted a sworn declaration that the mortgage was intended to repay Ms. Wilson for a loan.  DE 134-2.  The Court finds these conflicting explanations are further evidence that Foti has made fraudulent representations at some point between the mortgage application and in his submitting his Financial Statement;

d.   The Court finds Foti's explanation regarding the sale of his Rolex watch (and his claim that he now owns only one heirloom watch) suspect.  His explanation that he sold the watch to a stranger on the street for $2,500 in cash—a fraction of its value—while he was visiting San Diego in late 2015, because he "rarely wore the watch," is unconvincing.  Further, Foti failed to explain why he maintains an insurance policy on a watch that he allegedly sold.  The Court finds that the circumstances surrounding these events suggest that Foti has acted dishonestly and may have already attempted to conceal assets;

e.  In addition, Defendant Foti failed to include the jewelry found by the Receiver and the bank accounts held in his children's names.  His argument that a reasonable person would not have understood the Financial Statement to require the inclusion of a spouse's assets or children's bank account is not persuasive.  The plain wording of the Financial Statement clearly required such information.  Thus, this lack of transparency is evidence to the Court that Foti has already and is likely to continue to conceal his assets;

f.  His failure to report his interests in several businesses on his Financial Statement because they have all been "out of business" and have "not generated any revenue" recently is not persuasive; and

g.  Foti's failure to disclose an appraisal conducted on his home which valued his home at a significantly higher value than the $4.5 million he reported on his Financial Statement further indicates dissipation of assets is likely.

## **CONCLUSIONS OF LAW**

29.  Federal Rule of Civil Procedure 65 generally governs the issuance of preliminary injunctions.  *See* Fed. R. Civ. P 65(a).  However, Section 13(b) of the FTC Act authorizes the FTC to bring an action in a United States District Court for preliminary injunctive relief whenever the FTC "has reason to believe that any person, partnership, or corporation is violating, or is about to violate, any provision of [the FTC Act]."  15 U.S.C. § 53(b)(1).  Although the standards under Rule 65 and Section 13(b) are similar, Section 13(b) "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm" to obtain preliminary injunctive relief.  *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (quotation marks and citation omitted);

30.     When evaluating a motion under this more lenient standard, a court must simply "(1) determine the likelihood that the Commission will ultimately succeed on the merits and (2) balance the equities." *Id.* "Under the second prong of this analysis, public interests are generally entitled to stronger consideration than private interests." *FTC v. Merch. Servs. Direct,LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *2 (E.D. Wash. Aug. 13, 2013) (citing *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."));

31.     The Court has previously determined in its August 24 Foti PI that Plaintiff has sufficiently demonstrated that there is "some chance of probable success on the merits" as to Foti in this proceeding. (*See* DE 109 at 8–10 citing *World Wide Factors*, 882 F.2d at 347 (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987)). Accordingly, the Court adopts its prior reasoning, finds that Plaintiff has demonstrated a probable chance of succeeding on the merits, and moves on to the second prong of the analysis regarding the public interest;

32.     As stated above, "when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *Id.* As the Court previously found, the public interest in granting Plaintiff's Application for Preliminary Injunction is significant, as Plaintiff has proffered sufficient evidence to demonstrate a likelihood that Foti has engaged in, or at least had knowledge of, a scheme to defraud public consumers in violation of the FTC Act. DE 109 at 9. Plaintiff also has demonstrated that, absent relief, Foti's behavior is likely to continue to harm consumers;

33.     A court's authority to grant injunctive relief under Section 13(b) includes "all the inherent equitable powers . . . for the proper and complete

exercise" of the court's equity jurisdiction. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982) (citation omitted).  One such power is the authority to freeze a defendant's assets.  *See id.* at 1113.  "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."  *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (concluding that a likelihood of dissipation is necessary post-*Winter* to support an asset freeze instead of the lower "possibility" of dissipation standard); *see also FTC v. John Beck Amazing Profits, LLC*, No. 2:09–cv–4719–FMC–FFMx, 2009 WL 7844076, at *15 (C.D. Cal. Nov. 17, 2009) (applying *Johnson* and finding that there was no evidence of any dissipation or transfer of assets; rather, "the only evidence in support of an asset freeze" was the defendants' "misleading marketing practices," and if such conduct "were sufficient to support an asset freeze, one would issue in every deceptive advertising case");

