Benjamin J. Theisman, *pro hac vice*
btheisman@ftc.gov
Gregory J. Madden, *pro hac vice*
gmadden@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
Tel: (202) 326-2223, -2426; Fax: (202) 326-3197

Thomas Syta, Cal. Bar No. 116286
tsyta@ftc.gov
FEDERAL TRADE COMMISSION
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax: (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAMIAN KUTZNER, *et al.*,<br><br>Defendants. | **SACV16-00999 BRO (AFMx)**<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISSOLVE OR OTHERWISE MODIFY PRELIMINARY INJUNCTION AS TO DEFENDANT CHARLES T. MARSHALL**<br><br>**Date:** June 12, 2017<br>**Time:** 1:30 pm<br>**Location:** Courtroom 7C<br><br>United States Courthouse<br>350 West 1st Street<br>Los Angeles, CA 90012 |

# <u>TABLE OF CONTENTS</u>

Table of Contents

I.   PROCEDURAL AND FACTUAL BACKGROUND ...................................2

  A.   The Initial Evidence Presented by the FTC...............................2

  B.   The Court Issued Its TRO Against Marshall Based on the Evidence Presented by the FTC...................................................................4

  C.   Marshall Stipulated to the Preliminary Injunction on Behalf of Himself, ALG, and Advantis Law. ...................................................4

  D.   The FTC's Prosecution of the Case Has Produced Significant Evidence Confirming Marshall's Liability....................................5

    1.   Brookstone and Advantis Were a Common Enterprise..............................6

    2.   Marshall was Working on Brookstone Matters for the Common Enterprise.................................................................................7

    3.   Marshall Knew "Mass Joinder Lawsuits" Were Used in "Illegal Schemes" and Knew About the Other Individual Defendants' Checkered Histories, But Moved Forward Without Conducting Any Due Diligence. .........8

  E.   Marshall Knew About Advantis' Misrepresentations......................11

  F.   Marshall Has Not Complied with the TRO or the PI. ..........................11

II.   MARSHALL HAS PRESENTED NO BASIS FOR DISSOLVING OR MODIFYING THE PI..................................................................12

A.   MARSHALL HAS NOT IDENTIFIED OR ARGUED THERE HAS BEEN A SIGNIFICANT CHANGE IN LAW OR FACT JUSTIFYING DISSOLVING OR MODIFYING THE PI. ..................................................................................12

B.   CONSIDERING ALL OF THE AVAILABLE EVIDENCE, IT IS NOW HIGHLY LIKELY THE FTC WILL PREVAIL AGAINST MARSHALL. .....................................................13

C.   MARSHALL'S CLAIMS THAT HE HAD NO KNOWLEDGE OF ADVANTIS LAW IS NOT CREDIBLE ..................................................................................17

D.   THERE IS NO BASIS FOR DISSOLVING OR MODIFYING THE ASSET FREEZE GIVEN MARSHALL'S NON-COMPLIANCE WITH PREVIOUSLY ISSUED COURT ORDERS. ..................................................................................18

III. CONCLUSION..................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*CFTC v. American Metals Exchange*, 991 F.2d 71 (3d Cir. 1993) ........................20

*F.T.C. v. J.K. Publications, Inc.*, No. CV 99-00044 ABC AJW, 2009 WL 997421 (C.D. Cal. Apr. 13, 2009) ............................................................................21

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999).......................................14

*FTC v. Grant Connect, LLC*, 763 F.3d 1094 (9th Cir. 2014) ........................... 14, 15

*FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ...................13

*FTC v. Johnson*, 2011 WL 3497161 (D. Nev. Aug. 10, 2011) ........................ 12, 13

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ........ 14, 15

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009)............................................. 20, 21

*Grisham v. Philip Morris Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009) ................18

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375 (1980) .........20

*Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011) ................................................17

*Jason Chan Lee v. JP Morgan Chase Bank, N. A.*, Case Number, 5:15-cv-050215-RMV, CAND ...........................................................................................19

*Melt Franchising, LLC v. PMI Enters.* 2008 U.S. Dist. LEXIS 115636 (C.D. Cal. 2008) ............................................................................................... 12, 13

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000) .................................................1, 12

*Sherwin Williams Co. v. JB Collusion Services Inc.*, 186 F. Supp. 3d 1087 (S.D. Cal. 2016)...............................................................................................17

*Swish Marketing*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) ...................... 15, 16

*United States v. Business Recovery Servs. LLC,* 2012 U.S. App. LEXIS 12568 (9th Cir. 2012) ............................................................................................12

*United States v. Business Recovery Servs. LLC*, 488 Fed. Appx. 188 (9th Cir. 2012)...............................................................................................13

## <u>Rules</u>

FED. R. CIV. P. 11 .................................................................................18

FED. R. CIV. P. Rule 15(b)...............................................................................16

FED. R. CIV. P. Rule 65(a)(2) ..................................................................16

1   The Federal Trade Commission ("FTC") opposes defendant Charles T.

2   Marshall's ("Marshall") attempt to dissolve or modify the Preliminary Injunction[1]

3   ("PI") he **stipulated** to on June 23, 2016, and which the Court thereafter entered on

4   June 24, 2016 (DE 57). Marshall has not carried his burden of demonstrating a

5   significant change in fact or law justifying dissolving or modifying the PI. *Sharp*

6   *v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). The law has not changed and

7   Marshall cites no facts post-dating the PI's entry justifying dissolution or

8   modification. Quite simply, Marshall's Motion to Dissolve identifies no "changed

9   circumstances" justifying dissolving or modifying the PI. Having cited no changed

10   circumstance, Marshall, a California licensed attorney who stipulated to the

11   preliminary injunction with full knowledge of its contents, should be bound by it.[2]

12   Moreover, discovery to date confirms that the FTC has shown a likelihood that

13   Marshall was part of the Brookstone/Advantis deceptive common enterprise. At

14   this late juncture, Marshall makes the perplexing claim that, despite entering an

15   appearance for Advantis Law, PC, in this matter, and stipulating to entry of a PI on

16   its behalf, he had no knowledge of its existence as a corporate entity. Finally,

17   Marshall's non-compliance with the Court's Orders illustrate the importance of

18   maintaining the PI in full force and effect.

