BENJAMIN J. THEISMAN, *pro hac vice*
btheisman@ftc.gov
GREGORY J. MADDEN, *pro hac vice*
gmadden@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
Tel:  (202) 326-2223, -2426; Fax:  (202) 326-3197

THOMAS SYTA, Cal. Bar No. 116286
tsyta@ftc.gov
FEDERAL TRADE COMMISSION
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax:  (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAMIAN KUTZNER, et al.,<br><br>Defendants. | **No. SACV16-00999-BRO (AFMx)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CHARLES MARSHALL'S MOTION TO FILE AMENDED ANSWER**<br><br>**Date:** July 12, 2017<br>**Time:** 1:30 pm<br>**Location:** Courtroom 7C<br><br>United States Courthouse<br>350 West 1st Street<br>Los Angeles, CA. 90012 |

# **TABLE OF CONTENTS**

I. BACKGROUND .......................................................................... 1

    A.    In May 2016 the FTC Pled and Supplied the Court Evidence
Establishing Marshall's Liability. ...................................... 1

    B.    The FTC Has Confirmed Its Allegations Against Marshall. ............ 3

II. ARGUMENT .......................................................................... 4

    A.    Marshall's Motion to Amend His Answer Is Untimely. ................... 4

    B.    Even if Allowed, His Motion Should Be Denied Because All of
His New "Allegations" and "Defenses" Would Be Subject to a
Motion to Strike ...................................................... 6

    C.    His Actual Responses Are Not In Good Faith Following a
Reasonable Investigation ............................................. 8

    D.    The FTC's Allegations are Sufficient and Marshall Remains
Likely to Be Held Liable. ............................................ 11

    E.    Marshall's Request That Some Unspecified Portion of the
FTC's Complaint be "Struck" is Inappropriate ........................ 15

III. CONCLUSION ....................................................................... 15

i

## **Table of Authorities**

## **Cases**

*De la Riva Constr., Inc. v. Marcon Eng'g Inc.*, 2013 WL 394219 (S.D. Cal. Jan. 30, 2013) .................................................................................5

*Frank v. Wilbur-Ellis Co. Salaried Emps. Ltd Plan*, 2008 U.S. Dist. LEXIS 83127 (E.D. Cal. Sept. 24, 2008) .........................................................9

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999).........................................12

*FTC v. Commerce Planet Inc.*, 815 F.3d 593 (9th Cir. 2016) ...............................12

*FTC v. Grant Connect, LLC*, 763 F.3d 1094 (9th Cir. 2014) .......................... 12, 13

*FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ..................11

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) .. 11, 12, 13

*FTC v. Swish Marketing*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010).................13

*Gilbert v. Johnston*, 127 F.R.D. 145 (N.D. Ill. 1989)..............................................9

*Grisham v. Philip Morris Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009) ................14

*Healy v. MCI WorldCom Network Services, Inc.*, 220 Fed. Appx. 626 (9th Cir. 2007) .................................................................................14

*Hernandez v. County of Monterey*, 306 F.R.D. 279 (N.D. Cal. 2015) ....................7

*Hinton v. Nmi Pac. Enters.*, 5 F.3d 391 (9th Cir. 1993) ............................................7

*Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011) ................................................14

*Industrial Indem. Co. v. Niebling*, 844 F. Supp. 1374 (D. Ariz. 1994) ..................5

*Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1992).......................4, 5

*Ksure N.Y. Corp. v. Richmond Chem Corp.*, 2013 U.S. Dist. LEXIS 6649 (N.D. Ill. Jan. 16, 2013)...........................................................................10

*Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252 (E.D.Mich.1985) ..............9

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ...........6

*Mose v. Bret Harte Union High School Dist.*, 366 F. Supp. 2d 944 (E.D. Cal. 2005) .................................................................................8

*Rachel v. Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir.1987) ............................9

*Roland Corp. v. Inmusicbrands, Inc.*, 2017 WL 513924 (C.D. Cal. Jan. 26, 2017) ... .................................................................................7, 8

*SEC v. Keating*, 1992 WL 207918 (C.D. Cal. July 23, 1992) ................................11

*Sherwin Williams Co. v. JB Collusion Services Inc.*, 186 F. Supp. 3d 1087 (S.D. Cal. 2016).................................................................................14

