Michael T. Stoller, Esq., Bar No. 120241
**STOLLER LAW GROUP, APC**
23945 Calabasas Road, Suite 104
Calabasas, California 91302
Telephone: 818-226-4040
Facsimile: 818-226-4044
Email: michael.stoller@stollerlawgroup.com

Attorneys for Defendant Charles T. Marshall

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: 8:16-cv-00999-BRO-AFM |
| Plaintiff, | **DEFENDANT CHARLES T. MARSHALL'S DECLARATION IN SUPPORT OF HIS OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| DAMIAN KUTZNER, *et al.*, | |
| Defendants. | Date: August 28, 2017 |
| | Time: 1:30 p.m. |
| | Ctrm: 7C |
| | Judge: Hon. Beverly Reid O'Connell |

## DECLARATION OF CHARLES T. MARSHALL

I, Charles T. Marshall, declare:

1. I am over the age of eighteen and a defendant in the above titled action. The following statements are based on my personal knowledge, except those things disclaimed as on my information and belief. If called to testify as to the truth of the matters below, I could and would do so competently.

2. I was served with a complaint naming six individual defendants and four entity defendants in this action, most of whom, except for Jeremy Foti, the entity

1
**DECLARATION OF CHARLES T. MARSHALL**

defendants and myself, settled with plaintiff Federal Trade Commission ("Plaintiff" and/or the "FTC"). Despite not being involved in the purported fraudulent scheme allegedly perpetrated by defendants Kutzner, Torchia and Foti, I found myself in the sights of the FTC despite being the most insignificant party to prosecute. I read the operative first amended complaint, which failed to discuss specifically what, if anything, I did wrong that exposed me to liability under the FTC's various claims. Review of the FTC's motion for summary judgment further illustrates the insignificant actions and events that are being attributed to me.

3. Most strikingly is the general broad conclusions that are being asserted with no actual competent evidence in its Statement of Undisputed Facts. Using MMR's Startegy Group survey by Bruce Isaacson as evidence in support of the FTC's motion for summary Judgment (which is hearsay upon hearsay) raises triable issues as to how the survey was undertaken, the foundational requirements before the survey can be admitted and have the opinions that are being rendered subject to cross examination. Juxtaposing the purported evidence represented by the survey is the fact that members in the Wright joinder case exceeded 1300 members and the number of purported complaints was 20-30 or .023 percent of the class as testified by Jonathan Tarkowski ,the main attorney handling the cases until I associated in the case July 2015. Rather than provide the declarations of a significant number of clients The FTC instead has attempted to carry the day with argument and overstated opinion most of which is not even directed to my involvement. As such I have taken the portions of the Separate Statement that refers to me and have responded to each section ("Para.") to assist the court in understanding that the following facts are either false, misleading and /or controverted:

4. Para.30. Marshall is an owner or executive of Advantis Law Group

Marshall does not dispute that he was nominally listed as an executive for Advantis Law Group PC for some period of time; he does and would dispute any number of implications the FTC might draw from this fact.

2

**DECLARATION OF CHARLES T. MARSHALL**

5. Para.56. by 11/14, Foti and Kutzner negotiating with Marshall to become an owner of Advantis. References in this paragraph are inherently vague and ambiguous as to what is meant by 'Advantis'. Marshall did not understand until his deposition of March 20, 2017 (check date) that there was a completely separate corporate entity called Advantis Law (for whom he was never an officer/excutive/owner—nor has any evidence ever been presented with a claim that he was) he knew nothing about until same deposition was held, during which deposition based upon various FTC questions it became clear at some point that there was a separate corp entity called Advantis Law PC, with whom Marshall never had dealings, and whose existence Marshall was not apprised of. As for negotiations to become an owner of Advantis Law Group, yes those began in November of 2014.

