BENJAMIN J. THEISMAN, *pro hac vice*
btheisman@ftc.gov
GREGORY J. MADDEN, *pro hac vice*
gmadden@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
Tel:  (202) 326-2223, -2426; Fax:  (202) 326-3197

THOMAS SYTA, Cal. Bar No. 116286
tsyta@ftc.gov
FEDERAL TRADE COMMISSION
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax:  (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAMIAN KUTZNER, et al.,<br><br>Defendants. | **No. SACV16-00999-BRO (AFMx)**<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANTS JEREMY FOTI AND CHARLES MARSHALL AS TO ALL COUNTS**<br><br>**Date:** August 28, 2017<br>**Time:** 1:30 pm<br>**Location:** Courtroom 7C<br><br>United States Courthouse<br>350 West 1st Street<br>Los Angeles, CA 90012 |

## **<u>TABLE OF CONTENTS</u>**

I.  THE FTC HAS PRESENTED UNCONTROVERTED EVIDENCE ENTITLING IT TO RELIEF EVEN WITHOUT THE EMAILS, EVIDENCE FOUND ON THE BUSINESS PREMISES, OR CONSUMER SURVEY...................................................................................................2

     A.    The Corporate Defendants Violated the MARS Rule........................2

     B.    The Corporate Defendants Violated Section 5...................................3

     C.    The Evidence Establishes Individual Liability. ................................5

II.  FOTI'S ARGUMENT THAT THE EMAILS ARE INAUTHENTIC IS SPECIOUS.....................................................................................................7

III.  ARGUMENTS THAT DOCUMENTS FOUND ON SITE ARE INADMISSIBLE BECAUSE THEY WERE NOT IN THE HANDS OF CONSUMERS ARE ALSO SPECIOUS..................................................8

IV.  THE EXPERT REPORT IS SOUND, AND DEVASTATING......................8

V.  THE OBJECTIONS TO THE MONETARY RELIEF ARE MERITLESS. .............................................................................................10

VI.  CONCLUSION...........................................................................................11

i

Neither Jeremy Foti nor Charles Marshall have identified or created any genuine disputes as to any material facts concerning the Federal Trade Commission's ("FTC") proof that the defendants[1] stole more than $18 million from consumers through bogus "mass joinder" lawsuits.  Foti's response on summary judgment consists of his inneffective self-serving declaration, specious arguments about the authentication of the Corporate Defendants' business records, unfounded attacks on the consumer survey confirming that the Corporate Defendants made the misrepresentations at issue, and a faulty argument about the FTC's monetary calculations.  Foti's response is an implicit admission that the mountain of facts and evidence adduced conclusively establish his liability. Having come to this realization, he baselessly asks the Court to ignore all evidence except, of course, his most recent self-serving declaration.  Marshall seemingly joins in these arguments.  Unfortunately for them, their admissions, their declarations, and the consumer declarations alone, establish their liability.  They offer no evidence to controvert a material fact to justify denying summary judgment.  Of course, the receivership documents and the expert report are admissible and confirm their liability.  Finally, the minimal objections to the monetary relief are also baseless.  Because the FTC is limited to 10 pages in its combined reply, discussion of these defendants' arguments will be brief.  Given they lack merit, a short discussion is all they deserve.[2]

---

[1]     "Corporate Defendants" means Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), Advantis Law P.C., and Advantis Law Group P.C. "Brookstone" means both Brookstone Law P.C. (California) and Brookstone Law P.C. (Nevada).  "Advantis" means Advantis Law P.C. and Advantis Law Group P.C.  "Advantis Law" means Advantis Law P.C. alone, while "Advantis Law Group" means Advantis Law Group P.C. alone.

[2]     Foti and Marshall's oppositions have a number of factual inaccuracies, the most salient of which are addressed in the accompanying Declaration of Gregory J. Madden.

