LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 16-00999-BRO (AFMx)** | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff:            Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**          (IN CHAMBERS)

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS JEREMY FOTI AND CHARLES MARSHALL, AND DEFENDANT JEREMY FOTI'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION [284, 287]**

## I.   INTRODUCTION

Pending before the Court are Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Motion for Summary Judgment against Defendants Jeremy Foti ("Foti") and Charles Marshall ("Marshall") (Dkt. No. 284 (hereinafter, "FTC Mot.")), and Defendant Foti's Motion for Summary Judgment or, in the alternative, Motion for Summary Adjudication (Dkt. No. 287 (hereinafter, "Foti Mot.")).  After considering the papers filed in support of and in opposition to the instant Motions, as well as the oral argument of counsel, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant Foti's Motion for Summary Judgment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

## II.   BACKGROUND

### A.   The Parties and Plaintiff's Allegations[1]

The FTC brings the instant action against several corporate entities, Brookstone Law P.C. (California), doing business as Brookstone Law Group, Brookstone Law P.C. (Nevada), Advantis Law P.C. and Advantis Law Group P.C.[2]  (*See* Dkt. No. 61 (hereinafter, "FAC") ¶¶ 6–7.)  These companies are law firms that offer mortgage relief services to consumers.  (FAC ¶ 7.)  In addition, Plaintiff brings this action against several individual Defendants:  Damian Kutzner, Vito Torchia, Jr., Jonathan Tarkowski, R. Geoffrey Broderick, Marshall, and Foti (collectively, the "Individual Defendants").  (*See* Dkt. Nos. 1, 61.)  Plaintiff has reached resolutions with several of the Individual Defendants, and they have been dismissed from the action.  (*See* Dkt. Nos. 170, 177, 193.)  Plaintiff has not reached a resolution with Defendants Foti or Marshall.

Plaintiff alleges that Defendant Foti "is an owner and controlling person of Brookstone and a principal or controlling person of Advantis."  (FAC ¶ 9.)  According to Plaintiff, Foti was one of the co-founders of Brookstone in 2011."  (FAC ¶ 9.)  "Although not an attorney, Foti controls the marketing and sales at both Brookstone and Advantis."  (FAC ¶ 9.)  Plaintiff claims that "[a]t all times material . . . , acting alone or in concert with others, [Foti] formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth" in the FTC's FAC.  (FAC ¶ 9.)

---

[1] The Court's description of the background of this case does not constitute this Court's findings of undisputed facts for these Motions.

[2] Brookstone Law P.C. (California), Brookstone Law P.C. (Nevada), Advantis Law P.C., and Advantis Law Group P.C. are collectively referred to as the "Corporate Defendants."  Brookstone Law P.C. (California) and Brookstone Law P.C. (Nevada) are collectively referred to as "Brookstone."  Advantis Law P.C. ("Advantis Law") and Advantis Law Group P.C. ("Advantis Law Group") are collectively referred to as "Advantis."  According to Plaintiff, Brookstone and Advantis "are under common control, with common employees and a common address while marketing the same product."  (FAC ¶ 14.)  Plaintiff also avers that "Defendants have used the names Brookstone and Advantis interchangeably."  (FAC ¶ 14.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

Plaintiff alleges that Defendant Marshall "is a director, Chief Executive Officer, and Secretary of Advantis." (FAC ¶ 13.) "Marshall has also appeared as counsel in Brookstone's *Wright v. Bank of America* mass joinder case." (FAC ¶ 13.) "In 2015, Marshall was disciplined by the California Bar for violations related to mortgage assistance relief services, receiving a 90-day suspension from the practice of law in November 2015 for his ethical violations." (FAC ¶ 13.) Plaintiff claims that "[a]t all times material . . . , acting alone or in concert with others, [Marshall] formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth" in the FTC's FAC. (FAC ¶ 13.)

The instant action arises from the Individual Defendants' alleged scheme to defraud "consumers out of thousands of dollars in upfront and recurring monthly fees" in violation of the FTC Act and the Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. 1015. (Dkt. No. 142 at 4.) Specifically, Plaintiff claims that the Individual Defendants, operating through the Corporate Defendants, "convince consumers that if added to a 'mass joinder' case against their lender, they can expect a significant recovery, typically at least $75,000." (*Id.*) Plaintiff also claims that, despite their representations to the contrary, the Individual Defendants "have never won a mass joinder case, do not have the experience or resources to litigate them, and never sue on behalf of many paying consumers." (*Id.*)

The purported scheme began with Defendant Kutzner's ULG, a law firm offering advance fee loan modifications. (*Id.* at 5.) However, after the FBI and the United States Postal Inspectors raided ULG due to claims that its two primary attorneys committed mortgage modification fraud, and with ULG "unraveling," Defendant Kutzner, along with Defendants Torchia and Foti, set out to market mass joinder litigation through Brookstone. (*Id.*)

To market the mass joinder litigation, the Individual Defendants allegedly sent a substantial amount of form mailers to the public, which included the following statements: "you may be a potential plaintiff against your lender[;]" "our team of experienced lawyers offers you a superior alternative for recovery[;]" and "[i]t may be necessary to litigate your claims against your lender to get the help you need and our lawyers know how to do so." (*Id.*) The mailers also included statements that consumers

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

had "a very strong case" and that prevailing in the litigation was "basically a done deal." (*Id.*)

In order to participate in the mass joinder litigation, the Individual Defendants would require consumers to pay upfront fees, including a large initial fee and subsequent monthly fees. (*Id.*) According to Plaintiff, the Individual Defendants failed to keep these fees in client trust accounts. (*Id.*) Plaintiff also claims that the mailers and fee agreements failed to include disclosures required by law. (*Id.*) Plaintiff avers that the Individual Defendants failed to provide the promised services, as many consumers were never added to a mass joinder case and the attorneys working for Brookstone and Advantis did not have sufficient experience to competently litigate the mass joinders. (*Id.*)

**B.     Procedural History**

On May 31, 2016, Plaintiff filed its Original Complaint under seal. (Dkt. No. 1.) Plaintiff alleged two causes of action in its Original Complaint:  (1) a violation of the FTC Act, 15 U.S.C. § 45(a); and, (2) a violation of the MARS Rule, 16 C.F.R. Part 322, recodified as 12 C.F.R. Part 1015 against Defendant Marshall and others, but not Defendant Foti. (Dkt. No. 1.) On July 5, 2016, Plaintiff filed a First Amended Complaint, adding Foti as a defendant, and alleging the same causes of action as its Original Complaint. (*See* FAC.)

