JULIAN BACH, Ca Bar No. 162421
LAW OFFICE OF JULIAN BACH
7911 Warner Avenue
Huntington Beach, California 92647
Telephone: (714) 848-5085
Facsimile: (714) 848-5086

Attorney for Interested Party,
NEIL R ANENBERG and CAROL A ANENBERG, Trustees
of the Neil R Anenberg and Carol A Anenberg Family Trust
dated August 27, 1984

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>DAMIAN KUTZNER, individually and as an office of BROOKSTONE LAW P.C. (California), BROOKSTONE LAW P.C. (Nevada), ADVANTIS LAW P.C., and ADVANTIS LAW GROUP P.C.; VITO TORCHIA, JR., individually and as an office of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada); JONATHAN TARKOWSKI, individually and as an officer of BROOKSTONE LAW P.C. (California) and BROOKSTONE LAW P.C. (Nevada), et al,<br><br>    Defendants. | Case No. 8:16-cv-00999-DOC (AFMx)<br><br>**RESPONSE IN SUPPORT OF RECEIVER'S MOTION FOR ORDER AUTHORIZING SALE OF NEWPORT BEACH REAL PROPERTY**<br><br>Date:     December 7, 2017<br>Time:    8:30 a.m.<br>Place:    Courtroom 9D, 9th Floor<br>            U.S. District Court<br>            411 West Fourth Street<br>            Santa Ana, CA |

1

## I. INTRODUCTION.

Interested Party NEIL R ANENBERG along with his wife CAROL A ANENBERG, through their Family Trust dated August 27, 1984 ("ANENBERG"), is the current holder of a third trust deed secured by the residential real property located at 300 Morning Star Lane, Newport Beach, California 92660 (the "Morning Star Property"), based upon a $475,000.00 loan arranged by VAL-CHRIS INVESTMENTS, INC. ("VAL-CHRIS") to borrower Time Out Management Ltd., LLC, a Wyoming Limited Liability Company ("Time Out") and funded by the ANENBERG Family Trust with funds earned and saved by ANENBERG for retirement. *See* Declaration of Neil R Anenberg ("Anenberg Decl.") ¶ 4-5.

ANENBERG's loan was funded in good faith, without any knowledge of the alleged wrongdoings adjudicated in this proceeding in favor of the Plaintiff FEDERAL TRADE COMMISSION (the "FTC"), and in reliance upon the expected stream of payments required to be made under the subject Note and Deed of Trust by Time Out as the borrower. (Anenberg Decl., ¶5).

On May 31, 2016, the FTC commenced this proceeding against multiple Defendants, including Defendant JEREMY FOTI ("FOTI"), who is the Manager of Time Out. On November 15, 2016, on *ex parte* application of the FTC and without any notice to ANENBERG, this Court entered a Preliminary Injunction With Appointment of Receiver as to Defendant FOTI (Dkt. # 153), which, among other things, covers, extends to and incorporates therein as part of the Receivership Estate the Morning Star Property and puts a stay on all creditors from enforcing any claim, right or interest in the Morning Star Property leave from this Court. (Anenberg Decl., Exhibit D, pages 31 and 34).[1]

---

[1] In May 2017, ANENBERG sought relief from the Court's Preliminary Injunction on the grounds that Time Out has not been making payments on the loans secured against the Morning Star Property, along with the real property taxes that have and continue to come due. (Dkt. # 240). In support of this Response, ANENBERG re-submits herewith his Declaration filed on May 16, 2017. ANENBERG's Motion For Relief From the Court's Preliminary Injunction was denied by the Court

2

Defendant FOTI and his family has and continues to reside in the Morning Star Property throughout the pendency of this proceeding. Since the issuance of this Court's injunction, however, Time Out has been and remains in *significant* payment default with its obligations under the subject Note and Deed of Trust, as well as being in default with payment obligations due and owing under the First Trust Deed and Second Trust Deed held by Chase, along with property taxes and other liens that have been recorded against the Morning Star Property. Simply stated, while Defendant FOTI and his family are enjoying the continued use of the luxury property, no payments are being made on the mounting debts secured against the Morning Star Property.

On September 5, 2017, this Court granted the FTC's Motion For Summary Judgment against, among others, Defendant FOTI. (Dkt. #353). Further, on September 21, 2017, final judgment was entered by this Court in favor of the FTC and against Defendant FOTI. (Dkt. #360).

As is set forth in the Receiver's Motion and more fully analyzed herein below, the secured debt continues to increase and accumulate daily since no loan payments are being made to any of the secured lienholders, leaving little room for error or continued delay with respect to ANENBERG's third trust deed and leaving little room (if any) for recovery of restitution net proceeds from the sale of the Morning Star Property.

## II. THE SALE OF THE MORNING STAR PROPERTY SHOULD GO FORWARD FORTHWITH.

The matter having now been adjudicated in favor of the FTC, cause certainly exists for this Court to allow for the sale of the Morning Star Property. The equity picture for the Morning Star Property at this point is dire and slim, with little prospect for recovery of restitution funds after payoff to the secured lienholders, real property taxes, and costs of sale for to assist in the creation of a restitution fund. If ANENBERG is going to continue to be delayed and enjoined

---

without prejudice by Order dated June 19, 2017, with the Court at that time finding that "the public interest in ensuring that consumers receive the maximum possible restitution" outweighing the Anenberg's interest. (Dkt. #264, pages 9-11).

