# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)          Date: December 18, 2017

Title: FEDERAL TRADE COMMISSION V. DAMIAN KUTZNER ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT [368]; DENYING MOTION TO STAY PENDING APPEAL [372]; AND GRANTING MOTION FOR ORDER TO AUTHORIZE SALE OF NEWPORT BEACH REAL PROPERTY AND FOUR PIECES OF JEWELRY [370]**

       Before the Court are three motions: (1) Defendant Jeremy Foti's ("Foti") Motion for Relief From Judgment ("Relief Mot.") (Dkt. 368); (2) Foti's Motion to Stay Pending Appeal ("Stay Mot.") (Dkt. 372); and (3) the court-appointed Receiver of the Receivership Estate of Jeremy Foti: Thomas W. McNamara's ("Receiver") Motion for Order to Authorize Sale of Newport Beach Real Property and Four Pieces of Jewelry ("Sale Mot.") (Dkt. 370). The Court held a hearing on these motions on December 7, 2017. Having reviewed the moving papers and relevant portions of the record, considered the parties' arguments, and heard oral argument, the Court DENIES Foti's Motion for Relief from Judgment; DENIES Defendant's Motion for a Stay Pending Appeal; and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 2 |

GRANTS the Receiver's Motion for Order to Authorize Sale of Newport Beach Real Property and Four Pieces of Jewelry.

## I. Background

This case arises from an alleged fraudulent scheme to defraud consumers out of thousands of dollars in upfront and recurring monthly fees in violation of section 5 of the Federal Trade Commission Act and in violation of the Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. 1015. Summary Judgment Order (Dkt. 353) at 2–4. Specifically, Plaintiff Federal Trade Commission ("FTC") claims that the "Individual Defendants"—Damian Kutzner, Vito Torchia, Jr., Jonathan Tarkowski, R. Geoffrey Broderick, Charles Marshall, and Jeremy Foti—operating through "Corporate Defendants"—law firms Brookstone Law P.C. (California), doing business as Brookstone Law Group, Brookstone Law P.C. (Nevada), Advantis Law P.C., and Advantis Law Group P.C.—convinced consumers that if added to a "mass joinder" case against their lender, they could expect a significant recovery, typically at least $75,000. *Id.* The FTC also claims that the Individual Defendants, despite their representations otherwise, have never won a mass joinder case, do not have the experience or resources to litigate one, and never sued on behalf of many paying consumers. *Id.* The purported scheme allegedly began with Kutzner's ULG, a law firm offering advance fee loan modifications. *Id.* But after the FBI and the U.S. Postal Inspectors raided ULG due to claims that its two primary attorneys committed mortgage modification fraud, Kutzner, along with Torchia and Foti, set out to market mass joinder litigation through Brookstone. *Id.*

To market the mass joinder litigation, the Individual Defendants allegedly sent a substantial amount of form mailers to the public, which included the following statements: "you may be a potential plaintiff against your lender"; "our team of experienced lawyers offers you a superior alternative for recovery"; and "[i]t may be necessary to litigate your claims against your lender to get the help you need and our lawyers know how to do so." *Id.* The mailers also included statements that consumers had "a very strong case" and that prevailing in the litigation was "basically a done deal." *Id.* In order to participate in the mass joinder litigation, the Individual Defendants would require consumers to pay upfront fees, including a large initial fee and subsequent monthly fees. *Id.* According to the FTC, the Individual Defendants failed to keep these fees in client trust accounts, and the mailers and fee agreements failed to include disclosures required by law. *Id.* The FTC asserts the Individual Defendants failed to provide the promised services, as many consumers were never added to a mass joinder case and the attorneys working for Brookstone and Advantis did not have sufficient experience to competently litigate the mass joinders. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0999-DOC (AFMx)                                                  Date: December 18, 2017
                                                                                                                                                 Page 3

      The FTC reached resolutions with several Individual Defendants, but not with Marshall or Foti. *Id.*

      On August 24, 2016, the Court entered a preliminary injunction, asset freeze, and appointment of receiver against Foti based on good cause to believe that Foti violated and was likely to continue to violate the Federal Trade Commission Act through false representations regarding mortgage relief for consumers. First Foti Preliminary Injunction (Dkt. 110). On November 15, 2016, the Court expanded the receivership based on findings Foti was likely to conceal and dissipate assets, and appointed Thomas McNamara as Receiver ("Receiver") of the Receivership Estate of Jeremy Foti by Preliminary Injunction. Second Foti Preliminary Injunction (Dkt. 153). The Receivership Estate includes Foti's residence in Newport Beach ("Newport Beach Real Property") (held in the name of Time Out Management Ltd. LLC, which is included in the Receivership Entity), a Boucheron diamond necklace, a women's black Chanel watch, a women's white Chanel watch, and a men's Rolex watch. *Id.* On February 13, 2017, the Receiver sought authorization to sell the Newport Beach Real Property or in the alternative, the jewelry. Motion for Sale (Dkt. 187). On March 10, 2017, Judge O'Connell denied the motion, holding that a sale was inappropriate before a determination of liability. Order Denying Motion for Sale (Dkt. 202).