34.    Additionally, appointing a receiver is within this Court's equitable powers.  *H.N. Singer*, 668 F.2d at 1112–13 (9th Cir. 1982); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984) (holding that the court has inherent power "to grant ancillary relief, including freezing assets and appointing a Receiver, as an incident to its express statutory authority to issue a permanent injunction under Section 13");

35.    The inconsistencies and misrepresentations identified in the Findings of Fact support the conclusion that Foti is likely to dissipate or conceal assets.  As a result, a preliminary injunction transferring Foti's assets to the custody of a Receiver is necessary and appropriate.  "[I]t is not necessary to show that defendants are planning to dissipate assets in order to find a 'strong likelihood' of dissipation."  *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 3622016, at *2 (N.D. Cal. July 12, 2013). Accordingly, Plaintiff has established a likelihood that Foti may dissipate or

conceal his personal assets.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (finding defendants' "history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement" supported finding that they were likely to conceal or dissipate assets); *see also Fid. Nat'l Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 5882878, at *6 (N.D. Cal. Nov. 23, 2011) ("[W]hen allegations of past fraud are coupled with supplemental evidence that demonstrates a likelihood of dissipation, courts may freeze assets.");

36.     Accordingly, the Court freezes Foti's assets and grants Plaintiff's request that they be placed under receivership;

37.     However, there are additional public interests at stake here that must be addressed.  Unlike the Court's prior Order, DE 109, which dealt exclusively with Foti's assets, Foti claims that the current TRO and this Preliminary Injunction has and will affect not only his assets, but also assets that are the separate property of his wife, Chantel Foti, and assets that belong to Mrs. Foti's mother, Livvia Wilson.  DE 134-1 at 2 & n.3; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) ("If . . . the impact of an injunction reaches beyond the parties, carrying it with a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction.").  As Mrs. Foti and Ms. Wilson are not Defendants in this action, the Court finds that their interest in maintaining ownership of their personal property weighs in favor of not granting an injunction as to their assets.  The Court did not take oral testimony and therefore has not determined the credibility of Mrs. Foti's or Ms. Wilson's declarations to the Court.  As addressed further below, the Court must ensure that only Foti's assets, not the separate property of Mrs. Foti or Ms. Wilson, are affected;

38.     Having granted the preliminary injunction, the Court must resolve some disputes about the appropriate scope of the Receivership Estate and the Preliminary Injunction, including whether to include within the Receivership Estate assets found in the home that Foti claims belong to Mrs. Foti as her separate property, to Mrs. Wilson, or to the Fotis' children;

39.     First, the Court will consider the disposition of the women's jewelry found in Foti's house, which Foti and his wife claim is Mrs. Foti's separate property;

40.     In California, "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code § 760. "Under this section, 'there is a general presumption that property acquired during marriage by either spouse, other than by gift or inheritance is community property unless traceable to a separate property source.'" *In re Marriage of Rossin*, 172 Cal. App. 4th 725, 732 (Cal. Ct. App. 2009) (quoting *In re Marriage of Haines*, 33 Cal. App. 4th 277, 289–90 (Cal. Ct. App. 1995)). Community property may be "transmuted" to one spouse's separate property by agreement, such as by gifting between spouses. Cal. Fam. Code § 850. Generally, any such transmutation requires "an express declaration" by the property whose interest is adversely affected indicating that they consent to the transmutation. Cal. Fam. Code § 852(a). There is an exception, however, for gifts between spouses that are "not substantial in value taking into account the circumstances of the marriage"; such gifts may be considered the receiving spouse's community property even absent a writing. *See* Cal. Fam. Code § 852(c). But conversely, if the gift is substantial in value, an express agreement is required. *In re Marriage of Steinberger*, 91 Cal. App. 4th 1449, 1464 (Cal. Ct. App. 2001). "A spouse's claim that property acquired during a marriage is separate property must be proven by a

preponderance of the evidence." *In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (Cal. 2014);

41.     Foti argues that the women's jewelry found in his home was a gift to Mrs. Foti, and thus, is Mrs. Foti's separate property under California law.  Foti does not identify the specific jewelry at issue; however, from the Temporary Receiver's Report, it appears that this jewelry consists of: (1) two Chanel watches; (2) a Boucheron diamond necklace; and, (3) "other jewelry";