19

20

21

22   [1] DE 239, *Notice of Motion and Motion to Dissolve or Otherwise Modify*

23   *Preliminary Injunction as to Defendant Charles T. Marshall* ("Motion to
     Dissolve").

24   [2] Although Marshall never argues in his Motion to Dissolve that no longer

25   invoking his 5th Amendment right is "changed circumstances," if the Court
     considers Marshall's these assertions from other pleadings, the FTC requests an

26   opportunity to respond to that argument more fully. Briefly, the FTC notes that

27   tactical regret is not a significant change in fact or law justifying dissolution or
     modification of the PI.

28

1

## I.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Initial Evidence Presented by the FTC

On May 31, 2016, the FTC filed its Complaint (DE 1) and accompanying materials supporting a temporary restraining order against, *inter alia*, Marshall and the Corporate Defendants, Brookstone and Advantis.[3]  DE 11-14, 16-18.  The FTC alleged that Brookstone and Advantis were a "common enterprise" engaging in unlawful acts and practices.  DE 1, Cmplt.  ¶ 13, Page ID #:6.  The FTC alleged that, although purportedly separate law firms, Brookstone and Advantis advertised the same services on their websites, often using identical language and, in particular, using identical language to describe the real estate services they offered to the public.  *Id.* at ¶¶ 31-32, Page ID #:10.  Significantly, each firm touted the *Wright v. Bank of America ("Wright")* mass joinder lawsuit as its own.  *Id.* at ¶ 33.  The FTC alleged and then detailed evidence showing that Marshall was an officer and owner of Advantis.  The FTC identified Marshall as a Director and  Executive Officer of Advantis who appeared as counsel in the Corporate Defendants' *Wright* mass joinder.  *Id.* at  ¶ 12, Page ID #:6.

In support of its TRO application, the FTC submitted evidence establishing the common enterprise.  For instance, the FTC showed that Brookstone/Advantis shared the same address, used the same language on their websites, touted the *Wright* case as their own, had the same people acting as both Brookstone and Advantis employees, and were controlled by the same individuals, including, most

---

[3] In the Complaint, "Brookstone" included both the California and identically named Nevada company.  "Advantis" included both Advantis Law PC and Advantis Law Group PC.  "Corporate Defendants" meant Brookstone and Advantis collectively.  Hereinafter, when referring to both Advantis entities the FTC will use "Advantis," when referring only to Advantis Law Group, PC the FTC will use "ALG," and when referring only to Advantis Law PC the FTC will use "Advantis Law."

particularly, defendant Damian Kutzner ("Kutzner").[4] DE 11, TRO Memo. at 5, n.17, Page ID #:245; at 12-13, n. 47-48, 50-51, Page ID #:252-53; DE 17, Ayoub Decl. ¶ 15, Page ID #: 1944.  With respect to Marshall, the FTC submitted evidence showing he was an Officer and Director, appearing on state incorporation papers for ALG[5] with those titles and further appearing on the Advantis website as a "Director."[6] DE 11, TRO Memo. at 16, n. 65-66, Page ID #: 256-57; DE 14, Gales Decl. ¶ 15, Att. 4, Page ID #:1085, 1110.  Moreover, the evidence showed Marshall appeared in the *Wright* matter and represented Brookstone clients as an ALG attorney.  DE 13, Declaration of Gregory Madden (May 18, 2016) ("May 18, 2016 Madden Decl."), Atts. 38-39, Page ID #: 833-43.[7]  Marshall did so with full knowledge of the many legal difficulties his co-defendants Kutzner, Vito Torchia

---

[4]  After the Receiver took control of Brookstone/Advantis it became clear Jeremy Foti ("Foti") controlled the common enterprise with Kutzner, and the FTC shortly thereafter amended its Complaint adding Foti as a named defendant.  DE 61, First Amended Complaint (July 5, 2016) Page ID #:3137-58.

[5]  Marshall is identified as the CEO, CFO, and sole Director of ALG.  DE 14, Gales Decl., Att. 4, page ID #:1110.  The evidence shows ALG and Advantis Law are functionally the same entity, but Marshall is not identified as an Officer or Director on the Advantis Law PC corporate document.  Notably, the corporate documents for both Advantis Law and ALG have the same address and Geoffrey Broderick is identified on both corporate documents.  DE 14, Gales Decl., Att. 4, Page ID #:1110, 1116.  With respect to the corporate documents for which Mr. Marshall is seeking judicial notice (DE 239-1), the FTC points out to the Court that those documents were in fact submitted by the FTC with its TRO filings.  DE 14, Gales Decl., Page ID #: 1108-17.  Marshall had those documents in his possession when appearing at the TRO and before stipulating to the PI.