*Simmons v. Navajo City, Ariz.*, 609 F.3d 1011 (9th Cir. 2010) .............................8

*State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276 (N.D. Ill. 2001)...............9

*United States v. Neff*, 615 F.2d 1235 (9th Cir. 1980) ........................................5

*Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)...................15

*Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) ...........................7

## **Rules**

Fed. R. Civ. P. 8(b)(5)....................................................................................9

Fed. R. Civ. P. 11(b) ......................................................................................8

Fed. R. Civ. P. 12(f)........................................................................................7

Fed. R. Civ. P. 15(a)(2)...................................................................................6

Fed. R. Civ. P. 15(b) .....................................................................................14

Fed. R. Civ. P. 65(a)(2)..................................................................................14

Defendant Charles Marshall's proposed amended answer should be rejected as untimely and inappropriate. He has not shown good cause for the late filing and has failed to comply with his obligation to answer the allegations in good faith. Indeed, he has continued to pursue this motion despite written notice from the Federal Trade Commission ("FTC") demonstrating that his proposed amended answer is subject to being stricken and contains numerous statements in violation of Rule 11. *See* DE 219. This includes (1) his failure to cite to the appropriate legal standard for an amendment at this date, despite having the benefit of the FTC's previously filed opposition explaining that standard and citations to binding Ninth Circuit precedent and (2) continued assertion of insufficient defenses that other courts in this district have sanctioned defendants for pleading.[1] The majority of his filing is his attempt to claim he cannot be held liable. But, because the FTC alleged and has submitted sufficient facts to hold him liable, the FTC is very likely to prevail in this matter.

## I. Background

### A. In May 2016 the FTC Pled and Supplied the Court Evidence Establishing Marshall's Liability.

On May 31, 2016, the FTC filed its Complaint (DE 1) and accompanying materials supporting its application for a temporary restraining order against, *inter alia*, Marshall and the Corporate Defendants, Brookstone and Advantis.[2] DE 11-14, 16-18. The FTC alleged and then detailed evidence showing that Marshall was an officer and owner of Advantis, which was part of the Defendants' deceptive

---

[1]   As a lawyer licensed to practice before this Court, his failure to cite to the binding legal standard, with knowledge that it is in fact the binding legal standard, is notable.

[2]   "Brookstone" includes both the California and identically named Nevada company. "Advantis" includes both Advantis Law PC and Advantis Law Group PC. "Corporate Defendants" means Brookstone and Advantis collectively.

1    scheme marketing so-called "mass joinder" lawsuits.  The FTC identified Marshall

2    as a director, executive officer, and Secretary of Advantis who participated in the

3    Corporate Defendants' *Wright v. Bank of America* ("*Wright*") mass joinder.

4    Cmplt. ¶ 12.  The FTC alleged that Brookstone and Advantis were a "common

5    enterprise" engaging in unlawful acts and practices.  *Id.* at ¶ 13.  The FTC further

6    alleged that although purportedly separate law firms, Brookstone and Advantis

7    advertised the same services on their website, often using identical language, in

8    particular identical language describing the real estate services they offered to the

9    public.  *Id.* at ¶¶ 31-32.  Significantly, each firm's website touted the *Wright* mass

10   joinder lawsuit as its own.  *Id.* at ¶ 33.

11          In support of its TRO application, the FTC submitted evidence establishing

12   that Brookstone/Advantis were in fact a common enterprise.  For instance, the FTC

13   showed that they shared the same address, used the same language on their

14   websites, touted the *Wright* case as their own, had the same people acting as both

15   Brookstone and Advantis employees, and were controlled by the same individuals,

16   including, most particularly, defendant Damian Kutzner ("Kutzner").  DE 11,

17   TRO Memo. at 5, n.17 Page ID #:245; at 12-13, n. 47-48, 50-51, Page ID #:252-

18   53; DE 17, Ayoub Decl. ¶ 15, Page ID #: 1944.  With respect to Marshall, the FTC

19   submitted evidence showing he was an owner and officer, appearing on state

20   incorporation papers for Advantis Law Group with the alleged titles and further

21   appearing on the Advantis website as a "Director."  DE 11, TRO Memo. at 16, n.

22   65-66 Page ID #: 256-57; DE 14, Gales Decl. ¶ 15, Att. 4, Page ID #:1085, 1110.