6. Para.57. In January 2015, Kutzner emailed Marshall and Foti that "ADVANTIS LAW" needed to move forward and should leverage the existing "[Brookstone] clients" because Brookstone was a "dead hoarse" [sic] and "circl[ing] the drain." Again this email is not specifically referencing Advantis Law Group. Any response I would have had would have only been directed to ALG, as I did not know at that time (or anytime prior to March 20, 2017) of the Advantis Law entity. Any response I had to that email would have been to the effect of using Advantis Law Group to use as a vessel for potential clients in future joinder cases. Any emails exchanged at that time, would have been fairly vague as to how the clients would be generated. I specifically was not working with Brookstone clients. If I were intending to work exclusively or even primarily with Brookstone clients, I would have simply become a corporate officer of Brookstone, which I pointedly and intentionally did not due at that time or not time later because of liability and other issues with those cases.

7. Para.58. In multiple email exchanges, Marshall's negotiations regarding his ownership of Advantis and other important Advantis-related matters would be between Foti, Kutzner, and sometimes James Macklin, with Marshall sometimes referring to "we three" to indicate himself, Foti, and Kutzner. Though at times I did occasionally refer to 'we three' to exclude Macklin, in fact everyone knew, and I had mentioned a number of times, that Macklin was important to the Advantis Law Group idea because of his expertise in analyzing and generating mortgage loan analyses and associated reports.

8. Para.59. Marshall testified that during his negotiations for ownership of Advantis, he understood Foti and Kutzner to be principals for Advantis. If I actually called them principals of Advantis (I am not sure that I did—the transcript may use that term I do not know), I did not mean that in the since of them being co-executives, etc. They were never listed as executives. So here we dispute. If I used the term 'principal' it was not meant to convey that they were co-executives or owners. Clearly they were never formally or legally either, and no document was ever created or signed indicating such executive or ownership capacity.

9. Para.60. On February 25, 2015, Marshall agreed to the terms of his ownership of Advantis. I signed something to that effect on that date yes, as to only Advantis Law Group PC. This claim is disputable as it does not identify whether Advantis Law Group or Advantis Law is being referenced.

10. Para.61. On February 27, 2015, Marshall formally signed the Advantis Law Group shareholder agreement. I signed something to that effect on that date yes.

**DECLARATION OF CHARLES T. MARSHALL**

11. Para.62. On February 27, 2015, Broderick submitted new documents to the California Secretary of State, identifying himself and Marshall as Advantis Law Group's officers. This is true, however, I was not involved with the filing.

12. Para.63. On March 19, 2015, Marshall sent an email to Foti including the following statement: "The paperwork situation is absurd, to put the matter succinctly. I will deal with it. You legally represent that Advantis Law Group is a group of attorneys, yet I am the only attorney moving forward with papers, etc. Maybe you did the same thing with Brookstone (via Vito), and got away with it. News Flash: I am not Vito, which is good news all the way around, for you, for me, for the future prospects of Advantis." Yes I sent such an email.

13. Para.70. Marshall understood that clients resulting from Advantis marketing were Advantis clients, including stating: "[A]ny Plaintiff's lawsuit will go under Advantis for sure." I understood no such thing, and do not recall this issue coming up at the deposition—though I guess it did. Clearly if I did make such a statement via email or otherwise, I would have understood that issue to be restricted to Advantis Law Group. Again, FTC here is purposely conflating Advantis Law Group with Advantis Law since they know the vast majority of any marketing docs they possess and they have shoved into their pleadings referenced Advantis Law, and even to this day, I don't believe there is a single sample referencing Advantis Law Group by itself. In other words, probably 95% of 'marketing' docs they have a la Advantis reference AL, not ALG. Moreover, even where ALG is referenced in their marketing material, usually it is a logo only—and the rest refers to AL, not ALG—I don't believe a single document marketing shows ONLY ALG. And I

5

**DECLARATION OF CHARLES T. MARSHALL**

personally never signed ANY marketing doc, and anything that went out under my name I did not review or even know about specifically.

14. Para.71.  Marshall understood that an "Advantis referral" could come from more than one "legal firm name."  I never had any understanding other than the following: Wherever the referral came from, the client would have to be personally vetted as an Advantis Law Group client. As I have maintained many times, not a single client to my knowledge ever became an ALG foreclosure client (and none became joinder clients), other than Jason Le the one individual Advantis lawsuit I had.