1

**I.     The FTC Has Presented Uncontroverted Evidence Entitling it to Relief Even Without the Emails, Evidence Found on the Business Premises, or Consumer Survey.**

Foti, and Marshall to an extent, seem to argue that the FTC's case falls apart if the emails from the computers on site, the documents found on site, and the consumer survey are all ignored.  Even without that evidence, they have each admitted or not controverted all of the basic details regarding who the Corporate Defendants were, including the facts necessary to establish Brookstone and Advantis were a common enterprise.  USF ¶¶ 1-31, 64-67, 78, 80-81, 84.  They also fail to controvert the consumer declarations that, combined with their admissions, establish their violations of the MARS Rule and the FTC Act.[3]

**A.     The Corporate Defendants Violated the MARS Rule.**

The uncontroverted consumer declarations establish that consumers received defendants' mailers offering to void their mortgage notes, USF ¶ 100, and then were told that mass joinder litigation is also a way to obtain a loan modification or principal reduction on their mortgage.  USF ¶ 139, 158.  The consumers then report that they paid defendants advance fees.  USF ¶¶ 168-70.  Crucially, none of the mailers or retainer agreements consumers testify to receiving and signing contain the disclosures required under 12 C.F.R. § 1015.4 (failing to make the disclosures "is a violation of this rule").  USF ¶ 185.

Neither Foti nor Marshall can assert a defense to these violations.  Marshall does not even try.  Foti attempts to incorporate by reference his argument from his separate summary judgment motion that the MARS Rule is inapplicable.  But, as

---

[3]     Marshall inaccurately asserts the FTC must prove its case by clear and convincing evidence.  He wrongly cites to the standard to prove "fraud on the court" for relief under Rule 60, not the burden of proof in an FTC action.  This is a civil action with the familiar preponderance of the evidence standard.  *See, e.g., FTC v. Commerce Planet Inc.*, 878 F. Supp. 2d 1048, 1055 (C.D. Cal. 2012) (entering judgment based on "preponderance of the evidence"), *aff'd in relevant part*, 815 F.3d 593 (9th Cir. 2016); *FTC v. Ross*,

2

the FTC detailed in its opposition to Foti's motion, he admitted the Corporate Defendants were MARS providers in his answer, has waived the "attorney exemption" defense, and could not establish the facts necessary to assert such a defense because, among other reasons, the Corporate Defendants acted unethically and did not use client trust accounts. *See* DE 303 at Page ID 9314-20.

### B.   The Corporate Defendants Violated Section 5.

The defendants have *not* controverted the FTC's consumer declarations, which span interactions over multiple years with multiple sales people.  As noted above, the consumers declare they were solicited with mailers, claiming, among other things, that the mass joinder litigation would seek to "void your note(s)," and that "our team of experienced lawyers offers you a superior alternative or recovery." USF ¶¶ 99-102.   At in person meetings, sales people made various false claims regarding consumers' likelihood of success and monetary relief, including:  they had "a very strong case;" prevailing in the litigation was "basically a done deal;" "it was not a question of whether I would win my cases, but how much money I would get;" "the minimum amount I would get would be $75,000;" we "were entitled to a refund as a result of litigation between the Department of Justice and Bank of America;" and "Brookstone Law would succeed eventually." USF at ¶¶ 149, 153, 155, 161-62; see also USF at ¶¶ 136-39, 147-48, 150-51, 154, 156-60, 163-66.[4]  Objective, uncontroverted evidence establishes that none of these claims were true.  The Corporate Defendants did not seek to void notes, did

---

[4]      At one point, Foti criticizes the FTC's proof, claiming that even the survey identifies only 138 dissatisfied consumers.  Other defendants have made this argument before, and it has been rejected. *FTC v. Gill*, 71 F. Supp. 2d 1030, 1040 (C.D. Cal. 1999) ("The defendants miss the point.  Plaintiff does not need to submit a declaration for every single injured customer to meet its burden.  If so, this courthouse would be buried under a mountain of paper."), *aff'd*, 265 F.3d 944 (9th Cir. 2001).

not have the promised experience or capabilities, and have never prevailed in a mass joinder, thus failing to obtain the represented relief.  USF ¶¶ 187-97, 199, 200-204.