On July 10, 2017, Plaintiff filed its Motion for Summary Judgment against Defendants Foti and Marshall. (FTC Mot.) Also on July 10, 2017, Defendant Foti filed his Motion for Summary Judgment or, in the alternative, Summary Adjudication. (Foti Mot.) On August 7, 2017, Defendant Foti (Dkt. No. 304 (hereinafter, "Foti Opp'n")) and Defendant Marshall (Dkt. No. 313 (hereinafter, "Marshall Opp'n")) opposed the FTC's Motion. Also on August 7, 2017, Plaintiff opposed Foti's Motion. (Dkt. No. 303 (hereinafter, "FTC Opp'n").) On August 14, 2017, Plaintiff filed its reply in support of its Motion (Dkt. No. 315 (hereinafter, "FTC Reply")), and Foti filed his reply in support of his Motion (Dkt. No. 319 ("hereinafter, "Foti Reply")).

On August 20, 2017, Defendant Marshall filed a Notice of Errata, attaching a corrected version of his response to Plaintiff's Separate Statement of Undisputed Facts.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

(Dkt. No. 338.) On August 21, 2017, the Court ordered Plaintiff to file any response to Defendant Marshall's corrected Statement Disputing Plaintiff's Undisputed Facts and Conclusions of Law in Support of Summary Judgment by August 24, 2017. (Dkt. No. 339.) Plaintiff complied with the Court's order and filed its Undisputed Statement of facts and Conclusions of Law on Reply in Support of its Summary Judgment Motion on August 24, 2017. (Dkt. No. 341 (hereinafter, "FTC Mot. USF").)

The Court held a hearing on these Motions on August 28, 2017.

## III.   EVIDENTIARY OBJECTIONS

"In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, No. 08–0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). "This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Id.*; *see also Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (explaining that "the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact"). Per this Court's Standing Order, the parties are not to "submit blanket or boilerplate objections to the opponent's statements of undisputed fact." (Standing Order Regarding Newly Assigned Cases Rule 8(c)(iii).) "The boilerplate objections will be overruled and disregarded." (Standing Order Regarding Newly Assigned Cases Rule 8(c)(iii).)

Defendant Foti makes a variety of boilerplate objections to Plaintiff's evidence included in support of Plaintiff's Motion for Summary Judgment as well as Plaintiff's evidence included in opposition to Defendant Foti's Motion for Summary Judgment. (*See* Foti Reply at 1; FTC Mot. USF.) Defendant Marshall has joined in Foti's objections.[3] The Court will not consider Defendants' blanket or boilerplate objections. *See Starbucks, Inc.*, 2009 WL 5183773, at *1; (Standing Order Regarding Newly Assigned Cases Rule 8(c)(iii)). Defendant Foti makes a few specific objections that the

---

[3] In his opposition, Defendant Marshall states that he "joins in Defendant Foti's evidentiary objections to the Plaintiff's evidence in support of its motion for summary judgment." (Marshall Opp'n at 2 n.2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | | Date | September 5, 2017 |
|---|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | | |

Court discusses below.  First, Foti argues that the emails, scripts, and mailers that the Receiver collected from the Corporate Defendants' offices are inadmissible because they have not been authenticated, they lack foundation, and/or they are not relevant.  (Foti Reply at 1; Dkt. No. 304-2.)  Second, Foti argues that the FTC relies on a flawed expert report in support of its Motion for Summary Judgment.  (Foti Reply at 1; Dkt. No. 304-3.)

### A.    Defendant's Evidentiary Objections Regarding the Admissibility of the Emails, Scripts, and Mailers Collected by the Receiver from the Corporate Defendants

The Court **OVERRULES** Defendant's objections that the emails, scripts, and mailers the Receiver obtained from the Corporate Defendants have not been authenticated.  The Receiver found the documents in question on the Defendants' premises, copied them, and produced them to the FTC.  (*See* Dkt. Nos. 57 at 22 (detailing that the Receiver was made the custodian of all the Receivership's documents and assets), 284-8 at 1–2 ¶¶ 2–4.)  These documents are, therefore, authentic, as business records certified by the Receiver.  *MGM Studios Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) (emails of individual employees authenticated through production by corporate defendant); *Burgess v. Premier*, 727 F.2d 826, 835–36 (9th Cir. 1984) (documents found on the defendants' premises were authentic).  Further, many of the emails are also authenticated by having been found on one of Foti's computers.  (*See* Dkt. No. 284-8 at 1–2 ¶¶ 2–4.)  As shown in *Burgess*, to overcome this prima facie showing of authenticity, Foti would need to prove there was a "motive . . . to store false documents" at the Corporate Defendants' offices.  *See Burgess*, 727 F.2d 826 at 835; *see also* E.W. *French & Sons, Inc. v. Gen. Portland, Inc.*, 885 F.2d 1392, 1298 (9th Cir. 1988) (explaining that the FTC need only establish a prima facie case of authenticity).  Foti has not done so, and thus, the Court overrules Defendant's objections with respect to the objection that the emails, scripts, and mailers obtained from the Corporate Defendants have not been authenticated.