3

from exercising his remedy of foreclosure, then ANENBERG supports the Receiver's Motion and requests that the Receiver be granted the authority to retain the necessary professional(s) to market and sell the Morning Star Property forthwith without further delay. <u>Further, to ensure prompt and full cooperation and in order to maximize the value of the Morning Star Property, ANENBERG asserts that included as part of this Court's Order should be enough authority given to the Receiver and his real estate professional(s) to obtain complete and unfettered access to the Morning Star Property, along with the ability to gain sole possession of the Morning Star Property should FOTI and his family refuse to cooperate with the sale efforts.</u>

### A. Time Out Is Now In Significant Payment Default on the ANENBERG Trust Deed As Well as The First Trust Deed, The Second Trust Deed, and Property Taxes.

Pursuant to the terms of the subject loan documents, Time Out was to tender interest only payments to ANENBERG in the amount of $4,947.92 per month, commencing March 15, 2016 and each month thereafter, at an interest rate more fully set forth therein. Pursuant to the terms of the subject loan documents, the subject loan is to mature on February 15, 2019. Time Out is now in *significant* payment default under the terms of the loan, with an updated total now due and owing to ANENBERG in the amount of $612,148.93 with no payments made since June 2016. Further, Time Out is in default with payments due and owing on the first trust deed and second trust deed held by Chase, with increasing balances due and owing on those trust deeds as of February 2017 in the respective amounts of $3,224,607.68 and $1,023,460.90, on September 30, 2016, a Special Tax Lien was recorded against the subject property in the amount of $110,963.32, and based upon the records of the Orange County Tax Assessor, real property taxes are in default and due and owing since 2016 in the total amount of $67,721.52.

Considering the available information, and using the Receiver's valuation of $6,000,000.00, and based upon the payment defaults and accumulating debt secured against the subject property, there appears to be little equity in the Morning Star Property, calculated as follows:

|  | **Name of Holder** | **Amount Owed** |
|---|---|---|
| Taxes: | County of Orange | $ 67,721.52 |
| 1st Deed of Trust: | Chase | $ 3,297,000.00 |
| 2nd Deed of Trust | Chase | $ 1,023,460.90 |
| 3rd Deed of Trust: | Anenberg | $ 612,148.93 |
| Other: Special Tax Lien | GSFA Community | $ 110,963.32 |
| TOTAL DEBT: |  | $ 5,111,294.67 |
| Less: Costs of Sale (8% of asserted value) |  | $ 480,000.00 |
| Possible Equity |  | $ <u>408,705.33</u> (7%) |

Simply put, if the Receiver is going to net anything from the sale of the Morning Star Property for the benefit of a consumer restitution fund, the sale needs to be accomplished as soon as possible since the unpaid secured obligations and tax liens continue to increase while unpaid.

### B. Alternatively, ANENBERG As A Bona Fide Good Faith Encumbrancer Without Knowledge or Participation In Any Of The Alleged Wrongdoing and Thus Should Be Allowed To Proceed With His Remedy Of Foreclosure Available Under California Law.

In the alternative, should it be determined by the Receiver and/or the Court that there is not sufficient equity in the Morning Star Property to liquidate for the benefit of victims, ANENBERG, who funded his loan secured by a third trust deed in good faith, with hard earned funds intended for his family's retirement years, without any knowledge or participation of the wrongdoings adjudicated in this proceeding, <u>should be allowed to proceed forthwith with his legal remedy available under California law to foreclose under the power of sale conferred in the Deed of Trust</u>. Under California law, if a borrower defaults on the loan and the deed of trust contains a power of sale clause, the lender can non-judicially foreclose. *McDonald v. Smoke Creek Live Stock Co.*, (1930) 209 Cal. 231. Here, as noted herein above, Time Out is now in significant payment default under the terms of the ANENBERG loan, with no payments made since June 2016. He too should not become an additional victim of the wrongdoings successfully adjudicated by the FTC in this proceeding.

### III.     CONCLUSION.

For the reasons stated above, the Receiver's Motion should be granted forthwith with the Receiver given the necessary authority to retain the necessary professional(s) to market and sell the Morning Star Property forthwith without further delay. Further, to ensure prompt and full cooperation and in order to maximize the value of the Morning Star Property, enough authority should be given to the Receiver and his real estate professional(s) to obtain complete and unfettered access to the Morning Star Property, along with the ability to gain sole possession of the Morning Star Property should FOTI and his family refuse to cooperate with the sale efforts.

Alternatively, if the Receiver and his real estate professionals determine that the Morning Star Property cannot be sold for an amount sufficient to pay off the debt secured against the property, then ANENBERG should be allowed to proceed with his legal remedy of foreclosure as provided for under California law.

Dated: November 16, 2017

Respectfully submitted,
LAW OFFICE OF JULIAN BACH

By: _____
JULIAN BACH
Attorney Interested Party,
NEIL R ANENBERG and CAROL A ANENBERG, Trustees of the Neil R Anenberg and Carol A Anenberg Family Trust dated August 27, 1984

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/EMC users.

/s/ Julian Bach
Julian Bach