      On July 10, 2017, the FTC moved for summary judgment against Foti and Marshall, and Foti moved for summary judgment against the FTC. *See* MSJ Order at 4. On September 5, 2017, Judge O'Connell granted summary judgment in favor of the FTC and against Foti and Marshall, and denied Foti's motion for summary judgment, holding as follows. *Id.* at 1. First, the Corporate Defendants formed a common enterprise. *Id.* at 9–10. By making numerous false and/or misleading material statements to consumers, the Corporate Defendants violated the Federal Trade Commission Act, which prohibits deceptive acts or practices in or affecting commerce and imposes injunctive and equitable liability upon the perpetrator. *Id.* at 10–13. The Corporate Defendants violated the Mortgage Assistance Relief Services or "MARS" Rule, which prohibits unfair or deceptive acts or practices with respect to mortgage loans, by (1) failing to make legally required disclosures; (2) taking advance fees in violation of the MARS Rule; and (3) making misrepresentations regarding material aspects of their services. *Id.* at 13–15. The Attorney exception does not apply to the Corporate Defendants. *Id.* at 16–17. Injunctive Relief against Foti and Marshall for the Corporate Defendant's conduct is proper because they participated directly in the acts at issue. *Id.* at 15–21. A permanent injunction is appropriate because, "[a]s demonstrated by the frequency of the misrepresentations . . . defendants have exhibited a pattern of misrepresentations which convinces this Court that violations of the [MARS Rule] and of the FTC Act were systematic" and "there is a

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 4 |

likelihood of recurring violations, such that a permanent injunction against Defendants Foti and Marshall is warranted." *Id.* Foti and Marshall are monetarily liable to pay restitution in the full amount paid by consumers because each held the requisite knowledge because of their extensive involvement in the fraudulent scheme. *Id.* at 21–22. For example, Foti was involved in the drafting of at least some of the language for the various mailers, arranging for the mailers to be sent to consumers, providing input on the content of scripts, distributing scripts to the sales people, monitoring sales to consumers to determine bonus figures, and receiving and responding to consumer complaints. *Id.* The FTC presented undisputed evidence that the Corporate Defendants received $18,146,866.34 in net revenues and neither Marshall nor Foti met their burden to discount the calculation. *Id.* at 22–23. Thus, Marshall and Foti are liable for the full amount paid. *Id.*

On September 8, 2017, Judge O'Connell entered final judgment for permanent injunction and other equitable relief against the Corporate Defendants and ordered judgment in the amount of $18,146,866.34 against them in favor of the FTC. *See* Corporate Defendants Judgment (Dkt. 356).

On September 21, 2017, presiding Judge Phillips entered Final Judgment ("Final Judgment") for permanent injunction and other equitable relief against Marshall and Foti and ordered judgment in the amount of $18,146,866.34 against them in favor of the FTC. Final Judgment (Dkt. 360). The permanent injunction banned Marshall and Foti from work involving debt relief products and services and included various compliance, recordkeeping, and monitoring requirements. *See generally id.*

## II. Procedural History

On September 25, 2017, Foti filed a Notice of Appeal ("Notice of Appeal") (Dkt. 361) from the Final Judgment. Foti's appeal of this case is currently pending before the Ninth Circuit. *See* Case No. 17-56455.

On October 30, 2017, Foti filed the instant Relief Motion. On November 6, 2017, the FTC opposed ("Relief Opp'n") (Dkt. 371) and on November 22, 2017, Foti replied ("Relief Reply") (Dkt. 384). On December 6, 2017, Foti filed a supplement containing a copy of the Certificate of Death for Judge O'Connell ("Relief Suppl.") (Dkt. 387).

On November 2, 2017, the Receiver filed the instant Sale Motion. On November 16, 2017, the FTC filed a response in support ("FTC Sale Support") (Dkt. 380). On the same day, Interested Party Neil Anenberg along with his wife Carol Anenberg, whose family trust is the third trust deed secured by the Newport Beach Real Property

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 5 |

("Anenbergs"), also filed a response in support ("Anenberg Sale Support") (Dkt. 377). On the same day, Foti opposed ("Sale Opp'n") (Dkt. 381). On November 22, 2017, the Receiver replied ("Sale Reply") (Dkt. 382). On December 5, 2017, the Receiver filed a supplement containing a recent appraisal of the Newport Beach Real Property ("Receiver Sale Suppl.") (Dkt. 385).

On November 6, 2017, Foti filed the instant Stay Motion. On November 16, 2017, the FTC opposed ("FTC Stay Opp'n") (Dkt. 379) and the Anenbergs opposed ("Anenberg Stay Opp'n") (Dkt. 378). On November 22, 2017, Foti replied ("Stay Reply") (Dkt. 383). On December 6, 2017, Foti filed a supplement containing a recent appraisal of the Newport Beach Real Property ("Stay Suppl.") (Dkt. 386).

On November 7, 2017, this case was reassigned to this Judge for further proceedings. *See* Notice of Reassignment (Dkt. 373).

### III. Legal Standard

#### A. FRCP 60(b)(4)–(6) Motion for Relief From Final Judgment

Under Federal Rule of Civil Procedure 60(b)(4)–(6), the Court may relieve a party from a final judgment, order or proceeding for the following reasons:

> (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

*See* Fed. R. Civ. P. 60(b)(4)–(6); *School Dist. No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)).

> A final judgment is "void" for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law . . . . "A judgment is not void merely because it is erroneous."

*United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999) (citations omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0999-DOC (AFMx)                          Date: December 18, 2017
                                                                                                                Page 6

### B.      FRCP 62.1 Indicative Ruling on a Motion for Relief

Once "a notice of appeal is filed, the district court loses jurisdiction" over the matters being appealed. *U.S. v. Sadler*, 480 F.3d 932, 941 (9th Cir. 2007) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")). Therefore, the procedure for filing a motion for relief before the district court while a case is on appeal is "to ask the district court whether it wishes to entertain the motion, or to grant it, and then move [the Ninth Circuit], if appropriate, for remand of the case." *Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir. 1984). Federal Rule of Civil Procedure 62.1 sets out the standard for a motion seeking an indicative ruling on a motion for relief: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," a court has three options: it may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1.

### C.      FRCP 62 Motion to Stay Permanent Injunction and Monetary Judgment Pending Appeal

The Supreme Court has held that a court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal citations omitted). Instead, a stay is "an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal citations and quotations omitted).

While an appeal is pending, the district court can stay an injunction under Rule 62(c): "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c).