42.     The Fotis, however, have not submitted evidence indicating that these assets have been transmuted into separate property through a writing. Additionally, the assets are, by definition, only within the Receivership Estate if they are valued at more than $1,000.  The California Family Code does not create a bright line for what is "substantial in value."  In this case, however, the Court has evidence of Defendant Foti's financial circumstances currently before it, and after examining this information, agrees with the FTC that any jewelry valued at $1,000 or more constitutes a gift of substantial value based on the circumstances of the Fotis' marriage.  Thus, the Court finds that any gift worth at least $1,000 is of substantial value.  Foti has not presented any evidence of an express transmutation of these items from community property to Mrs. Foti's separate property. Therefore, the Court finds that all jewelry Foti gave to his wife valued at $1,000 or more remained community property and is properly within the Receivership Estate and should continue to be held by the Receiver.  *See In re Marriage of Valli*, 58 Cal. 4th at 1401–02 (using hypothetical to explain that gift of "a particularly expensive diamond necklace" gifted from a husband to his wife would remain community property without an express transmutation);

43.     Accordingly, the Receiver shall:  (a) retain all jewelry valued at more than $1,000 seized from the Fotis' home, including the Chanel watches, Rolex watches, Boucheron diamond necklace, and diamond earrings; and (b) return all

jewelry valued at less than $1,000 to Mrs. Foti, if any such jewelry is in the Receiver's possession;

44.     Next, the Court will consider the two sets of cash found in the safes in the Foti residence;

45.     Regarding the cash assets found by the Receiver, the Foti's and Ms. Wilson have provided conflicting explanations.  For instance, Mrs. Foti provided conflicting explanations to the Receiver and the Court for all of the cash found in the safes in the home.  These conflicting explanations, the lack of transparency in their stories, and the alleged inter-familial shifting of funds further concern the Court and indicate that Foti and his family members, including Mrs. Foti and Ms. Wilson, may have already or will in the future dissipate or conceal assets.  In particular, Mrs. Foti's contradictory explanations are evidence supporting a finding that Defendant Foti is likely to dissipate or conceal his assets because it is evidence that the Fotis have been less than candid regarding their assets.  But, whether Foti and his family are likely to conceal assets is a different inquiry than who owns certain assets found at the Fotis' home;

46.     First is the $18,500.  As noted above, gifts to one spouse, even during the course of the marriage, fall outside of the community property presumption.  *See In re Marriage of Haines*, 33 Cal. App. 4th at 289–90 ("[T]here is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source.").  When this $18,500 in cash was found during the Temporary Receiver's investigation, Mrs. Foti claimed it was her inheritance.  Later she swore to the Court that it was a gift from her mother.  The money was also found in a safe that Mrs. Foti could not access, but that Mr. Foti could.  Plaintiff argued that the conflicting testimony as to whether Mrs. Foti knew how to access the safe where the money was kept is evidence that the money is not hers.  The Court disagrees.

Thus, Plaintiff has not presented any evidence to contravene Mrs. Foti's testimony that the money was a gift from Ms. Wilson. Therefore, the Court finds that Mrs. Foti has met her burden of establishing that this money is her separate property. Therefore, the Receiver shall return $18,500 to Mrs. Foti. The Receiver may make this transfer through check, cashier's check, or wire;

47. Second, as to the $59,500 in cash found in the floor safe, Mrs. Foti made no assertion as to the source of the funds when discovered or when the cash was counted out in front of her. Mrs. Foti and Ms. Wilson now testify that Mrs. Foti was holding the money for Ms. Wilson for safekeeping. At the time the floor safe was found, Mrs. Foti claimed she did not know the floor safe existed. Mrs. Foti also could not open the safe without Defendant Foti's assistance. Again, the FTC argued that Defendant Foti's ability to access the safe and the conflicting testimony as to whether Mrs. Foti knew the safe existed or how to access it is evidence that the money is not hers. The Court disagrees. Plaintiff provides no evidence to contradict Mrs. Foti's and Ms. Wilson's testimony. Therefore, the Court finds that Defendant Foti has presented sufficient evidence to indicate that the funds are not his and should not be within the Receivership Estate. Accordingly, the Receiver shall return $59,500 to Ms. Wilson. The Receiver may make this transfer through check, cashier's check, or wire;