[6]  The website is found at www.advantislaw.com and the title page welcomes visitors to "Advantis Law Group."  *See* DE 14, Gales Decl. ¶ 25, Att. 18, Page ID #:1087, 1367.  Notably, the website is not advantislawgroup.com.

[7]  Marshall's email address is Charles@AdvantisLaw.com, mirroring the ALG website address.  DE 13-1, May 18, 2016 Madden Decl., Att. 38, Page ID #: 834.

3

("Torchia"), and Geoffrey Broderick ("Broderick"), were facing.  DE 11, TRO Memo. at 5, n.19-20, 17, n.69, 23, n.88, Page ID #: 245, 257, 263; DE 13, May 18, 2016 Madden Decl., Atts. 36, 38-39, 48, Page ID #:815-16, 818-22, 833-34, 837, 841, 904, 908.

**B.  The Court Issued Its TRO Against Marshall Based on the Evidence Presented by the FTC.**

The Court reviewed the evidence and granted the TRO against all of the defendants, including Marshall, concluding that the FTC "proffered sufficient evidence to demonstrate a likelihood of success on its Section 5 claim."  DE 22, TRO Opinion at 11, Page ID #:2332.  In doing so, the court considered the evidence regarding Marshall and the common enterprise and found the FTC had "adequately demonstrated a likelihood that Brookstone and Advantis form a 'classic common enterprise,' as Plaintiff provides evidence establishing their relationship to the Individual Defendants and their connection with the allegedly fraudulent scheme."  *Id.* at 3, 11, Page ID #:2324, 2332.   The TRO included a freeze on all bank accounts held by any of the defendants, including Marshall.  DE 23, TRO at 3-4, Page ID #:2338-39.

**C.  Marshall Stipulated to the Preliminary Injunction on Behalf of Himself, ALG, and Advantis Law.**

Following the June 1, 2016 TRO issuance, Marshall appeared at the June 15, 2016 PI show cause hearing where he represented in open court he was appearing for both ALG and Advantis Law and stipulated to extending the TRO to July 1, 2016 for himself and both ALG and Advantis Law.  *See* DE 46.  Shortly thereafter, he filed his notice of appearance stating:

> "**to comply with his representation to the Court and opposing counsel at the hearing on June 15, 2016, herby [sic] files this Notice of Appearance on behalf of his co-defendants ADVANTIS LAW P.C. and ADVANTIS**

**LAW GROUP P.C.**

DE 50, Page ID #: 2959 (emphasis supplied).[8]  On June 23, 2016, Marshall stipulated to the PI on behalf of himself and ALG and Advantis Law.  DE 53, Page ID #:2967-70.  The Court entered the PI on June 24, 2016 (DE 57).

In the PI, Marshall stipulated there was good cause to believe the court's ability to provide effective final relief for consumers "will suffer immediate and irreparable damage from the Stipulating Defendants' transfer, dissipation, or concealment of their Assets . . . unless Stipulating Defendants continue to be restrained and enjoined by Order of this Court."  DE 57, PI at 4, Page ID #:3070.  He further stipulated that the frozen accounts include all "accounts that are held by or for the benefit of, or controlled by, directly or indirectly, any Stipulating Defendant."  Id. at 5, Page ID #:3071.  Marshall stipulated that all of his assets as of the time of the TRO were frozen and that all subsequent assets if derived, directly or indirectly, from the activities described in the Complaint would also be frozen.  Id. at 14-15, Page ID #:3080-81.

**D.    The FTC's Prosecution of the Case Has Produced Significant Evidence Confirming Marshall's Liability.**

In prosecuting this matter, the FTC has developed substantial additional evidence establishing Brookstone/Advantis was a common enterprise for which Marshall was working and that Marshall knew that the Brookstone/Advantis operation was a mass joinder scam.  The evidence shows Brookstone and Advantis were controlled by the same people, shared clients, shared offices, and shared

---

[8] Marshall went on to state "[t]he FTC has elected to sue the undersigned here individually and as an officer of ADVANTIS LAW P.C. and ADVANTIS LAW GROUP P.C. with the corporate codefendants in this case."  DE 50, Page ID #: 2959.  Marshall made no claim at that time that he was not an officer of Advantis Law, let alone that he knew nothing of Advantis Law.  Indeed, he went forward and purported to bind Advantis Law to the PI.

1   personnel.  The evidence is clear that Marshall was working on the *Wright* matter
2   to advance the interests of the common enterprise.  Finally, Marshall knew that
3   Brookstone, Kutzner, Torchia, and Broderick all had recent civil or bar
4   enforcement actions against them, but nonetheless he chose to move forward as an
5   officer and owner of ALG and a participant in Brookstone cases.

## 1.    Brookstone and Advantis Were a Common Enterprise.

7   Beyond the information provided with the FTC's opening papers, ample
8   additional evidence demonstrates Brookstone and Advantis were a common
9   enterprise.  The Receiver found on-site virtually identical Brookstone/Advantis
10  scripts with the same misleading statements, similar Brookstone/Advantis mailer
11  materials, and both Brookstone and Advantis retainer agreements.  DE 41, Prelim.
12  Rec. Rpt. at 7-8, 10-11, DE 41-2, 3, and 4, Exs. 3-8, 17-20, Page ID #:2472-73,
13  2475-76, 2507-27, 2577-618.  These include a mailer identifying Marshall as the
14  lawyer for Advantis Law.  DE 41-2, Ex. 4, Page ID #: 2511.  Tellingly, one
15  executed retainer agreement dated April 5, 2016 was a joint Advantis and
16  Brookstone agreement with the client retaining Brookstone and Advantis as co-
17  counsel and the monies being provided to Brookstone.  DE 41-4, Ex. 18, Page ID
18  #:2585-94.[9]