23   Notably, the Advantis website listing Marshall as a Director touted the *Wright*

24   matter as its own.  Moreover, the evidence showed Marshall appeared in the

25   *Wright* matter and represented Brookstone clients as an Advantis attorney.

26   Marshall did so with full knowledge of the many legal liabilities his co-defendants,

27   Kutzner, Vito Torchia ("Torchia"), and Geoffrey Broderick ("Broderick") were

28   facing.  TRO Memo at 5, n. 19-20, 17, n. 69, 23, n. 88, Page ID #: 245, 257, 263;

DE 13, Madden Decl. Atts. 36, 38-39, 48, Page ID #:815-16, 818-22, 833-34, 837, 841, 904, 908.

After the Receiver took control of Brookstone/Advantis it became clear Jeremy Foti ("Foti") controlled the common enterprise with Kutzner.  The FTC shortly thereafter amended its Complaint, adding Foti as a named defendant.  DE 61, First Amended Complaint (July 5, 2016) Page ID #:3137-58.  The FTC made the same allegations against Marshall in the First Amended Complaint.

**B.     The FTC Has Confirmed Its Allegations Against Marshall.**

As detailed in the FTC's memorandum opposing Marshall's motion to dissolve the PI, the FTC has since confirmed its allegations.[3]  Substantial additional evidence establishes that Brookstone and Advantis were a common enterprise, including the existence of shared telemarketing scripts and joint retainer agreements.  The FTC has identified letters in which Marshall informed Brookstone clients that Brookstone is transferring them to Advantis, and numerous emails on the same topic.  Marshall, in his motion, confirms the common enterprise, stating that the Advantis entities were created by Brookstone employees.  DE 238 at 6 ("[B]oth [Advantis] entities were created by Brookstone employees. . . .").  Marshall also sent numerous emails explaining how he was appearing in the *Wright* case as an Advantis attorney to advance both Brookstone and Advantis' interests.   There is also significant evidence that when Marshall became an owner of Advantis, he knew of the defendants' checkered histories.  He knew that Brookstone and Torchia were facing bar complaints related to their mass joinder activities.  He knew that Broderick had just been sued by the Connecticut and Florida Attorneys General for a mass joinder fraud.  He knew that the FTC

---

[3]     The evidence discussed herein is detailed and supported with exhibits in the FTC's simultaneously filed opposition to Marshall's motion to dissolve the PI.  *See* pages 5 to 11.

3

previously sued Kutzner twice and that his previous enterprise was shut down by criminal law enforcement.  Again, in his motion, Marshall explains that when he joined the enterprise he was aware of Brookstone's wrongful conduct, as alleged in the FTC's complaint.  DE 238 at 7 ("[T]he allegations in the complaint and associated FAC against the other defendants, were one of the reasons why [Marshall] never moved forward with any preliminary plans with Brookstone or persons related to Brookstone.").  Of course, Marshall did move forward and became an Advantis principal, providing the other defendants with the California licensed attorney their scheme needed to continue.  As he noted at the time, he did so understanding he was likely taking on significant "liability" in light of the defendants' practices and history.

## II.  Argument

### A.  Marshall's Motion to Amend His Answer Is Untimely.

Marshall's motion is beyond the Court's deadline and amendment at this time would prejudice the FTC.  The Court's scheduling order required all amended pleadings by March 6, 2017.  DE 169 at 12.  Marshall, therefore, must meet the Rule 16(b) "good cause" standard to file this amended answer rather than the more liberal Rule 15(a) standard generally governing amended pleadings.  *Johnson v. Mammoth Recreations*, 975 F.2d 604, 610 (9th Cir. 1992) ("[W]ere it a lesser standard, a party would, in effect, be able to obtain an amendment of the cut-off date without a showing of good cause. That would violate the spirit of Rule 16 itself. . . .").  Marshall, instead relied on case law under Rule 15, which is no longer applicable.  *See* DE 238 at 4-5.  He did so despite the FTC's previous memorandum opposing his since-stricken motion to amend in which the FTC explained that Rule 16 is the standard regarding amendments post-dating the pleadings cut-off date in a scheduling order.  *See* DE 219.  Under Rule 16, good cause to file an amended pleading requires a showing of diligence.  *Johnson*, 975 F.2d at 609.  Marshall has not, and cannot, establish diligence because his late