15. Para.73. Marshall directed Anthony Stout on setting the Advantis retainer fees. There were a number of persons (including Stout) involved with discussing what Advantis Law Group retainer fees would be. That issue was always a work-in-progress, with no definitive definition to the fees because we never reached a point where ALG foreclosure clients were being actually brought on board—again with the exception of Jason Le. I never 'directed' as in commanded anything to anyone; lots of discussions and hypothetical suggestions.

16. Para.80.  The Advantis website featured both Charles Marshall and Geoffrey Broderick as "Directors."  At one time I believe yes I was listed as a director—though again, I saw that as only re Advantis Law Group—not knowing about that Advantis Law or Advantis otherwise named was different corporate entity.

17. Para.110.  The Receiver found a mailer for Advantis that referenced both Advantis Law and Advantis Law Group and stated that Marshall was the attorney issuing the marketing.  I never saw that mailer before this lawsuit; never signed off on it; never endorsed it. And again, when the FTC describe a mailer referencing ALG, would not

surprise at all if ALG was no more than a logo at the top of the page—everything else being references to AL. Remember, in the summer of 2015, a few months after ALG was set forward with Broderick and I as officers, Broderick finally just set up a bank account (again—found out about all of this only at my March 2017 deposition) in the name of Advantis Law, in order to funnel all 'Advantis' clients into AL, not ALG! In other words, this explains why virtually all or even literally all the marketing was directed at and referencing AL only—because that was the only (AL only) bank account Broderick and therefore Foti and Kuntzner had control of—I never successfully set up an ALG account with them—and my San Diego based US Bank ALG account had no coordination of any kind with the other Defendants.

18. Para.203.  Marshall had no prior mass joinder litigation experience. True—that is one of the big reasons I sought to coordinate with these people—they had the foreclosure joinder lawsuit experience, I had the deeper foreclosure law experience overall. It was never a secret that I sought to make their cases more successful; in turn if and when I filed joinder cases with these guys—again that never happened—partial planning re same only—I would benefit and my new ALG clients would benefit.

19. Para.204.  Many of the complaints Marshall has filed on behalf of his clients are dismissed without leave to amend for failure to allege cognizable claims. This claim needs to be disputed as highly misleading—I will email you a list of the approximate number of foreclosure cases I have taken on over the last several years—with a corresponding list of how many settled and how many 'won' in some since.

20. Para.303.  Marshall intended to transfer clients from Brookstone to Advantis, including providing instruction regarding the "Brookstone to Advantis client hand-off," and

7
**DECLARATION OF CHARLES T. MARSHALL**

Brookstone clients "subject to transfer to Advantis." There were a tiny number of clients I was considering doing this with—and this was in reference to literally no more than a half-dozen clients—I did this only because the coordination efforts with the Defendants were slow in developing and the idea was to jump-start one small test case—of maybe up to a dozen clients in one joinder—or less—again the FTC is trying to make it sound like I had some global transfer of lots of clients and/or Brookstone cases intended—no evidence because It never happened and was never intended—we need to dispute this as highly misleading.

21. Para.304. Marshall sent letters to Brookstone clients informing them that their cases were being transferred to Marshall and Advantis. This 304 devolves from 303. Again grossly misleading—maybe three to 6 letters went out—again I think it literally might be only three—**I don't even know that the letters went out**—I did sign several letters (no more than 6 and as few as three). I never heard nor followed up in any meaningful way—and possibly not at all—as to whether the letters actually went out—never knew or had info that any of these people actually switched and became either Advantis Law clients (never heard and never knew of this) nor Advantis Law Group—convinced that absolutely never happened—I would have needed to know about that and would have been informed if true. I suspect none of these clients ever became Advantis clients of any kind—and again, there is no evidence the letters went out—so even the claim the letters went out should be disputed. And I never sent a single letter to any of these 'clients' re Defendants. A lie plain and simple. That I did sign my name at some point for the letters to go out from Irvine through the Defendants, does not mean the letters went out—and again, I suspect they did not and there is no proof that they went out.