Foti and Marshall both argue that the marketing was non-deceptive by focusing on certain claims they assert are true.  But, even if those extraneous claims were in fact true, it does not alter the deceptiveness of the claims identified in the consumer declarations, such as the likelihood of prevailing or obtaining monetary relief.  *Gill*, 71 F. Supp. 2d at 1044 ("[B]ecause each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information, that argument fails.") (citing *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1496-97 (1st Cir. 1989)).  Additionally, several of the claims they highlight are in fact false.  Although the defendants said they would add consumers to mass joinder lawsuits, some were not.  USF ¶ 199.  Although consumers were told the lawsuits would seek to void their mortgages, that was not true.  USF ¶ 197.  Although the mailers claimed the defendants were experienced and had the ability to prosecute the mass joinders, that was not true.  USF ¶¶ 200-204.  Notably, neither Foti nor Marshall even attempt to defend the other representations they list.

Foti argues that the disclaimer in the retainer agreement saves him, but his argument does not address, and is rendered irrelevant by, the case law the FTC cited in its moving papers.  *See, e.g., Resort Car Rental v. FTC*, 518 F.2d 962 (9th Cir. 1975) ("The Federal Trade Act is violated if [the advertising] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."); *FTC v. Gill*, 71 F. Supp. 2d at 1044 (disclaimers in contract consumers received after initial sales pitch were not sufficient to defeat summary judgment).  Indeed, he admits a sales person told a consumer that the disclaimer "was just legal words in the retainer and they had to use them in the agreement, but there was no risk of losing."  USF ¶ 150.

4

### C.    The Evidence Establishes Individual Liability.

Foti argues that without the receivership documents, he cannot be held individually liable.  But, his declarations and admissions establish his control, participation, and knowledge.  He declared to the Court that he performed:

> (1) "[M]anagement services related to referral services, hiring/recruiting, vendor relations, IT relations, and data sources;"
> (2) "Obtain[ing] estimates and costs for expenses associated with day to day operations;"
> (3) "Obtain[ing] or arrang[ing] for the preparation of law firm supplied creative content, advertising, campaign management and other related services;" and
> (4) "Audit[ing] all invoices and expenses provided by third-parties to ensure accuracy, including but not limited to payroll bonuses and employee compensation."

USF ¶ 231.  Foti frequently cites to Torchia's bar trial testimony, without noting Torchia's testimony that "**Jeremy Foti pretty much takes care of business development**."  DE 303-2 at Page ID 9703; *see also* DE 304-1 at Page ID 9760-67 ¶¶ 14-20; (Foti admitting he arranged marketing, with knowledge of its contents), 9779 ¶ 55 (admitting he received complaints).  This is enough.  *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, 1055-56 (C.D. Cal. 2002) ("consultant" with input on hiring, financial matters, and marketing, but no final authority, held liable); *FTC v. American Standard Credit Systems, Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994) ("marketing director" liable because he "implemented the company's policies and procedures, and monitored the marketing activities of ASCS's third-party marketers. . . .").[5]  As the FTC detailed in its opposition to Foti's motion for summary judgment, his assertion that others also had control or participated does not affect *his* liability.  DE 303 at Page ID 9327-28, 9330.  His deep role, and admitted knowledge of complaints, establishes his knowledge.  *FTC v. Affordable*

---

[5]      Because Foti repeatedly cites Damian Kutzner's employment agreement as evidence that Foti could not have control, the FTC conducted a search to see if such an agreement existed for Foti.  Indeed, Foti and Marshall signed a nearly identical version, naming Foti the "Chief Operations Manager" in charge of "all 'Non-Legal' operations" of Advantis.  Madden Decl. ¶ 7.

*Media,* 179 F.3d 1228, 1235 (9th Cir. 1999).  His (incredible) statements that he believed in the marketing and thought there were benefits is not a defense.  *See FTC v. Publishing Clearing House Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (intent to defraud not required); *Affordable Media*, 179 F.3d at 1235 (defendants' claim to have done due diligence regarding truth of claims does not defeat "knowledge" component of FTC Act liability standard).

For his part, Marshall does not contest control of Advantis as part of the common enterprise.  Indeed, he admits the relevant facts.  USF ¶¶ 19-31, 56-69. He is, therefore, liable for injunctive relief.  He only argues that he cannot be monetarily liable because he lacked "full knowledge."  Unfortunately for him, he admits he knew of Kutzner's and Broderick's history, the allegations of ethical misconduct related to Brookstone's mass joinder scheme, and chose to do business with them anyway.  USF ¶¶ 321-32.  He therefore meets the knowledge standard, having an "awareness of a high probability of fraud along with an intentional avoidance of the truth."  *FTC v. Grant Connect LLC*, 763 F.3d 1094, 1101-02 (9th Cir. 2014); *Publishing Clearing House, Inc.*, 104 F.3d at 1171 (9th Cir. 1999) (nominal president had "knowledge" when she knew principal was accused of other crimes).