The Court also finds that Defendant Foti's objection as to the relevance of the emails, mailers, and scripts that the Receiver obtained from the Corporate Defendants is also **OVERRULED**.  Foti argues that these documents are irrelevant.  (*See* Dkt. No. 304-2 at 5.)  However, these documents are relevant in that they tend to prove or disprove that

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

the Corporate Defendants and the Individual Defendants engaged in the illegal conduct in question, and these facts are thus of consequence in determining the action.  *See* Fed. R. Evid. 401.  Defendant Foti's arguments on this point are therefore rejected.

### B.     Defendant's Evidentiary Objections Regarding the FTC's Expert Report Prepared by Dr. Isaacson

The Court **OVERRULES** Defendant's objection that Dr. Isaacson's report is inadmissible.  Dr. Isaacson conducted a survey measuring the experience of consumers who retained the Corporate Defendants for their services.  (*See* Dkt. No. 284-6.) Contrary to Defendant Foti's arguments, Dr. Isaacson's report does not violate Federal Rule of Evidence 702.  As Dr. Isaacson testifies in his supporting declarations, his procedure for conducting the consumer survey is in accordance with generally accepted procedures, he appropriately blinded the study to hide the purpose of the study from the respondents while giving the respondents comfort in the legitimacy of the survey, determined that the response rate was more than sufficient, and determined there were no inherent biases.  (*See* Dkt. Nos. 284-6, 315-5.)  After considering the declarations of Dr. Isaacson, it appears that the survey he conducted does not suffer from the alleged defects discussed in *In re Autozone, Inc.*, No. 3:10-md-02159-CRB, 2016 U.S. Dist. LEXIS 105746 (N.D. Cal. Aug. 10, 2016).  Here, Dr. Isaacson's survey did not disclose the nature or purpose of the survey and has a much higher response rate than that in *Autozone*, greater than 20%.  (*See* Dkt. No. 315-3 ¶ 4); *In re Autozone, Inc.*, 2016 U.S. Dist. LEXIS 105746 at *56 ("Plaintiffs' survey had a woefully low response rate[—] . . . a response rate of 3.43% . . . .").  Further, the Court finds that the FTC has put forward competent expert testimony on the nature and sufficiency of the survey, but neither Marshall nor Foti have countered with any contrary expert testimony, either in the form of their own survey or expert critique of Dr. Isaacson's survey.  Therefore, the Court has uncontroverted testimony supporting the legitimacy of the survey, and there is no reason to doubt its reliability.  *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (criticizing survey was not sufficient to defeat summary judgment).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 16-00999-BRO (AFMx)** | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

## IV.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## V. DISCUSSION

The FTC argues that the undisputed facts establish that Defendants Foti and Marshall, through the acts of the Corporate Defendants, (1) violated the FTC Act by making material misrepresentations about the services that they provided to the consumers; and, (2) violated the MARS Rule by (a) failing to make the proper disclosures while communicating with consumers, (b) collecting improper fees before obtaining the promised result, and (c) misrepresenting material aspects of the services. (*See generally* FTC Mot.) Defendant Foti argues that "there is an absence of evidence to support the FTC's case," and that summary judgment should be entered in Defendant Foti's favor as a result. (*See* Foti Mot. at 2.) In determining these instant Motions for Summary Judgment, the Court considers all appropriate evidentiary material identified and submitted in support of and in opposition to both Motions; here, the two Motions address the same claims and the same underlying facts. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132 (9th Cir. 2001); (Foti Mot.; FTC Mot.).

### A. The Conduct of the Corporate Defendants

#### 1. The Corporate Defendants Formed a Common Enterprise

At the outset, the Court finds that the undisputed facts establish that the Corporate Defendants formed a common enterprise. "[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests of the pooling of assets and revenues." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010). Here, the undisputed facts are that Brookstone and Advantis shared staff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 16-00999-BRO (AFMx) | | Date | September 5, 2017 |
|---|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | | |

and office space at multiple locations. (*See, e.g.*, FTC Mot. USF ¶¶ 64–67, 75–76, 78.) They had significant overlap in owners and direct overlap in control persons, including Foti. (*See, e.g.*, FTC Mot. USF ¶¶ 56, 231, 305, 308.) They also assisted one another in furthering the scheme, with Advantis coming on board when Torchia was being disbarred, using virtually the same misrepresentations in mailers, scripts, and websites. (*See* FTC Mot. USF ¶¶ 46–62, 84–89 ); *Network Servs. Depot, Inc.*, 617 F.3d at 1143 ("The undisputed evidence is that [defendant's] companies pooled resources, staff and funds; they were all owned and managed by [defendant] and his wife; and they all participated to some extent in a common venture to sell internet kiosks."). "Thus, all of the companies were beneficiaries of and participants in a shared business scheme . . . ." *Network Servs. Depot, Inc.*, 617 F.3d at 1143.

### 2. The Corporate Defendants Violated the FTC Act

"Section 5 of the FTC Act prohibits deceptive acts or practices in or affecting commerce and imposes injunctive and equitable liability upon the perpetrators of such acts." *Network Servs. Depot, Inc.*, 617 F.3d at 1138 (citing 15 U.S.C. § 45(a)). "An act or practice is deceptive if first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *Stefanchik*, 559 F.3d at 928 (internal quotation marks omitted). "Express product claims are presumed to be material." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994). "Deception may be found based on the 'net impression' created by a representation." *Id.*