To obtain a stay of a monetary judgment during an appeal, a party must post a supersedeas bond or obtain relief from that requirement under Rule 62(d). "If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 7 of 20 Page ID #:13657

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0999-DOC (AFMx)                                                   Date: December 18, 2017
                                                                                                                                 Page 7

The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). "If a judgment includes both a money award and the grant or denial of an injunction, a supersedeas stays the money award but not that part of the judgment that deals with injunctive relief." Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2905 (3d ed.). Courts have held that a supersedeas bond is required to stay monetary awards of equitable restitution in cases involving FTC orders. *See, e.g.*, *Fed. Trade Comm'n v. Neovi, Inc.*, No. 06-CV-1952 JLS (JMA), 2009 WL 10672945, at *2 (S.D. Cal. May 18, 2009); *F.T.C. v. Publ'g Clearing House, Inc.*, No. CV-S-94-623-PMP(LRL), 1995 WL 792074, at *1 (D. Nev. July 13, 1995); *F.T.C. v. Publ'g Clearing House, Inc.*, No. CV-S-94-623-PMP (LRL, 1995 WL 367901, at *1 (D. Nev. May 12, 1995), *aff'd*, 104 F.3d 1168 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

     A court has discretion to waive the supersedeas bond requirement. *Rachel*, 831 F.2d at 1505 n.1. Before doing so, a court should consider the purpose of requiring a bond, which is "to ensure that the judgment creditor's interests are adequately protected during the appeals process." *StrikePoint Trading, LLC v. Sabolyk*, No. SA CV 07-1073-DOC (MLGx), 2012 WL 12973175, at *2 (C.D. Cal. Jan. 10, 2012) (quoting *FTC v. Inc21.com Corp.*, No. C 10–00022 WHA, 2010 WL 4071664, at *7 (N.D. Cal. Oct. 18, 2010)). The judgment debtor must "objectively demonstrate" why the Court should "depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment." *Id.* (quoting *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

     When determining whether to grant a stay pending appeal, a district court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The party requesting a stay bears the burden of showing that the circumstances justify [granting a stay]." *Id.* at 433–34. "The first two factors of the traditional standard are the most critical" and "more than a mere 'possibility' of relief is required." *Id.* at 434 (internal citations omitted). Similarly, a simple "possibility" of irreparable injury is insufficient. *Id.* at 434–35.

     However, courts take a "flexible approach" to these factors and use a "sliding scale," meaning that the factors are "balanced" so that "a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964–66 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 8 of 20 Page ID #:13658

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)            Date: December 18, 2017
Page 8

1131 (9th Cir. 2011)). Under this sliding scale approach, a moving party who cannot show a strong likelihood of success on the merits may still be entitled to a stay where she shows that her appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." *Leiva–Perez*, 640 F.3d at 971. "A party satisfying this lower threshold under the first *Nken* factor is not required to show that it is more likely than not to win on the merits, but must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor." *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 1798926, at *2 (N.D. Cal. Apr. 17, 2015) (internal citations and emphasis omitted).

### D. Motion for Order to Sell Property Under Receivership

"[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *S.E.C. v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 (1998) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir.1978)). A court of equity with custody and control of property has the power to order a sale of the property. *Id.* (citing Clark on Receivers § 482 (3d ed. 1992)).

The sale of real property is governed by 28 U.S.C. § 2001, and the sale of personal property is also governed by 28 U.S.C. § 2001 unless the court orders otherwise. *See* 28 U.S.C. § 2001 (addressing the sale of real property and setting forth procedures for sale); 28 U.S.C. § 2004 (providing that personal property "shall be sold in accordance with section 2001 of this title, unless the court orders otherwise"). Under 28 U.S.C. § 2001, property must generally be sold by public sale at the courthouse where the receiver was appointed, at the courthouse of the region where the property is located, or where the Court directs on terms and conditions as the court directs. 28 U.S.C. § 2001. Alternatively, after notice and a hearing, the Court may order the sale of real property at a private sale if doing so is in the best interest of the estate and sells for at least two-thirds of the appraised value as determined by three appraisers. *Id.* § 2001(b). "Authorization for private sales is intended to cure the defect in judicial sales where public sales would result in a sacrifice of the property. However, such sales are not encouraged and are closely scrutinized." 11 Fed. Proc., L. Ed. § 31:60 (Dec. 2017).

## IV. Discussion

### A. Motion for Relief From Judgment

Foti moves for relief from the Final Judgment and requests that the Court state either that it would grant the Relief Motion if the Ninth Circuit remands for that purpose

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 9 of 20 Page ID #:13659

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)                                                  Date: December 18, 2017

Page 9

or that the motion raises a substantial issue. *See* Relief Mot. at 13; Fed. R. Civ. P. 62.1. Foti raises two arguments in favor of relief. First, Foti argues that the Final Judgment is void pursuant to Federal Rule of Civil Procedure 63 because Judge Phillips did not certify familiarity with the record or determine that the case can be completed without prejudice to the parties. *See* Relief Mot. at 13; Fed. R. Civ. P. 63. Second, Foti argues that the circumstances and timing of Judge O'Connell's health issues and death raise questions about her ability to proceed when she was deciding the parties' summary judgment motions. *See* Relief Mot. at 17.

### 1. Rule 63 Certification

Foti argues that when Judge Phillips signed the Final Judgment one day after FTC submitted its proposed final judgment against Foti and Marshall, Judge Phillips failed to certify pursuant to Federal Rule of Civil Procedure 63 that she was familiar with the summary judgement record or that she had determined that the final judgment could be entered without prejudice to the parties, and that therefore the judgment is void. *See id.* at 15–17. Particularly, Foti argues that the Final Judgment signed by Judge Phillips includes injunctive relief (including a permanent ban on engaging in "debt relief services") that had not previously been ruled on by Judge O'Connell in her summary judgment minute order. *Id.* at 7.