48. Additionally, Defendant Foti argues that the certified checks written to his children, totaling $31,062, should not be part of the Receivership Estate. Plaintiff has provided no evidence to the contrary. Further, Plaintiff provides no authority, and the Court is unaware of any, providing that a check written to a minor child, or that a minor child's bank account in which a parent has no ownership interest, is the property of the parent. Therefore, as there is no evidence before the Court indicating that Defendant Foti has (or ever had) any ownership interest in the checks written to his children, the children's accounts, or the funds

that were in the children's accounts, it appears that Defendant Foti has no ownership interest in these checks. The Receiver shall return the cashier's checks written to the Fotis' children to the custody of Mrs. Foti;

49.    Defendant Foti also requests the Court to order the Receiver to return the keys to his boat.  The Court denies his request.  It is undisputed that the boat is Defendant Foti's personal asset, and as addressed above, the Court finds there is a likelihood that Foti may attempt to dissipate his personal assets;

50.    The Court makes no finding regarding the ownership of the account whose signed-but-blank checks were found at the Fotis' home.  The existence of this checkbook at the Fotis' residence, however, is evidence that Foti will conceal or dissipate assets.

51.    Foti raises several objections to evidence, including the Theisman Declaration and to the FTC's use of materials it obtained pursuant to Section VII of the August 24 Foti PI.  The objections to the Theisman Declaration are overruled because the Court "can consider otherwise inadmissible evidence in ruling on a preliminary injunction."  *Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F.Supp.3d 1058, 1091 (C.D. Ca. 2015).  The objections to the evidence obtained under Section VII of the August 24 Foti PI are without merit. Section VII permits the FTC to obtain evidence from Financial Institutions and other business entities without the use of a subpoena.  Further, the argument that the FTC violated the Right to Financial Privacy Act ("RFPA") is also without merit because 12 U.S.C. 3413(e) exempts requests under the August 24 Foti PI from RFPA;

52.    Additionally, the Court did not hear oral testimony at the Preliminary Injunction hearing.  "[I]n this circuit, the refusal to hear oral testimony at a preliminary injunction hearing is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter."  *Stanley v. Univ.*

*of S. Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994); *accord Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) (declining to hear oral testimony before granting injunctive relief).  The Court finds the multiple declarations and exhibits provided by both parties as well as both parties' counsel's extensive oral argument and proffers at the Preliminary Injunction hearing sufficient to make all necessary determinations.  Further, while there are several disputed issues of fact at issue in this case, when "deciding a motion for a preliminary injunction . . . the Court is not required to render credibility determinations." *Kelly v. Primco Mgmt., Inc.*, No. CV 14-07263 BRO (SHx), 2015 WL 10990368, at *10 n.7 (C.D. Cal. Jan. 12, 2015) (citing *Nelson*, 799 F.2d at 551).  Thus, the Court refrains from making any credibility determinations here.  However, as explained above, the Court finds that Defendant Foti's inconsistent testimony supports the conclusion that he is likely to dissipate or conceal his personal assets;

53.    The Court also addresses a concern raised by Defendant Foti at the hearing:  whether the Foti TRO, and now Preliminary Injunction, allows the Receiver open-ended access to Defendant Foti's home and personal papers, such as mail.  In short, the answer is no.  The Court dissolves that portion of the TRO that allowed the Receiver access to Defendant Foti's house to recover and take possession of his personal assets.  The purpose for allowing the Receiver access to Defendant Foti's home without notice was to ensure that the Receiver would be able to recover all of Defendant Foti's personal assets without interference or tampering.  As this goal was accomplished by the Receiver's investigation of Defendant Foti's home pursuant to the TRO, the Court finds it is unnecessary to grant the Receiver continued access to Defendant Foti's home.  If the Receiver needs to access Defendant Foti's home again in the future, the Receiver or Plaintiff must seek approval from the Court.  In addition, the Court finds it would be

inappropriate to grant the Receiver continued access to any of Defendant Foti's personal belongings, such as his mail.  The Receiver shall return the originals of any papers taken from Defendant Foti's home to Defendant Foti.  The Receiver may make copies of the papers before returning the originals.  The Receiver shall also create and maintain an attorney-client privilege log for the materials taken from the Fotis' home to ensure that privileged materials are not provided to Plaintiff or other parties, inadvertently or otherwise.   If the Receiver requires continued access to Defendant Foti's personal belongings, it must also seek permission from the Court;

54.     There is good cause to believe that the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will suffer immediate and irreparable damage from Defendant Foti's transfer, dissipation, or concealment of his Assets unless he is further restrained and enjoined by Order of this Court;

55.     Weighing the equities and considering the FTC's likelihood of ultimate success, a preliminary injunction appointing a receiver over Defendant Foti's assets is in the public interest; and

56.     No security is required of any agency of the United States for the issuance of a preliminary injunction order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Preliminary Injunction order, the following definitions apply:

A.     **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any and all real and personal property, wherever located, whether in the United States or abroad, including but not limited to chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts,

mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), shares of stock, futures, all cash or currency, and trusts, including but not limited to a trust held for the benefit of one's minor children or spouse, and shall include both existing Assets and Assets acquired after the date this order is signed, or any interest therein.