19  Marshall's own emails and documents establish the Brookstone/Advantis
20  common enterprise.  Marshall signed letters to Brookstone clients saying: "This
21  letter is to inform you that Brookstone Law, P.C. will be transferring your legal

---

[9] Marshall's argument that because Receiver Exhibit 18 has an ALG header and
references Advantis Law in its text it "contradicts" the FTC's claim that the
corporate names were used interchangeably is wrong; it actually demonstrates the
names were used interchangeably.  DE 239 at 9, Page ID #:6343.  Moreover,
Marshall ignores Receiver Exhibit 20, an ALG only retainer found on-site
identifying ALG in both the header and text of the agreement.  DE 41-4, Ex. 20,
Page ID #:2606-18.

matter to Advantis Law Group, P.C.  As a result, Brookstone Law will no longer be handling your legal matter, concerning the real property you retained the firm to protect.  Instead, Advantis Law will be stepping in for you, in order to expedite the filing of your needed lawsuit."  Declaration of Gregory Madden (April 24, 2017) ("April 24, 2017 Madden Decl.") DE 218-2, Att. 7, Ex. 46, Page ID #:5999-6003. Other Marshall emails provide instructions on the "Brookstone to Advantis client hand-off" and "clients still positioned with Brookstone, but subject to transfer to Advantis." *Id.*, Att. 8, Ex. 44, Page ID #:6004; Att. 9, Ex. 48, Page ID #:6005.

### 2.  Marshall was Working on Brookstone Matters for the Common Enterprise.

The *Wright* case was Brookstone's largest mass joinder case in February 2015 when Marshall's official involvement with Brookstone/Advantis began.  In July 2015, Marshall associated into the *Wright* matter and was working with Brookstone lawyers and employees on it.  Marshall touted both its, and his, importance to his co-principals, Kutzner and Foti, emailing them that he would be appearing at the *Wright* case management conference and that "Hearing is a big deal [].  Nothing important will happen likely.  But the credibility of the case, and therefore **any settlement**, hinges upon **my presenting well for Advantis** (which I will do)." *Id.*, Att. 10, Ex. 55, Page ID #:6006 (emphasis supplied).  In September 2015, Marshall emailed Foti and Kutzner that he understood the importance of the *Wright* matter stating "I have for weeks been coordinating with Jon Tarkowski [Brookstone lawyer], to ensure that case stays on track." *Id.*, Att. 11, Ex. 57 Page ID #:6007.  On September 16, 2016, Marshall emailed Tarkowski his approval of a proposed Meet and Confer order and attached his signature page identifying "Advantis Law Group, PC, Charles Marshall" as "Attorneys for All Plaintiffs." *Id.*, Att. 12, Ex. 62, Page ID #:6012.  In addition, on April 15, 2016, Marshall involved himself in additional Brookstone matters, instructing Jonathan Tarkowski to provide "access to all the pleadings for recent Brookstone joinder cases that you

filed.  I need to review and assess status of hearings, pleadings, **next steps**, etc."
Declaration of Gregory Madden (May 22, 2017) ("May 22, 2017 Madden Decl.")
Att. 1, Ex. 53, FTC-RAD-002-0148331 (emphasis supplied).

> **3.  Marshall Knew "Mass Joinder Lawsuits" Were Used in "Illegal Schemes" and Knew About the Other Individual Defendants' Checkered Histories, But Moved Forward Without Conducting Any Due Diligence.**

Marshall's Motion to Dissolve declaration admits that "mass joinder
lawsuits have been the hook for some illegal schemes" and "subject to abuse and
predation from all kinds of actors." DE 239-1, Declaration of Charles T. Marshall
("Marshall Decl.") ¶ 7, Page ID #:6355.  Nonetheless, Marshall went forward with
the Brookstone/Advantis common enterprise knowing full well about:  (1) the
Connecticut and Florida Attorney Generals recent suit against co-Advantis
principal Broderick for a mass joinder lawsuit scam; (2) consumer complaints
about Brookstone's mass joinder practice;  (3) bar disciplinary proceedings related
to Brookstone, namely Torchia's multiple bar complaints; and (4) the FTC's prior
suits against Kutzner and that Kutzner's prior law firm enterprise, United Law
Group ("ULG"), had been raided by federal criminal law enforcement.  In the face
of all this, the entirety of Marshall's due diligence consisted of relying on
Kutzner's oral representation[10] that the Brookstone/Advantis activities had been

---

[10]  This reliance is all the more incredible in light of Marshall's declaration
explaining that at some point Kutzner "caused to be filed" a "forged" amended
complaint signing Marshall's name without his "knowledge or consent." DE 239-1, Marshall Decl. ¶ 15, Page ID #:6360.  Marshall does not identify when this
fraudulent filing was made, but explains it was filed under the ALG name and,
rather than inform that Court of the fraud, he elected to litigate the matter. *Id.*
Given Marshall knew Kutzner would forge his name on a court filing, it is obvious
that not only was Marshall's reliance on Kutzner's representations ridiculous, but
that nothing Kutzner or his cohorts would do would be sufficient for Marshall to
disassociate from the Brookstone/Advantis common enterprise.

vetted and were bar compliant, without conducting any further inquiry or asking Kutzner for any documentary support.