4

filing cites nothing he could not have alleged at the time he submitted his original answer. *Id.* at 609-10 (finding no good cause when proposed amended pleadings asserted facts that the party should have been aware of prior to the cut-off date). *See also De la Riva Constr., Inc. v. Marcon Eng'g Inc.*, 2013 WL 394219 at *4 (S.D. Cal. Jan. 30, 2013) (denying motion for leave to amend answer, noting that defendant had taken "little to no action" and that this was inconsistent with "diligence."). The substance of his filing is to assert his contacts with the defendants were minimal and that he is not a proper defendant. Of course, such "facts" would have been plainly known to him prior to the cut-off date. Similarly, his assertion that the FTC somehow improperly pled the case and improperly convinced him to stipulate to the Preliminary Injunction are all allegations that took place in June 2016. If these allegations were true, there is no explanation as to why they could not have been included in a pleading prior to the cut-off date. His previous reliance on the 5th Amendment is no help. It only protects him from incriminating admissions. Facts he believes are exculpatory are, therefore, not protected. *United States v. Neff*, 615 F.2d 1235, 1240-41 (9th Cir. 1980) (denying 5th Amendment claim because answers would not be incriminating). Indeed, the gist of his filing is that the FTC's allegations are not sufficient, something he plainly could assert while maintaining his 5th Amendment privilege. Additionally, Marshall would not be harmed by a ruling rejecting his filing. Unless the Court determines his invocation was improper when he filed his untimely answer, his invocation operates as a denial, undercutting Marshall's claimed need to file an amended answer. *See, e.g., Industrial Indem. Co. v. Niebling*, 844 F. Supp. 1374, 1377 (D. Ariz. 1994) (explaining case law on 5th Amendment invocations in answers to complaints).

Moreover, even if the Court were to consider Rule 15 alone in deciding the motion to amend, Marshall's arguments fail. If he were permitted to file his amended answer as proposed, the FTC would be unfairly prejudiced. The FTC

deposed Marshall on March 20, 2017, after the pleadings cut-off date.  Now, after the FTC has deposed him, he seeks to plead additional facts and defenses that the FTC was unable to explore at his deposition.  For instance, he includes a lengthy narrative statement, the particulars of which the FTC was unaware of and so could not explore at his deposition.  Similarly, in his "set off" defense, Marshall claims his liability should be reduced by damages he has suffered at the FTC's hands.  But, by pleading the defense now, he provided no notice of this "defense" and so the FTC was unable to question him on any factual basis for it.  His claims in his "vacate stipulations" defense, that the FTC somehow threatened him, are prejudicial for the same reason.  By waiting until now to make these claims, Marshall has avoided providing notice to the FTC of his allegations and theory of the case until after the FTC has deposed him and when discovery is nearly over.[4]  None of the cases Marshall cites in his renewed motion are to the contrary.  Indeed, his primary authority explained that an amended pleading asserting new facts and claims late in discovery would prejudice the other party.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend "[i]n light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay. . . .").

> **B.   Even if Allowed, His Motion Should Be Denied Because All of His New "Allegations" and "Defenses" Would Be Subject to a Motion to Strike.**

Rule 15 permits amendment only when "justice requires."  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")  Justice, however, is not served by allowing Marshall to amend his answer to include immaterial and redundant matter and insufficient defenses that would be subject to

---

[4]     Extending discovery is not a good solution.  The Court has already held that trial must move forward in October in light of the asset freeze and Jeremy Foti's home.  *See* DE 202.

a motion to strike.  Indeed, a motion for leave to amend should be denied if it would be "futile."  *See, e.g., Hinton v. Nmi Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).  Here, Marshall's amended answer adds only an inappropriate narrative statement that is not presented as allegations and then four insufficient defenses. All of these would be struck under Rule 12(f), which states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  His narrative, aside from being procedurally improper because it is not presented as a series of allegations, is "immaterial."  To the extent it has any meaning, it is in the context of his four asserted defenses, all of which are insufficient.

Marshall's first two defenses, "Failure to State a Cause of Action" and "No Injury," simply state that the FTC has not pled sufficient facts to hold him liable. These are not affirmative defenses and would be subject to a motion to strike. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Roland Corp. v. Inmusicbrands, Inc.*, 2017 WL 513924 at *2 (C.D. Cal. Jan. 26, 2017) (striking "failure to state a claim" defense and collecting cases striking similar defenses); *Hernandez v. County of Monterey*, 306 F.R.D. 279, 288 (N.D. Cal. 2015) (same).