8
**DECLARATION OF CHARLES T. MARSHALL**

22. Para.305. On numerous occasions, Marshall requested that Kutzner and Foti begin fully marketing Advantis' mass joinder services urging them to "fully open marketing," have marketing "full-on," and "open up the marketing." I sent a few emails about this issue periodically, because I realized without the marketing the clients to come in to form a base of clients to make a joinder case would never happen. Never came to terms of any kind with Kutzner and Foti on this issue. Never had a fully coordinated game plan on this. Talk and talk, email and email, planning—that's it. And I never reviewed or individually vetted the marketing. As I said at my deposition multiple times, I relied whenever the issue of marketing came up on what I asked and had Kutzner answer several times re marketing/advertising—that he had had a separate attorney review and fully vet and fully sign off on the marketing and advertising being fully compliant with all Cal Bar and California and Federal laws, including FTC issues. The name of this attorney is in Foti's and Kutzner's initial disclosures, and is available as a witness.

23. Para.306. Marshall had an Advantis email address of Charles@advantislaw.com I considered this email to be an Advantis Law Group email—I used 'advantislaw' because it was shorter—remember—I had no clue about AL as opposed to ALG until my deposition. I rarely used this email by the way—less than dozens of emails total sent and received—maybe less than a couple of dozen over a number of months. We can surmise now that I was given an advantislaw email (not ALG) because there never was an ALG of any kind to reference—while some clients probably not even foreclosure related from places like NY or FL might have paid retainers and sent money to Kutzner and Foti via Broderick—who WAS an AL attorney along with disbarred Vito Torchia—I never knew about or had anything to do with any of that. We need to say here there was never an ALG

email address for anyone, because there was never an ALG email of any kind—because there never clients (other than the lone foreclosure client Jason Le) in ALG—so AL was the only email—and I didn't realize that AL was a separate corporate entity from ALG.

24. Para.307. Marshall received multiple emails from people associated with the Corporate Defendants from advantislaw.com email addresses and multiple emails from people who claimed Advantis titles in their email signature blocks True but again highly misleading—we now know their Advantis titles were Advantis Law—either mainly or exclusively—not ALG.

25. Para.308. Marshall expected Kutzner and Foti to be in charge of the marketing and, although asking that the marketing be "full on," never reviewed any of the Advantis marketing materials.

True—again I was relying on the attorney who had vetted all this for compliance—I was relying on Kutzner's representations about this—of course this statement shows I did not in fact review any marketing materials—which in some ways helps my case. Also remember the 'full on' comments were few, and spaced weeks or sometimes months apart, and never came to anything—mere suggestions when you see that nothing ever transpired.

26. Para.309. Marshall scheduled a meeting with the Brookstone/Advantis sales people to go over the entire business, including sales scripts.

It is possible I did discuss scheduling such a meeting—however the bottom line is that such a meeting never happened-because I never got my due diligence about the overall operation satisfied, and the discussions between and among myself and the Defendants never reached the stage where such a meeting was actually warranted. So to say I scheduled a meeting is

10
**DECLARATION OF CHARLES T. MARSHALL**

misleading—maybe preliminarily set one up—or suggested one happen—but the meeting of this kind never in fact happened..

27. Para.310. Marshall first appeared in the *Wright v. Bank of America* litigation on July 20, 2015.

True. But I appeared as co-counsel only—that was always clear from the beginning of my going onto the pleadings—what was also clear as that I would not be managing client contacts, etc., or coordinating any of that. I was on the pleadings solely to help with litigation and negotiation strategy—and that is all in fact I ever did.

28. Para.311. Marshall appeared on pleadings in the *Wright v. Bank America* litigation on behalf of all plaintiffs

This is technically true in that I was listed as co-counsel on the pleadings—but again this was always as co-counsel for an analytical role only. However up to 7 or 8 (or more) attorneys were at one time on the Wright pleadings—only Torchia ,Tarkowski and me have been sued by the FTC though, to my knowledge.