Importantly, neither Foti nor Marshall have introduced any documents or testimony disputing this evidence.  At best, both offer self-serving declarations.[6] This is not sufficient.  *Publishing Clearing House, Inc.*, 104 F.3d at 1171 (9th Cir. 1999) (self-serving affidavits do not create genuine disputes).  Without such evidence, they cannot defeat summary judgment.

---

[6]   Foti's only supporting witness is Peter Rodriguez, who claims he did "not make any promises or guarantees," but does not say what he actually told consumers.  DE 308 at Page ID 10147 ¶ 4.  As the FTC has proven, the defendants' other sales staff told consumers they had a high likelihood of success. Rodriguez's declaration does not controvert that proof.

**II.     Foti's Argument that the Emails are Inauthentic is Specious.**

The Receiver found the emails in question on the defendants' premises, then copied them, and produced them to the FTC.  DE 23 at Page ID 2354 and DE 57 at Page ID 3088 (detailing that the Receiver is made the custodian of all the Receivership's documents and assets).  These documents are, therefore, authentic, and business records certified by the Receiver.  *MGM Studios Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) (emails of individual employees authenticated through production by corporate defendant); *Burgess v. Premier*, 727 F.2d 826, 835-36 (9th Cir. 1984) (documents found on the defendants' premises were authentic).[7]  The majority of the emails are further authenticated by having been found on one of Foti's computers.  DE 284-8, Theisman Decl., at Page ID 7483-84 ¶¶ 2-4 (detailing, with declarations in support, how all emails with the FTC-RAD-001 prefix were found on computers in Foti's office).  As further indicated in *Burgess*, to overcome this prima facie showing, Foti would need to prove there was a "motive . . . to store false documents." 727 F.2d at 835.  He asserts that Kutzner could have altered them, but provides no basis for why Kutzner would alter the documents at issue, let alone evidence to support such conjecture.[8]  Indeed, because the documents are at least as damning for Kutzner, it

---

[7]     The FTC need only establish a *prima facie* case of authenticity.  *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1398 (9th Cir. 1988).  Once it has done so, the emails are deemed authentic and Foti is limited to introducing evidence to contradict that finding.  *Id.*; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002) ("We now hold that when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.")

[8]     Any argument that all of the emails must be inauthentic because somebody else at the office had access to employee email accounts ignores reality.  At an office with an enterprise email system there are always other people who can access an individual's computer and emails.  This is why the law requires that Foti establish a motive.

7

would have been against Kutzner's interest to have forged and then stored them. Nonetheless, Foti would have the court believe, without any proof of actual manipulation of any the documents[9] or motive for doing so, that they are all inherently inauthentic. This is not the law. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## III. Arguments that Documents Found on Site are Inadmissible Because They Were Not in the Hands of Consumers are Also Specious.

The documents found on site are not "irrelevant," as Foti appears to argue. Without any basis, he asserts that evidence of mailers, scripts, and correspondence confirming the allegations in the FTC's consumer declarations are "irrelevant." He cites no support for this contention, because he cannot. These documents are plainly relevant because they have a "tendency to make a fact more or less probable than it would be without the evidence." FRE 401(a). Furthermore, like the emails, these documents have been authenticated by the Receiver.

## IV. The Expert Report is Sound, and Devastating.

As Dr. Isaacson explains in his concurrently filed response, none of Foti's criticisms have any merit. Dr. Isaacson testifies that he asked appropriate questions in accordance with generally accepted procedures, appropriately blinded the study to hide the purpose of the study from the respondents while giving the respondents comfort in the legitimacy of the survey, determined that the response rate was more than sufficient, and determined there were no inherent biases. As Dr. Isaacson forcefully explains, his survey is not like the one in *In re Autozone,*

---

[9]   Foti has in his possession all of the available metadata associated with the emails.