The undisputed facts show that the Corporate Defendants made numerous deceptive statements to consumers. Brookstone's representatives said or suggested that hiring Brookstone would definitely or probably achieve at least one of the following five outcomes: consumers would (1) win a lawsuit against the company that holds their mortgage; (2) have the terms of the mortgage changed; (3) receive money; (4) have their mortgage voided; and/or (5) get their property free and clear of their mortgage. (FTC Mot. USF ¶ 176.) Brookstone's representatives told consumers that that they would definitely or probably win their lawsuit. (FTC Mot. USF ¶ 176.) In addition, consumers received advertising in the mail from the Corporate Defendants that stated: "you may be a potential plaintiff against your lender;" mass joinder is a way to "void your note(s), and/or award you relief and monetary damages;" "our team of experienced lawyers offers

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|----------|---------------------------|------|-------------------|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

you a superior alternative for recovery;" and, "[i]t may be necessary to litigate your claims against your lender to get the help you need and our lawyers know how to do so." (FTC Mot. USF ¶¶ 99–102.)  Some versions of the mailers told consumers they could expect to receive $75,000 in damages.  (FTC Mot. USF ¶¶ 103–04.)  One mailer stated that each customer "shall receive a judicial determination that the mortgage lien alleged to exist against their particular property is null and void *ab initio*."  (FTC Mot. USF ¶ 104.)  Some mailers referenced the Department of Justice's multi-billion dollar settlements with the banks, suggesting that Brookstone's cases were somehow connected. (FTC Mot. USF ¶¶ 107–09.)  Another mailer stated that consumers might be entitled to relief as a result of multibillion-dollar settlements with banks, with no mention that Advantis was not a party to those settlements.  (FTC Mot. USF ¶ 111.)  One mailer reads: "[i]f you are behind on your payments act now to preserve your legal rights because the law is on your side," representing to consumers that they had viable claims against their lenders.  (FTC Mot. USF ¶ 79.)

When the consumers called the Corporate Defendants, the sales agents would tell consumers about the Corporate Defendants' mass joinder cases as proof of their validity, telling them that "[Brookstone/Advantis] is a Pioneer in Mass Tort litigation and all of our landmark cases are still going through the court system.  We have had some phenomenal results in our individual cases and have been able to save hundreds of homes and have achieved many confidential settlements."  (FTC Mot. USF ¶¶ 93, 124.)  The "Objection Techniques" script instructed the sales people, when a potential customer indicated they did not want to spend any more money on their property to say:  "Sir, I know exactly how you feel and the bottom line is, if we can't custom tailor a program that benefits you and your family[,] we won't get to write and you won't sign it correct?" (FTC Mot. USF ¶ 131.)  Another supplemental script directed sales people to address questions about whether the mass joinder is better than or different from a loan modification by stating:

Over the past few years we have taken the steps to build solid relationships with the major banking institutions to provide our clients with the relief they seek.  By having the backing of a REPUTABLE law [f]irm that has formed a strong relationship with lenders as we have, you can rest assured that we will be able to get you and your family a permanent solution.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|----------|---------------------------|------|-------------------|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

(FTC Mot. USF ¶ 132 (emphasis in original).)

Some consumers attended in-person sales meetings with the Corporate Defendants' "Banking Specialists," who were actually sales persons or "closers." (FTC Mot. USF ¶¶ 94–98.) At these meetings, the "Banking Specialists" would show consumers a "Legal Analysis" that stated consumers had multiple valid causes of actions against their lenders with no discussion of any defenses the lenders may have or the relative weakness of the various claims. (FTC Mot. USF ¶¶ 141–44, 167.)

The consumers declare they were solicited with mailers, claiming, among other things, that the mass joinder litigation would seek to "void your note[s]," and that "our team of experienced lawyers offers you a superior alternative to recovery." (FTC Mot. USF ¶¶ 100–01.) At in person meetings, sales people made various statements regarding consumers' likelihood of success and monetary relief, including: that they had "a very strong case[;]" prevailing in the litigation was "basically a done deal[;]" 'it was not a question of whether [the consumers] would win [the] cases, but how much money [the consumers] would get[;]" "the minimum amount [the consumer] would get would be $75,000[;]" the consumer was "entitled to a refund as a result of litigation between the Department of Justice and Bank of America[;]" and "Brookstone would succeed eventually." (FTC Mot. USF ¶¶ 136–39, 147–66.) None of these representations were accurate. The Corporate Defendants did not seek to void notes, did not have the promised experience or capabilities, and have never prevailed[4] in a mass joinder, thus failing to obtain the represented relief. (FTC Mot. USF ¶¶ 186–204.) "Some consumers who paid to be mass joinder clients were never [even] added to a mass joinder case." (FTC Mot. USF ¶ 199.)

In opposition to the FTC's Motion, Defendants Foti and Marshall argue that the Corporate Defendants' marketing was not deceptive, focusing on aspects of the marketing that were true. (Foti Opp'n at 6; Marshall Opp'n at 5.) However, even if some of the statements that the Corporate Defendants made as part of their marketing were

---

[4] Foti admits that Torchia declared: "Neither Brookstone nor Advantis has ever won a mass joinder case. Because there is always risk in litigation, I knew there was a possibility that we could in fact lose all of the lawsuits and that payment to Brookstone and Advantis would increase those consumers' losses." (FTC Mot. USF ¶ 186.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

true, it does not change that the Corporate Defendants made misrepresentations. *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999) ("[B]ecause each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information, that argument fails.").

Defendant Foti argues that because the retainer agreement had a disclaimer in it, it nullifies any misrepresentations made in the marketing. (Foti Mot. at 14; Foti Opp'n at 8–9.) But this argument fails as a matter of law. *See Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) ("The Federal Trade Act is violated if [the advertising] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."). Further, Foti admits a sales person told a consumer that the disclaimer "was just legal words in the retainer and they had to use them in the agreement, but there was no risk of losing." (FTC Mot. USF ¶ 150.)[5]

Thus, the undisputed facts establish that the Corporate Defendants violated the FTC Act as a matter of law because the Corporate Defendants made numerous false and/or misleading material statements to consumers, and Defendants raise no facts creating a genuine dispute. *See Stefanchik*, 559 F.3d at 928.