The FTC raises the following arguments in response. First, if Foti believes Judge Phillips committed error, that allegation is for appeal, not a Motion for Relief. Relief Opp'n at 2–3. Second, Rule 63 does not apply to cases decided on summary judgment. *Id.* at 3–4. Third, Foti never opposed FTC's requested permanent injunctive relief after FTC submitted it in the summary judgment motion and other courts have entered nearly identical orders following summary judgment. *Id.* at 4–5.

Federal Rule of Civil Procedure 63 governs a judge's inability to proceed:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

Fed. R. Civ. P. 63. In general, a successor judge must make a Rule 63 certification when a "trial or hearing shall have commenced and thereafter at any stage of the proceedings

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 10 of 20 Page ID #:13660

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0999-DOC (AFMx)　　　　　　　　　　　　　　　　Date: December 18, 2017
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 10

the judge is unable to proceed." *Canseco v. United States*, 97 F.3d 1224, 1226 (9th Cir. 1996), *as amended* (Dec. 18, 1996). Rule 63 "applies only where the successor judge steps into the shoes of the original judge in order to finish something that the original judge had started." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 905–06 (9th Cir. 2001). "The epitome of this would be for 'the substitute judge to make a finding of fact at a bench trial based on evidence heard by a different judge.'" *Id.* (citing Fed. R. Civ. P. 63 advisory committee's note to 1991 amendment). "In a less extreme situation . . . a successor judge must make a Rule 63 certification before deciding a motion for a new trial following a judgment entered by the original judge after a bench trial." *Id.* (citing *Canseco*, 97 F.3d at 1225). The D.C. Circuit has held that Rule 63 applies to three post-trial motions: a motion for a new trial, a motion to amend the original judge's findings, and a motion to correct inadvertent omissions in the damages calculation. *Id.* (citing *Mergentime Corp. v. Wash. Metro. Area Transit Auth.*, 166 F.3d 1257, 1263 (D.C. Cir. 1999)). However, a Rule 63 certification is not required when "no material facts are in dispute and the successor judge rules as a matter of law." *Id.* For example, in *Patelco*, a district judge had passed away after a bench trial before making findings of fact. *Patelco*, 262 F.3d at 905–06. The Ninth Circuit held that because the successor judge treated the trial record as affidavits in support of summary judgment certification, the successor judge was not required to make a Rule 63 certification (even though the successor judge had in fact done so) because no credibility determinations are required. *Id.*

　　　　Foti argues that Judge Phillips was required to make a Rule 63 certification when she entered Final Judgment because the summary judgment "hearing" that Judge O'Connell had conducted was not yet complete at the time of entry of Final Judgment. Relief Mot. at 14. Specifically, Foti argues that because Judge O'Connell's summary judgment minute order found Foti liable and found that a permanent injunction was warranted, but did not specifically resolve what injunctive relief was appropriate, Judge Phillips was required to make a Rule 63 certification to resolve that issue and enter judgment. *Id.* Foti cites *Canseco* in support of this argument, in which the Ninth Circuit rejected the proposition that a successor judge was not required to make a Rule 63 certification in order to hear a motion for a new trial after the original judge had tried a case, made findings of fact, entered judgment, and then retired. *Id.* (citing *Canseco*, 97 F.3d at 1226). The Ninth Circuit found that Rule 63 is not limited to a case where the judge's inability to proceed manifests during a trial or hearing, but also includes an inability that manifests after trial. *Id.* (citing *Canseco*, 97 F.3d at 1226). However, the FTC distinguishes *Canseco*, arguing that Rule 63 only applies to hearings or trials where witnesses testify and a trier of fact weighs credibility. Relief Opp'n at 3; *see Patelco*, 262 F.3d at 905–06. Such credibility determinations did not occur in this case, because liability was resolved at summary judgment based on undisputed facts. Relief Opp'n at 3;

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 11 |

*see Patelco*, 262 F.3d at 905–06. FTC also points out that even where a successor judge takes over after an evidentiary hearing or trial has occurred, the Ninth Circuit specifically held in *Patelco* that Rule 63 does not apply if the successor judge does not need to make credibility findings to resolve the case. *Id.* (citing *Patelco*, 262 F.3d at 905–06 (holding that a successor judge is not required to make a Rule 63 certification where the successor judge treats the trial record as affidavits in support of summary judgment certification)). Foti attempts to distinguish *Patelco* on the basis that the Ninth Circuit there also found that the successor judge had made a Rule 63 certification. Relief Reply at 3 (citing *Patelco*, 262 F.3d at 906, n. 8). However, simply because the Ninth Circuit noted in *Patelco* that even though a certification was not required, the successor judge had actually made a Rule 63 certification "in any event," that does not mean that another successor judge is required to make a Rule 63 certification in a similar case. *See Patelco*, 262 F.3d at 906, n. 8.

Accordingly, the Ninth Circuit has made clear that a Rule 63 certification is not required when, as here, the successor judge is not required to make credibility determinations. *See Patelco*, 262 F.3d at 906. Here, as discussed above, Judge O'Connell ruled in the Summary Judgment Order that the undisputed facts establish that Defendants Foti and Marshall, through the acts of the Corporate Defendants, (1) violated the FTC Act as a matter of law by making material misrepresentations about the services that they provided to the consumers; (2) violated the MARS Rule as a matter of law by failing to make the proper disclosures while communicating with consumers, collecting improper fees before obtaining the promised result, and misrepresenting material aspects of the services; (3) are liable for permanent injunctive relief because they participated directly in the acts at issue and there is a likelihood of recurring violations; and (4) are monetarily liable to pay restitution in the full amount of $18,146,866.34 paid by consumers, because each Defendant held the requisite knowledge. *See generally* Summary Judgment Order. Because the original judge, Judge O'Connell, already determined that the undisputed facts establish that Foti is liable for a permanent injunction and restitution, the successor judge, Judge Phillips, was not required to make a Rule 63 certification to decide the scope of permanent injunctive relief. *See Patelco*, 262 F.3d at 906; *see also* Fed. R. Civ. P. 63 advisory committee's note to 1991 amendment (discussing at length the unavailability of a judge during or after bench and jury trials, without mentioning the unavailability of a judge during or after summary judgment or other pre-trial motions).[1]

---

[1] Foti also argues that the timing of the entry of judgment is significant to the Rule 63 issue because Judge O'Connell experienced a collapse on September 15, 2017, issued an Order on September 19, 2017 for the FTC to lodge a proposed judgment, and was in a coma as of September 21, 2017; and on September 21, 2017, Judge Phillips entered Final Judgment. Relief Mot. at 6. However, as discussed above, Rule 63 does not apply to the entry of judgment in this case.