B.   **"Asset Freeze Accounts"** means accounts that are held by or for the benefit of, or controlled by, directly or indirectly, Defendant Foti, Time Out Management LTD LLC, Taphouse LLC, GAMC Services Inc., GAMC Limo Leasing Inc., Backend Servicing, Webstar Inc., DND Consulting Inc., and any Receivership Entity.  Asset Freeze Accounts includes, but is not limited to, the following accounts, identified by the account holder, the Financial Institution, and last four digits of the account number:

1. Time Out Management LTD LLC, Bank of America, 2464;
2. Time Out Management LTD LLC, Bank of America, 3651;
3. Jeremy Foti/Time Out Management LTD LLC, Bank of America, 8505;
4. GAMC Services Inc., Bank of America, 6849;
5. GAMC Services Inc., Bank of America, 8900;
6. Jeremy Foti/GAMC Services Inc., Bank of America, 5420;
7. DND Consulting Inc., Bank of America, 0095;
8. Jeremy Foti, Bank of America, 9578;
9. Jeremy Foti, Bank of America, 9890;
10. Jeremy Foti, JPMorgan Chase, 5506;
11. Chantel Foti & Jeremy Foti, Wescom Credit Union, 7122;
12. Jeremy Foti, Capital One, 1972;
13. By or on behalf of Jeremy Foti, Bank of America, 7655; and
14. By or on behalf of Jeremy Foti, Chase, 2389.

C.     **"Corporate Defendants"** means, collectively, Advantis Law P.C., Advantis Law Group P.C., Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

D.     **"Defendants"** means the Individual Defendants, Corporate Defendants, and their successors, assigns, affiliates, subsidiaries, or agents, individually, collectively, or in any combination, and each of them by whatever names each might be known.

E.     **"Defendant Foti"** means Jeremy Foti, and any other names he might use, have used, be known by or have been known by.

F.     **"Document"** is synonymous in meaning and equal in scope to the terms "Document" and "electronically stored information," as described and used in the Federal Rules of Civil Procedure.  This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on:  cards; magnetic or electronic tapes; disks; computer hard drives; network shares or servers, or other drives; cloud-based platforms; cell phones; PDAs, computer tablets, or other mobile devices; or other storage media.

G.     **"Financial Institution"** means any bank, savings and loan institution, credit union, payment processor, trust, or any financial depository of any kind, including but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

H.     **"Individual Defendants"** means, collectively, Damian Kutzner, Vito Torchia, Jonathan Tarkowski, Geoffrey Broderick, Charles Marshall, Jeremy Foti,

and any other names they might use, have used, be known by or have been known by.

I.    **"Person"** means any individual, group, unincorporated association, limited or general partnership, corporation or other business entity.

J.    **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

K.    **"Receiver"** means the Receiver appointed in this Order.  The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver.

L.    **"Receivership Entity"** means Time Out Management Ltd. LLC, DND Consulting Inc., GAMC Services Inc., and all other entities wholly owned or controlled by Defendant Foti.

M.    **"Receivership Estate"** means:

1.    All Assets valued at $1,000 or more, as determined by the Receiver, owned or controlled, directly or indirectly, by Defendant Foti or a Receivership Entity as of the time this Order is entered.  This includes, but is not limited to, the following:

a.    Defendant Foti's residence in Newport Beach, CA;

b.    All art and jewelry that Defendant Foti disclosed to Val-Chris Investments Inc. in his January 27, 2016, mortgage application;

c.    Ladies Diamond Earrings.  4.13 CTTW Princess Cut w/DIA Halos.  Insured for $25,000;

d.    Boucheron Diamond Necklace.  13.2 CTS Total Weight. 492 Round Diamonds.  E In Color.  IF VVS2 in Clarity.