On March 2, 2015, Marshall sent Foti and Kutzner an email designated "Importance: High" explaining he had done some "due diligence" with respect to "current personnel" and what to do about the "critical matter[]" of the Florida and Connecticut Attorney Generals' complaint against Broderick. DE 218-2, April 24, 2017 Madden Decl., Att. 13, Ex. 35 Page ID #:6013. That complaint alleged, *inter alia*, that Broderick was the front man for a "mass joinder" scheme perpetrated by purported real law firms that: (a) used mailers urging consumers to quickly join a lawsuit against their mortgage holders for multiple fraud and misrepresentation claims; (b) made false claims that the firms had multiple attorneys with significant litigation experience; and (c) put up websites with numerous misrepresentations designed to deceive consumers into believing the enterprise was a legitimate and experienced law firm. *Id.*, Compl. ¶¶ 3, 7, 31, 60, and 65-67, Page ID #:6015-16, 6021, 6026-27. Thus, Marshall knew that Broderick had been implicated in a mass joinder lawsuit scam before Brookstone/Advantis, with parallels too obvious to ignore. Nonetheless, Marshall went forward, emailing Foti and Kutzner on March 19, 2015, that although he had "misgivings, given the situation with Brookstone" and that Brookstone's and Broderick's history was creating "a lot of liability for me," he wanted to continue because "[a]t the end of the day, though, **we are in complete agreement that this is fundamentally a business decision.** So I am moving forward in that light. The business prospect still looks quite good." *Id.*, Att. 14, Ex. 37, Page ID #:6053 (emphasis supplied).

Also, from the outset, Marshall knew of the Brookstone/Torchia bar issues, specifically referencing "Vito's Bar Oversight" issues in a November 2014 proposed framework for the potential business relationship with Foti and Kutzner. *Id*., Att. 15, Ex. 30, Page ID #:6056. Indeed, Marshall testified that at that time he knew complaints had been filed against Brookstone and Torchia related to

Brookstone mass joinder cases. *Id*., Att. 16, Deposition Testimony of Charles T. Marshall (Mar 20, 2017) ("Marshall Depo.") at 24:6-25:14, Page ID #:6061-62. Marshall testified that he did no systematic analysis of the Brookstone mass joinder cases before entering his agreement with the other defendants. *Id*. at 146:12-16, Page ID #:6068.  Marshall further testified that he did not research the bar complaints against Torchia at "any kind of level of detail." *Id*. at 196:18-20, Page ID #:6069.  Marshall also knew Kutzner had been sued by the FTC and his previous law firm enterprise, ULG, had been raided by federal criminal law enforcement. *Id*. at 245:24-25-246:1-17, Page ID #:6074.   Although Marshall was evasive about when he learned these facts about Kutzner, he certainly had notice as of July 29, 2015, when Bank of America detailed Kutzner's history in a *Wright* matter filing. DE 13, May 18, 2016 Madden Decl. Att. 36, Page ID #:815-16.

Marshall's testimony is that he relied on Kutzner's oral representations  as his exclusive basis for determining that Brookstone/Advantis practices were bar compliant.[11] DE 218-2, April 24, 2017 Madden Decl., Att. 16, Marshall Depo. at 215:24-216:24; 244:19-25, Page ID #: 6071, 6073.  Notwithstanding his emails regarding his potential liability and concerns about Torchia and Broderick, Marshall further testified he never personally reviewed any Brookstone or Advantis marketing materials. *Id*. at 218:8-20, Page ID #: 6072.  Marshall admits he never saw any documents corroborating Kutzner's claim that any advertising materials were vetted and bar compliant. *Id*. at 247:12-248:5, Page ID #:6074. Tellingly, Marshall testified that at no time did he do "an independent corroboration" of what Kutzner told him. *Id*. at 261:3-9, Page ID #:6077.   He relied exclusively on the word of a non-lawyer with a checkered history as

---

[11] Marshall's testimony regarding his knowledge of Brookstone/Advantis practices is not credible, but even taking his testimony as true, that testimony establishes his liability.

10

conclusively establishing the legality of the business practices.  *Id*. at 247:17-248:5, Page ID #:6074.  Even though he claims he never viewed the marketing, on multiple occasions in August-September 2015, Marshall emailed Foti and Kutzner urging that they begin sending out Advantis mailers and other Advantis marketing. *Id.*, Att. 17, ("fully open marketing") Ex. 54, Page ID #:6078; Att. 10, ("I need to know marketing is going to be full-on.") Ex. 55, Page ID #:6006; Att. 18, ("let's open up the marketing") Ex. 56, Page ID #:6094.

## E.      Marshall Knew About Advantis' Misrepresentations

Marshall knew that ALG's website had multiple misrepresentations, but did nothing.  During his deposition testimony about website images captured by the FTC in November 2015, he acknowledged multiple misrepresentations regarding Advantis' experience, locations, areas of practice, attorneys, paralegals, and legal assistants.  DE 218-2, Marshall Depo. at 241:1-244:11, Page ID #: 6073; *see* DE 14-4, Gales Decl., Att. 18, Page ID #: 1367-76.  Marshall was familiar with the website because he was reviewing the website around that time due to his November 25, 2015 suspension from the practice of law.  Weeks after the FTC captured the website, on December 15, 2015, concerned that his name and visage were still inappropriately on the ALG website, Marshall instructed Damian Kutzner to remove them.  May 22, 2017 Madden Decl., ¶ 2.b*,* Att. 2, Ex. 60, FTC-RAD-001-0177899-900.  Damian Kutzner, one of the co-leaders of the common enterprise, complied.  *Id.*

## F.      Marshall Has Not Complied with the TRO or the PI.

As detailed in the FTC's pleadings, Marshall violated:  (a) the Court's asset freeze provision in the Court's TRO and PI; and (b) certain of the PI's injunctive reporting requirements.  The FTC refers the Court to its earlier filings in support of its contention that Marshall violated the asset freeze provisions, including dissipating $24,500 to an attorney, and violating PI injunctive requirements,

1   including failing to provide a completed Financial Statement.  DE 220-1 and DE
2   232.