Marshall's third and fourth affirmative defenses are simply not defenses to the allegations alleged in the complaint because, even if true, they do not bear on his liability for the conduct alleged in the complaint.  *See Hernandez v. County of Monterey*, 306 F.R.D. 279 (N.D. Cal. 2015) ("An affirmative defense . . . is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven."). Here, rather than asserting items that would eliminate liability, Marshall appears to be making separate, unsupportable, claims against the FTC.  As to "set off," Marshall appears to argue that the FTC has somehow incurred liability for naming

him as a defendant, but not that this precludes his liability for the alleged conduct.
Not only has the FTC pled sufficient facts, as detailed below, this Court has
already found the FTC has a likelihood of success against Marshall.  *See* DE 22
("Thus, based on the information before the Court at this time, Plaintiff has
established that it is likely both the Corporate and Individual Defendants could be
liable under Section 5 of the FTC Act.").[5]  This is, therefore, not a defense and
insufficient even if it were.  Similarly, his "vacate stipulations" defense has
nothing to do with his liability, but appears to relate to the motion he filed to
dissolve the TRO and PI.  As more fully discussed in the FTC's opposition to that
motion, this "defense" would also be insufficient if at all cognizable.  The very fact
that the defenses are unintelligible is also a basis to strike them.  *See Roland Corp.*,
2017 WL 513924 at *1 (affirmative defenses must be pled with sufficient
specificity to give "plaintiff fair notice of the defense") (citing *Simmons v. Navajo
City, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010)).[6]

## C.   His Actual Responses Are Not In Good Faith Following a Reasonable Investigation.

As with all pleadings, Marshall's answer must satisfy Rule 11's requirement
that its contents be "to the best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P.
11(b); *Mose v. Bret Harte Union High School Dist.*, 366 F. Supp. 2d 944, 950
(E.D. Cal. 2005) ("Rule 11 creates and imposes on a party or counsel an
affirmative duty to investigate the law and facts before filing, *Rachel v. Banana*

---

[5]     And now, there is even more evidence before the Court detailing Marshall's
involvement and liability.  Marshall has not submitted any evidence to the
contrary, instead doing nothing more than vainly asserting that the FTC has not put
enough evidence before the Court.

[6]     FTC counsel asked Marshall's counsel what the legal basis was for these
defenses during the Local Rule 7-3 conference and he was unable to identify one.
Declaration of Benjamin Theisman at ¶ 2.

*Republic, Inc.*, [831 F.2d 1503, 1508](#) (9th Cir.1987) and further obliges an attorney to dissuade a client from pursuing specious claims, thereby avoiding possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim. *Mohammed v. Union Carbide Corp.*, [606 F. Supp. 252](#) (E.D.Mich.1985).") Failing this duty, Marshall seeks leave to file an answer that almost uniformly states he lacks "sufficient information or belief to answer the allegations" and therefore denies them.[7]  Indeed, Marshall has in his possession the FTC's TRO filings (including the more than 1,000 pages of evidence it submitted), the Receiver's reports to the Court detailing the conduct of the Corporate Defendants and attaching numerous documents such as mailers and scripts, the "hundreds" of emails between him and the other defendants that he has so far refused to produce to the FTC,[8] and all of the emails and documents introduced as exhibits at

_____

[7]  Presumably he means that he "lacks knowledge or information sufficient to form a belief about the truth of an allegation," the wording required by Rule 8(b)(5). [Fed. R. Civ. P. 8(b)(5)](#). His failure to state that he lacks *knowledge* as well as information technically means he has admitted all of these allegations. *See Gilbert v. Johnston*, [127 F.R.D. 145, 146](#) (N.D. Ill. 1989); *State Farm Mut. Auto. Ins. Co. v. Riley*, [199 F.R.D. 276, 278](#) (N.D. Ill. 2001) (highlighting the practices of "careless defense counsel" who fail to follow the phrasing of Rule 8(b)); *Frank v. Wilbur-Ellis Co. Salaried Emps. Ltd Plan*, [2008 U.S. Dist. LEXIS 83127 at *10](#) (E.D. Cal. Sept. 24, 2008) (same).  Astoundingly, the FTC already identified this facial deficiency in his pleadings, [DE 219](#), and Marshall has done nothing to fix even this.