29. Para.312. As a counsel of record, Marshall received the "Separate Case Management Statement of Defendants" filed in the *Wright v. Bank of America* litigation highlighting Brookstone's, Torchia's, Broderick's, and Kutzner's checkered histories.

As a co-counsel of record yes I received and read that statement—I considered it to be the tendentious boilerplate intimidation tactic that it was—and the judge thought it likewise—she admonished Defendant Bryan Cave—and specifically at the August 2015 hearing—Stuart Price—for using such tactics to poison the well so to speak.

11
**DECLARATION OF CHARLES T. MARSHALL**

30. Para.313. Marshall appeared in the *Wright v. Bank of America* litigation because if *Wright v. Bank of America* were dismissed it would hamper his ability to market new mass joinder litigation under the "Advantis" name.

This is pure conjecture and must be disputed. I never said anything directly like this at the deposition. I did say that if the *Wright* case was lost, it would hurt the credibility of joinder cases in general, and for that reason I sought to keep the case alive and thriving. My goal was to bring credibility to joinder cases so I could file one someday myself and vindicate borrower rights in such a case.

31. Para.314. Marshall told Foti and Kutzner that the *Wright* matter and his participation in it and any settlement was dependent on his "presenting well for Advantis." I do believe I said this—again, my focus was doing all this to help a future joinder filing with ALG ONLY. I pointedly was not doing this to help Brookstone. I signed onto the case despite it being a Brookstone case, not because of that fact—Para.314 essentially confirms that fact.

32. Para.315. Marshall worked to ensure the *Wright* case "stays on track" due to its importance and told Foti he had "done all the right things to keep that baby alive." True. I know foreclosure litigation quite well and it is an expertise of mine. I believe the *Wright* case was the ONLY Brookstone joinder case still alive in June of 2016 when the FTC sued everyone. It was alive partially due to my efforts, for which I never sought or discussed compensation of any kind.

33. Para.316. Marshall participated in the *Wright* matter, signing a pleading as "Advantis Law Group, PC, Charles Marshall, Attorneys for All Plaintiffs."

12
**DECLARATION OF CHARLES T. MARSHALL**

I probably did so—again, my intent in doing such a thing was to indicate I was not affiliated with the case on behalf of Brookstone, but to help Advantis.

34. Para.317. After his bar suspension concluded in 2016, Marshall deepened his involvement in Brookstone matters, telling Jonathan Tarkowski that, per instructions from Foti and Kutzner, he would need "access to all the pleadings for recent Brookstone joinder cases that you filed. I need to review and assess status of hearings, pleadings, next steps, etc."

Dispute statement—I did not deepen my involvement—I lessened it overall. I never signed back onto the *Wright* or any other case. I went off the Jason Le case too. And when I went back onto that case after the suspension, I signed back on under my own name—NOT under ALG. The FTC pointedly does not state that I substituted myself off the *Wright* case when I was suspended in late November 2015. The Bar suspension was lifted 90 days later in late Feb 2016. I did request pleadings of the different Brookstone cases because again, I intended to do what I could to make the pleadings better from a litigation point of view. I naturally believed that if the cases were dismissed with prejudice, it would hurt foreclosure joinder cases generally. In the event, I did very little review, and although there might have been some follow up of a limited kind (I am not sure there was anything or anything meaningful).

35. Para.318. In numerous emails including Marshall, Advantis was referred to as "Advantis" or "Advantis Law."

The other Defendants might have been using these terms interchangeably. I know I used them interchangeably because again I thought the ONLY Advantis entity was Advantis Law Group—I used Advantis or Advantis Law as shorthand.

36. Para.319.   Marshall signed a payment processing application for "Advantis Law."

This is misleading and vague—is this talking about a merchant services application for taking credit and debit cards? If I did sign such an application, it was intended by me for use with ALG only. I never saw such a program set up, never saw a single auto debit or credit authorization—had zero interface with any of that. If it was used with AL clients, I never authorized any of that, never knew about any of that—remember I couldn't have done so legally and knowingly anyway—I was never listed or in any way registered with AL, only ALG.