*Inc.*, 2016 U.S. Dist. LEXIS 105746 (N.D. Cal. Aug. 10, 2016), and suffers from none of the alleged defects of that survey.  Unlike that survey, Dr. Isaacson's survey did not disclose the nature or purpose of the survey and has a much higher response rate, greater than 20%.  As Dr. Isaacson explains, even if this study had a low response rate, it does not follow that it suffered from nonresponse bias or self-interest bias.  Furthermore, Dr. Isaacson explains that there is no basis to conclude that the respondents answered with any biases, for or against the FTC.

While the FTC has put forward competent expert testimony on the nature and sufficiency of the survey, neither Marshall nor Foti have countered with any contrary expert testimony, either in the form of their own survey or expert critique of Dr. Isaacson's survey.  The Court, therefore, has uncontroverted testimony establishing the legitimacy of this study.  *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (criticizing survey not sufficient to defeat summary judgment).  Even were that not the case, any critiques like those levelled by Foti's lay lawyer would only go to weight, not admissibility.  *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("We have long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'  Furthermore, we have made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'") (internal citations omitted); *FTC v. John Beck Amazing Profits LLC*, 865 F. Supp. 2d 1052, 1065 (C.D. Cal. 2012) (admitting consumer survey in FTC case where FTC was identified as a sponsor and the consumers were told that the FTC's mission is "protect[ing] American consumers by monitoring and regulating businesses").  As a result, Foti and Marshall are left with a devastating survey, establishing the Corporate Defendants systematically lied to consumers.

**V.     The Objections to the Monetary Relief are Meritless.**

The FTC has met its burden in proving revenues to establish the claimed equitable monetary relief judgment.  Because the uncontroverted testimony is that all or nearly all of the Corporate Defendants' revenue came from the mass joinder business at issue, the FTC's accountant reviewed the bank statements to determine revenue, less chargebacks and refunds.  Having done so, the defendants now have the burden of showing what amounts, if any, should be further deducted.  *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603-04 (9th Cir. 2016) (describing burden shifting process in determining redress figures in FTC cases).  Marshall does nothing to challenge the FTC's evidence or calculation.[10]  Foti claims the figures are not reliable because they are not consistent with revenue figures on an unrelated client list.  DE 304 at Page ID 9751.  He has the banking records and the spreadsheet the FTC's accountant relied on to establish if the customer list shows an actual conflict.  He has not done so.  Furthermore, there is no testimony or basis for concluding that this separate spreadsheet accounts for all revenues.  *See FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1013 fn.25 (N.D. Cal. 2010) (opposing billing spreadsheet "bereft of foundation or analysis" insufficient to create an issue for summary judgment).  Foti also complains unquantified further amounts should be deducted, but it is his burden to identify any such appropriate amounts.  *Id.* at 1013; *Commerce Plant, Inc.*, 815 F.3d at 604 ("Any risk of uncertainty at this second step 'fall[s] on the wrongdoer whose illegal conduct created the uncertainty.') (quoting *FTC v. Bronson Partners LLC*, 654 F.3d 359, 368 (2d Cir. 2011)).  As Brookstone's "CFO," and a person who reviewed Brookstone's income and invoices, Foti would appear to be well suited to make those determinations.

---

[10]     At most, he mischaracterizes the FTC's explicit argument, failing to note the FTC is seeking from him approximately $2 million, the amount of revenues while he had control.  DE 284-1 at Page ID 7062-63; DE 284-2 at Page ID 7074.

**VI.     Conclusion**

Foti and Marshall defrauded consumers out of millions of dollars.  Summary judgment is appropriate and they deserve orders holding them monetarily liable for their misconduct and preventing them from engaging in similar misconduct in the future.

                         /s/  Benjamin J. Theisman
                         BENJAMIN J. THEISMAN
                         GREGORY J. MADDEN

                         Attorneys for Plaintiff
                         FEDERAL TRADE COMMISSION

Executed this 14th day of August, 2017.

11

PROOF OF SERVICE

I, Benjamin J. Theisman, on August 14, 2017, served the PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANTS JEREMY FOTI AND CHARLES MARSHALL AS TO ALL COUNTS, and all supporting documents, through the ECF system.

/s/ Benjamin J. Theisman

12