### 3.    The Corporate Defendants Violated the MARS Rule

In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans. Omnibus Act, § 626, 123 Stat. at 678, as clarified by Credit Card Act, § 511, 123 Stat. at 1763–64. Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322. The Dodd-Frank Act, § 1097, 124 Stat. at 2102–03, 12 U.S.C. § 5538, transferred rulemaking authority over the MARS Rule to the Consumer Financial Protection Bureau, and the MARS Rule

---

[5] Defendant Foti also argues that when considering the net impression of the Corporate Defendants' promises about the potential outcome of the litigation, the statements are not misleading because "the concept of 'filing a lawsuit' is uniquely easy for consumers to understand.'" (Foti Opp'n at 7.) According to Foti "[u]nlike other services, where consumers might be misled by promises of successful results, consumers are well-exposed to, and can easily understand, the basic elements that are present in all lawsuits . . . ." (Foti Opp'n at 7–8.) The Court rejects Defendant Foti's argument that "the concept of 'filing a lawsuit' is uniquely easy for consumers to understand."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

was recodified as 12 C.F.R. Part 1015, effective December 30, 2011. The FTC retains authority to enforce the MARS Rule pursuant to the Dodd-Frank Act § 1097, 12 U.S.C. § 5538.

The MARS Rule defines the term "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity. 12 C.F.R. § 1015.2. Attorneys are covered by the MARS Rule. *See FTC v. A to Z Mktg., Inc.*, No. 13-00919-DOC (RNBx), 2014 WL 12479617, at *4 (C.D. Cal. Sept. 17, 2014) (explaining that attorneys are only exempt from the MARS Rule in "[u]nder certain conditions"). The Corporate Defendants were MARS providers because they offered to provide mortgage assistance relief services. *See id.*; (FTC Mot. USF ¶¶ 100, 104–07). In fact, Foti admits that the Corporate Defendants were MARS providers and that the mass joinder services were MARS. (*See* FTC Mot. USF ¶ 25.)

Plaintiff alleges that the Corporate Defendants violated the MARS Rule because they: (1) failed to make legally required disclosures (FAC ¶¶ 83); (2) asked for, or received, payment before consumers had executed a written agreement with their loan holder or servicer that incorporates the offer obtained by Defendants in violation of the MARS Rule (FAC ¶ 81); and, (3) misrepresented material aspects of their services (FAC ¶ 82).

### a. The Corporate Defendants Failed to Make Legally Required Disclosures

Under 12 C.F.R. section 1015.4, certain written disclosures must be made to consumers if a company is providing MARS. These disclosures include statements that a consumer does not have to accept the relief, if any, obtained by the MARS provider and does not have to make any payments until the consumer has received the promised relief. 12 C.F.R. § 1015.4. The Corporate Defendants did not include the requisite disclosures in the mailers or the retainer agreements, and therefore violated 12 C.F.R. section 1015.4. (*See* FTC Mot. USF ¶ 185.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

### b.    The Corporate Defendants Took Advance Fees in Violation of the MARS Rule

Under 12 C.F.R. section 1015.5, "[i]t is a violation . . . for any mortgage assistance relief service provider to:  []Request or receive payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer."  Essentially, the Corporate Defendants could only take a fee upon providing the promised result.  *See* 12 C.F.R. § 1015.5.

The Corporate Defendants charged consumers a variety of advance fees. "Consumers paid an initial fee for the mass joinder [cases], always exceeding $1,000." (FTC Mot. USF ¶ 169.)  The consumers paid "Legal Analysis" fees "in amounts ranging from $895–$1500."  (FTC Mot. USF ¶ 168.)  Consumers also "paid monthly fees, in many instances $250 per month."  (FTC Mot. USF ¶ 170.)  All of the fees that the Corporate Defendants collected were advance fees in violation of the MARS Rule because the Corporate Defendants did not win any of their mass joinder cases or obtain the promised relief for the consumers.  (FTC Mot. USF ¶ 186–96.)

### c.    The Corporate Defendants made misrepresentations regarding material aspects of their services

As explained above, the undisputed facts demonstrate that the Corporate Defendants made misrepresentations regarding material aspects of their services.  *See supra* section V.A.2.  This conduct is not only considered a violation of the FTC Act, but is also considered a violation of the MARS Rule.  *See, e.g.*, 12 C.F.R. § 1015.3 ("It is a violation of this rule for any mortgage assistance relief service provider to engage in the following conduct:  . . . [m]isrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:  (1) [t]he likelihood of negotiating, obtaining, or arranging any represented service or result . . . [;] (6) [t]he terms or conditions of any refund, cancellation, exchange, or repurchase policy for a mortgage assistance relief service, including but not limited to the likelihood of obtaining a full or partial refund, or the circumstances in which a full refund will be granted . . . [;] (8) [t]hat the consumer will receive legal representation . . . .").

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 16-00999-BRO (AFMx)** | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

### d.   The Attorney Exemption Does Not Apply to the Corporate Defendants

Defendant Foti, who is not an attorney himself, argues in his Motion for Summary Judgment that the Corporate Defendants cannot be held liable for any violations of the MARS Rule because the attorney exemption applies.  (Foti Mot. at 9.)  In response, Plaintiff argues that the attorney exemption is an affirmative defense, and that because (1) Foti did not plead this defense in his answer, and (2) Foti did not identify the attorney exemption in response to Plaintiff's interrogatories requiring Foti to identify all defenses on which he might rely, Foti should not be permitted to assert this defense because the FTC did not have the opportunity to seek discovery from Foti and third parties to rebut it.  (FTC Opp'n at 7.)