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 12 of 20 Page ID #:13662

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)	Date: December 18, 2017
	Page 12

Accordingly, the Court DENIES Foti's Motion for Relief as to Judge Phillip's alleged failure to make a Rule 63 certification. *See* Fed. R. Civ. P. 60(b)(4)–(6).

### 2.     Judge's Competence

Next, Foti argues that there is uncertainty about whether Judge O'Connell was able to competently proceed with the case when she decided the summary judgment motions prior to her tragic death on October 8, 2017. Relief Mot. at 2, 17–20. Foti seeks discovery regarding the cause of Judge O'Connell's death and regarding her health during the summary judgment motions. *Id.* at 24. The FTC argues there is no basis for a fishing expedition into Judge O'Connell's health. Relief Opp'n at 5.

In *United States v. Washington*, the Ninth Circuit affirmed a district court's ruling not to overturn a judgment or grant discovery regarding the competence of a judge who had been diagnosed with Alzheimer's disease, but did not eliminate the possibility that such a motion could be granted in "extraordinary circumstances." *United States v. Washington*, 98 F.3d 1159, 1161 (9th Cir. 1996), *cert denied*, 522 U.S. 806 (1997); *see also United States v. Washington*, No. CV 9213, 2008 WL 6742751, at *3 (W.D. Wash. Sept. 2, 2008), *aff'd*, 593 F.3d 790 (9th Cir. 2010) (noting that a ruling otherwise would "open the floodgates to future challenges to judgments on grounds of judicial incompetence"). Some district courts have followed the position expressed in the concurring opinion in *United States v. Washington*, which maintained that a motion for relief on the basis of a judge's perceived mental incompetence is absolutely barred. *See, e.g.*, *Peterson v. United States*, No. 2:04-CV-962BSJ, 2006 WL 2252862, at *7 (D. Utah May 1, 2006), *aff'd*, 239 F. App'x 428 (10th Cir. 2007) ("Disability, mental or physical, is not one of the grounds enumerated in sections 144, 455 or any other statute; it is, therefore, not a proper basis for seeking a judge's recusal. The only recourse when a judge is believed to be disabled is to complain to the circuit judicial council." (citing 28 U.S.C. §§ 372(c)) (quoting *United States v. Washington*, 98 F.3d at 1161); *Inland Concrete Enterprises, Inc. v. Kraft*, 318 F.R.D. 383, 397 (C.D. Cal. 2016) (same).

Even if a motion to overturn a judgment based on a judge's perceived mental competence is not barred, Foti has not demonstrated that this is an "extraordinary circumstance" that justifies allowing such a motion to move forward. *See United States v. Washington*, 98 F.3d at 1161. Foti argues that because reports regarding Judge O'Connell's collapse and subsequent death indicate she suffered from a brain aneurysm, and medical literature and Foti's expert indicate that some patients with unruptured brain aneurysms experience cognitive impairments, there are questions as to whether Judge O'Connell's physical condition affected her rulings on the summary judgment motions. Relief Mot. at 2–3. Foti's proffered evidence and highly speculative inferences do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)　　　　　　　　　　　　　　Date: December 18, 2017
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 13

raise any concerns about Judge O'Connell's judicial competence that would justify relief. Accordingly, the Court DENIES Foti's Motion for Relief as to Judge O'Connell's resolution of the summary judgment motions. *See* Fed. R. Civ. P. 60(b)(4)–(6).

### B.      Motion for Stay Pending Appeal

#### 1.      Bond

Foti asks the Court to waive the bond requirement and to stay the money judgment for the following reasons. First, judgment creditors' interests are adequately protected because preliminary injunctions already in place ensure that the Newport Beach Real Property and Four Pieces of Jewelry cannot be transferred without the Court's permission. Stay Reply at 7–10. Second, there has been no showing that this property has lost or will lose value, and, third, he has no means to pay a bond. *Id.* Foti also argued at oral argument that increasing housing market values will increase the value of this property. A recent appraisal of the Property that Foti submitted indicates that the median price trend of the neighborhood is "stable." Foti Suppl. Appraisal (Dkt. 386-1) at 11. A recent appraisal of the Property that the Receiver submitted indicates that "the market for single family residence properties appear to be stable at this time." Receiver Suppl. Appraisal (Dkt. 385-1) at 2.

The FTC argues that Foti has made no showing of his financial condition and Judge O'Connell found his previous declarations dishonest. FTC Stay Opp'n at 9–12. Second, a stay will cost injured consumers hundreds of thousands of dollars because the Newport Beach Real Property will lose equity during the appeal—the house loses $21,000 in equity each month due to unpaid bills. *Id.* Foti offers nothing to balance this loss and proposes that he be permitted to live in his mansion, rent free, during appeal, at the expense of his victims. *Id.* The Anenbergs point out that the Newport Beach Real Property is in significant default and suggest any that stay should require a significant bond. Anenberg Opp'n at 3–4. Further, the Anenbergs argue that a stay will substantially injure them, and reduce the dwindling prospect that the Property can be sold for the benefit of a consumer restitution fund. *Id.*

The Court declines to exercise its discretion to waive the supersedeas bond requirement. *See Rachel*, 831 F.2d at 1505 n.1. The Court has considered the purpose of requiring a bond, which is "to ensure that the judgment creditor's interests are adequately protected during the appeals process." *See StrikePoint Trading, LLC*, 2012 WL 12973175, at *2. Foti has failed to "objectively demonstrate" why the Court should "depart from the usual requirement of a full security supersedeas bond" to stay a monetary judgment. *See id*. The Property is in ongoing default, with about $21,000 in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 14 |

unpaid bills each month, and there is uncertainty about whether the property will gain or lose equity during the appeal, considering the loss of equity due to unpaid bills and possible gains in market value, which is dependent on the housing market's future performance, and at the moment the market appears to be "stable." *See* Foti Suppl. Appraisal (Dkt. 386-1) at 11. Foti has failed to offer anything to protect the judgment creditors from harm during appeal. For these reasons, the Court DENIES Foti's request for a bond waiver.