18kt White Gold (34.5 G Weight).  Length:  42 CM.
Serial Number PCL10866.  Insured for $60,000;

e.    Men's Rolex Watch:  Platinum Yacht Master, Model
#16622, serial #Y23.  Insured for $9,500.

f.    Women's Sport Watch:  Women's Black 38mm Chanel
J12 Ceramic.  Factory diamonds and rubies.  Model
#H1635.  Insured for $6,500.

g.    Women's Sport Watch:  Women's White 38 mm Chanel
J12 Ceramic.  Custom Pink Sapphire Bezel.  Insured for
$4,500.

h.    Rolex Gents Watch Plat.  Model # R1894663IB7274.
Serial # K556982.  Insured for $48,633.

i.    Meridian 490 boat.

j.    All ownership shares that Defendant Foti or any
Receivership Entity has in any other business entity,
including but not limited to:

    i.    Backend Servicing Inc.;

    ii.    Total Media Solutions;

    iii.    Plan Right Group;

    iv.    Webstar Inc.; and

    v.    US Debt Plan LLC.

2.  All Asset Freeze Accounts;

3.  All Receivership Entities;

4.  All Documents related to the Receivership Estate.

## I.    <u>APPOINTMENT OF RECEIVER</u>

**IT IS ORDERED** that Thomas McNamara is appointed Receiver over the
Receivership Estate, with the full power of an equity receiver.  The Receiver shall

be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all local rules and laws governing federal equity receivers.

## II.    RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $ 0.00 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## III.    COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendant Foti, and his successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, and each Receivership Entity, shall fully cooperate with and assist the Receiver.  Defendant Foti's cooperation and assistance shall include, but not be limited to, turning over all Assets within the Receivership Estate to the Receiver upon the Receiver's instructions.  In so doing, Defendant Foti must provide all cooperation necessary to effect all such transfers.  Furthermore, Defendant Foti's cooperation shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any login, password, or biometric identifier required to access any computer or electronic files or information in or on any medium; providing access to any building, room, safe, safety box, or other item or space that the Receiver deems necessary to fully inventory and control Defendant Foti's Assets; and advising all persons who owe money to the Receivership Estate

that all debts should be paid directly to the Receiver.  Defendant Foti, and his successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, and each Receivership Entity, are hereby restrained and enjoined from directly or indirectly:

    A.    Excusing debts owed to Defendant Foti or a Receivership Entity;

    B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Asset or Document of the Receivership Estate;

    C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Estate;

    D.    Failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of any Assets within the Receivership Estate that the Receiver or the FTC has identified; or

    E.    Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

    F.    Notwithstanding the foregoing, this Order shall not prohibit or restrain Defendant Foti from:

a. Continuing to reside with his family in his residence;

b. Upon notice to the Receiver, moving any of the possessions that remain in his residence to one or more other residences.

## IV.   <u>DUTIES AND AUTHORITY OF RECEIVER</u>

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Take exclusive custody, control, and possession of the Receivership Estate, wherever situated.  The Receiver shall have full power to divert mail sent to any business premises and to sue for, collect, receive, take possession of, hold, and manage the Receivership Estate;

B.     Assume full control of any Receivership Entity by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any such Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

C.     Take all steps necessary to secure the business premises of the Receivership Estate, which may include, but is not limited to, taking the following steps as the Receiver deems necessary or advisable:  (1) serving and filing this Order and any lis pendens; (2) completing a written inventory of receivership Assets; (3) video-recording and/or photographing all portions of any business premise of the Receivership Estate including, but not limited to, the location at which any Receivership Entity conducts business or has Assets and any other physical business location that Defendant Foti owns or controls; (4) changing the locks and disconnecting any computer networks or other means of access to electronically stored information or other Documents maintained at those locations; or (5) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of

identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Estate. Additional provisions relating to the Receiver's ability to exclude persons from the business premises are included in Section V. of this Order;

D. Absent approval from this Court, the Receiver may not obtain access to Defendant Foti's residence or evict Defendant Foti or his family from their residence;

E. Conserve, hold, and manage all receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers, including, but not limited to, obtaining an accounting of the Assets and preventing the transfer, withdrawal, or misapplication of Assets. This includes the authority to remove all artwork and jewelry within the Receivership Estate from any business premises and move them to appropriate storage facilities, access to which is controlled by the Receiver;

F. Enter into contracts and purchase insurance as advisable or necessary. Provided that insurance must be maintained for any Receivership Estate Assets that, as determined by the Receiver, are worth more than $1,000 net of liabilities;

G. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Entities;

H. Manage and administer the business of the Receivership Entities until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.  Continue and conduct the businesses of the Receivership Entities in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably, using the Assets of the Receivership Estate, and lawfully, if at all;

J.  Choose, engage, and employ attorneys, accountants, appraisers, investigators, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of their duties and responsibilities, including but not limited to the law firm in which the Receiver is a partner;

K.  Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Estate prior to the date this Order is signed, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Estate, such as rental payments;

L.  Collect any money due or owing to the Receivership Estate;

M.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Estate, or to carry out the Receiver's mandate under this Order;

N.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate or the Receiver that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Estate, or to carry out the Receiver's mandate under this Order;

O.  Take depositions and issue subpoenas to obtain Documents and records pertaining to the receivership and compliance with this Order.  Subpoenas

may be served by electronic mail, by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P.     Open one or more bank accounts as designated depositories for funds of the Receivership Estate.  The Receiver shall deposit all funds of the Receivership Estate in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

Q.     Maintain accurate records of all receipts and expenditures made by the Receiver;

R.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S.     Pursuant to the November 7 Foti PI Order, take the following steps:

1.     return to Chantel Foti any jewelry seized from the Foti's home valued at less than $1,000, with this transfer to take place at the office of the Receiver;

2.     return to Chantel Foti $18,500 in cash, with this transfer to take place at the office of the Receiver;

3.     return to Chantel Foti the $31,062 in cashiers' checks made payable to the Foti children, with this transfer to take place at the office of the Receiver;

4.     return to Livvia Wilson $59,500 in cash, with this transfer to take place at the office of the Receiver;

5.     return to Defendant Foti the originals of any papers taken from Defendant Foti's home to Defendant Foti, with this transfer to take place at the office of the Receiver; and

6.     create and maintain an attorney-client privilege log to ensure that privileged materials taken from Defendant Foti's

residence are not provided to any other party, inadvertently or otherwise.

## V.    RECEIVER'S ACCESS TO PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.    The Receiver shall not access the residence of Defendant Foti or any other person without obtaining consent of the Court.

B.    The Court has not approved any electronic surveillance of Defendant Foti in this action.

C.    The Receiver may remove all artwork and jewelry within the Receivership Estate from any business premises and move them to appropriate storage facilities, access to which is controlled by the Receiver, where they shall be held, within the Receiver's discretion, for the duration of the receivership. The assets that may be removed include, but are not limited to, all Assets defined to be within the Receivership Estate;

D.    The Receiver and its representatives, agents, and assistants, shall have the right to remove materials from the above-listed premises for inspection and copying;

E.    Defendant Foti, the Receivership Entities, and all employees or agents of Defendant Foti and the Receivership Entities shall provide the Receiver with any necessary means of access to Assets, Documents, and records, including, without limitation, the locations of the Assets of the Receivership Estate, Defendant Foti's and the Receivership Entities' business premises, keys and combinations to locks, computer access codes, and storage area access information; and

F.    If Defendant Foti possesses a smartphone or tablet, he will, if he has not already, turn over such devices to the Receiver for imaging. Within two business days, the Receiver will return such devices.

## VI.   TRANSFER OF FUNDS TO THE RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any Financial Institution shall cooperate with all reasonable requests of counsel for the FTC and the Receiver relating to implementation of this Order, including transferring funds at the Receiver's direction, producing records related to the Assets and sales of the Receivership Estate, and provide the Receiver with immediate and complete electronic access to all Asset Freeze Accounts.

## VII.   REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that Defendant Foti and each Receivership Entity shall take the following steps, but only with the Receiver's express prior authorization, and only pursuant to and in accordance with the Receiver's express instructions:

A.   Provide the FTC and the Receiver with a full accounting of all Assets outside of the United States that are held by (1) Defendant Foti or by any Receivership Entity, (2) any person or entity holding such Assets for the benefit of Defendant Foti or any Receivership Entity, and (3) any Assets under the direct or indirect control, individually or jointly, of Defendant Foti or any Receivership Entity;

B.   Repatriate to the United States all such Assets;

C.   Hold and retain all such repatriated Assets, and prevent any disposition, transfer, or dissipation whatsoever of any such Assets, except as this Order requires;

D.   Transfer all such repatriated Assets to the Receiver upon the Receiver's instructions;

E.   Perform any act or acts (including, without limitation, the execution of any Documents) necessary to repatriate Assets; and

F.   Provide the Receiver with complete access to records and Documents

31

held by financial institutions of any sort outside the United States.