3   **II.  MARSHALL HAS PRESENTED NO BASIS FOR DISSOLVING OR MODIFYING THE PI.**

4       **A.  Marshall Has Not Identified or Argued There Has Been a Significant Change in Law or Fact Justifying Dissolving or Modifying the PI.**

5       Marshall must establish a significant change in law or fact to justify

6   dissolving or modifying the PI.  *Sharp*, 233 F.3d at 1170  ("A party seeking

7   modification or dissolution of an injunction bears the burden of establishing that a

8   significant change in facts or law warrants revision or dissolution of the

9   injunction.")

10      Marshall cites no change in law or fact meriting modification.  Indeed, while

11  citing to a Ninth Circuit decision on changed circumstances, Marshall's argument

12  is utterly devoid of any "changed circumstance" justifying modifying or dissolving

13  the PI.[12]  Having failed to make **any** argument identifying a changed circumstance,

14  of either law or fact, Marshall's motion must fail.[13]

_____

[12] Thus, the FTC can make no argument in response.

[13] Although not presented as the justification for modifying or dissolving the PI, the only thing that appears to have "changed" is his decision to no longer assert his 5th Amendment right against self-incrimination.  Marshall's desire to now litigate the PI is not a change in law or fact.  Indeed, his motion is entirely precluded because he identifies no facts and no law that he could not have presented back in June 2016 when the PI show cause hearing was pending.  *United States v. Business Recovery Servs. LLC,* 2012 U.S. App. LEXIS 12568, *4 (9th Cir. 2012); *Melt Franchising, LLC v. PMI Enters.* 2008 U.S. Dist. LEXIS 115636, *4-5 (C.D. Cal. 2008) (modification not warranted where "[d]efendants simply failed to present facts that were available to them before the preliminary injunction was issued"); *FTC v. Johnson*, 2011 WL 3497161 (D. Nev. Aug. 10, 2011) (denying motion to dissolve PI based on facts and arguments that could have been presented at the time).  Courts have rejected attempts like Marshall's to later challenge a PI when

12

**B.     Considering All of the Available Evidence, It Is Now Highly Likely the FTC Will Prevail Against Marshall.**

The FTC's liability case against Marshall has only gotten stronger since the Court found the FTC "proffered sufficient evidence to demonstrate a likelihood of success on its Section 5 claim." DE 22, TRO Opinion at 11, Page ID #:2332.   The evidence developed to date shows Brookstone/Advantis was a classic common enterprise.  *Id.*; *FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (common enterprise shown where corporate defendants were under common control; shared office space, employees, and officers).  Brookstone clients were handed off to Advantis, Brookstone/Advantis was run by the same people, and Brookstone/Advantis shared employees and office space.  *See supra* Sections I.A.B., D.1.  Brookstone/Advantis had virtually identical websites, virtually identical scripts, and were co-counsel on retainer agreements.  *See supra* Section I.D.1.  As an admitted owner of a common enterprise member, Marshall will be held liable for injunctive relief.  *See FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997) ("president" of company who performed no, or minimal, services for company liable).  Moreover, Marshall was working with Brookstone/Advantis employees on Brookstone matters, particularly *Wright* – the largest mass joinder remaining for Brookstone - to advance the common enterprise.

---

their litigation strategy has changed.  For instance, defendants in *Melt Franchising* argued that they had not presented existing evidence due to concerns about jeopardizing a possible jurisdictional challenge.  *Id.* at *4.  Nonetheless, the court found defendants' failure to raise issues at the preliminary injunction stage barred later citing those facts to justify its modification.  *Id.* at *4-5.  *See also United States v. Business Recovery Servs. LLC*, 488 Fed. Appx. 188 (9th Cir. 2012) (rejecting newly obtained declarations as "new facts" when they pertained to the alleged telemarketing scheme at issue and detailed activities that took place prior to the imposition of the PI).

13

*See supra* Section I.D.2.  Marshall does not deny this, admitting he participated in the *Wright* matter to "monitor[] the progress of the case and provide[] strategic advice related to legal theories and pleading development."  DE 239, at 6, Page ID #:6340.

Marshall will also be jointly and severally liable for monetary relief because he had the requisite knowledge.  *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101-02 (9th Cir. 2014); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997)).  First, his role as an owner and principal—including the admission in his emails that in such a role he was taking on liability for the enterprise—is sufficient.  *FTC v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999) ("The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability.").  Second, even accepting as true Marshall's incredible assertions at his deposition that he knew nothing of Brookstone/Advantis advertising or sales practices,[14] ample evidence establishes his requisite knowledge.  Marshall specifically recognized the possibility of a mass joinder lawsuit scam and knew that:  (a) Brookstone and Torchia had bar complaints related to their mass joinder cases; (b) Broderick had been sued in federal district court by the Florida and Connecticut Attorneys General for a mass joinder lawsuit scam; and (c) Damian Kutzner had twice been sued by the FTC and his prior entity ULG (a law firm) had been raided by federal criminal law enforcement.  *See supra* Section I.D.3; *see Publishing Clearing House*, 104 F.3d at 1171 (holding nominal president liable based on that person's knowledge that scheme's principal had a criminal history).