[8]  Marshall has repeatedly stated he will produce these documents but so far has not.  The FTC recently started the Local Rule 37-1 motion to compel practice because of Marshall's inappropriate obstinacy.  *See* Theisman Declaration at ¶ 3.

Marshall's and Foti's depositions.[9]  He has an obligation to review these materials and provide answers accordingly.  *Ksure N.Y. Corp. v. Richmond Chem Corp.*, 2013 U.S. Dist. LEXIS 6649 at *4 (N.D. Ill. Jan. 16, 2013) (striking an answer for unbelievable assertions that the party lacked knowledge or information).  His proposed answer does not comply with this duty.

Marshall's claimed defenses also violate Rule 11.  As explained above, his failure to state a claim "defenses" are not defenses and his assertions that the FTC has incurred liability by pursuing this case against him are similarly not defenses.  In particular, the set-off "defense" violates Rule 11 because Marshall is unaware of any legal basis for this alleged "defense."  When the FTC questioned Marshall's attorney during the Local Rule 7-3 meet and confer, Marshall's attorney conceded that he was unaware of what his legal basis was for the "defense."  He could not articulate if it was a violation of a rule, statute, or common law theory.[10]

---

[9]      Marshall claims a lack of "information or belief" for the allegations in paragraphs 8-12, 14-67, and 70-87.  For example, he claims he lacks information or belief as to whether defendants Kutzner and Foti had control over any of the Corporate Defendants despite testifying at his deposition that they were the principal decision makers for Advantis.  Deposition of Charles Marshall (attached to the FTC's Opposition to Marshall's motion to dissolve the PI) at 48 (lines 14-21), 80 (lines 2-14), and 103 (lines 8-16).  Similarly, paragraphs 17 through 36 describe the content of mailers used by the Corporate Defendants and the content on their websites, all of which has been provided to Marshall through the FTC's TRO filings.  Nonetheless, Marshall refuses to admit any of these facts, and instead asserts he lacks "information or belief."  Amazingly, he claims in his answer that he lacks information or belief regarding these allegations while stating in his motion that he had actual notice of these facts to explain why he insisted on creating the Advantis entities in the first place.  DE 238 at 7.  He cannot have it both ways.

[10]     The FTC even asked if he was asserting a Rule 11 violation, and Marshall's then counsel was equivocal.  At most, he suggested Rule 11 might have something to do with the "set off" defense.  If this were an allegation that the FTC violated Rule 11, that is not a defense.  Theisman Declaration at ¶ 2.

Moreover, he struggled to identify any specific acts taken by the FTC or its staff to substantiate the defense.  Nonetheless, he refused to withdraw this proposed "defense."  Courts have sanctioned Defendants under Rule 11 for pleading defenses like those in Marshall's proposed amended answer.  *SEC v. Keating*, 1992 WL 207918 (C.D. Cal. July 23, 1992).  This case law is particularly appropriate here because Marshall continues to seek leave to file his answer asserting these defenses with notice of the case law and reasoning as to why these are not defenses.  *See* DE 219.

### D.   The FTC's Allegations are Sufficient and Marshall Remains Likely to Be Held Liable.

Marshall is very likely to be held liable in this matter.  The FTC sufficiently pled that Marshall was an owner and officer of Advantis, a member of the common enterprise, and then detailed the facts supporting the common enterprise allegations and the substantive law violations committed by the common enterprise.  Initially, his assertion is highly suspect given that this Court has already found that the FTC "proffered sufficient evidence to demonstrate a likelihood of success on its Section 5 claim."  DE 22, TRO Opinion at 11, Page ID #:2332.  Indeed, the Court ruled that the facts before it at the time of the TRO established a likelihood of success against the "Individual Defendants," including Marshall.  *Id.*

As a practical matter, Brookstone/Advantis were a classic common enterprise.  *FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (common enterprise shown where corporate defendants were under common control; shared office space, employees, and officers).  The FTC alleged, and Marshall does not dispute, that he owned Advantis Law Group.  Furthermore, as alleged and then detailed with evidence, Marshall was working with Brookstone/Advantis employees on Brookstone matters, particularly *Wright* – the largest mass joinder remaining for Brookstone, to advance the common enterprise.  As an admitted owner of a member of the common enterprise, Marshall will be held liable for injunctive relief.  *See FTC v. Publishing Clearing House, Inc.*, 104

F.3d 1168, 1170-71 (9th Cir. 1997) ("president" of company who performed no, or minimal, services for company liable).