37. Para.320.   Marshall appeared on behalf of and signed the stipulation for the preliminary injunction in this matter on behalf of "Advantis Law Group P.C." and "Advantis Law P.C."

See my motion to withdraw as attorney for these entities—it well explains that my appearing was for the sole purpose of stating I had a legal conflict and could not represent either entity—and I was making a mistake of fact at the time—Again I thought AL was an aka for ALG—I didn't know at that time I had no affiliation of any kind with AL.

38. Para.321.   Marshall was aware that Torchia and Brookstone were facing bar discipline related to the mass joinder practice

True—that is why I would not coordinate with Torchia on any matters. Re Brookstone, that is why I signed onto to ALG, so that the new corporate entity could do matters right and be Bar and otherwise legally compliant.

39. Para.322.   Notwithstanding his knowledge of Torchia's California State Bar disciplinary issues related to Brookstone's mass joinder litigations, Marshall did no

**DECLARATION OF CHARLES T. MARSHALL**

systematic analysis of the Brookstone mass joinder cases, undertook no investigation and did not research the bar complaints against Torchia at "any kind of level of detail."

I used the phrase at "any kind of level of detail" at my deposition. I did some due diligence, and to say I undertook 'no investigation' is a misstatement and is disputed. I did research—but my research was not a full-bore investigation. It was enough to see there was a problem, and that is why I did not coordinate with Torchia, and why I used Advantis rather than Brookstone as a vehicle to file mass joinders—which again were never filed.

    40. Para.323. Marshall was aware of Kutzner's history, including that ULG had been shut down by criminal law enforcement.

I was aware at some level yes.

    41.Para.324. Marshall claims he relied solely on Kutzner's oral representations that the Brookstone/Advantis practices were bar compliant.

Disputed—I specifically relied on his oral representations that a specific attorney vetted the practices—I was not relying on Kutzner per se—I was relying on the attorney he indicated had done the due diligence. Clearly I would not rely on Kutzner for this due diligence—as he is not an attorney and thus would not clearly know all the rules himself.

    42. Para.325. Marshall testified he never saw any documents corroborating Kutzner's claim that any advertising materials were vetted and bar compliant.

True.

    43. Para.326. Marshall testified that at no time did he do "an independent corroboration" of what Kutzner told him.

True.

15
**DECLARATION OF CHARLES T. MARSHALL**

44. Para.327.  Marshall relied exclusively on the word of Kutzner, a non-lawyer with a checkered history, as conclusively establishing the legality of the business practices— disputed--I was relying on the attorney he indicated had done the due diligence. Clearly I would not rely on Kutzner for this due diligence—as he is not an attorney and thus would not clearly know all the rules himself.

45. Para.328.  Marshall was aware of Broderick's past involving another alleged mass joinder fraud as of early March 2015, communicating with Foti and Kutzner regarding the Federal District Court actions of the Florida and Connecticut Attorneys General.
I did learn of Broderick's past and was a contributing reason not to work with Brookstone.

46. Para.331.   Marshall acknowledges analyzing/investigating the Florida and Connecticut Attorneys General action against Broderick and tells Kutzner and Foti the "results are quite unfavorable."
True. But again, that is why I would not go under the Brookstone umbrella, but insisted on having a new corporate vehicle to file the cases using due diligence.

47. Para.332.  In one email related to Broderick's past involving another alleged mass joinder fraud, Marshall stated: "misgivings, given the situation with Brookstone" and that Brookstone's and Broderick's history was creating "a lot of liability for me," he wanted to continue because "[a]t the end of the day, though, we are in complete agreement that this is fundamentally a business decision.  So I am moving forward in that light.  The business prospect still looks quite good."
This email is chopped up and made to look misleading. My going forward was based upon both the perception of running a sound business and using legal procedure such as joinder cases to effectively represent clients.