"While the general rule is that a defendant should assert affirmative defenses in its first responsive pleading, Fed. R. Civ. P. 8(c), the Ninth Circuit has 'liberalized' the requirement that a defendant must raise affirmative defenses in their initial responsive pleading."  *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 921 (N.D. Cal. 2014) (citing *Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997)).  "In the Ninth Circuit, a defendant 'may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff.'"  *Id.*

"Here, [Foti] attempt[s] to assert an . . . exemption defense for the first time approximately" over a year after the FTC filed its Amended Complaint against Foti, and approximately one month before the discovery cut-off deadline as stated in the January 10, 2017 Amended Scheduling Order.  (*See* Dkt. Nos. 61, 169; Foti Mot.)  The Court need not determine whether Foti's "unexplained, inordinate delay in raising this defense is prejudicial" to Plaintiff, as Foti raised this defense only a month before the close of discovery because the Court finds that the defense does not apply to the Corporate Defendants' actions here.  *See Ulin v. Lovell's Antique Gallery*, No.C-09-03160 EDL, 2010 WL 3768012, at *13 (N.D. Cal. 2010) (prohibiting defendants from raising exemption defense for the first time at the summary judgment stage).

Because the attorney exemption is an affirmative defense, Defendant Foti has the burden of proof.  *See FTC v. Lakhany*, No. SACV 12-00337-CJC (JPRx), Dkt. No. 136 at

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

5–6 (attorney exemption is a defense for which defendants have the burden of proof); *Barnes v. AT & T Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173–74 (N.D. Cal. 2010) ("[A]n affirmative defense . . . is a defense on which the defendant has the burden of proof.") (citing *Kanne v. Conn. Gen. Life Is. Co.*, 867 F.2d 482, 492 n.4 (9th Cir. 1988)). To employ the attorney exemption, Defendant Foti must establish that the Corporate Defendants were ethically discharging their legal duties. *See* 75 F.R. 75128, 715131-32. Here, Foti fails to put forth facts establishing this defense, and thus the exemption does not apply to the Corporate Defendants' conduct. (*See* FTC SGD ¶ 116.)[6]

---

[6] Defendants Marshall and Foti do not put forth evidence that the Corporate Defendants were complying with legal ethical duties sufficient to satisfy that the attorney exemption applies. The evidence provided by the FTC suggests that the Corporate Defendants did not comply with their ethical duties, and that they were informed of their unethical practices. For example:

> Brookstone received ethics advice that its "non-refundable" flat fees were not true retainer fees: "The retainer agreements should be amended to remove the language that the retainer fees are non-refundable unless the payment is used to insure availability and not to any extent to compensate Brookstone for providing legal services. Given that Brookstone's attorneys do not currently keep track of the time spent on each client, it would be difficult for Brookstone to track the time spent in case a client terminates Brookstone's representation before the matter is resolved or adjudicated. We recommend that Brookstone's lawyers begin keeping track of their time to provide a basis to show that fees have been earned.

(FTC Mot. USF ¶ 172.) Brookstone also received ethics advice noting that Brookstone did not perform conflicts checks when retaining clients and stating that this was problematic. (FTC Mot. USF ¶ 173.) In response to one piece of ethics advice, Foti wrote: "I think we need to keep in mind he is an ethic's attorney so he is going to always say you shouldn't do this you shouldn't do that." (FTC Mot. USF ¶ 255.) Additionally, Brookstone obtained ethics advice that paying sales people a bonus based on the number of clients retained likely violated Brookstone's ethical duties. (FTC Mot. USF ¶ 240.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

**B.    The Undisputed Facts Demonstrate that Foti and Marshall Must Be Held Liable for the Corporate Defendants' Conduct**

Injunctive relief against Defendants Foti and Marshall is appropriate if the FTC establishes a corporation's violations and establishes that Defendants "participated directly in the acts or practices *or* had the authority to control them." *FTC v. Publ'g Clearinghouse Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).  Once injunctive liability is proven, Defendants Foti and Marshall will be held monetarily liable if the FTC establishes that that they had the requisite "knowledge." *Id.* at 1171.

**1.    Foti and Marshall Are Each Liable for Injunctive Relief**

Because the Court has concluded that the undisputed facts demonstrate that the Corporate Defendants violated the FTC Act and the MARS Rule as a matter of law, the only remaining issue as to whether Defendants Foti and Marshall are liable for injunctive relief is whether they "participated directly in the acts or practices *or* had authority to control them." *See Publ'g Clearinghouse Inc.*, 104 F.3d at 1171.  The FTC need not prove both participation and control, either will suffice. *Id.*

The undisputed facts show that both Defendants Foti and Marshall participated directly in the acts or practices.  Defendant Foti began working with Brookstone in late 2010.  (FTC Mot. USF ¶ 215.)  In November 2010, Kutzner sent Foti a Brookstone telemarketing script, and Foti responded by telling Kutzner to send him all other scripts because he was getting the marketing and sales operation up and running, and he was going to "work on a little bit shorter process [that] will still have the same effect with the client." (FTC Mot. USF ¶ 216.)  Also in November 2010, Foti emailed Kutzner, explaining that he is bringing in numerous employees, several of whom are sales people. (FTC Mot. USF ¶ 217.)  Foti told Kutzner, "It is go time let's hit it full throttle." (FTC Mot. USF ¶ 217.)  One of the Corporate Defendants' phone directories identified Foti as "management." (FTC Mot. USF ¶ 220.)  Another Corporate Defendant phone directory identified Foti as "VP of Marketing." (FTC Mot. USF ¶ 221.)