### 2. Stay Factors

Next, the Court considers the four factors that bear on whether a stay should be granted. As to the first factor, likelihood of success, Foti argues that there is no doubt he will succeed on the merits of his appeal because Judge Phillips violated Federal Rule of Civil Procedure 63. Stay Mot. at 7; Stay Reply at 3. However, he has not shown a likelihood of success because this Court has denied his Motion for Relief on this ground. Moreover, Foti first raised the Rule 63 issue in his instant Relief Motion that he filed after his notice of appeal, so the Ninth Circuit may deny Foti's appeal as to that issue on procedural grounds. *See United States v. Mannis*, 186 F.3d 863, 864 (8th Cir. 1999) (per curiam) (denying an appeal based solely on Appellant's argument that he first raised in a Rule 60(b) motion filed with the district court after he filed the notice of appeal because "review of the argument underlying [the] Rule 60(b) motion is properly sought in an appeal from the order denying Rule 60(b) relief"). Foti also argues that the summary judgment order must be overturned on appeal because the Court disregarded or improperly weighed evidence presented by Foti that raised genuine issues of disputed material fact in deciding summary judgment. Stay Mot. at 4. On Reply, Foti also argues that the Court relied on inadmissible evidence, including irrelevant and improperly authenticated emails and marketing materials and an FTC expert report, over Foti's objections, and that the Court erroneously held that the MARS Rule applies to attorneys litigating for clients. Stay Reply at 3; Relief Reply at 4–7. Despite Foti's claims that Judge O'Connell failed to even consider the factual disputes that he raised, as the FTC details in its opposition, Judge O'Connell considered and rejected Foti's alleged factual disputes (as well as with his alleged evidentiary and legal errors), in a detailed twenty-four page Summary Judgment Order. Stay Opp'n at 8; Summary Judgment Order at 13 n.5, 23 n.9, 20 n.7. The Court is not persuaded that Foti has raised a real possibility of success in overturning the Summary Judgment Order. Accordingly, the likelihood of success factor weighs against a stay.

As to the second factor, irreparable harm, Foti argues that absent a stay the detailed permanent injunction requirements will hinder his ability to earn a living and cause hardships to his family that greatly outweigh any inconvenience to the FTC. Stay

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 15 |

Mot. at 9. The FTC argues as follows. First, nothing in the injunction prevents Foti from obtaining other work, such as seasonal retail work. FTC Stay Opp'n at 15. Next, even if Foti prevails on appeal, the house will be sold to recoup the debts on it he has stated he cannot pay. *Id.* Further, he is not entitled to live rent free while wasting assets that could be preserved for consumer victims. *Id.* Foti replies that he would not lose the Newport Beach Real Property if he prevails on appeal because he could negotiate a loan modification or obtain third party financing. Stay Reply at 5. He also claims that the Property and jewelry (which belonged to his wife) are unique and cannot be replaced if sold. *Id.* While the permanent injunction does not deny Foti the opportunity to work, it does prevent him from working in debt relief services. Further, the Property and jewelry are unique assets that could be difficult to recover if sold. Therefore, the absence of a stay would cause some harm to Foti and this factor weighs somewhat in favor of a stay.

As to the third factor, injury to other parties, Foti argues that there will be no injury to judgment creditors because the equity in the Newport Beach house available to customers has increased since the property was appraised and will only increase. Stay Mot. at 9; Stay Reply at 6–7. In August 2016, Foti estimated the house's value at $4.5 million. Sale Opp'n at 10 n.6. In January 2017, the Receiver had an appraisal completed which valued the house at $6 million. *Id.* An appraisal completed on December 1, 2017, submitted by the receiver, valued the house at $7.8 million, and an appraisal on the same date submitted by Foti valued it at $9.1 million. Foti Sale Suppl.; Receiver Sale Suppl. The FTC argues that given that Foti stole more than $18 million from consumers and that the Court found he is likely to engage in similar fraudulent behavior unless restrained, the injunctive relief must remain in place while the appeal is pending to monitor him. FTC Stay Opp'n at 16. The FTC also argues that consumers would lose hundreds of thousands of dollars in equity in the Property as a result of a stay because the house loses $21,000 in equity each month due to unpaid bills. *Id.* The Anenbergs argue that they will be substantially injured by a stay and that following a stay, there would be little prospect for recovery of significant restitution funds after payoff to the secured lienholders, property taxes, and costs of sale. Anenberg Stay Opp'n. at 2–4. Because of uncertainty about whether the Property will gain or lose equity during appeal, and because of the Court's finding that Foti has a likelihood of engaging in similar behavior unless restrained, the injury to other parties factor weighs against a stay.

As to the fourth factor, the public interest, Foti argues there is no likelihood that a stay would harm the public interest. Stay Mot. at 10. The FTC argues and the Court agrees that the public interest favors the injured customers. FTC Stay Opp'n at 15–16; *see FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---:|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 16 |

public interest should receive greater weight."). The public interest factor favors the injured customers and weighs against a stay.