## VIII.  **NON-INTERFERENCE WITH REPATRIATION**

**IT IS FURTHER ORDERED** that Defendant Foti, and his successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, and each Receivership Entity, are hereby restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding "Repatriation of Foreign Assets" Section of this Order, including, but not limited to:

A.      Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to the "Repatriation of Assets" Section of this Order; or

B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Assets have been fully repatriated pursuant to "Repatriation of Assets" Section of this Order.

## IX.    **RECEIVER'S REPORTS**

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before December 5, 2016, regarding: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated

Assets of the Receivership Estate; (3) the sum of all liabilities of the Receivership Estate; (4) the steps the Receiver intends to take in the future to:  (a) prevent any diminution in the value of Assets of the Receivership Estate; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Estate, if appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention.  *Provided, however*, if any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## X.     COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Estate.  The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by the "Receiver's Reports" Section of this Order. The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

## XI.    PRE-EXISTING ORDERS

**IT IS FURTHER ORDERED** that nothing herein modifies any existing Order in any way, including the August 24 Foti PI.  Furthermore, nothing herein modifies any of the orders governing Damian Kutzner.  *See FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction as to Defendants GM Funding, Inc., Robert D. Kutzner, Global Mortgage Funding, Inc., and Damian R. Kutzner (May 5, 2003); *U.S. v.*

*Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.), Stipulated Judgment and Order for Permanent Injunction (July 17, 2009). The FTC may take discovery and pursue any other measure any existing Order permits.

## XII.   BANKRUPTCY

**IT IS FURTHER ORDERED** that in light of the appointment of the Receiver, the Receivership Entities are prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., or any other similar insolvency proceeding, without prior permission from this Court.

## XIII. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.     Except by leave of this Court, during the pendency of the Receivership ordered herein, Defendant Foti, the Receivership Entities, and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendant Foti and any Receivership Entity, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

1.     Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.     Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities.

B. This Section does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, including but not limited to any actions (including discovery) taken by the FTC in enforcing the Orders in the related matters, *FTC v. GM Funding, Inc.*, SACV02-1026 DOC (C.D. Cal.), *U.S. v. Global Mortgage Funding, Inc.*, SACV07-1275 DOC (C.D. Cal.); or

4. The issuance to the Receivership Entities of a notice of tax deficiency.

## XIV.  **CORRESPONDENCE WITH PLAINTIFF**

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening,

all correspondence and service of pleadings on Plaintiff shall be sent via electronic
submission and Federal Express to:

> Benjamin Theisman
> Gregory Madden
> Federal Trade Commission
> 600 Pennsylvania Ave., NW, Mail Drop CC-9528
> Washington, DC 20580
> Telephone: (202) 326-2223, -2426
> btheisman@ftc.gov, gmadden@ftc.gov

## XV.   <u>SERVICE OF THIS ORDER</u>

**IT IS FURTHER ORDERED** that copies of this Order may be served by
facsimile, email, hand-delivery, personal or overnight delivery, or U.S. Mail, by
agents and employees of the Receiver or FTC or any state or federal law
enforcement agency or by private process server, upon any Financial Institution or
other entity or person that may have possession, custody, or control of any
Documents or Assets within the Receivership Estate, or that may otherwise be
subject to any provision of this Order.  Service upon any branch or office of any
Financial Institution shall effect service upon the entire Financial Institution.

## XVI.  <u>DISTRIBUTION OF ORDER</u>

**IT IS FURTHER ORDERED** that within three (3) calendar days after
service of this Order, Defendant Foti shall provide a copy of this Order to each of
his agents, employees, directors, officers, subsidiaries, affiliates, attorneys,
independent contractors, representatives, franchisees, affiliates, and all persons in
active concert or participation with them.  Within five (5) calendar days following
this Order, Defendant Foti shall provide the FTC with an affidavit identifying the
names, titles, addresses, and telephone numbers of the persons that Defendant Foti
has served with a copy of this Order in compliance with this provision.

//

## XVII.  <u>RETENTION OF JURISDICTION</u>

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of
this matter for all purposes of construction, modification, and enforcement of this
Order.


   IT IS SO ORDERED.
DATED: November 4, 2016

By: _____

   Honorable Beverly R. O'Connell
   United States District Court Judge