---

[14]  Notably, discovery is ongoing in this matter and Marshall has yet to provide full and complete discovery responses.  Most notably, at his deposition Marshall identified "hundreds of emails" in his possession that have not been produced and for which the FTC has begun the Local Rule 37-1 process.

His claimed failure to ever review any of the marketing or perform any due diligence on the legality of the sales process further shows that Marshall was, at best, recklessly indifferent to the illegality of the sales process or intentionally avoiding the truth.  *Grant Connect, LLC*, 763 F.3d at 1101-02 (knowledge established if individual is "recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth" (quoting *Publishing Clearing House, Inc.*, 104 F.3d at 1170-71)).

Marshall's new talisman, *FTC v. Swish Marketing*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010), changes nothing.  *Swish Marketing* was decided on a 12(b)(6) motion, prior to any discovery, in which the FTC originally pled only that the individual defendant was the CEO.[15]  Here, Marshall's time to file a 12(b)(6) has long since passed.

Moreover, *Swish Marketing* is factually distinguishable.  In *Swish Marketing*, the Complaint initially pled only that the defendant was an officer.  The Court found this insufficient in light of *Publishing Clearing House*, where in the

_____

[15]  The *Swish Marketing* court's ruling contradicts established Ninth Circuit precedent.  That court relied on the lack of facts establishing knowledge when granting the motion to dismiss.  *Id.* at *6.  As the case law makes clear, the FTC does not need to prove knowledge to hold an individual defendant liable for *injunctive* relief.  *Publishing Clearing House*, 104 F.3d at 1170 (explaining standard for injunctive relief, requiring only proof of corporate wrongdoing and authority to control).  Knowledge is only required for restitutionary relief.  *Id.* at 1171 (explaining separate standard for restitutionary relief, requiring proof of knowledge).  Also contrary to *Swish Marketing*, having official authority to control as a corporate officer is sufficient for injunctive relief.  *Publishing Clearing House, Inc.*, 104 F.3d at 1170 (stating the standard for injunctive relieve and concluding that the defendant's "assumption of the role of president of PCH and her authority to sign documents on behalf of the corporation demonstrate that she had the requisite control over the corporation").

summary judgment context, the FTC had proved the corporate officer had obtained and signed the company's business license and signed an agreement on behalf of the company.  2010 WL 653486 at *5.  Here, the FTC alleged Marshall was an owner, Director, and CEO, not simply an officer.  In addition, the FTC specifically alleged Marshall took part in the scheme by representing the consumer victims in the common enterprises' largest mass joinder - the *Wright* matter.   An entities' owner/attorney representing a party through a pleading is even more telling than signing an application on a business license or signing a contractual agreement, a sufficient indicia of authority to control under *Publishing Clearing House*.  Moreover, the FTC further alleged that Marshall took part in the scheme, representing Brookstone clients, touting the *Wright* case as his on the Advantis website while attempting to induce consumers to hire ALG by using the same case description as on Brookstone's website, and using identical language to Brookstone's website in describing Advantis' real estate legal services.

Furthermore, unlike in *Swish Marketing*, the FTC sought a TRO and thus the post-Complaint litigation detailed even more facts.  Because Marshall never objected to the pleadings until the deadline for amending passed, and in fact stipulated to the PI following a finding the FTC was likely to succeed, these additional allegations are part of the Complaint as a matter of consent.  *See* FED. R. CIV. P. Rule 15(b) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue."); FED. R. CIV. P. Rule 65(a)(2) ("evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial".); *Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011) (amendment by consent exists when a party is confronted with facts at a time they had a fair

16

opportunity to defend and does not at that time object); *Sherwin Williams Co. v. JB Collusion Services Inc.*, 186 F. Supp. 3d 1087, 1097 (S.D. Cal. 2016) (implied consent exists when party had knowledge of allegations and a "sufficient opportunity to conduct discovery on the issues"); *Grisham v. Philip Morris Inc.*, 670 F. Supp. 2d 1014, 1023 (C.D. Cal. 2009) (consent found where parties were aware of argument and allowed to conduct discovery on the issues). *See also* DE 57, Finding of Fact 9, Page ID #: 3070 (Marshall stipulated that "[w]eighing the equities and considering the FTC's likelihood of ultimate success, a preliminary injunction order with an Asset freeze, limited expedited discovery as to the existence and location of Assets and Documents, and other equitable relief is in the public interest.").