Furthermore, Marshall will also be monetarily liable because he had the requisite knowledge for the injury from the common enterprise. *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101-02 (9th Cir. 2014); *Publishing Clearing House, Inc.*, 104 F.3d at 1170-71. Indeed, the Ninth Circuit has recently confirmed that an individual defendant is to be held jointly and severally liable with the common enterprise. *FTC v. Commerce Planet Inc.*, 815 F.3d 593 (9th Cir. 2016) ("If an individual may be held personally liable for corporate violations of the FTC Act under this test, nothing more need be shown to justify imposition of joint and several liability for the corporation's restitution obligations."). The FTC alleged, and has now proven, that Marshall became an owner and operated the common enterprise with knowledge of his co-defendants' history of fraudulent conduct. That he was an active owner and principal, acting to advance the interests of the common enterprise, will alone be sufficient to establish the requisite knowledge. *FTC v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999). ("The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability."). Marshall's specific knowledge of Brookstone's and Torchia's bar troubles and Kutzner's dubious history is already sufficient to hold him monetarily liable. *See Publishing Clearing House*, 104 F.3d at 1171 (holding nominal president liable based on that person's knowledge that scheme's principal had a criminal history). Indeed, the evidence of his knowledge includes an email in which he admits he is taking on "liability" in light of his co-defendants' past practices. In addition, Marshall's failure to ever review any of the marketing or perform any due diligence on the legality of the sales process further shows that Marshall was, at best, recklessly indifferent to the illegality or intentionally avoiding the truth, again rendering him monetarily liable. *Grant Connect, LLC*, 763 F.3d at 1101-02 (knowledge established if individual is

1    "recklessly indifferent to the truth or falsity of a misrepresentation, or had an
2    awareness of a high probability of fraud along with an intentional avoidance of the
3    truth.") (*quoting Publishing Clearing House, Inc.*, 104 F.3d at 1170-71).

4        Marshall's new talisman, *FTC v. Swish Marketing*, 2010 WL 653486 (N.D.
5    Cal. Feb. 22, 2010), changes nothing. *Swish Marketing* was decided on a 12(b)(6)
6    motion, prior to discovery, in which the complaint originally pled only that the
7    individual defendant was the CEO.[11]  Here, Marshall's time to file a 12(b)(6)
8    motion has long since passed.  Furthermore, the FTC alleged that Marshall was an
9    owner, Director, and specifically alleged that he took part in the scheme by
10   representing the consumer victims in the defendants' largest mass joinder.
11   Importantly, unlike in *Swish Marketing*, the FTC moved for a TRO, detailing even

12   _____

13   [11]    The *Swish Marketing* court's ruling contradicts established Ninth Circuit
14   precedent.  That court relied on the lack of facts establishing knowledge when
15   granting the motion to dismiss.  *Id.* at *6.  As the FTC case law is clear, the FTC
     does not need to prove knowledge to hold an individual defendant liable for
16   *injunctive* relief.  *Publishing Clearing House*, 104 F.3d at 1170 (explaining
17   standard for injunctive relief, requiring only proof of corporate wrongdoing and
     authority to control).  Knowledge is only required for restitutionary relief.  *Id.* at
18   1171 (explaining separate standard for restitutionary relief, requiring proof of proof
19   of knowledge).  Also contrary to *Swish Marketing*, having official authority to
     control as a corporate officer is sufficient for injunctive relief.  *Publishing Clearing*
20   *House, Inc.*, 104 F.3d at 1170 (stating the standard for injunctive relieve and
     concluding that the defendant's "assumption of the role of president of PCH and
21   her authority to sign documents on behalf of the corporation demonstrate that she
22   had the requisite control over the corporation").  The FTC pled and Marshall
     concedes these facts.  Further facts are only required for restitutionary relief.  And,
23   here, the FTC alleged them.  In *Swish Marketing*, the complaint initially pled only
24   that the defendant was an officer.  The Court found this insufficient in light of
     *Publishing Clearing House*, where the FTC had proved the corporate officer had
25   also for one week worked for the operation answering incoming phone calls.  2010
26   WL 653486 at *5.  Here, the FTC further alleged that Marshall took part in the
27   scheme, representing the Brookstone clients in the *Wright* matter and touting the
     *Wright* case as his on the Advantis website.
28