16
**DECLARATION OF CHARLES T. MARSHALL**

48. Para.333. Marshall knew that Advantis misrepresented its capabilities, telling Foti that Advantis was not a "group of attorneys" as Foti was representing, but that Marshall was the "only attorney moving forward."

Misstates the comment. I was the only California-admitted attorney, but after reviewing this situation more fully, it was my impression that as long as there were attorneys was admitted in some jurisdiction (who had active licenses to practice in other states) I think it is ok to call a law firm a group as long as the other attorney(s) is/are licensed, even though they be out-of-state.

49. Para.334. Marshall knew about multiple misrepresentations on the Advantis website regarding its experience, locations, areas of practice, attorneys, paralegals, and legal assistants.

I had never fully reviewed the website for anything. Any notions I had were vague and undeveloped. Kutzner and Broderick handled the website.

50. Para.335. The FTC sought discovery regarding any defenses Marshall might assert, issuing interrogatories requiring him to: (1) identify any defenses he might assert and further identify all individuals, entities, and documents that might support those defenses; and (2) identify all individuals or entities that have information suggesting that any Defendant was not liable for the alleged conduct and for each individual or entity, state the factual information they possess that relate to any of the claims in the complaint. In his March 13, 2017 response, Marshall did not substantively respond, but stated a response would be provided at a later date. To date Marshall has not provided any additional response. In addition, Marshall has not provided initial disclosures as required by FRCP 26(a)(1).

While it is true I still have not provided initial disclosures, I tried several times (two at least formally) with the Court—both times rejected—where I was attempting to file a formal amended answer and associated motion to amend answer identifying both defenses and affirmative defenses. This separate statement para. is not evidence of any specific fact.

51. Para.336.  The FTC sought discovery requesting all documents supporting Marshall's response to any interrogatory, including those interrogatories requiring him to: (1) identify any defenses he might assert and further identify all individuals, entities, and documents that might support those defenses; and (2) identify all individuals or entities that have information suggesting that any Defendant was not liable for the alleged conduct and for each individual or entity, state the factual information they possess that relate to any of the claims in the complaint.  In his March 13, 2017 response, Marshall did not substantively respond, but stated a response would be provided at a later date.  To date Marshall has not provided any additional response

See my response to 335.

52. Para.337.  The FTC sought discovery from Marshall requesting all documents supporting or tending to disprove that Corporate Defendants: (1) were likely to obtain relief for consumers; (2) would seek to void consumers' mortgages; (3) had a team of experienced lawyers and personnel to litigate mass joinder fraud cases for hundreds or thousands of clients; and (4) would file a lawsuit on behalf of each mass joinder client. Marshall has produced no documents in response to these requests. First the lack of production of documents to prove a negative does not prove the fact. No documents equally prove the non-existence of the fact. Additionally, no documents were produced because I

never coordinated with Defendants sufficiently to have any documents of this kind or that might show these types of situations.

53. Para.350. In October 2011, Marshall stipulated to findings that he violated his ethical duties to five different sets of clients related to short sale and loan modification representation, taking fees for work that he then did not perform. This is irrelevant and fails to support any issue in this matter specifically MARS and /or FTC rules.

54. Para.351. In December 2013, Marshall stipulated to findings that he violated his ethical duties by taking advance fees for a loan modification. Again, this is misleading and only refers to State Bar rules and California law—not MARS or any other FTC rule.

55. Para.352. In the December 2013 stipulated findings, Marshall admits that he told the clients that he would pursue litigation to obtain mortgage relief, but then did not pursue litigation, which was in part due to the clients' failure to communicate with me. I stipulated to resolve the matters with the State Bar involving issues unrelated to those being asserted by the FTC against me in this action. All of this serves no proper purpose in this litigation but is merely being referenced to prejudice this court.

The foregoing is true under the penalty of perjury under the laws of the United States of America; executed this 7th day of August 2017 at San Diego, California.

                                       __/s/ Charles T. Marshall_____
                                       Charles T. Marshall, declarant

19
**DECLARATION OF CHARLES T. MARSHALL**