Individual Defendants Foti, Kutzner, and Torchia all signed their initials to a document titled "Deal Mem." (FTC Mot. USF ¶ 227.)  In this Deal Memo, there was a provision related to the day-to-day management of Brookstone, which stated:  "[T]here

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

will be a majority rule in the voting decision amongst the shareholders of the firm and
non-attorneys (Employees) Jeremy Foti and Damian Kutzner." (FTC Mot. USF ¶ 228.)
Foti himself has declared that his role with the Corporate Defendants included:
(1) "management services related to referral services, hiring/recruiting, vendor relations,
IT relations, and data sources[;]" (2) "[o]btain[ing] estimates and costs for expenses
associated with day to day operations[;]" (3) "[o]btain[ing] or arrang[ing] for the
preparation of law firm supplied creative content, advertising, campaign management and
other related services[;]" and, (4) "[a]udit[ing] all invoices and expenses provided by
third-parties to ensure accuracy, including but not limited to payroll bonuses and
employee compensation." (FTC Mot. USF ¶ 231.)  At times, Foti would send emails to
the Corporate Defendants' sales personnel regarding the sales process and guidelines.
(FTC Mot. USF ¶ 241.)  The undisputed facts support that Foti was directly involved
with overseeing the sales persons working for the Corporate Defendants, setting up
training meetings and participating in meetings to determine the sales process.  (*See, e.g.*,
FTC Mot. USF ¶¶ 242–47.)  Further, Torchia, a purported owner of Brookstone,
declared:  "Although Jeremy Foti was technically a 'consultant' for Brookstone, he was,
along with Damian Kutzner, responsible for all non-legal aspects of Brookstone's
operations." (FTC Mot. USF ¶ 248.)  Former Brookstone and Advantis attorney
Jonathan Tarkowski declared:  "Damian Kutzner and Jeremy Foti, another non-attorney,
were responsible for Brookstone/Advantis financial matters.  Damian Kutzner and
Jeremy Foti supervised the individuals primarily responsible for customer contact—the
'Civil Litigation Representatives' (CLRs) and 'Banking Specialists.'" (FTC Mot. USF
¶ 249.)  Foti attempts to create a disputed fact as to his control over Brookstone and
Advantis matters on the basis that others also had control, but participation or control by
others does not preclude Foti's participation or control.  Foti can also simultaneously
have control over the Corporate Defendants' operations and, in fact, Foti directly
participated in the Corporate Defendants' conduct.  (*See, e.g.*, FTC Mot. USF ¶¶ 248–
50.)

As to Defendant Marshall, he joined the scheme as part of Advantis, seeking to
transfer clients from Brookstone to Advantis.  (FTC Mot. USF ¶ 303.)  Marshall sent
letters to Brookstone clients informing them that their cases were being transferred to
Marshall/Advantis.  (FTC Mot. USF ¶ 304.)  On numerous occasions, Marshall requested
that Kutzner and Foti begin fully marketing Advantis' mass joinder services urging them
to "fully open marketing," engage marketing "full-on," and "open up the marketing."

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|----------|---------------------------|------|-------------------|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

(FTC Mot. USF ¶ 305.)  Marshall scheduled a meeting with the Brookstone/Advantis sales people to go over the entire business, including sales scripts.  (FTC Mot. USF ¶ 309.)  And Marshall appeared in the *Wright v. Bank of America* litigation on behalf of all plaintiffs.  (FTC Mot. USF ¶¶ 310–11.)  Marshall told Foti and Kutzner that the *Wright* matter and his participation in it and any settlement was dependent on him "presenting well for Advantis."  (FTC Mot. USF ¶ 314.)  Marshall worked to ensure the *Wright* case "stay[ed] on track" due to its importance and told Foti he had "done all the right things to keep that baby alive."  (FTC Mot. USF ¶ 315.)

After Marshall's bar suspension concluded in 2016, Marshall deepened his involvement in Brookstone matters, telling Tarkowski that, pursuant to instructions from Foti and Kutzner, he would need "access to all the pleadings for recent Brookstone joinder cases that [Tarkowski] filed.  [Marshall] need[ed] to review and assess status of hearings, pleadings, next steps, etc."  (FTC Mot. USF ¶ 317.)[7]

Courts are authorized "to permanently enjoin defendants from violating the FTC Act if there is some cognizable danger of recurring violation."  *FTC v. Gill*, 71 F. Supp. 2d 1030, 1047.  "As demonstrated by the frequency of the misrepresentations . . . , defendants have exhibited a pattern of misrepresentations which convinces this Court that violations of the [MARS Rule] and of the FTC Act were systematic."  *See Gill*, 71 F. Supp. 2d at 1047.  "As to the possibility of recurrence," defendant Marshall continues to be able to practice law, such that it is possible that he could engage in similar conduct in the future.  *See id.* at 1047–48; (FTC Mot. USF ¶ 317 (showing that Marshall's "bar suspension concluded in 2016")).  As to Foti, his involvement in the Corporate Defendants' scheme was so extensive, and the Corporate Defendants made so many misrepresentations to consumers, that in considering the undisputed facts, there is a likelihood that Marshall will engage in similar conduct in the future.  Thus, there is a

---

[7] Marshall attempts to establish that the facts as to his involvement with the Corporate Defendants' scheme are in dispute based on his declaration, but "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *See Publ'g Clearing House, Inc.*, 104 F.3d at 1171; *see also Dizon v. Asiana Airlines, Inc.*, No. 16-01376-BRO (MRWx), 2017 WL 1498187, at *3 (March 6, 2017).  The Court therefore concludes that Defendant Marshall has not established any disputed facts with respect to this issue.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 16-00999-BRO (AFMx)** | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

likelihood of recurring violations, such that a permanent injunction against Defendants Foti and Marshall is warranted. *See id.* at 1047–48.

### 2. Foti and Marshall Are Monetarily Liable Because Each Held the Requisite Knowledge

"The FTC may establish knowledge by showing that the individual defendant had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Network Servs. Depot, Inc.*, 617 F.3d at 1138–39 (internal quotation marks omitted). "The FTC is not required to show that the defendant actually intended to defraud consumers." *Id.* at 1139. "The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability." *FTC v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999).