Because the likelihood of success, injury to other parties, and the public interest factors weigh against a stay, and irreparable harm weighs somewhat in favor of a stay, the Court declines to exercise its discretion to stay the judgment. *See Nken*, 556 U.S. at 433 (2009). Accordingly, the Court DENIES Foti's Motion for a Stay pending appeal.

### C. Motion to Authorize Sale of Property Under Receivership

The Receiver Moves for an Order Authorizing the Sale of the Newport Beach Real Property and the Four Pieces of Jewelry. Sale Mot. at 1. According to the Receiver, the Newport Beach house is owned by receivership entity Time Out, and Foti and his family live in the house. *Id.* at 4. The house was appraised at $7.8 million and $9.1 million, and its liabilities have been estimated at $5.1 million. *Id.*; Receiver Sale Suppl. at 1; Foti Sale Suppl. at 1. Since July 2016, Foti has lived in the home and made none of the insurance, mortgage, or tax payments, which cost approximately $21,000 each month. Sale Mot. at 4. The accumulating interest, penalties, and monthly payments accrue against the receivership estate and reduce the assets available for recovery by victims of Foti's offenses. *Id.*

The Receiver asks the Court to authorize a sale of the house and jewelry and requests that the Court approve an alternative approach to selling them to maximize their value. *Id.* at 1, 3. The Receiver proposes to list the Newport Beach Real Property for private sale, waiving the "courthouse steps" sales procedures set out in 28 U.S.C. § 2001(a), so that the Receiver can maximize the sale price through the private sales method set out in 28 U.S.C. § 2001(b), which provides that after notice and a hearing, the Court may order the sale of real property at a private sale if doing so is in the best interest of the estate and it sells for at least two-thirds of the appraised value as determined by three appraisers. *Id.* at 1 n.2, 3. The Receiver proposes to engage a real estate broker who specializes in selling oceanfront homes in Newport Beach to sell the Real Property. *Id.* at 3. The Receiver proposes to sell the Jewelry items via auction houses that specialize in jewelry or via a local jeweler. *Id.*

The FTC and Anenbergs support the Receiver's Motion. *See* FTC Sale Support; Anenberg Sale Support. The Anenbergs argue that should Foti and his family refuse to cooperate with sale efforts, the Receiver should be given unfettered access to the Property and sole possession. Anenberg Sale Support at 2–5. The Anenbergs also argue that should the Receiver or the Court determine there is not sufficient equity to liquidate the Property for the victims, the Anenbergs, who funded a loan for the Property in good faith

without any knowledge of the wrongdoings in this case, should be allowed to proceed with a foreclosure. *Id.*

Foti opposes the Receiver's Motion as to the sale of the Newport Beach Real Property for four reasons. First, he argues the Judgment is void and unenforceable, as discussed above with regard to his other Motions. Sale Opp'n at 1, 4. Second, he argues that the Newport Beach Real Property is not in the custody or control of the Receiver, but is owed by Time Out Management Ltd. LLC, which is not a party to the action, has never been served with any papers in this action, and continues to own the Property. *Id.* at 4–7. Third, California law prohibits the sale of the Property to satisfy a judgment against a member of an LLC unless the LLC is a judgment debtor. *Id.* at 7–9. In response, the Receiver argues that the preliminary injunction made clear that Time Out and the Newport Beach Real Property were included in the Receivership Estate, which was defined to include "Time Out Management Ltd. LLC." Sale Reply at 3–5. And the Newport Beach Real Property is specifically listed as part of the Receivership Estate. *See Id.* Further, the Court was well within its broad equitable authority to include Time Out and the Property because Time Out is a nonparty over which Foti exercised total control. *Id.* The Receiver cites emails by Foti suggesting that Time Out was an asset protection maneuver designed to keep creditors at bay, that Foti has "100% decision-making ability" regarding Time Out, and that he has a "quick [sic] claim deed signing the property back over to [him]." *Id.* at 5.

Indeed, the Court has broad equitable powers to order appropriate relief in Federal Trade Commission enforcement cases. "The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." *S.E.C. v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980) (citations omitted). The authority of a district court under the Federal Trade Commission Act to issue permanent injunctions "includes the 'authority to grant any ancillary relief necessary to accomplish complete justice.'" *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (quoting *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982)).

In *Hickey*, the Ninth Circuit analyzed the inherent equitable power of a district court to effectuate relief granted in a securities fraud enforcement action. *S.E.C. v. Hickey*, 322 F.3d 1123, 1131–32 (9th Cir.), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003). The Ninth Circuit held that a district court properly froze the assets of a nonparty corporate entity—in order to effectuate its earlier orders—because the defendant had exercised "total and complete control" over the nonparty entity. *Id.* ("That [defendant] may have been clever enough to organize a completely separate, successful entity . . . does not put him beyond the reach

Case 8:16-cv-00999-DOC-AFM Document 391 Filed 12/18/17 Page 18 of 20 Page ID #:13668

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0999-DOC (AFMx)                      Date: December 18, 2017
                                                                                                                          Page 18

of a court's powers of disgorgement."). Even though *Hickey* involved the inherent equitable power of a district court to effectuate relief in a securities fraud enforcement action, it offers guidance to this Court's inherent equitable power to effectuate relief in this Federal Trade Commission enforcement action, which is also—like a securities fraud action—a federal agency action in the public interest. *See id.* at 1125, 1131; *S.E.C. v. Wencke*, 622 F.2d at 1371. In *Hickey*, the Ninth Circuit held that the district court, after having ordered the defendant to disgorge the proceeds of his illegal securities activities and having found him in contempt for failing to do so, "properly froze the [assets of a nonparty entity totally controlled by the defendant] *to effectuate relief already given*." *Hickey*, 322 F.3d at 1133. Here, as explained below, the Court's authorization for the Receiver to sell the assets of a nonparty controlled by the defendant is necessary to "effectuate relief already given." *See id.*