### C.   Marshall's Claims That He Had No Knowledge of Advantis Law is Not Credible

Notwithstanding his representation in open court, his notice of appearance that he was representing Advantis Law, and his stipulating on behalf of Advantis Law, Marshall now attempts to claim he knew of no such entity and was duped by his co-Defendants.  It is simply not credible where he told the court he is representing a party and stipulating on their behalf in the litigation that he has no knowledge about that entity, let alone authority to act therefor.  A lawyer cannot file anything on behalf of a party he does not represent, let alone does not know. Suddenly, at this juncture,[16] Marshall argues in certain pleadings he knew nothing of Advantis Law and his co-defendants "perpetrated a fraud" on him and created and used Advantis Law without his knowledge.  DE 235, Surreply of Defendant Charles T. Marshall, at 4, DE 235, Page ID #:6262 ("Specifically, Advantis Law,

---

[16]  This argument is apparently of recent vintage, having not appeared in his earlier version of this Motion to Dissolve filed on April 18, 2017 (DE 213), but stricken by the Court on April 25, 2017 for violating the Court's rules (DE 223).

which Marshall **has and had nothing to do with**, was created in September 2014) (emphasis supplied); at 9, Page ID #:6267 (Advantis Law is "an entity that is wholly foreign to Marshall and with which Marshall had no involvement.")  In his Motion to Dissolve, Marshall argues he was "unaware of the first Advantis Law, PC" and that he was "completely unaware of Advantis Law, PC" and was deceived by the other Defendants.  DE 239 at 5-6, Page ID#: 6339-40.  Importantly, Marshall has offered no **evidence** supporting such a claim, failing to provide even his own declaration as to his lack of knowledge about Advantis Law, only making that claim in pleadings he has submitted.  His argument that he had no knowledge of Advantis Law until recently should be rejected by the Court.

### D.   There is No Basis for Dissolving or Modifying the Asset Freeze Given Marshall's Non-Compliance with Previously Issued Court Orders.

Marshall's actions following stipulating to the PI establish the necessity for its continuance.  Marshall makes amorphous claims that the PI asset freeze should be modified, but has not provided any financial information, including failing to provide the Financial Statement required under the PI.  Notwithstanding his failure to provide a completed Financial Statement, Marshall is requesting the Court lift the asset freeze.[17]  There is simply no basis for such a request where a party has

---

[17] Marshall argues that the litigation "*Jason Chan Lee v. JP Morgan Chase Bank, N. A.,* Case Number, 5:15-cv-050215-RMV, CAND, []was dismissed eventually on the basis that the FTC notified the Court that the Law Offices of Charles T. Marshall had been placed into receivership.  This was a false representation as the Law Offices of Charles T. Marshall was *not placed* into receivership." DE 239, at 12, Page ID #:6346.  Marshall's supporting Declaration swears that the "lawsuit was forcefully taken over by the FTC." DE 239-1, Page ID #:6358.  The FTC has not appeared in, notified the court, or taken any action whatsoever in the identified litigation – Marshall's claim is simply false.  May 22, 2017 Madden Decl., ¶ 6.  Not surprisingly, Marshall offers no evidence in support of his claim.  Repeating the claim without proof in any future pleading would violate Rule 11.  FED. R. CIV. P. 11.

been completely unwilling to comply with a validly issued order. *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."). Indeed, when a court lacks the information it requires to make an informed decision, it can simply refuse to modify the freeze. *See* C*FTC v. American Metals Exchange*, 991 F.2d 71, 79 (3d Cir. 1993). Here, there is no basis to change the PI's finding of good cause to believe that the Court's ability to provide effective final relief for consumers "will suffer immediate and irreparable damage from the Stipulating Defendants' transfer, dissipation, or concealment of their Assets . . . unless Stipulating Defendants continue to be restrained and enjoined by Order of this Court." DE 57, Page ID #:3070.

Marshall's argument that only assets derived from the fraud should be frozen is wrong. First, because Marshall has failed to provide any financial information to the FTC, it is impossible to evaluate the truth of his claim of limited enrichment. Second, even if true, it is legally irrelevant. When judgment is entered against Marshall, it will be an equitable money judgment for the full amount of the consumer harm. *See, e.g., FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) ("[B]ecause the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits."). The amount that Marshall owes consumers will not be confined to the assets in his possession traceable to the fraud. *Id.* ("Equity may require a defendant to restore his victims to the status quo where the loss suffered is greater than the defendant's unjust enrichment."). Traceability is not required. *FTC v. J.K. Publications, Inc*., No. CV 99-00044 ABC AJW, 2009 WL 997421, at *5 (C.D. Cal. Apr. 13, 2009) (traceability entirely inconsistent with joint and several liability and would lead to absurd results). This Court similarly rejected this argument when freezing all of defendant Jeremy Foti's assets. DE

19

109, nn. 9 and 10 (holding that the asset freeze should be for the full measure of consumer harm and rejecting Foti's argument that it should not include assets related to companies he asserted were unrelated to the FTC's allegations).  While Marshall would like his liability to be limited to the $4,500 flowing to the Advantis bank account for which he was a signatory,[18] that is simply not the law.  Marshall's request to modify the asset freeze should be rejected as consumers could be severely prejudiced in obtaining consumer redress.

## III.   CONCLUSION

For the foregoing reasons, the Court should reject Marshall's motion to dissolve or otherwise modify the PI.


Executed on May 22, 2017.          /s/ Gregory J. Madden
                                   BENJAMIN J. THEISMAN
                                   GREGORY J. MADDEN

                                   Attorneys for Plaintiff
                                   FEDERAL TRADE COMMISSION

---

[18]  Other facts suggest this bank account is not particularly relevant.  Most importantly, revenues from both the entities that are part of the common enterprise, Brookstone and Advantis, must be considered, as evidenced by the co-counsel Brookstone/Advantis retainer agreement directing funds to a Brookstone account.

PROOF OF SERVICE

I, Gregory J. Madden, on May 22, 2017, served the PLAINTIFF'S OPPOSITION TO MOTION TO DISSOVLE OR OTHERWISE MODIFY PRELIMINARY INJUNCTION AS TO DEFENDANT CHARLES T. MARSHALL through the ECF system.


/s/ Gregory J. Madden
GREGORY J. MADDEN