13

1   more facts.  Because Marshall never objected to the pleadings, and in fact

2   stipulated to the PI following a finding the FTC was likely to succeed, these

3   additional allegations are part of the Complaint as a matter of consent.[12]  The

4   ruling in *Grisham v. Philip Morris Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009), is

5   particularly instructive.  There, the plaintiff raised new facts necessary to support

6   their claim for the first time on summary judgment.  The court held that because

7   the parties had been aware of the facts, that the issues were in dispute, and that the

8   parties had the opportunity to conduct discovery, the pleadings would be amended

9   to conform to the later discovered facts under Rule 15(b) in the context of the

10  summary judgment motion.  *Id.* at 1023.  *See also* DE 57, Finding of Fact 9

11  (Marshall stipulated that "[w]eighing the equities and considering **the FTC's**

12  **likelihood of ultimate success**, a preliminary injunction order with an Asset

13  freeze, limited expedited discovery as to the existence and location of Assets and

14  Documents, and other equitable relief is in the public interest") (emphasis added).

15

16  _____

17  [12]    *See* Rule 15(b) ("When an issue not raised by the pleadings is tried by the

18  parties' express or implied consent, it must be treated in all respects as if raised in
    the pleadings.  A party may move—at any time, even after judgment—to amend

19  the pleadings to conform them to the evidence and to raise an unpleaded issue.  But
    failure to amend does not affect the result of the trial of that issue."); Fed. R. Civ.

20  P. Rule 65(a)(2) ("evidence that is received on the motion and that would be
    admissible at trial becomes part of the trial record and need not be repeated at

21  trial".)*Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011) ("The test for consent

22  is 'whether the opposing party had a fair opportunity to defend and whether he
    could have presented additional evidence had he known sooner the substance of

23  the amendment.'"); *Healy v. MCI WorldCom Network Services, Inc.*, 220 Fed.

24  Appx. 626, 629 (9th Cir. 2007) (deeming facts and unpled theory of recovery
    identified during discovery a part of the complaint, over the objection of the

25  defendant); *Sherwin Williams Co. v. JB Collusion Services Inc.*, 186 F. Supp. 3d

26  1087, 1097 (S.D. Cal. 2016) (implied consent exists when party had knowledge of
    allegations and a "sufficient opportunity to conduct discovery on the issues,"

27  including when issues are raised in a deposition or at summary judgment).

28

1
2
3

Marshall's argument, that the Complaint standing alone is somehow deficient, made near the end of discovery when he has full notice of the FTC's theory of liability, is precisely the type of dilatory argument Courts reject.

4
5

### E. Marshall's Request That Some Unspecified Portion of the FTC's Complaint be "Struck" is Inappropriate.

6
7
8
9
10
11
12
13
14
15
16

Marshall's incoherent request that some portion of the FTC's complaint be struck is inappropriate. Courts in the Ninth Circuit are loathe to strike allegations in a complaint. In contrast to motions to strike insufficient defenses, specifically called for and permitted under Rule 12(f), it is not appropriate to move to strike allegations in a complaint on the basis that they are untrue or somehow inflammatory. The Ninth Circuit characterizes such motions as inappropriate attempts to obtain a ruling on the merits of a claim under Rule 12(f). Instead, the Ninth Circuit states that the only vehicle to challenge complaint allegations is a motion for judgment, such as a 12(b)(6) motion. *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010). Regardless, Marshall has failed to identify which allegations should be struck or why.

17

### III. CONCLUSION

18
19

Marshall has not, and cannot, provide good cause for leave to file his amended answer. Therefore, his motion should be denied.

20
21
22
23

   /s/  Benjamin J. Theisman
BENJAMIN J. THEISMAN
GREGORY J. MADDEN

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

24
25

Executed this 22nd day of May, 2017.

26
27
28

15

1

PROOF OF SERVICE

2

I, Benjamin J. Theisman, on May 22, 2017, served the PLAINTIFF'S
OPPOSITION TO DEFENDANT CHARLES MARSHALL'S MOTION TO FILE
AMENDED ANSWER through the ECF system.

3

4

/s/ Benjamin J. Theisman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16