The undisputed facts establish that Defendants Marshall and Foti had the requisite knowledge because of their extensive involvement in the fraudulent scheme. *See id.* Foti was involved in the drafting of at least some of the language for the various mailers, arranging for the mailers to be sent to consumers, providing input on the content of scripts, distributing scripts to the sales people, monitoring sales to consumers to determine bonus figures, and receiving and responding to consumer complaints. (*See, e.g.*, FTC Mot. USF ¶¶ 216, 231, 260, 264–65, 269, 280, 286.)

Defendant Marshall appeared in the *Wright* case and, after his bar suspension ended in late February 2016, he provided legal assistance on other Brookstone matters. (FTC Mot. USF ¶¶ 310–11, 317.) Further, Marshall also guided the sales staff on how to interact with current and potential clients, and directed Kutzner and Foti to issue marketing for Advantis. (FTC Mot. USF ¶¶ 305, 309.) Marshall was aware that Torchia and Brookstone were facing bar discipline related to the mass joinder practice. (FTC Mot. USF ¶ 321.) Notwithstanding Marshall's knowledge of Torchia's California State Bar disciplinary issues related to Brookstone's mass joinder cases, Marshall did no systematic analysis of the Brookstone mass joinder cases, undertook no investigation and did not research the bar complaints against Torchia at "any kind of level of detail." (FTC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | **SA CV 16-00999-BRO (AFMx)** | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

Mot. USF ¶ 322.)  Marshall was also aware of Kuztner's history, including that ULG had been shut down by criminal law enforcement.  (FTC Mot. USF ¶ 323.)

Defendant Foti argues that he believed the Corporate Defendants' representations to be true, that he had not done due diligence, and that he acted on the advice of counsel. (Foti Opp'n at 28–29.)  However, Defendant Foti's arguments should be rejected, because none of Foti's arguments serve as a defense to the knowledge standard.  *See Publ'g Clearing House*, 104 F.3d at 1171 (intent to defraud not required); *Affordable Media*, 179 F.3d at 1235 (defendants' claim to have done due diligence regarding truth of claims does not defeat "knowledge"); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1202 (9th Cir. 2006) ("[R]eliance on advice of counsel [is] not a valid defense on the question of knowledge . . . .").

Thus, the undisputed facts establish that both Defendants Foti and Marshall are monetarily liable because each held the requisite knowledge.  *See Affordable Media*, 179 F.3d at 1235 ("The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability.").

### 3.    Foti and Marshall Are Liable for the Full Amount Paid by Consumers

"[T]he Ninth Circuit has held that the power to grant any ancillary relief necessary to accomplish complete justice necessarily includes the power to order restitution."  *Gill*, 71 F. Supp. 2d at 1048.  The FTC does not need to show reliance by each consumer: "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [Section 13(b)]."  *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993).[8]

The proper amount for restitution is the amount that the "defendant has unjustly received."  *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016).  To

---

[8] Additionally, summary judgment is appropriate even if Defendants Foti and Marshall presented some satisfied consumers because "the existence of some satisfied customers does not constitute a defense under the FTCA."  *See Stefanchik*, 559 F.3d at 929 n.12 (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989)).

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL. | | |

calculate the restitution awards, courts employ a two-step burden-shifting framework. *Id.* at 603. "Under the first step, the FTC bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains, since the purpose of such an award is 'to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction.'" *Id.* "Unjust gains in a case like this one are measured by the defendant's net revenues (typically the amount consumers paid for the product or service minus refunds and chargebacks), not by the defendant's net profits." *Id.*

"If the FTC makes the required threshold showing, the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains." *Id.* at 604. "Any risk of uncertainty at this second step 'fall[s] on the wrongdoer whose illegal conduct created the uncertainty.'" *Id.*

Here, "[t]he FTC carried its initial burden at step one." *See id.* The FTC presented undisputed evidence that that the Corporate Defendants received $18,146,866.34 in net revenues, taking into account refunds, chargebacks, and transfers among the Corporate Defendants' bank accounts. *See id.*; (FTC Mot. USF ¶ 213). The FTC having proved that all of the $18,146,866.34 represented presumptively unjust gains, the burden shifted to Defendants Foti and Marshall to show that the FTC's figure overstated the Corporate Defendants' restitution obligations. *See Commerce Planet, Inc.*, 815 F.3d at 604. The Court does not find that Foti or Marshall have met their burden discounting the FTC's calculation. (*See* FTC Mot. USF ¶ 213.) Defendant Foti attempted to meet his burden by attaching an excel sheet containing various data. (*See* Dkt. No. 287-4 ¶ 2(mm).) However, Defendant Foti did not proffer any information explaining what the excel sheet contains or that the document accounts for all of the Corporate Defendants' revenue. (*See* Dkt. No. 287-4 ¶ 2 (mm).) The evidence that Defendant Foti puts forth "sheds no light on what portion of the . . . net revenues represents unjust gains." *See Commerce Planet, Inc.*, 815 F.3d at 604. Thus, Defendants Marshall and Foti are liable for the full amount paid by consumers.[9]

---

[9] During the hearing, Foti explained that the excel document contains information demonstrating that the amount clients paid to Brookstone totaled approximately $11 million. However, Defendant Foti has not

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 16-00999-BRO (AFMx) | Date | September 5, 2017 |
|---|---|---|---|
| Title | **FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER, ET AL.** | | |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment against Defendants Jeremy Foti and Charles Marshall is **GRANTED**.

Defendant Jeremy Foti's Motion for Summary Judgment or, in the alternative, Motion for Summary Adjudication is **DENIED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |

---

proffered evidence supporting that this calculation includes all of the Corporate Defendants' revenue. Thus, the Court adopts the FTC's calculation as it is supported by the undisputed evidence.