       The Court has already granted a receivership, asset freeze, and monetary relief of $18,146,866.34 in restitution against Foti. On August 24, 2016, the Court entered a preliminary injunction, asset freeze, and appointment of Receiver against Foti based on good cause to believe that Foti violated and was likely to continue to violate the Federal Trade Commission Act through false representations regarding mortgage relief for consumers. First Foti Preliminary Injunction (Dkt. 110). On November 15, 2016, the Court expanded the receivership based on findings that Foti was likely to conceal and dissipate assets. Second Foti Preliminary Injunction (Dkt. 153). The Court included in the Receivership Entity: "Time Out Management Ltd. LLC" and included in the Receivership Estate: "Foti's Residence in Newport Beach." *Id.* In September 2017, the Court found at summary judgment that Foti is monetarily liable to pay restitution of $18,146,866.34 for violating the Federal Trade Commission Act and MARS Rule, and the Court entered final judgment against Foti that included this monetary judgment. *See* Summary Judgment Order at 21–23; Final Judgment.

       Foti has total control over Time Out Management Ltd. LLC, which owns the Newport Beach Real Property. Foti described his complete control of Time Out Management Ltd. LLC in an email chain that the Receiver seized from the Corporate Defendants' office. Declaration of Edward Chang in support of FTC's Application for Preliminary Injunction (Dkt. 69-2) ¶¶ 3, 5. In that email chain, on June 5, 2012, at 3:09 p.m., Gil Mariscal wrote to Foti, "I was working on the Grant Deeds and the house in Newport is in the name of Time Out Ltd. Are you an officer of the corporation to sign away the rights as a gift?" *Id.*, Attachment 1 at 7–8. Foti responded six minutes later, "I have a quick claim deed signing the property back over to me. It is under a nominee corp right now that I have 100% decision making ability." *Id.* Because these emails show that Foti admitted that he exercises complete and total control over Time Out Management

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0999-DOC (AFMx)                               Date: December 18, 2017
                                                                                                     Page 19

Ltd. LLC (which owns the Newport Beach Real Property), and because a Court order authorizing the Receiver to sell the Newport Beach Report Real Property is necessary to effectuate the monetary relief that the Court already granted against Foti, an order authorizing the sale of the Newport Beach Real Property is within the Court's equitable authority and is appropriate. *See Hickey*, 322 F.3d at 1133.

      Fourth, Foti argues that the Receiver has failed to provide the Court with crucial information, including an updated appraisal of the Property, but the Receiver has since submitted an updated appraisal to the Court that values the Property at $7.8 million. Sale Opp'n at 10; Receiver Sale Suppl. at 1.

      As to the Receiver's request that the Court authorize a private sale of the Newport Beach Real Property and waive the "courthouse steps" sales procedures set out in 28 U.S.C. § 2001(a)), having considered the moving papers and heard from the Receiver and the parties at oral argument, the Court finds that a private sale according to the method set out in 28 U.S.C. § 2001(b) is in the best interest of the estate in order to maximize the sale price. *See* 28 U.S.C. § 2001. The Receiver is instructed to contact two or more potential real estate brokers before selecting a real estate broker. Further, the Receiver proposes to sell the Jewelry items via auction houses that specialize in jewelry or via a local jeweler to maximize their value. Sale Mot. at 3. The Court has discretion to order procedures for sale of personal property and finds the Receiver's Jewelry proposal suitable. *See* 28 U.S.C. § 2004.

      For the foregoing reasons, the Court GRANTS the Receiver's Motion for Order to Authorize Sale of Newport Beach Real Property and Four Pieces of Jewelry.

      In addition, Foti says the Receiver should be required to address the timing of the sale process and how that would affect the Foti family, which currently resides in the house. Sale Opp'n at 11. The Receiver suggests that whether the Foti family should live in the property while it is listed for sale is a difficult question for the Court to decide. Sale Reply at 6, n.4. The Receiver recognizes that the Fotis have school-aged children. *Id.* While Mrs. Foti's mother lives in the immediate area, and the Fotis own a house in La Quinta, California, these options may not be feasible. *Id.* On the other hand, the Receiver notes that the Fotis have lived at the house without paying a bill for eighteen months and have not been candid with the Court. *Id.* Because the Fotis could be inclined to sabotage efforts to sell the house, the Receiver recommends selling the house without any occupants. *Id.* The Receiver is willing to work with the parties to determine a realistic move-out date. *Id.* At oral argument, the Receiver suggested a move-out date of sixty days following the Court's order authorizing the sale of the Property, and Foti did not oppose this recommendation. Therefore, the Court adopts the Receiver's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 16-0999-DOC (AFMx) | Date: December 18, 2017 |
| | Page 20 |

recommendation and ORDERS Foti and any other current residents of the Newport Beach Real Property to vacate the Property by February 16, 2018.

## V. Disposition

For the foregoing reasons, the Court DENIES Foti's Motion for Relief from Judgment. Further, the Court DENIES Defendant's Motion for a Stay Pending Appeal.

In addition, the Court GRANTS the Receiver's Motion for Order to Authorize Sale of Newport Beach Real Property and Four Pieces of Jewelry. The Court ORDERS Foti and any other current residents of the Newport Beach Real Property to vacate the Property by **February 16, 2018**. The Receiver is authorized to sell the real property located at 300 Morning Star Lane, Newport Beach, California by engaging a real estate broker. The Receiver is instructed to contact two or more potential real estate brokers before selecting a real estate broker. The Receiver is also authorized to sell the Boucheron diamond necklace (S/N PCL10866), women's black Chanel J12 ceramic watch, women's white Chanel J12 ceramic watch, and men's Rolex platinum watch (S/N K556982) via an auction house or local jeweler.

The Clerk shall serve this minute order on the parties.

| | |
|---|---|
| MINUTES FORM 11<br>CIVIL-GEN | Initials of Deputy Clerk: djl |